In the United States District Court for the
Southern District of New York

SeanPaul Reyes
*Plaintiff*

v.

The City of New York,
*Defendant*

Case No. 23-cv-6369

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION

Andrew Case
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York New York
(212) 739-7506
acase@latinojustice.org

July 25, 2023
New York, New York

**Table of Contents**

Preliminary Statement................................................................................................... 1

Facts................................................................................................................................ 1

Argument ........................................................................................................................ 5

I.      This Court Should Exercise Its Jurisdiction ....................................................... 5

   A.   Facts Regarding Plaintiff's Subsequent Arrest................................................. 5

   B.   *Younger* Abstention ........................................................................................ 5

   C.   *Younger* Abstention Is Not Appropriate Here ................................................ 7

      1.   Plaintiff Is Not Seeking to Enjoin a State Criminal Proceeding..................... 7

      2.   Plaintiff Cannot Obtain Relief in the Kings County Prosecution.................... 8

      3.   Plaintiff is Not Challenging the Constitutionality of a Statute ....................... 9

      4.   Plaintiff is Subject to a Series of Repeated Prosecution ............................... 10

II.     This Court Should Issue a Preliminary Injunction............................................ 11

   A.   Plaintiff is Likely to Succeed on the Merits .................................................. 12

      1.   Plaintiff Is Likely to Succeed on His First Amendment Claims ................... 12

      2.   Plaintiff Is Likely to Succeed on His CAPA Claim ..................................... 16

      3.   Plaintiff Is Likely to Succeed on His
           New York City Right to Record Act Claim................................................... 18

      4.   Plaintiff Is Likely to Succeed on His
           New York State Right to Record Act Claim.................................................. 19

   B.   Plaintiff Will Be Irreparably Harmed without an Injunction ............................. 21

   C.   Public Interest and the Balance of Equities Favor Plaintiff................................. 22

III.    Conclusion ...................................................................................................... 23

# Table of Authorities

## CASES

*1700 York Assocs. v. Kaskel*, 182 Misc. 2d 586 (Civ. Ct. 1999) ............................................ 17, 18

*ACLU of Ill. v. Alvarez*, 679 F.3d 583, (7th Cir. 2012) ................................................................. 13

*Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749 (9th Cir. 2019) ...................................... 22

*Am. Patriot Express v. City of Glens Falls*, 474 F. Supp. 3d 508 (N.D.N.Y. 2020) .................. 15

*Averhart v. Annucci*, No. 21-CV-383, 2021 WL 2383556 (S.D.N.Y. June 10, 2021) ........ 21, 22

*Barnhart v. City of Rochester*, No. 21-cv-6718
    2022 WL 2356631 (W.D.N.Y. June 30, 2022) ................................................................... 20

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015) .................................. 11

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ............................. 5

*Colon v. Martin*, 35 N.Y.3d 75 (2020) ........................................................................................ 20

*Comm. for Taxi Safety, Inc. v. City of N.Y.*, 40 Misc. 3d 930 (Sup. Ct., N.Y. Cnty. 2013)...... 19

*CompassCare v. Cuomo*, 465 F. Supp. 3d 122 (N.D.N.Y. 2020) .................................................. 9

Davis v. Goord, 320 F.3d 346 (2d Cir. 2003) .............................................................................. 12

Dawes v. Walker, 239 F.3d 489 (2d Cir. 2001) ........................................................................... 12

*Disability Rts. N.Y. v. New York*, 916 F.3d 129 (2d Cir. 2019) .................................................... 6

*Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) ................................................................................. 22

*Fair v. Esserman*, No. 3:15-CV-681, 2017 WL 2979685 (D. Conn. July 12, 2017) ................ 14

*Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017) .................................................................. 13

*Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)............................................................... 13

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011)............................................................................... 13

*Glossip v. Gross*, 576 U.S. 863 (2015) ....................................................................................... 12

*Harris v. Younger*, 281 F. Supp. 507 (C.D. Cal. 1968).................................................................. 6

*Helio Logistics, Inc. v. Mehta*, No. 22-CV-10047
    2023 WL 1517687, (S.D.N.Y. Feb. 3, 2023) .................................................................... 1

*Helms Realty Corp. v. City of New York*, 320 F. Supp. 3d. 526 (S.D.N.Y. 2018) ...................... 7

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133 (2d Cir. 2005)...................................................... 14

*Jackson v. New York*, 381 F. Supp. 2d 80, (N.D.N.Y. 2005)....................................................... 14

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996)............................................................................. 21

*Kern v. Clark*, 331 F.3d 9 (2d Cir. 2003) .................................................................................... 11

*L.V.M. v. Lloyd*, 318 F. Supp. 3d 601 (S.D.N.Y. 2018) ............................................................. 12

*Lowell v. Vt. Dep't of Child. & Fams.*, 835 F. App'x 637 (2d Cir. 2020) ................................... 8

*Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004)..................................... 14

*Matter of Petersen v. Inc. Vill. of Saltaire*, 77 A.D.3d 954 (App. Div. 2nd Dept. 2010) ......... 18

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)....................... 7

*Mills v. Alabama*, 384 U.S. 214, 218 (1966) ........................................................... 13

*Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984) ........................................... 22

*N.Y.C. Comm. for Taxi Safety v. N.Y.C. Taxi & Limousine Comm'n*,
    177 Misc. 2d 855 (Sup. Ct. 1998) ..................................................................... 16

*N.Y.C. Comm. for Taxi Safety v. N.Y.C. Taxi & Limousine Comm'n*, 256 A.D.2d 136 (App.
    Div. 1st Dept. 1998) ......................................................................................... 17

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) .......... 5

*Ousmane v. City of N.Y.*, 7 Misc. 3d 1016(A) (Sup. Ct. 2005) ................................. 17

*P.G. v. Jefferson Cnty.*, No. 5:21-CV-388, 2021 WL 4059409 (N.D.N.Y. Sept. 7, 2021) ........ 23

*People v. Hedemann*, 107 Misc. 2d 241 (App. Term 1981) ...................................... 16

*People v. Reape*, 22 Misc. 3d 615 (Crim. Ct., Kings Cnty. 2008) ............................. 15

*Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266 (S.D.N.Y. May 23, 2018 .................. 22

*Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022) ........................................................ 10

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) .................................... 13

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ........................................ 6, 7

*Thomas v. Chi. Park Dist.*, 534 U.S. 316 (2002) ............................................. 14, 15

*Tripathy v. Lockwood*, No. 22-949-PR, 2022 WL 17751273 (2d Cir. Dec. 19, 2022) ............. 21

*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) .................................................... 13

*Xiang Fu He v. Troon Mgmt., Inc.*, 34 N.Y.3d 167 (2019) .................................... 19

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020) .................................................. 21

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................................. 5

## STATUTES

N.Y. Civ. Rts. L. § 79-P .................................................................................. 3, 20

N.Y. City Charter §§ 1041–46 .................................................................. 16, 17, 19

N.Y. Penal L. § 140.10 ....................................................................................... 5

N.Y. Penal L. § 195.05 ................................................................................. 5, 10

N.Y.C. Admin. Code § 14-189 ...................................................................... 3, 18

## OTHER AUTHORITIES

S3253A Sponsor Memo, Senator Kevin S. Parker ................................................. 20

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ......................................................................................... 14

**NEWS COVERAGE**

Ashley Southall, *Video of Man Berating Officer Opens Debate Over Recording in Police Stations*, N.Y. Times (Aug. 21, 2018) ........................................................................ 19

Thomas A. Johnson, *Watts Inquest Rules Negro's Death Accidental*, N.Y. Times (June 1, 1966) ................................................................................................................................... 6

## Preliminary Statement

SeanPaul Reyes, an independent journalist, was arrested by the NYPD for exercising his First Amendment rights. He was arrested pursuant to an NYPD policy that prohibits recording inside the lobbies of NYPD precincts (the "Trespass Policy"). This policy violates municipal, state, and constitutional law. Without an injunction from this Court, Plaintiff will be subjected to repeated arrest for exercising his rights. He therefore seeks a targeted, forward-looking injunction against the Trespass Policy.

The Trespass Policy, enacted in 2018, purports to bar the public from recording inside NYPD's public lobbies, and authorizes officers to arrest members of the public for trespassing if they do. This policy violates the First Amendment, the New York State Right to Record Act, and the City of New York's Right to Record Act. Further, it is a rule that was not passed pursuant to the Citywide Administrative Procedure Act.

Plaintiff cannot exercise his First Amendment rights without fear of arrest and therefore faces irreparable injury. The balance of equities and public policy favor enjoining the Trespass Policy. The Trespass Policy should therefore be enjoined.

## Facts

When ruling on a preliminary injunction motion, "a court may consider the entire record including affidavits and other hearsay evidence." *Helio Logistics, Inc. v. Mehta*, No. 22-CV-10047, 2023 WL 1517687, at *2 (S.D.N.Y. Feb. 3, 2023) (cleaned up).

## Plaintiff's Journalistic Activities

Plaintiff is a journalist who conducts public business with public officers—including police officers—while recording the encounters. *See* Reyes Decl. ¶ 3. He posts his work on his YouTube channel, where he goes by the moniker "Long Island Audit." *See* https://www.youtube.com/c/longislandaudit; Reyes Decl. ¶ 4.

**The Trespass Policy**

The NYPD has codified the Trespass Policy, which authorizes officers to arrest people who record inside the lobbies of precincts, in the Patrol Guide at PG 203-29(7) and the Administrative Guide at provision 304-21(7). It reads:

> Members of the public are not allowed to photograph and/or record police activity within Department facilities. Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity. If such person refuses to stop, then they should be ordered to leave the premises. If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law section 140.05 and 140.10).

*See* July 24, 2023 Declaration of Andrew Case ("Case Decl." Exs. 1, 2).

The NYPD has since posted signs in each precinct, which are still posted to this day, stating that recording in precincts is prohibited. These signs read: "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO OR VIDEO RECORDING OR PHOTOGRAPHING THIS FACILITY."

**The Right to Record Acts**

The New York City Right to Record Act provides that "[a] person may record police activities and maintain custody and control of any such recording and of any

2

property or instruments used in such recording." N.Y.C. Admin. Code § 14-189. The New York State Right to Record Act similarly provides that "[a] person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity and to maintain custody and control of that recording and of any property or instruments used by that person to record law enforcement activities." N.Y. Civ. Rts. L. § 79-P(2).

**Plaintiff Was Arrested for Exercising His Federal, State, and Local Rights**

On April 4, 2023, Plaintiff sought to peacefully exercise his First Amendment right to film in public and publicly accessible areas. *See* Reyes Decl. ¶ 10. Plaintiff chose to visit the NYPD's Sixty-First Precinct, a facility of the NYPD located at 2575 Coney Island Avenue, Brooklyn, NY (the "061"). *See* Reyes Decl. ¶ 11. Plaintiff had police business to conduct in the 061: namely, he wished to obtain a complaint form and file a complaint. *See* Reyes Decl. ¶ 12. Before he entered the 061, Plaintiff began recording a video and continued to record until NYPD officers arrested him and confiscated his equipment. *See* Reyes Decl. ¶ 13.

A true and accurate copy of the video encounter is attached as Exhibit A to Plaintiff's declaration. *See* Reyes Decl. ¶ 14 and Exhibit A.

The video shows the following events. Plaintiff, while waiting in line, is approached first by NYPD Sergeant Tosares Korchimet (Badge No. 256) and then by Police Officer Giovanni Cucuzza (Badge No. 259). The officers directed Plaintiff to the

posted sign prohibiting recording in precincts, asked him to leave the precinct or stop recording, arrested him when he refused to comply. *See* Reyes Decl. ¶ 15–18 and Ex. A.

Both officers confirmed to Plaintiff that they were arresting Plaintiff because he was recording and confirmed that recording inside a precinct lobby is barred by the NYPD. *See* Reyes Decl. ¶ 16–18. Plaintiff was held in the 061 for over six hours before he was released with a Desk Appearance Ticket for charges that were eventually dismissed in full. *See* Case Decl. Exs. 3, 4.

## Plaintiff Cannot Exercise His Rights Without an Injunction

Plaintiff cannot continue reporting without recording his interactions with officers, including those that take place in precinct lobbies. *See* Reyes Decl. ¶ 20. But unless the Trespass Policy is enjoined, he will be re-arrested for asserting his rights. *See* Reyes Decl. ¶ 22. This threat is real: Plaintiff was arrested again on June 1, 2023. *See* Case Decl. Ex. 5.

The events of June 1 do not form the basis for Plaintiff's claims but do suggest the harm Plaintiff faces should he continue to exercise his rights. Plaintiff seeks relief only based on the arrest that occurred on April 4, 2023, and the only relief he seeks is injunctive relief directed at the NYPD's future course of conduct.

## Argument

### I.   This Court Should Exercise Its Jurisdiction

Federal Courts have a "virtually unflagging obligation [] to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). There are relatively few "exceptional circumstances [that] justify a federal court's refusal to decide a case in deference to the States." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989). One such exceptional circumstance is "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971). But *Younger* abstention would be improper here.

#### A.   Facts Regarding Plaintiff's Subsequent Arrest

Plaintiff was arrested on June 1, 2023 and charged with Obstructing Governmental Administration (N.Y. Penal L. § 195.05) and Criminal Trespass in the Third Degree (N.Y. Penal L. § 140.10) (the "Kings County Prosecution"). Plaintiff does not rely on the acts of any officer during his encounter on June 1, 2023 to support his claims here. Plaintiff does not seek an injunction against the trial court hearing his criminal case, and he has not sought a declaratory judgment in this action.

#### B.   *Younger* Abstention

In 1966, John Harris Jr. distributed leaflets advocating for the criminal prosecution of Jarold M. Bova. Transcript of Oral Argument, *Younger v. Harris*, 401 U.S. 37 (1971) at 15:9–15, https://www.supremecourt.gov/pdfs/transcripts/1968/68-163_04-01-

1969.pdf. Bova, a white police officer, had shot and killed Leonard Deadwyler after Deadwyler ran a red light while rushing his wife, who was in labor, to the hospital. Thomas A. Johnson, *Watts Inquest Rules Negro's Death Accidental*, N.Y. Times (June 1, 1966). Advocating for Bova's prosecution got Harris arrested under the California Criminal Syndication Act ("CSA"). Harris later filed a federal lawsuit seeking an injunction against the district attorney prosecuting him. The district court issued a declaratory judgment that the CSA was facially unconstitutional and enjoined the district attorney's office from proceeding with the prosecution. *See Harris v. Younger*, 281 F. Supp. 507, 517 (C.D. Cal. 1968), *rev'd*, 401 U.S. 37 (1971).

The Supreme Court reversed, holding "that the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." *Younger*, 401 U.S. at 54.

Thus was born *Younger* abstention, under which a federal court must abstain "where a party seeks to enjoin an ongoing, parallel state criminal proceeding." *Disability Rts. N.Y. v. New York*, 916 F.3d 129, 133 (2d Cir. 2019). *Younger* abstention must be considered when a plaintiff seeks "federal intrusion into ongoing state criminal prosecutions, certain civil enforcement proceedings, and pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up) (quoting *New Orleans Pub. Serv.*, 491 U.S. at 368). Should a plaintiff seek federal

interference with one of the above types of proceedings, a court will further determine whether there is "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Id.* at 81 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982)).

### C.   *Younger* Abstention Is Not Appropriate Here

#### 1.   <u>Plaintiff Is Not Seeking to Enjoin a State Criminal Proceeding</u>

First and decisively, Plaintiff is not seeking "federal intrusion into ongoing state criminal prosecutions." *Sprint*, 571 U.S. at 78. Plaintiff does not seek an injunction against the Kings County District Attorney's Office. He does not seek a declaratory judgment. Plaintiff's criminal case will not be affected by the limited and forward-looking relief sought here. Plaintiff seeks a preliminary injunction against one sub-paragraph of the NYPD Administrative Guide. The Kings County Prosecution involves fact-specific charges under different statutes than the April 4 arrest.

An instructive case involved a hotel owner who had been repeatedly cited by the city for running a transient occupancy hotel brought a constitutional challenge against the law authorizing such citations. *See Helms Realty Corp. v. City of New York*, 320 F. Supp. 3d 526, 532 (S.D.N.Y. 2018). The hotel (along with others) was also subject to a state court action under the challenged statute that also alleged violations of the fire safety code and multiple other state laws. *Id.* at 537. Because the enforcement action was

broader that the challenged provisions and because the plaintiff "does not in the federal action seek to enjoin or otherwise supervise the state courts," abstention was not proper. *Id.* at 538. Similarly, here, the June 1 arrest involves a more serious trespass charge than the original arrest and an additional charge for Obstructing Governmental Administration. And Plaintiff does not seek to oversee or in any way impede the Kings County trial court.

        2.      <u>Plaintiff Cannot Obtain Relief in the Kings County Prosecution</u>

Before abstaining under *Younger*, a court must find that "the state proceedings provide a sufficient forum for review of federal constitutional claims." *Lowell v. Vt. Dep't of Child. & Fams.*, 835 F. App'x 637, 639 (2d Cir. 2020), *as amended* (Dec. 15, 2020). And when irreparable injury is "both great and immediate," abstention is improper. *Younger*, 401 U.S. at 46.

The Kings County Prosecution cannot provide Plaintiff relief from great and immediate irreparable injury. His charges may be dismissed, as the April 4 charges were, without any ruling on the Trespass Policy. Even if the trial court in Kings County finds the Trespass Policy illegal, it could not enjoin the NYPD from enforcing it, particularly in the other four counties in which the NYPD operates.

Plaintiff's journalistic obligations require him to continue to record his interactions with law enforcement while he conducts business with the NYPD. NYPD officers in the Bronx, Staten Island, Queens, and Manhattan will not be compelled to

stop following the Trespass Policy because one case was dismissed in Brooklyn, and the

Kings County Criminal Court will not enjoin them from doing so. Plaintiff's future

rights cannot be protected in the Kings County Prosecution.

And the threat of future arrest provides a great and immediate threat of

irreparable injury. Plaintiff has been forced to forgo his rights under threat of repeated

arrests on escalating charges. This has had more than a "chilling effect" on his First

Amendment rights: it has put them into deep freeze. *See CompassCare v. Cuomo*, 465 F.

Supp. 3d 122, 144 (N.D.N.Y. 2020).

### 3.   Plaintiff is Not Challenging the Constitutionality of a Statute

The *Younger* Court disapproved of "testing the constitutionality of a statute 'on

its face' and then enjoining all action to enforce the statute." *Younger*, 401 U.S. at 52

(cleaned up). But police policies are different than statutes, and enjoining a policy does

not create the same federalism concerns as enjoining enforcement of a legislative act.

Plaintiff is not challenging either the trespass statute or the OGA statute, but an NYPD

rule that was not enacted by a legislature.[1] Federalism here suggests that the Court

enforce the state and municipal Right to Record Acts against the City.

---

[1] The OGA statute reads: A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under

Last year, the Second Circuit considered two requested injunctions in one challenge to state fishing laws by members of the Shinnecock nation. *Silva v. Farrish*, 47 F.4th 78, 89 (2d Cir. 2022). The members claimed that certain colonial-era deeds granted fishing rights to the nation in perpetuity, regardless of state licensing or size regulations. The plaintiffs were being prosecuted for fishing without a license when they filed their suit. The Second Circuit held that the portion of the case seeking to invalidate the statute was subject to *Younger* abstention. But it also found that a claim seeking to enjoin the state from "interfering with Plaintiffs' use of the waters, fishing, taking fish, and holding fish and shellfish in Shinnecock Bay and its estuary and other usual and customary Shinnecock fishing waters" was not subject to *Younger* because "forward-looking claims were not barred" by the doctrine. *Silva*, 47 F.4th at 89. Likewise, in the instant case, Plaintiff sets forth the "forward-looking claim" that his future First Amendment rights and rights under State and City laws will be infringed upon unless an injunction against the Trespass Policy is issued.

4.   <u>Plaintiff is Subject to a Series of Repeated Prosecution</u>

*Younger* included an exception for when the relevant case is "only one of a series of repeated prosecutions to which [the plaintiff] will be subjected," *Younger*, 401 U.S. at 49, and the Second Circuit has noted that "there may be circumstances wherein *Younger*

---

circumstances evincing the actor's intent that the animal obstruct governmental administration." N.Y. Pen. L. § 195.05.

abstention would be inappropriate in a case involving a series of good-faith repeated prosecutions," *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003). Specifically, it held that "repeated state-court prosecutions wherein, for procedural reasons, a defendant was unable to raise defects of a Constitutional nature" should not be subject to abstention. *Id.* at 12 n.2. That is precisely the predicament Plaintiff faces. He has been arrested twice within a few months for similar conduct, under the same policy. If being continually arrested under the same policy as part of a campaign to show that the policy is illegal is not a "series of repeated prosecutions," it is hard to see what is.

For the reasons stated above, the Court should not abstain from hearing this case under *Younger* or any other theory.

## II.    <u>This Court Should Issue a Preliminary Injunction</u>

This court should enjoin the NYPD from enforcing the Trespass Policy because Plaintiff satisfies the four elements required for a preliminary injunction: "(1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (cleaned up). Plaintiff is likely to

succeed on all of his claims and faces irreparable injury should he try to exercise his constitutional rights in the future.

**A.     Plaintiff is Likely to Succeed on the Merits**

Plaintiff has made claims under the First Amendment, the Citywide Administrative Procedure Act, the New York City Right to Record Act, and the New York State Right to Record Act. To obtain a preliminary injunction, plaintiff must show that he is likely to succeed on at least one of those claims. *See, e.g.*, *Glossip v. Gross*, 576 U.S. 863, 876 (2015), *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018). In fact, he is likely to succeed on all of them.

1.     Plaintiff Is Likely to Succeed on His First Amendment Claims

To succeed on a claim of First Amendment retaliation, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). Plaintiff satisfies this standard because he was (1) engaged in protected First Amendment conduct, (2) arrested by the NYPD for that conduct, and (3) he was arrested pursuant to a written policy that purportedly authorizes such arrests.

Recording the police is protected First Amendment activity. While the Second Circuit has not yet been presented with this question, other circuits have uniformly held

that the First Amendment encompasses recording the police, and none thinks the question is close. *See Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)); *Fields v. City of Phila.*, 862 F.3d 353, 356 (3d Cir. 2017) ("Simply put, the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public."); *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017) ("We agree with every circuit that has ruled on this question: Each has concluded that the First Amendment protects the right to record the police."); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

There is no debate that the City, through PO Cucuzza, took adverse action against Plaintiff, who was arrested and detained for over six hours. *See* Reyes Decl. ¶¶ 18–19. Nor is there any question that Plaintiff was arrested specifically because he was recording officers engaged in police conduct. Both officers told him as much during the encounter. *See* Reyes Decl. ¶¶ 16–17.

Plaintiff is likely to prevail on his First Amendment *Monell* claim as well. The Trespass Policy limits First Amendment expression in a public forum in a manner that is not narrowly tailored to protect a significant government interest and must be struck

down. *See Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002). The government is sharply limited in its ability to "regulate speech or expressive conduct on property that has traditionally been open to the public for such activity, such as public streets and parks." *Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005). Police precinct lobbies are open to the public for the purpose of petitioning the government for redress. *See* U.S. Const. amend. I; *Jackson v. New York*, 381 F. Supp. 2d 80, 89 (N.D.N.Y. 2005) ("It is axiomatic 'that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right' to petition government for the redress of grievances.")

At the very least, these lobbies are designated public forums—places that have been opened to the public specifically for a public purpose. *See Fair v. Esserman*, No. 3:15-CV-681, 2017 WL 2979685, at *5 (D. Conn. July 12, 2017) (holding that a police department created a limited public forum by inviting members of the public to a presentation about COMPSTAT). These lobbies often open to the street (or to a small vestibule that opens to the street) and are accessible to the public twenty-four hours a day. They share little with government waiting rooms that have been found to be nonpublic forums, *i.e.*, interior rooms designated for appointments with a specific agency where "supervisors patrol the waiting rooms three to four times a day." *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 140 (2d Cir. 2004) (cleaned up).

14

But whichever type of public forum these lobbies are, they are subject to the same standard: "so long as a forum remains public, government regulation of speech within it is subject to the same limitations as that governing a traditional public forum." *Id.* at 143 (cleaned up). And that means that any restriction "must be narrowly tailored to serve a significant governmental interest." *Am. Patriot Express v. City of Glens Falls*, 474 F. Supp. 3d 508, 528 (N.D.N.Y. 2020) (quoting *Thomas*, 534 U.S. at 323 n.3).

The Trespass Policy is not narrowly tailored and protects no government interest. The policy is a blanket prohibition on First Amendment activity in a public forum. It is not limited to recording that interferes with police business. There is no government interest in protecting from public view a public lobby, open to the public to interact with public officials, which is already being recorded by the NYPD itself. To the extent that police officers handle sensitive information or speak to witnesses whose identity must be kept secret, those activities take place in the non-public areas of a precinct.

The criminal courts have defined the contours of conduct that can result in a lawful order to leave a police precinct lobby or government office generally. Officers may ask someone to leave when the conduct, even if it implicates the First Amendment, "would interfere with the ordinary use of the property of the Police Department and by other members of the public." *People v. Reape*, 22 Misc. 3d 615, 619 (Crim. Ct., Kings Cnty. 2008). In *Reape*, the Court found that asking for a detective who did not work in the precinct, demanding to see that detective when told he did not work there, refusing

help from other detectives, and then "yelling and screaming" at the other officers can

get you ejected from a precinct. *Id.* at 617. And the NYPD, like the IRS, can ask someone

to leave when "the manner of expression is basically incompatible with the normal

activity of a particular place at a particular time." *People v. Hedemann*, 107 Misc. 2d 241,

242 (App. Term 1981) (upholding ejection of person who handed out leaflets that

"encouraged the nonpayment of federal taxes" to those in line at the IRS office).

      Recording NYPD officers does not interfere with their job and is not

incompatible with their work. The Trespass Policy is a blanket prohibition on First

Amendment activity and therefore illegal.

      2.    <u>Plaintiff Is Likely to Succeed on His CAPA Claim</u>

      CAPA requires agencies to meet strict requirements when enacting rules. N.Y.

City Charter §§ 1041–46. CAPA defines a "rule" as "any statement or communication of

general applicability that (i) implements or applies law or policy, or (ii) prescribes the

procedural requirements of an agency including an amendment, suspension, or repeal

of any such statement or communication." *Id.* § 1041(5). It specifically includes any

statement that "prescribes standards which, if violated, may result in a sanction or

penalty." *Id.* § 1041(5)(a).

      This definition is intentionally expansive. Requiring taxi drivers to provide air

conditioning to those in the rear seats is a rule. *N.Y.C. Comm. for Taxi Safety v. N.Y.C. Taxi

& Limousine Comm'n*, 177 Misc. 2d 855, 858 (Sup. Ct. 1998), *aff'd sub nom. N.Y.C. Comm.*

*for Taxi Safety v. N.Y.C. Taxi & Limousine Comm'n*, 256 A.D.2d 136 (App. Div. 1st Dept. 1998). Modifying the guidelines that Administrative Law Judges use to determine fines for street vending violations is a rule. *Ousmane v. City of N.Y.*, 7 Misc. 3d 1016(A) (Sup. Ct. 2005). Prohibiting the ownership of pet ferrets is a rule. *1700 York Assocs. v. Kaskel*, 182 Misc. 2d 586, 593–94 (Civ. Ct. 1999).

Under CAPA, City agencies are required to publish an annual regulatory agenda, subject to mayoral review, that describes and justifies proposed rules. N.Y. City Charter §§ 1042(a)–(b). If a City agency wishes to promulgate a rule not on this agenda, they must explain the omission and otherwise follow CAPA's rulemaking procedures. *Id.* § 1042(c). To enact a rule, the agency must arrange and prominently announce a public hearing no sooner than thirty days after the full text of the proposed rule is made public. *Id.* § 1043(b). The draft of the proposed rule must be approved by the Mayor's office and the New York City Law Department, which must confirm, among other things, that the proposed rule is "not in conflict with other applicable rules." *Id.* § 1043(4)(d).

The Trespass Policy subjects members of the general public to arrest and prosecution for engaging in First Amendment activity in a place open to the public. It unquestionably "prescribes standards which, if violated, may result in a sanction or penalty." *Id.* § 1041(5)(a). A policy that requires you to comply or to lose rights is a rule under CAPA. *439 E. 88 Owners Corp. v. Tax Comm'n*, 6 Misc. 3d 1014(A) (Sup. Ct., N.Y.

Cnty. 2002), *aff'd*, 307 A.D.2d 203 (App. Div. 1st Dept. 2003). Whether the NYPD itself considers the policy a "rule" is of no import because an agency "may not circumvent CAPA's rulemaking requirements by giving a different label to what is in purpose or effect a rule or amendment to a rule." *Kaskel*, 182 Misc. 2d at 594.

Yet the NYPD did not comply with CAPA when it promulgated the Trespass Policy in 2018 and then again in 2021. The City of New York maintains a website listing all rules passed pursuant to CAPA since 2020 and the Trespass Policy is not among them: https://rules.cityofnewyork.us/recently-adopted-rules/. Because the Trespass Policy is a rule that was not promulgated pursuant to the requirements of CAPA, it does not have "the force and effect of law." *Id.* at 592.

3.    Plaintiff Is Likely to Succeed on His New York City Right to Record Act Claim

New York City's Right to Record Act ("RTRA") states that "[a] person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording." N.Y.C. Admin. Code § 14-189(b). This broad, straightforward provision means what it says: people can record the police. Reading into the law an exception that is not in the text—"except inside police precincts"—would "extend a statute beyond its express terms or the reasonable implications of its language." *Matter of Petersen v. Inc. Vill. of Saltaire*, 77 A.D.3d 954, 956 (App. Div. 2nd Dept. 2010). When the language of a statute is clear and unambiguous,

there is no need to consult legislative history. *See Xiang Fu He v. Troon Mgmt., Inc.*, 34

N.Y.3d 167, 173 (2019).

But if the Court were to consider that legislative history, it supports concluding

that the RTRA applies in precincts. Chair Donovan Richards of the City Council's Public

Safety Committee said that the RTRA would specifically address the Trespass Policy

and the fact that it creates a "double standard in police stations." *See* Ashley Southall,

*Video of Man Berating Officer Opens Debate Over Recording in Police Stations*, N.Y. Times

(Aug. 21, 2018).

The City Charter does not permit an agency to issue a rule that is "in conflict

with other applicable rules," namely the Right to Record Act. N.Y. City Charter

§ 1043(4)(d). And "an agency cannot promulgate rules or regulations that contravene

the will of the legislature or the terms of the authorizing statute." *Comm. for Taxi Safety,*

*Inc. v. City of N.Y.*, 40 Misc. 3d 930, 934 (Sup. Ct., N.Y. Cnty. 2013); *see also 439 E. 88*

*Owners Corp.*, 6 Misc. 3d 1014(A) (stating that agencies have "no authority to create a

rule out of harmony with the statute").

Plaintiff is likely to succeed on his claim that the Trespass Policy violates the

Right to Record Act.

> 4.  Plaintiff Is Likely to Succeed on His New York State Right to
>      Record Act Claim

The New York State Right to Record Act establishes that "[a] person not under

arrest or in the custody of a law enforcement official has the right to record law

enforcement activity and to maintain custody and control of that recording and of any property or instruments used by that person to record law enforcement activities." N.Y. Civ. Rts. L. § 79-P(2). The law defines "law enforcement activity" as "any activity by an officer acting under color of law," with no given exceptions. *Id.* § 79-P(1)(b). Section 79-P(3) explicitly creates a private right of action under the law. A claim under § 79-P exists "when (1) a person demonstrates that he or she exercised or attempted to exercise the right [to record] established in subdivision two and (2) an officer acted to interfere with that person's recording of a law enforcement activity." *Barnhart v. City of Rochester*, No. 21-cv-6718, 2022 WL 2356631 at *31–32 (W.D.N.Y. June 30, 2022) (cleaned up).

The Sponsor Memo that accompanied the bill states that "[t]he purpose of [the Act] is to unambiguously affirm, by statutory enactment, the right of New Yorkers to record, ***with expressed exceptions***, the actions of persons acting under the color of law." *See* S3253A Sponsor Memo, Senator Kevin S. Parker, *available at* https://www.nysenate.gov/legislation/bills/2019/S3253 (emphasis added). Those express exceptions bar recording when a person is interfering with law enforcement or engaging in criminal conduct, but there is no exception for precinct lobbies. *See* N.Y. Civ. Rts. L. § 79-P(2). The doctrine of *expressio unius est exclusio alterius* suggests that additional exceptions should not be implied. *See Colon v. Martin*, 35 N.Y.3d 75, 81 (2020).

**B.      Plaintiff Will Be Irreparably Harmed without an Injunction**

Plaintiff is likely to suffer irreparable harm if the NYPD continues to enforce the Trespass Policy. Plaintiff is a journalist who reports on First Amendment issues. He risks further arrest and detention if he continues to exercise his First Amendment rights. *See* Reyes Decl. ¶¶ 3, 6, 20. Should he try to enter a precinct and record again, he will likely be arrested again; his ability to enjoy his First Amendment rights has been totally stymied. As the Second Circuit recently noted, "a presumption of irreparable injury flows from a violation of constitutional rights." *See Tripathy v. Lockwood*, No. 22-949-PR, 2022 WL 17751273, at *2 (2d Cir. Dec. 19, 2022) (cleaned up); *see also Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). And this Court recently noted that the Second Circuit has recognized the alleged violation of constitutional rights, including the First Amendment, is sufficient to establish irreparable injury. *Averhart v. Annucci*, No. 21-CV-383, 2021 WL 2383556, at *9 (S.D.N.Y. June 10, 2021) (citing *Yang v. Kosinski*, 960 F.3d 119, 128 (2d Cir. 2020)). After all, "[i]t is black-letter law that the allegation of [a constitutional] violation triggers a finding of irreparable injury." *Id.*

Plaintiff's obligations as an independent journalist require him to visit publicly available spaces—including NYPD precincts—and exercise his First Amendment right to record there. If the NYPD is not enjoined from enforcing the Trespass Policy, Plaintiff will face arrest if he attempts to exercise his First Amendment rights, which is akin to having those rights denied. Indeed, Plaintiff's harm is imminent, ongoing, and

unconstitutional because he cannot exercise his First Amendment rights or continue his

journalistic work without fear of arrest.

### C.   Public Interest and the Balance of Equities Favor Plaintiff

The balance of equities and the public interest tip decidedly in Plaintiff's favor.

As this Court has recognized, "[t]he Second Circuit has concluded that, where a plaintiff

alleges constitutional violations, the balance of hardships tips decidedly in the plaintiff's

favor," even if the opposing party argues that a preliminary injunction would

financially or administratively burden them. *Averhart*, 2021 WL 2383556 at *16 (citing

*Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018) and

then citing *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984)).

As stated above, Plaintiff seeks an order that allows him to continue exercising

his constitutional and statutory right to record the police and, as such, both he and the

public would be greatly unburdened by a guarantee that he would be able to continue

his work and continue to exercise his constitutional rights. In contrast, Defendant is

unlikely to suffer any injury from a decision requiring the NYPD to comply with the

Constitution and New York City and State law: the "government suffers no harm from

an injunction that merely ends unconstitutional practices and/or ensures that

constitutional standards are implemented." *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017)

(citations omitted). To the contrary, the public interest lies with enforcing the

Constitution. *See Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019)

("[I]t is always in the public interest to prevent the violation of a party's constitutional rights."); *P.G. v. Jefferson Cnty.*, No. 5:21-CV-388, 2021 WL 4059409, at *5 (N.D.N.Y. Sept. 7, 2021) ("[T]he public interest lies with enforcing the Constitution.").

Accordingly, the public interest and balance of equities weigh heavily in Plaintiff's favor.

**III.**   **Conclusion**

For the reasons stated above, Plaintiff respectfully requests that this court enter an injunction 1) prohibiting the NYPD from enforcing the Trespass Policy, as set forth in NYPD Patrol Guide Procedure 203-29(7) and NYPD Administrative Guide Procedure 304-21(7), and 2) requiring the NYPD to remove the signs in precincts setting forth the Trespass Policy.

Dated: July 25, 2023
New York, New York

Respectfully Submitted,
    /s/ *Andrew Case*
Andrew Case
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York New York
(212) 739-7506
acase@latinojustice.org

23