23-CV-06369

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEANPAUL REYES,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION**

*HON. SYLVIA HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Gregory Musso*
*Tel:  (212) 356-3159*
*Matter #:  2023-068976*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ................................................**Error! Bookmark not defined.**

STATEMENT OF FACTS.........................................................**Error! Bookmark not defined.**

LEGAL STANDARDS.................................................................................................6

        A.    Younger Abstention.........................................................................6

        B.    Standard for the Issuance of a Preliminary Injunction ........................................................................7

ARGUMENT

    POINT I

        THE COURT SHOULD ABSTAIN FROM ISSUING A PRELIMINARY INJUNCTION.**Error! Bookmark not defined.**

    POINT II

        PLAINTIFF IS NOT AT RISK OF IRREPARABLE INJURY AND UNLIKELY TO SUCCEED ON THE MERITS, AND THEREFORE, NOT ENTITLED TO INJUNCTIVE RELIEF. ........................................................12

        A.    PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM. ............................................................12

        B.    PLAINTIFF WILL NOT SUCCEED ON THE MERITS AS A MATTER OF LAW BECAUSE PRECINCT STATIONHOUSES ARE A LIMITED PUBLIC FORUM.............................................15

        C.    PLAINTIFF WILL NOT SUCCEED ON THE MERITS BECAUSE THE PROCEDURE IN QUESTION DOES NOT REQUIRE RORMAL RULEMAKING UNDER CAPA.................................19

        D.    PUBLIC INTEREST AND BALANCE OF EQUITIES FAVORS REGULATION.............................................22

CONCLUSION...............................................................................................23

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                    <u>**Pages**</u>

Abdul Wali v. Coughlin,
    754 F.2d 1015 (2d Cir. 1985) .................................................................7

Alca Indus. v. Delaney,
    92 N.Y.2d 775 (N.Y. 1999) ...............................................................21

Cameron v. Johnson,
    390 U.S. 611 (U.S. 1968) ...................................................................12

Matter of Cordero v. Corbisiero,
    80 NY2d 771 (N.Y. 1992) ...................................................................21

Costello v. McEnery,
    767 F. Supp. 72 (S.D.N.Y. 1991) .........................................................7

Matter of DeJesus v. Roberts,
    296 A.D.2d 307 (N.Y. App Div. 2nd Dep 2002) ................................21

Diamond "D" Constr. Corp. v McGowan,
    282 F.3d 191 ....................................................................................6, 7

Forest City Daly Housing, Inc. v. Town of North Hempstead,
    175 F.3d 144 (2d Cir. 1999) .................................................................8

Hotel Emples. & Rest Emples Union, Local 100 v. City of N.Y. Dep't of Parks
    and Rec.,
    311 F.3d 534 (2d Cir. 2002) ...............................................................15

Int'l Fid. Ins. Co. v. City of New York,
    263 F. Supp. 2d 619 ..............................................................................9

Jackson Dairy, Inc. v. H.P. Hood and Sons, Inc.,
    596 F.2d 70 (2d Cir. 1979) ...................................................................8

Make the Rd. by Walking, Inc. v. Turner,
    378 F.3d 133 (2nd Cir. 2004) ........................................................16, 17

Medical Society of New York v. Toia,
    560 F.2d 535 (2d Cir. 1977) .................................................................7

People v. Cull,
    10 NY2d 123 (N.Y. 1961) ..................................................................21

People v. Hedeman,
    107 Misc 2d 241 (Sup Ct, App Term, 1st Dep't 1981) ......................16

**Cases**                                                                                        **Pages**

People v Reape,
    22 Misc. 3d 615................................................................................16

Price v. City of New York,
    2018 US Dist. LEXIS 105815 (S.D.N.Y 2018)......................................15

Railroad P.B.A. of the State of New York, Inc. v. Metro-North Commuter
    Railroad,
    699 F. Supp. 40 (S.D.N.Y. 1988).....................................................7, 8

Matter of Schwartfigure v Hartnett,
    83 NY2d 296 (N.Y. 1994)..............................................................21

SEC v. Unifund SAL,
    910 F.2d 1028 (2d Cir. 1990)...........................................................7

Silberberg v. Bd. Of Elections of N.Y.,
    272 F. Supp 3d 454 (S.D.N.Y. 2017)................................................18

Spargo v. N.Y. State Comm'n on Judicial Conduct,
    351 F.3d 65 (2nd Cir. 2003) ...........................................................10

Tom Doherty Associates, Inc. v. Books,
    60 F.3d 27 (2d Cir. 1995) ..........................................................7, 12

Tirpathy v. Lockwood,
    2022 U.S.App LEXIS 34929 (2nd Cir 2022) ......................................15

United States v. Hastings,
    695 F.2d 1278 (11 Cir 1983) .........................................................15

Yang v Kosinski,,
    960 F.3d 119 (2nd Cir 2020)..........................................................15

Younger v Harris,
    401 U.S. 37 ....................................................................5, 6, 8, 10

**Statutes**

1 Stat. 335, c.22 § 5........................................................................10

Fed. R. Crim. Pro. 53 ......................................................................13

N.Y.C. Admin Code § 14-189 ..............................................................2

N.Y.C. Admin Code § 14-189(1)............................................................2

**Cases**                                                                                    **Pages**

N.Y.C. Admin Code § 14-189(B) ................................................................................3

N.Y. Civ. Rts. L. § 79-P ............................................................................................................2

N.Y. Civ. Rts. L. § 79-P(1)........................................................................................................2

N.Y. Civ. Rts. L. § 79-P(2)........................................................................................................2

NY City Charter 1041(5)(a) ......................................................................................................18

NY City Charter § 1041(5)....................................................................................................17, 19

NY City Charter § 1041(5)(a)..............................................................................................18, 20

NY City Charter § 1041(5)(b) ...................................................................................................18

NY CLS St Admin P Act § 102(2) .............................................................................................19

NYPD Patrol Guide 203-29 § 1..................................................................................................1

NYPD Patrol Guide 203-29 § 2..................................................................................................2

P.L. § 140.05........................................................................................................................2, 5

P.L. § 140.10..........................................................................................................................2

P.L. § 140.10[A] ......................................................................................................................5

P.L. § 195.05......................................................................................................................1, 5

**Other Authorities**

NYPD Administrative Guide 304-21(7) .....................................................................................18

NYPD Administrative Guide No. 304-21 ...............................................................................3, 10

## PRELIMINARY STATEMENT

Defendant City of New York (hereinafter "Defendant" or "City") hereby respectfully submits its Memorandum of Law in Opposition to Plaintiff Seanpaul Reyes's application for a preliminary injunction. For the reasons set forth herein, Defendant respectfully requests that Plaintiff's application be denied in its entirety.

## STATEMENT OF FACTS

On June 18, 2018, the New York City Police Department (NYPD) issued Procedure No. 203-29 in the NYPD Patrol Guide titled, "When a Member of the Service Encounters an Individual Observing, Photographing, and/or Recording Policy Activity" (hereinafter "Procedure"). See Plaintiff's Exhibit 1, Patrol Guide 203-29. The Procedure states that "individuals have a right to lawfully observe and/or record police activity," and that "this right extends to individuals in public places, such as streets, sidewalks, and parks as well as private property in which the individual has a right to be present, such buildings, lobbies, workplaces or an individual's own property." See Patrol Guide § 1. The Procedure, however, also states, "This right to observe/or record police action can be limited for reasons such as the safety of officers or other members of the public, or when a violation of law is committed by the individual(s) who are observing/videotaping." See Plaintiff's Exhibit 1 at   § 1. Additionally, pursuant to the Procedure:

> An arrest for Obstruction of Governmental Administration (P.L. § 195.05) requires probable cause to believe the person(s) is obstructing governmental administration. Actual interference with the performance of an official police function is required. Interference can include actual physical force (touching or physically interfering with the officer or the suspect, i.e., using a camera so close to the officer's face that it intentionally obstructs his or her view), or intruding into the physical space necessary to safely perform police operations and refusing to obey an order to move back, or purposely engaging in passive behavior that

> prevents an officer from taking enforcement action (i.e., blocking a prisoner van, etc.).
>
> …
>
> Members of the public are not allowed to photograph and/or record police activity within Department facilities. Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity. If such person refuses to stop, they then should be ordered to leave the premises. If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., P.L. § 140.05 & 140.10)

See Exhibit 1.

On July 14, 2020, New York State enacted Civil Rights Law § 79-P, "The Recording of Certain Activities." The law defines and permits the recording of "law enforcement activities" by an "officer acting under the color of law." See N.Y. Civ. Rts. L. § 79-P(1). In detailing the rights of the public to record law enforcement activities, the statute states that "Nothing in this subdivision shall be construed to permit a person to engage in actions that physically interfere with law enforcement activity or otherwise constitute a crime defined in the penal law involving obstructing government administration." See N.Y. Civ. Rts. L. § 79-P(2).

In July 2020, The NYPD Legal Bureau released a Bulletin regarding Rights of Observers to Record Police Officers. See Exhibit A Legal Bureau Bulletin, Vol. 50, No. 1, annexed to the 9/1/23 Declaration of Gregory Musso ("Musso Declaration"). This Bulletin clarified the NYPD's position on the matter of recording inside Department facilities. See Musso Decl. at Exhibit A, §D(1).

On August 14, 2020, New York City enacted N.Y.C. Admin Code § 14-189, "Right to Record Police Activities." The ordinance defined and permitted the recording of "police activities" by an "officer acting under color of law." See N.Y.C. Admin Code § 14-189(1). In

detailing the rights of the public to record police activities, the statute states, "Nothing in this chapter shall be construed to permit a person to engage in actions that physically interfere with an official and lawful police function." <u>See</u> N.Y.C. Admin Code § 14-189(B).

On May 5, 2021, while in Harford County Maryland, when Plaintiff approached a law enforcement official who was carrying out a traffic stop; ultimately Plaintiff's conduct during that traffic stop resulted in his arrest. <u>See</u> Ryan Dickerson, WMAR Baltimore, July 21, 2021, "Activist Cuts Deal With Prosecutors on Obstruction Charges" https://www.wmar2news.com/news/local-news/activist-cuts-deal-with-prosecutors-on-obstruction-charges-from-viral-video-with-harford-county-deputy; Long Island Audit, Excessive Force and Illegal Arrest By Sheriff Deputy, May 9, 2021 https://youtu.be/WtkeXZUvV6A?si=cJnV6DKIhq9nS4Xk; <u>see also</u> Harford County Sheriff, Traffic Stop, May 5, 2021, https://youtu.be/qgGiDKYmoLU?si=FyMEazHkPdzCeNTR.[1] Ultimately, Plaintiff reached a plea disposition with respect to his arrest and specifically issued a written apology to law enforcement official who conducted that traffic stop, Deputy Jackson. <u>See</u> Exhibit C, Apology Letter, <u>supra</u> Activist Cuts Deal.[2] In that letter, Plaintiff admitted, "I now realize that a traffic stop presents a safety concern for law enforcement and that you have a responsibility to secure said traffic stop. I can see now you didn't violate my 1st Amendment rights, as you offered for me to film from another location nearby." <u>Id</u>.

On June 10, 2021, the NYPD issued Administrative Guide Procedure No. 304-21, "When a Member of the Service Encounters an Individual Observing, Photographing, and/or Recording Police Activity." Substantively, the Administrative Guide Procedure is, in pertinent part, the same as the Patrol Guide Procedure.

---

[1] Video titled Traffic Stop appears to be a longer version of the video which Plaintiff edited.
[2] Given the time constraints on a motion to preliminary injunction, the undersigned was unable to acquire documents from Harford County Maryland regarding this incident.

On April 3, 2023, Plaintiff entered the NYPD's Sixty-First (61) Precinct and, while present in the Precinct vestibule, Plaintiff recorded an eight minute and thirty-two second (8:32) video. See Plaintiff's Exhibit A. As demonstrated in the footage, Plaintiff, who was already recording, initially entered the 61st Precinct building through a first set of double doors. Once he entered the Precinct, visible are a second set of double doors, which Plaintiff does not yet pass through. While he is in the area between the two sets of doors, Plaintiff continues to record and captures a conversation between members of the public; Plaintiff simultaneously narrates. Also visible at this stage is a placard on the wall which states that members of the public are not permitted to record inside the precinct and Plaintiff comments on said placard. Plaintiff then passed through the second set of double doors, and entered the vestibule or waiting area, where a group of people are seen presumably waiting for assistance from a police officer who was visible behind a window and speaking to members of the public. Plaintiff continued to record different areas of the interior of the vestibule, during which time multiple audible conversations between the public are recorded. To that end, one individual's description of a crime they are reporting, namely the theft of a license plate, is recorded.

At approximately six (6) minutes into the recording, Sgt. Tosares Korchiment enters the vestibule area from a security door and informs Plaintiff that he is not permitted to record video in the vestibule of the precinct. Sgt. Korchiment can be seen walking through the second set of double doors and requests that Plaintiff follow and exit; Plaintiff, however, fails to do so and continues to record. Sgt. Korchiment then re-enters the vestibule and is recorded entering a security code which provides entrance through the door to other areas of the Precinct. The pattern of the code is visible on the recording. Throughout the video, members of the NYPD are seen continuously entering and exiting the security door. Moments later, Sgt Korchiment returns

to the vestibule with Police Officer Giovanni Cucuzza, who informs Plaintiff that he is not permitted to record video and that Plaintiff will be arrested. Sgt Korchiment repeats the warning that recording is not permitted, and finally, seven minutes and forty-nine seconds (7:49) into the video, Plaintiff states that he is at the Precinct to "get a complaint form." Plaintiff is warned another time to stop recording. When Plaintiff fails to cease recording, he is arrested by Officer Cucuzza. Ultimately, Plaintiff was issued a Desk Appearance Ticket (DAT) for Trespass (P.L. § 140.05), a violation.

On May 10, 2023, a letter was written by Karen E. Varriale, Assistant District Attorney, Kings County, stating that the Kings County District Attorney had declined to prosecute the DAT against Plaintiff. See Plaintiff Exhibit 4, District Attorney letter.

On June 1, 2023, Plaintiff was arrested at the Seventy-Fifth (75) Precinct in Kings County New York and charged under Kings County Docket Number CR-019322-23KN with Obstructing Governmental Administration (P.L. § 195.05), Criminal Trespass in the Third Degree (P.L. § 140.10[A]), and Trespass (P.L. § 140.05). See Plaintiff's Exhibit 5, Criminal Complaint. According to the Criminal Complaint, Plaintiff was "video recording within the police station" and was asked to stop video recording and to leave the stationhouse, and was arrested when he refused to stop recording. See Exhibit 5, Criminal Complaint. This criminal matter is pending and the next criminal court date is scheduled for September 20, 2023 in Kings County Criminal Court. See Exhibit D, New York State Unified Court System Case Details Summary.

## LEGAL STANDARDS

**A.    Younger Abstention**

In balancing the doctrine of equity jurisprudence and proper respect for state functions, the United States Supreme Court stated, "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." See Younger v Harris, 401 U.S. 37, 45 (U.S. 1969). "The doctrine when absolutely necessary for protection of constitutional rights courts for the United States have power to enjoin state officers from instating criminal actions. But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate… The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge to the validity of some statute, unless it plainly appears that this course would not afford adequate protection." Id. at 45, internal quotations omitted. However, the standard for the extraordinary circumstances has "stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction" and that "even irreparable injury is insufficient unless it is both great and immediate. Id. at 46.

"Younger abstention is required when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in the proceeding; (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." See Diamond "D" Constr. Corp. v McGowan, 282 F.3d 191, 198 (2d Cir. 2002).

The mere fact that a criminal prosecution may occur is not sufficient to overcome the Younger abstention, as "it does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith." Younger, 401 U.S. at 47. Later cases have added to this principle, stating, "So, now,

for a federal plaintiff to invoke the bad faith exception, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." See Diamond "D" Constr. Corp v. McGowan, 282 F.3d at 199 (internal quotations removed).

**B.     Standard for the Issuance of a Preliminary Injunction**

"A provisional remedy such as a preliminary injunction is appropriate only in extraordinary circumstances." Railroad P.B.A. of the State of New York, Inc. v. Metro-North Commuter Railroad, 699 F. Supp. 40, 42 (S.D.N.Y. 1988) (citing Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). "A party seeking injunctive relief ordinarily must show: a) that [she] will suffer irreparable harm in the absence of an injunction and b) either 1) a likelihood of success on the merits or ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Tom Doherty Associates, Inc.  v. Books, 60 F.3d 27, 34 (2d Cir. 1995). "The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant." Costello v. McEnery, 767 F. Supp. 72, 76 (S.D.N.Y. 1991).   The "mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." Id.

"The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." Tom Doherty Associates, Inc., supra, 60 F.3d at 34 (2d Cir. 1995) (citing Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)). "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." Id. "[T]his distinction is important because [the Second Circuit Court of Appeals has] held that a mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Id. (quoting Abdul Wali, supra); see also SEC v. Unifund SAL, 910 F.2d 1028, 1039 (2d Cir. 1990) (injunction going beyond preservation of status quo requires "a more

substantial showing of likelihood of success"). "The 'clear' or 'substantial' showing requirement…thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." Id. Thus, the Second Circuit has "required the movant to meet a higher standard where: i) an injunction will alter, rather than maintain, the status quo, or ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at trial on the merits." Id.

To demonstrate irreparable harm, the threatened injury must be actual and imminent. Railroad P.B.A. of the State of New York, supra, 699 F. Supp. at 43. "Moreover, monetary damages must be incapable of redressing any injury caused by the alleged wrongdoing." Id. (citing Jackson Dairy, Inc. v. H.P. Hood and Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Irreparable harm is "injury that is neither remote or speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999).


## ARGUMENT

### POINT I

### THE COURT SHOULD ABSTAIN FROM ISSUING A PRELIMINARY INJUNCTION.

Plaintiff's arguments that abstention is improper are unpersuasive. The circumstances of the instant matter are exactly those contemplated by those in *Younger* and its progeny. The three-part test articulated in *Younger* and similar cases is met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in the proceeding; (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims.

First, there is an ongoing state proceeding. Plaintiff is being prosecuted in Kings County Criminal Court under Docket Number CR-019322-23KN for trespass as it relates to recording video in the NYPD's 75th Precinct on June 1, 2023. Plaintiff's next criminal court date is September 20, 2023. See New York State Unified Court System Case Details Summary. This pending prosecution is based on the same behavior, under the same Administrative Procedure, the same behavior which led to plaintiff's April 3, 2023, admittedly at issue in the instant matter. See Int'l Fid. Ins. Co. v City of New York, 263 F. Supp. 2d 619, 633 ("The requirement is of a parallel proceeding, pending at the time the federal court action was filed, in which the plaintiff may raise and have adjudicated the same claims it seeks to press in federal court and obtain the same relief.").

Second, an important state interest is implicated in the proceeding. The purpose of the Administrative Code as clarified in the Legal Bureau Bulletin is to uphold the sanctity of investigations, protect witnesses, and allow officers to perform essential functions without interference. See Legal Bureau Bulletin, Vol. 50, No. 1, July 2020. Citizens, including, but not limited to, victims, complainants, informants, witness, and perpetrators enter police precincts in order to discuss matters of public safety. These individuals, including gang members, domestic violence and/or sex crimes victims, juveniles, and others may enter a precinct to report a crime or provide information at any time. In order to protect the privacy and security of such individuals, information, and or the sanctity of an investigation, there is an interest in preventing members of the public from recording their presence, statements, or information reported to the police. See Affidavit of Peter Callaghan¶ 6 annexed to Musso Decl as Exhibit D.

As portrayed in the video recording, three individuals are recorded speaking to police officers. At no point does Plaintiff request the individuals' consent to being recorded. Although

only one incident can be heard, the theft of a license plate, the danger remains for those attempting to report crimes to be recorded. Additionally, confidential informants and undercover officers may be present at a precinct, all of which could be jeopardized by recordings inside a stationhouse vestibule. See Exhibit E, ¶¶6-7.

Moreover, on the subject of police security, Sgt. Korchiment can be seen inputting the code to a security door, directly jeopardizing the safety of those inside the stationhouse. Additionally, not all NYPD precinct vestibules are laid out like the 61st. Some allow for significantly more visibility into the stationhouse, permitting anyone recording to have details of the layout of a precinct. See Exhibit D, ¶ 9. Sensitive aspects of equipment and infrastructure could be seen and recorded from a stationhouse vestibule, including weapons, computer access, keys to vehicles, radios, keypads, electrical breakers, and gas connections. Id. Placing the situation in sharp contrast, the NYPD Intelligence Bureau is aware of twenty-seven (27) bomb threats which were made against NYPD precincts in calendar years 2022 and 2023. See Exhibit D, ¶ 10. Permitting citizens to record inside the precinct vestibule clearly raises a multitude of security concerns.

Third, the state proceeding affords Plaintiff an adequate opportunity for judicial review of the federal constitutional claims. Furthermore, "it is the plaintiff's burden to demonstrate that state remedies are inadequate, and defendants need not establish that state law definitively permits the interposition of constitutional claims." See Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 79 (2nd Cir. 2003). Plaintiff argues that he does not seek to enjoin the Kings County District Attorney nor a state statute and by extension a state, but the reality is, the effect is the same. A preliminary injunction of the Administrative Guide has the same effect as an injunction on the District Attorney's Office. See 1 Stat. 335, c.22 § 5 ("Nor shall a writ of

injunction be granted to stay proceedings in any court of a state"). The entity against whom the injunction is sought is not dispositive; if the state court is, as it is here, actively engaged in proceedings that are the result of rule created in the Administrative Guide, the injunction will clearly impact the Kings County District Attorney's Office's ability to prosecute Plaintiff. Plaintiff merely seeks an injunction against the cause of action in state court from the federal court, in order to remove the cause of action for which Plaintiff is still being prosecuted in the June 1, 2023 arrest, an arrest that happens to be for the same behavior.

Plaintiff's backdoor attempt to avoid Younger abstention on the grounds that he is not challenging the basis for his June 2023 arrest rings hollow. The basis for the instant preliminary injunction against the relevant section of the NYPD's Administrative Guide is premised on his violation of the same, resulting in the April 2023 arrest, as well as the subsequent state court proceeding. Clearly enjoining the NYPD from enforcing such a section of the Administrative Guide will impact the state court proceeding for his June 2023 arrest, which results from Plaintiff's violation of that Administrative Guide section.

Additionally, Plaintiff argues that an injunction should be issued against the NYPD Administrative Guide for a cause of action in state criminal court preventing its further enforcement against Plaintiff.

"Where a statute does not directly abridge free speech, but – while regulating a subject within the State's power – tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so." See Younger v Harris, 401 U.S. 37, 51. Here, the Administrative Guide 304-21 represents a regulation inside a limited public forum, a police precinct, which is within their authority. On its face, the regulation

11

is not to chill speech; instead it is a regulation grounded in the desire to maintain safety and privacy for those present and otherwise. As articulated in the Legal Bureau Bulletin, the policy seeks to protect the sensitive nature of what occurs inside police stationhouses.

Finally, plaintiff has shown no bad faith on the part of NYPD in the enforcement of the Administrative Guide. There is no indication that there was harassment, intimidation, or oppression of constitutional rights; but rather Plaintiff was arrested and prosecuted in good faith for deliberate violation of a statute. See Cameron v Johnson, 390 U.S. 611, 619 (U.S. 1968).

In conclusion, Plaintiff's June 1, 2023, arrest is based on the same conduct for which he was arrested April 3, 2023. Although Plaintiff's prosecution related to the April arrest is now closed, the charges related to Plaintiff's actions on June 1, 20223 remain active.  For the reasons set forth in the above and pursuant to Younger, the court should abstain from issuing a preliminary injunction to allow the state criminal court action to proceed.

## POINT II

**PLAINTIFF IS NOT AT RISK OF IRREPARABLE INJURY AND UNLIKELY TO SUCCEED ON THE MERITS, AND THEREFORE, NOT ENTITLED TO INJUNCTIVE RELIEF.**

### A.  PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM.

Plaintiff will not suffer irreparable harm should the NYPD Administrative Code remain in effect. Additionally, even if the court were to find the plaintiff will suffer harm, it does not meet the higher standard required for a preliminary injunction to alter the status quo in such a manner that is the totality of the relief sought in the complaint. See Tom Doherty Associates, Inc., supra, 60 F.3d at 34.

Plaintiff's claims that he will suffer irreparable injury without a preliminary injunction appear to be based entirely on the First Amendment's freedom of the press. To that end, plaintiff claims he is a "journalist who reports on First Amendment issues," and that without a preliminary injunction, he will be arrested again should he attempt to enter a stationhouse and record, which is infringing on his First Amendment Rights. See Plaintiff's Motion at 21. Plaintiff also claims that as an independent journalist he is required to visit publicly available spaces - including NYPD precincts – and exercise his First Amendment Right to record there" Plaintiff's motion makes it clear that the irreparable harm he claims he will suffer without a preliminary injunction is the chilling of a freedom of the press, not that he will be subject to arrest.

Given Plaintiff's allegations, continuation of the enforcement of the relevant section of the NYPD Administrative Code will not cause irreparable harm to Plaintiff. Regardless of his ability to record within the police precinct, plaintiff is still entitled to journalistic speech via the First Amendment on his Youtube channel; he is only limited by not being permitted to film within a stationhouse. As discussed *supra*, Plaintiff understands the limitations of the First Amendment. For example, after Plaintiff inappropriately intervened in a traffic stop being conducted by law enforcement, Plaintiff issued a written apology to the officer admitting there are limits to his First Amendment Rights when there is a safety concern.

> I now realize that a traffic stop presents a safety concern for law enforcement and that you have a responsibility to secure said traffic stop. I can see now you didn't violate my 1st Amendment Rights, as you offered for me to film from another location nearby.

See Exhibit B, Letter.

Here, during the April 3, 2023 incident, the video footage demonstrates the Sgt Korchiment was not attempting to prevent Plaintiff from recording wholesale, rather attempting to prevent him from doing so in the precinct. To that end, Sgt Korchiment said to Plaintiff,

"Come over here," and gestured for Plaintiff to exit the Precinct. There, Sgt. Korchiment could have discussed the situation while being recorded. Plaintiff's refusal to stop recording in the vestibule despite the security concern, is something Plaintiff has already acknowledged does not violate his First Amendment Rights.

Plaintiff argues that any violation of constitutional rights constitutes an irreparable injury. See Plaintiff's Motion at 21. However, the circumstances that Plaintiff cites to are not analogous to the instant case. In Tripathy v. Lockwood, the plaintiff sought an injunction based on religious freedom; there the plaintiff, a practicing Hindu who was incarcerated, argued his religious freedom was infringed because he was forced to wash his clothing with the clothing of other inmates who came in contact with beef and pork. See Tripathy v Lockwood, 2022 U.S.App LEXIS 34929 (2nd Cir 2022). In Yang v Kosinski, Plaintiff sought relief from an Election Law which the Second Circuit described as "It may be hard to imagine a more severe election-related restriction than the removal of ten out of eleven qualified candidates from a ballot, resulting in the cancellation of the election." See Yang v Kosinski, 960 F.3d 119 (2nd Cir 2020). Although these cases did indeed find irreparable injury, the circumstances were not analogous to the instant matter. Plaintiff in this case has alternatives to exercise his right to free press. Again, Plaintiff was able to speak about the First Amendment as much as he wanted, with the one restriction being the stationhouse. The instant matter is not analogous to the cited cases.

What is more analogous is Federal Rules of Criminal Procedure Rule 53, which prohibits "the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom." See USCS R. 53 (Fed. R. of Crim Pro). This Rule, like the NYPD Administrative Guide, places a restriction on First Amendment rights. Courts have engaged in various balancing examinations regarding this Rule and have considered the interests

tending to favor permitting media coverage, or recording. The Eleventh Circuit listed such benefits as fostering public confidence, a check on potential abuses, and promoting truth finding. See United States v Hastings, 695 F.2d 1278, 1283 (11 Cir 1983). The Court found that the Rule was constitutional and stated, "In our judgement, the foregoing First Amendment concerns would be furthered by the media access sought here only to a minimal degree, if at all," and "The Matter is not one that should be fixed in constitutional concrete; rather, the issue is one that should be addressed to the appropriate rule-making authority." Id. at 1283-1284. The Federal Courts and the precedent that follows understands the importance of some restrictions on the right to free press.

**B.  PLAINTIFF WILL NOT SUCCEED ON THE MERITS AS A MATTER OF LAW BECAUSE PRECINCT STATIONHOUSES ARE A LIMITED PUBLIC FORUM.**

Under the First Amendment and as well as the State and City Right to Record Statutes, Plaintiff will not succeed on the merits. The First Amendment precedent from the Supreme Court as well as the Second Circuit is the controlling law in this circumstance. The vestibules of the precincts of the NYPD are a limited public forum where the public is granted entry for a specific purpose, the discussion of public safety. Any restrictions on expression need only be reasonable and viewpoint neutral.

The Second Circuit has identified four factors that courts should use when evaluating the nature of a particular property or space (i) whether the property falls within those categories of property historically deems to be traditional public fora, (ii) whether it is the type of property that should be so classified given its physical characteristics, (iii) the objective way it is used, and (iv) the government's intent in constructing and opening it to the public. See Price v City of New York, 2018 US Dist. LEXIS 105815, 29 (S.D.N.Y 2018); quoting Hotel Emples. & Rest Emples

Union, Local 100 v. City of N.Y. Dep't of Parks and Rec., 311 F.3d 534 (2d Cir. 2002) (internal quotations removed). Moreover, "the Second Circuit has repeatedly recognized that the "primary factor" in a forum analysis is the manner in which the public space is used." Id. at 29.

The objective use of a police stationhouse has been described in the Kings County Criminal Court, the very jurisdiction where the cause of action arises in the instant matter. A police precinct is "an area used by law enforcement officials in order to ensure the public safety, and by other citizens who seek to give or obtain information about public safety." See People v Reape, 22 Misc. 3d 615, 618 (Crim Ct, Kings County). The decision in Reape also describes the ability of a government to regulate the use of a municipal or state property that is generally open to the public,

> where the license to enter and use the space may by regulated so as to prevent interference with the ordinary use of the property by other members of the public with an equal right of access to it. The critical question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time

Id. at 618, quoting People v Hedeman, 107 Misc 2d 241, 242 (Sup Ct, App Term, 1st Dep't 1981) (internal quotations removed). Although members of the public are permitted to enter and exercise their First Amendment Rights, the forum's purpose is to ensure the public safety. Accordingly, it is within the NYPD's jurisdiction to regulate the exercise of the First Amendment to ensure the purpose of the forum is met. See Make the Rd. by Walking, Inc. v Turner, 378 F.3d 133, 146 (2nd Cir. 2004) (Welfare office waiting rooms were limited public fora open to discussion of welfare issues by virtue of the fact that welfare recipients waited in them).[3]

---

[3] Although the discussion of the welfare offices in this case goes on to consider later decisions which shift the analysis to consider government intent, that analysis was to escalate the forum analysis to non-public, the most restrictive level of forum.

Moreover, through an NYPD Legal Bureau Bulletin the basis for the Procedure which imposes the recording restriction inside precinct stationhouses is similarly articulated:

> Due to the sensitive nature of what occurs inside police stationhouses, law enforcement agencies can limit expressive activities within the confines of a stationhouse in order to uphold the sanctity of investigations, protect witnesses, and allow officers to perform essential functions without interference.

See Exhibit A. This statement of intent is unambiguous regarding the reason for opening a police precinct to the public. The NYPD seeks to engage the public and allow them free access for the purpose of public safety. But more than just allowing the public to enter, the City has shown the intent to ensure that victims of crimes enjoy a "freedom from intimidation, threats or harassment." See NYS Executive Law Article 23, Fair Treatment Standards for Crime Victims.

A precinct stationhouse cannot be said to be a property which is traditionally public. Such traditionally public fora are "places such as streets and parks which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing questions." See Make the Rd. by Walking, Inc. v Turner, 378 F.3d at 142. Moreover, a stationhouse cannot be said to have the physical characteristics of such a traditionally public forum. A stationhouse is an enclosed structure which houses many police officers to engage the public in the reporting of crime; it also is the workspace for handling many of the practical necessities of employing a modern police force. Many features of a stationhouse, such as muster rooms, locker rooms, offices, computers, secured weapons, docks for body worn cameras, control apparatus for officer court appearances, set them apart from a traditionally public forum.

It cannot be disputed that police stationhouses, pursuant to forum analysis, are in fact, limited public fora. To that end, inside a limited public forum, the government is able to restrict

speech outside of the discussion of certain subjects, provided such restrictions are viewpoint neutral and reasonable.

> "A limited public forum exists where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects. In such a forum, the government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre. As to speech that the government does permit outside the limited category of speech for which the forum was created, restrictions need only be viewpoint neutral and reasonable."

See Silberberg v. Bd. Of Elections of N.Y., 272 F. Supp 3d 454, 468 (S.D.N.Y. 2017). The blanket prohibition of recording in the Administrative Guide is permitted because it is viewpoint neutral and reasonable. No viewpoint is articulated in the restriction; the restraint applies to all recording. Additionally, the measure is reasonable because there is no more narrowly tailored language that can be substituted. As set forth above, the presence of a variety of individuals, and communications and/or information, in the vestibule of a police stationhouse cannot be anticipated. Moreover, the protection of those within the stationhouse and otherwise demands that recording be prohibited.

In the instant matter, it cannot be said that Plaintiff entered the stationhouse to address the subject of public safety. After nearly eight minutes of recording, Plaintiff makes a half-hearted attempt to provide a legitimate reason for his presence in the vestibule, for the first time and after requests by the police to stop recording, stating that he is trying to get a complaint form. See Plaintiff Exhibit A. Plaintiff offers no further information or explanation regarding this purported complaint in the video or in his motion papers. Indeed, Plaintiff's very own journalistic output would bely the assertion that he in fact was pursuing a matter of public safety on April 3, 2023. See Youtube, Long Island Audit, https://www.youtube.com/@LongIslandAudit/featured. As can

be seen in many videos from many states and jurisdictions, Plaintiff's purpose is simply to enter and record.

Therefore, Plaintiff's First Amendment Right to Free Press may be restricted in a viewpoint-neutral and reasonable manner. No viewpoint is expressed in the restriction and the prohibition is reasonable. Due to the unpredictable interactions with the public on who would enter a precinct at any time, the prohibition cannot be narrowed. The protection of victims, informants, or undercover officers must be upheld to maintain investigations and to continue to encourage public engagement. Additionally, the sensitive nature of the surroundings in a stationhouse require that information such as keycodes and the location of exploitable infrastructure remain free from broadcast in any way.

Although this may be viewed as a double standard in circumstances where body worn cameras may be activated by officers or there may be stationary cameras in a vestibule, those recordings in possession of the NYPD can be reviewed for potentially compromising information before being published. Recordings from NYPD cameras are still discoverable, either by statute or subpoena, and can be requested by the Freedom of Information statues. But in those circumstances, compromising information can be redacted from the recording before being released to the public.

### C. PLAINTIFF WILL NOT SUCCEED ON THE MERITS BECAUSE THE PROCEDURE IN QUESTION DOES NOT REQUIRE FORMAL RULEMAKING UNDER CAPA.

Under the City Administrative Procedure Act of New York City, a rule is defined as "any statement or communication of general applicability that (i) implements or applies law or policy or (ii) prescribes the procedural requirements of an agency including an amendment, suspension,

or repeal of any such statement or communication." <u>See</u> New York City Charter § 1041(5).  A "Rule shall include but not be limited to, any statement or communication which prescribes (i) standards which, if violated, may result in a sanction or penalty." <u>See</u> NY City Charter § 1041(5)(a). A Rule shall not include any (i) statement or communication which relates only to the internal management or personnel of an agency which does not materially affect the rights of or procedures available to the public." <u>See</u> NY City Charter § 1041(5)(b).

The NYPD Administrative Guide states "members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity," and, "(I)f such person refuses to stop, they then should be ordered to leave the premises." <u>See</u> Exhibit -- Administrative Guide 304-21(7). The Administrative Guide details an escalating set of procedures to address the limited cause of regulating the vestibule of the police precinct. The Guide does not create a "standard which, if violated, may result in a sanction or penalty." <u>See</u> NY City Charter at 1041(5)(a). Rather, the Guide articulates a course of action to be taken by officers in order to ensure the safety of the officers in the precinct as well as the privacy of public as they pursue services within the precinct. The Administrative Guide articulates possible outcomes of an interaction between a member of the public who is recording and a member of the NYPD. The Guide does not require arrest and prosecution as the mandate. The circumstances as viewed by individual members of the NYPD play a role in the action to be taken. The Appellate Division, First Department has held:

> The rulemaking process is mandated when an agency establishes precepts that remove its discretion by dictating specific results in particular circumstances. Only a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation.

See Matter of DeJesus v Roberts, 296 A.D.2d 307, 309 (N.Y. App Div. 2nd Dep 2002). The decision in Matter of DeJesus referred to Court of Appeals caselaw which articulated a similar opinion applied to the New York State Administrative Procedure Act, which is substantially similar to the NYC CAPA rulemaking definitions. See NY CLS St Admin P Act § 102(2) & NYC Charter § 1041(5). Rulemaking process is required for speed limits, the method of service for a suspension for an infraction, and the manner in which overpayments of unemployment benefits must be recouped. See Alca Indus. v Delaney, 92 N.Y.2d 775, 778-9 (N.Y. 1999); quoting People v Cull, 10 NY2d 123 (N.Y. 1961), Matter of Cordero v Corbisiero, 80 NY2d 771 (N.Y. 1992), Matter of Schwartfigure v Hartnett, 83 NY2d 296 (N.Y. 1994). "In contract, agency penalty guidelines that vest inspectors with significant discretion, and allow for flexibility in the imposition of penalties, all with the view of imposing the appropriate sanction for the individual offense and offender in the particular case are not rules under the State Administrative Procedure Act or the New York Constitution." See Alca Indus v. Delaney, 92 N.Y.2d at 78-9.

Therefore, the NYPD Administrative Guide 304-21 is not a rule under the CAPA definition. Rather, the Guide calls for a course of interaction with a member of the public. Based on the circumstances of that interaction, as judged by the individual officer, penalty may or may not be applied.

In the instant case, Plaintiff entered the 61 Precinct already recording video. For the first four minutes, Plaintiff records conversations between members of the public. Eventually, Police officers enter the vestibule at which point the request to cease recording is made. Plaintiff, however, refused to cease recording and Plaintiff was requested to exit the premises. Notwithstanding, Plaintiff continued to record, this time capturing an officer's entry of the security code into a keypad which lead to the non-public parts of the precinct. Plaintiff was asked

again to stop recording, he again refused, and also refused to leave the vestibule. Plaintiff was then arrested.

In the alternative, the Administrative Guide Procedure does not meet the definition of a procedure which requires formal rulemaking under CAPA. As articulated above, a rule includes any statement or communication which prescribes standards which, if violated, may result in a sanction or penalty. See NY City Charter § 1041(5)(a). However, the Administrative Guide states a course of action for members of the NYPD to take when confronting individuals who are recoding in the vestibule of stationhouses. The instruction, the purpose of which is to manage the interior of a limited public forum, is to request and individual to leave the vestibule or stop recording. This request is not a penalty, and the NYPD is then acting as an administrator of a limited public property and revoking the license for such individual to be present.

### D.  PUBLIC INTEREST AND BALANCE OF EQUITIES FAVORS REGULATION

Plaintiff argues that the balance of equities and public interest tip in his favor, and supports such position by citing to the proposition in Averhart v. Annucci, 2021 U.S. Dist. LEXIS 109144,  2021 WL 2383556, No. 21-CV-383 (NSR) (S.D.N.Y. June 10, 2021), that "the Second Circuit has concluded that, where a plaintiff alleges constitutional violations, the balance of hardships tips decidedly in the plaintiff's favor." See Plaintiff's Motion. at p. 22.  The circumstance at issue in Averhart, however, vastly differ from what is at issue here.  There, the plaintiff moved to enjoin certain restrictions put upon him that would prevent him from any contact or familial relationship with his daughter. Averhart, 2021 U.S. Dist. LEXIS 109144, *1-4.

While Plaintiff argues here that he cannot "continue his work and continue to exercise his constitutional rights" without a preliminary injunction, as discussed *supra*, that is not the case. To the extent Plaintiff intends to exercise his First Amendment Freedom of the Press rights by entering these areas of the precinct and making observations of the goings-on, he is still entitled to do so regardless of whether the relevant Procedure is still enforceable. Unlike the plaintiff in Averhart who alleged his constitutional rights were violated without an injunction, the relevant Procedure Plaintiff seeks to enjoin does not preclude Plaintiff from entering the NYPD precinct vestibules, observing conduct and reporting about it on his website or wherever else he sees fit. His rights are not chilled, he may not, however, digitally record the goings-on while he is at the precinct.

Plaintiff also argues that the Defendant is unlikely to suffer any injury from the requested injunction. But as demonstrated above, permitting citizens to record in the police precinct vestibules creates safety, privacy and security concerns for members of service and the public. For these reasons, the public interest and balance of equities clearly do not weigh heavily in Plaintiff's favor.

**CONCLUSION**

The court should abstain from imposing an injunction because there is an ongoing state proceeding, implicating an important state interest, and adequate opportunity for judicial review of the federal constitutional claims can be found at the state level. Although Plaintiff's First Amendment Right to free press may be restricted by the Administrative Guide prohibiting recording, a police stationhouse is a limited public forum, and the government is permitted to make this restriction in a viewpoint neutral and reasonable way. Finally, the weight of the

security concerns in stationhouses and the potential chilling effect on public interaction with the police outweighs the public value of a recording from inside a precinct.

Dated:       New York, New York
             September 1, 2023

                              Hon. Sylvia Hinds-Radix
                              Corporation Counsel of the
                               City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007

                       By:  _____/s/_____
                              Gregory Musso
                              Assistant Corporation Counsel
                              NYC Law Department
                              (212) 356-3159