# EXHIBIT A



**OFFICE OF THE DEPUTY COMMISSIONER - LEGAL MATTERS**

# LEGAL BUREAU BULLETIN

Vol. 50, No. 1                                                                                                              July, 2020

| | | |
|---|---|---|
| **I.** | **SUBJECT:** | RIGHTS OF OBSERVERS TO RECORD POLICE OFFICERS |
| **II.** | **QUESTION:** | IS IT PERMISSIBLE FOR A CIVILIAN TO OBSERVE AND RECORD A POLICE OFFICER IN THE PERFORMANCE OF THE OFFICER'S DUTY? |
| **III.** | **ANSWER:** | YES. CIVILIANS HAVE A CONSTITUTIONAL RIGHT, AS WELL AS EXPRESS RIGHTS UNDER STATE AND LOCAL LAW, TO OBSERVE AND RECORD POLICE OFFICERS CARRYING OUT THEIR DUTIES. CIVILIANS ALSO HAVE THE RIGHT TO MONITOR AND CRITICIZE THE POLICE. CIVILIANS DO NOT HAVE THE RIGHT TO INTERFERE WITH OR PREVENT A POLICE OFFICER FROM PERFORMING AN OFFICIAL FUNCTION. |

**IV.     DISCUSSION**

**A. Introduction**

Courts have consistently held that it is not unlawful to record police officers carrying out their duties and to criticize police activity, even if that criticism includes profane, insulting, or demeaning language. However, there are restrictions that prohibit an individual from engaging in actual interference with police activity.

The purpose of this Bulletin is to provide guidance to police officers on:

- The rights of individuals to record and/or criticize police action, which is codified into state and local law;
- The creation of a new civil cause of action for unlawful interference with recording a law enforcement activity;
- How to determine when an individual's activity amounts to interference with police duties and the recommended proportional response to such interference;
- How to respond when confronted with activities that do not rise to the level of a crime or violation; and
- Under what circumstances it is permissible to seize recordings or recording devices, as well as guidance on supervisory review.

### B. The Right to Record Police Activity

Individuals have a right to lawfully record police activity including, but not limited to, detentions, searches, arrests, or uses of force. This right is codified in New York State and local law[1] and extends to those individuals in both public places, such as streets, sidewalks, and parks, *as well as* private property such as a building, lobby, workplace, or an individual's own property. In all instances, however, the individual must have a legal right to be present at a particular location in order to have the right to record police activity there. The right does not apply to civilians under arrest or in the custody of law enforcement. An individual's recording of police activity without any additional action intended to obstruct the performance of an officer's duty or threaten public safety does not amount to interference. Further, an individual's conduct does not amount to interference if he or she expresses criticism of the police or the police activity being observed.[2]

### C. Prohibited Responses to Individuals Observing or Recording Police Activity

To safeguard the right to record, New York state and local law[3] have created a right for individuals to sue police officers and the city for unlawful interference with recording law enforcement activity. An observer must demonstrate that 1) he or she exercised, or attempted to exercise, their right to record law enforcement activity; and 2) an officer acted to interfere with that recording. These new laws do provide affirmative defenses to such lawsuits where the observer interferes with law enforcement activity, such as committing the Penal Law crime of Obstructing Governmental Administration ("OGA"), or where the officer's actions of ceasing such recording is authorized under law.[4] These concepts are explained more fully below.

Recognizing this express right to record law enforcement actions, police officers may **NOT** order an observer to stop recording or disperse, arrest an observer for Obstructing Governmental Administration or Disorderly Conduct, or seize a recording device in any of the following situations:

- Observer is taking photographs, videotaping, or making a digital recording of police officers when not in violation of any law;
- Observer is requesting or making note of shield numbers or names of members of the service;
- Observer is criticizing the police or objecting to police activity; or
- Observer is using crude or vulgar speech.

**UNDER NO CIRCUMSTANCES** should a Member of the Service:

- Intentionally prevent or attempt to prevent a person from recording law enforcement activity, this includes actions to deliberately block or obstruct cameras or other recording devices when there is no legitimate law enforcement reason to do so;
- Threaten, intimidate, or discourage, or command a person to cease recording law enforcement activity assuming such person is at a safe distance and not in violation of any law;
- Stop, seize, search, summons, or arrest that person solely because that person recorded a law enforcement activity; or
- Unlawfully seize property or instruments used by a person to record a law enforcement activity when the person was nevertheless authorized under the law to record;
- Delete any pictures or videos from the observer's camera, or order the observer to delete

---

[1] See, N.Y. Civ. Rights Law § 79-p; NYC Admin. Code § 14-189 (effective August 14, 2020).
[2] Houston v. Hill, 482 U.S. 451, 461 (1987).
[3] N.Y. Civ. Rights Law § 79-p; NYC Admin. Code § 14-189.
[4] N.Y. Civ. Rights Law § 79-p(3)(b); NYC Admin. Code § 14-189(c)(2).

such pictures or recordings.

In addition to other legal remedies, the new laws allow observers to seek punitive damages, injunctive relief, attorney's fees and other relief deemed appropriate by the court for any of the above conduct, and he/she may initiate their lawsuit up to three years from the date of the alleged violation.

### D.  Interference with Police Activity and How to Respond Appropriately

A person may record public police activity, unless the person engages in actions that jeopardize the safety of the officer, the suspect, or others in the vicinity; violate the law or incite others to violate the law.[5] An individual's right to record police action is not absolute if it amounts to actual interference with a police officer's investigation. Examples of this may include tampering with a witness or persistently engaging an officer who is in the midst of performing his or her duties.[6]

These new laws do not change this standard. A lawsuit stemming from these new laws will not have merit where the person recording interferes with law enforcement activity, such as committing the crime of OGA, or records when not authorized by law.[7]  Therefore, in order for such conduct to reach the requisite level of interference, there must be some additional activity (other than video recording or criticism) that leads to *actual* interference with the performance of an official police function.

According to the New York State Penal Law, "a person is guilty of obstructing governmental administration when he . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."[8] If one of the following situations is present, an arrest for OGA may be appropriate where:

- The individual is touching or physically interfering with the officer (i.e. using a camera so close to the officer's face that it intentionally obstructs his or her view and prevents the officer from performing his or her duty);
- The individual is unreasonably encroaching in the immediate area in which the enforcement action is occurring AND refuses to obey an order to move back; or
- The individual is engaging in passive, non-violent behavior but is still purposefully blocking or preventing the officer from taking enforcement action (i.e. blocking a prisoner van).

Recording police activities is also unlawful when the civilian conducting the recording enters the officers' "zone of safety" and refuses orders or instructions to move back.  There is no strict standard establishing the exact range of an officer's zone of safety.  The standard is whether a reasonable officer in the same situation would feel their safety is compromised.  Reasonableness is determined by reviewing all relevant factors, such as the matter being investigated, the location, size and actions of the crowd, the time of day, and the lighting. However, this zone of safety should only encompass the physical space necessary to safely perform police operations.  As a practical matter, a reasonable zone of safety would be at a minimum, the span of an officer's arms when he or she is engaged in enforcement activities (i.e. arrest, summons, etc.).[9]  Since the reasonable officer standard is subjective, officers must be able to articulate the

---

[5] Chaplinsky v. New Hampshire, 315 U.S. 568, 573 (1942).
[6] Colten v. Kentucky, 407 U.S. 104 (1972).
[7] N.Y. Civ. Rights Law § 79-p(3)(b); NYC Admin. Code § 14-189(c)(2).
[8] N.Y. Penal Law § 195.05.
[9] Examples of "zone of safety" intrusions:
  - An individual enters an "obvious, defined area of police activity" and tips off others that the police are approaching. See, People v. Covington, 18 A.D.3d 65, 71 (1st Dep't. 2005).
  - A group of onlookers encircle an officer attempting to make an arrest thereby allowing the person to escape. See, People v. Shea, 68 Misc. 2d 271 (N.Y. Spec Sess. 1971).
  - Approaching an officer from behind in a threatening manner while the officer was attempting to make an arrest. See,

specific reasons they felt threatened that caused the officer to prevent the civilian from recording.

When an individual is **NOT** at a safe distance and is endangering Members of the Service or others, or is actually interfering with the police action, the officer should immediately issue a warning if feasible under the circumstances.  The issuance of a warning will create additional evidence of interference.  Further, and in the interest of de-escalation, an officer may want to remind the individual(s) that they may record the officer but must step back to an appropriate distance. Acceptable warnings include:

- Please step back!
- Please get on the sidewalk!
- Please step away from the arrest van!

If such person refuses to comply, enforcement for OGA would be appropriate. Members of Service must be able to *clearly articulate* how the individual's actions were impeding the officer's ability to carry out his or her duties, which led to action being taken against the individual.

   1. **Department Facilities**

Police stationhouses are a public place for purposes of public access.  Courts, however, have held that where municipal property is generally held open to the public, the privilege to enter and use the space may be regulated to prevent interference with the property's ordinary use.[10]  Due to the sensitive nature of what occurs inside police stationhouses, law enforcement agencies can limit expressive activities within the confines of a stationhouse in order to uphold the sanctity of investigations, protect witnesses, and allow officers to perform essential functions without interference.[11]  Patrol Guide Section 203-29(7) prohibits recording inside Department facilities.

When an individual is observed recording inside a Department facility, such as a precinct stationhouse, in any manner, an officer should immediately order the person to stop recording.  If the person refuses to stop recording, the officer should order the person to leave the premises.  If the person does not stop recording and does not leave the premises, enforcement for trespass is appropriate.

The new laws do not change the Department's prohibition on recording inside its facilities.  A claim of unlawful interference for recording law enforcement activity is not valid when such recording is not authorized by law.[12]  Where a person enters a Department facility to record activities in the facility, the person is not there to obtain police services – and their conduct impacts the officers' ability to perform such services as well as the ability for other members of the public to obtain them. Thus, the recording and continued presence of the person in the Department facility is not lawful, and warrants proper trespass enforcement.

   **E.  Permissible Seizure of Recordings and/or Recording Devices**

When a police officer has *probable cause* to believe that a recording device contains evidence of a crime, he or she should:

---

People v. Tarver, 188 A.D.2d 938 (3rd Dep't. 1992).
- An observer physically placing him/herself between an officer and other individuals and ignoring repeated requests to move. See, People v. Jimenez, 138 Misc. 2d 867 (N.Y. Crim. Ct. 1988); People v. Yarborough, 19 Misc. 3d 520 (N.Y. Sup. Ct. 2008).

[10] People v. Brown, 925 N.Y.2d 374, 376 (1969).
[11] People v. Reape, 22 Misc.3d 615, 618-19 (Kings Cty Crim. Ct. 2008) (upholding arrest for criminal trespass and noting a police precinct is "an area used by law enforcement officials in order to ensure the public's safety, and by other citizens who seek to give or obtain information about public safety. Prisoners are frequently transported in and out of police precincts and must be able to be reasonably moved and secured. Those who enter in order to use the facilities also need to know that their safety is being protected while they are present there.").
[12] N.Y. Civ. Rights Law § 79-p(3)(a)(iii) & (3)(b); NYC Admin. Code § 14-189(c)(2).

- Inform the observer that the recording device is believed to contain evidence of a crime, and ask for consent to examine the recording. Consent to view must be freely, intelligently and voluntarily given. Individuals must be notified that they have a right to refuse the request in a manner that elicits a clear "yes" or "no." Officers should be prepared for a subsequent court assessment to ensure that this consent was not coerced, either implicitly or explicitly.[13]
    - *Note*: It may be possible for the observer to email the recording directly to the officer's Department-issued smartphone.
- If the observer refuses, the officer should inform the observer that he or she will seek a search warrant for the device, and if the observer deletes the content the observer may be charged with tampering with physical evidence in violation of N.Y. Penal Law § 215.40.
- If the officer has reason to believe that the observer will delete the recording, he or she may seize the device, *without* looking into the device, and only for the time necessary to secure a warrant. In these types of seizures, the officer **MAY NOT** view the recording before obtaining the search warrant.

Under no circumstances should a Member of the Service seize a recording device merely because it has captured a law enforcement encounter. The seizure of the device would only be appropriate in circumstances where the officer has probable cause to believe that the recording captures evidence of an actual crime (i.e. assault on a police officer, an assault on a third party, possession of a weapon, etc.). Seizure of any recording device **MUST** be approved by a supervisor. In addition, it is a violation of N.Y. Penal Law § 215.40 for an officer to delete any video from a seized recording device.

### F. Duties of Supervisors

In situations where an observer is arrested for interference with police action or where the contents of a recording device are believed to contain evidence of a crime, Members of the Service **MUST** request a supervisor to respond to the scene. This is in addition to officers' responsibilities to have the validity of an arrest verified prior to removal to the stationhouse, as explained in Patrol Guide Section 208-02.

Front line supervision is a critical component in protecting the constitutional rights of observers. Supervisors **MUST** be familiar with this Bulletin and be prepared to take immediate remedial action in the field to ensure the constitutional rights of individuals are protected. This should be balanced with the priority to ensure the safety of the police officers and the public involved in police action.

### V.   CONCLUSION

As a general matter, the recording of officers during the performance of their duties is not a violation of the law, so long as this recording does not amount to actual interference with the police activity. Members of the Service are reminded that the courts have consistently held that police officers, as agents of the state, must tolerate a higher level of verbal criticism and potentially offensive language than an ordinary citizen.[14] Nevertheless, this does not mean that Members of the Service must wait until they are placed in serious jeopardy or imminent danger before taking affirmative action to protect themselves and safely complete the enforcement action that they are undertaking. However, in cases that implicate the rights of observers to record law enforcement activity, officers must be able to clearly articulate the manner in which the observer engaged in actual interference of the police activity that lead to action being taken against the observer, and/or why it was necessary to seize any recording or recording device. Such enforcement and seizures

---

[13] Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973).

[14] See, e.g., Duran v. Douglas, 904 F.2d 1372, 1377-78 (9th Cir. 1990) (An individual who was making obscene gestures and yelled profanities at an officer engaged in conduct that "fell squarely within the protective umbrella of the First Amendment, and any action to punish or deter such speech – such as stopping or hassling the speaker – is categorically prohibited by the Constitution.").

may now trigger a lawsuit against the officer and the city, but they can be rebutted with clear articulation by the officer.

Members of the Service are encouraged to contact the Legal Bureau at (646) 610-5400 with any questions about the content of this Bulletin.

**Legal Bureau Bulletin #2 of Volume 46 is revoked**.