In the United States District Court for the
Southern District of New York

| | |
|---|---|
| SeanPaul Reyes<br>*Plaintiff,*<br><br>v.<br><br>The City of New York,<br>*Defendant.* | Case No. 23-cv-6369 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF HIS MOTION FOR A PRELIMINARY INJUNCTION**

Andrew Case
Meena Roldán Oberdick
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York New York
(212) 739-7506
acase@latinojustice.org

September 20, 2023
New York, New York

**Preliminary Statement**

SeanPaul Reyes wants to walk into an NYPD precinct and wait in line for the public window to receive a complaint form. He wants to fill out that complaint form and hand it back to the officer at the window. He also wants to record what happens when he asks for a form, and report on how the NYPD treats people who come to them for help. He asserts a specific and strongly protected First Amendment right: the right to record police officers in the execution of their duties. This right is also protected specifically by state and municipal law. When Plaintiff entered the 61st Precinct to gather this information, he was arrested pursuant to the NYPD's Trespass Policy. Defendant now claims on the one hand that the Trespass Policy is a reasonable restriction on First Amendment rights, and on the other that it is not a rule at all.

Plaintiff is being irreparably harmed because he will be arrested if he exercises his First Amendment right to record his interactions with police. He is extremely likely to prevail on the merits. The NYPD should be enjoined from enforcing the Trespass Policy during the pendency of this litigation.

**Argument**

**I.     There is a First Amendment Right to Record Police Operations.**

Plaintiff does not seek to exercise the First Amendment generally. He wants to exercise the particular "right to record law enforcement officers engaged in the exercise of their official duties in public places." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d

1035, 1044 (9th Cir. 2018) (collecting cases). The Second Circuit has not yet ruled on whether the First Amendment recognizes this particularized right. Because the nature of this right implicates the First Amendment claim, the irreparable harm issue, and arguably the *Younger* claim, Plaintiff begins by respectfully asking that this Court recognize the First Amendment right at issue with particularity.

The First Amendment does not just protect reporting. It works to "prohibit government from limiting the stock of information from which members of the public may draw." *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978)). The Amendment therefore "must also protect the act of creating [reporting] material." *Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) (citing *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011)). This material includes audio and video recordings of the police doing their jobs. *See Fields*, 862 F.3d at 358. The "particular right to film the police" is part of the broader "right of citizens to inquire, to hear, to speak, and to use information to reach consensus." *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010)). It serves the "cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 601 (7th Cir. 2012) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)). "The First Amendment protects the right to gather information about

what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

A restriction on recording police is subject to a forum analysis because "[w]hether a place is 'public' depends on the nature of the location." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (conducting a forum analysis). *See also Turner*, 848 F.3d at 690 ("when police departments or officers adopt time, place, and manner restrictions, those restrictions must be 'narrowly tailored to serve a significant governmental interest'") (quoting *McCullen v. Coakley*, 573 U.S. 464 (2014); *see also Iacobucci v. Boulter*, 193 F.3d 14, 18 (1st Cir. 1999) (hallway outside meeting), *Fields*, 862 F.3d at 356 (convention center), *Blackstone v. Alabama*, 30 F.3d. 117, 120 (11th Cir. 1994) (meeting room). A forum analysis will be conducted below.

Plaintiff seeks to exercise a particularized right that six circuits have expressly identified—the right to record police in the public performance of their duties.

## II. *Younger* Does Not Apply, Because Plaintiff Does Not Seek to Enjoin Pending Proceedings in State Court.

Defendant argues that "enjoining the NYPD from enforcing such a section of the Administrative Guide will *impact* the state court proceedings," but *Younger* does not forbid federal courts from issuing decisions that state courts may consider, it asks courts not to "*enjoin* pending proceedings" or "*enjoin* state officers from *instating* criminal actions." Opp. at 6 (*quoting Younger* at 45*)* (all emphasis added). Plaintiff is charged with Obstructing Governmental Administration as well as trespassing. Defendant has

claimed in other litigation that under those circumstances, probable cause for the "arrest existed independently of the [Trespass] policy, for trespass and obstructing government administration." Deft's Reply In Support of Its Motion to Dismiss, Doc. 64, *Rodney v. City of New York*, 22-cv-1445, (S.D.N.Y. Dec. 14, 2022). If the Trespass Policy is enjoined going forward, the Kings County Prosecution can and will continue.

Dismissal of the Kings County Prosecution by the trial court "would not afford adequate protection" because such a dismissal would not include an injunction barring enforcement of the Trespass Policy. Opp. at 6, *quoting Younger* at 45. And Plaintiff does not allege "bad faith," as Defendant claims. Opp. at 7. Rather, Plaintiff set forth the reasons that this case is one "wherein *Younger* abstention would be inappropriate in a case involving **a series of good-faith repeated prosecutions**." *Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (emphasis added).

### III. This Court Should Issue a Preliminary Injunction

#### A. A Mandatory Injunction is Appropriate Where Plaintiff is Suffering Irreparable Constitutional Harm.

Plaintiff is unable to exercise his First Amendment right to record police activity for the purpose of reporting on it. "The denial of a constitutional right ordinarily warrants a finding of irreparable harm, even when the violation persists for minimal periods of time." *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2021) (granting a mandatory injunction that a student at a religious school be granted access to education benefits during pendency of a case). Defendant claims that other cases

4

standing for this principle are not "analogous," but the harm is irreparable because the injury is constitutional, not because it is similar to other constitutional injury. And for the reasons set forth below, Plaintiff has also made a "clear showing that the moving party is entitled to the relief requested," satisfying both prongs of the mandatory injunction test when only one is required. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011).

    B.    **Plaintiff Will Succeed on the Merits.**

        1.    <u>Defendant Concedes that the Trespass Policy is a Rule.</u>

Despite denying that the Trespass Policy is a rule when discussing CAPA, Defendant makes clear in the rest of its opposition that the policy *sets forth a standard* ("Members of the public are not allowed to photograph and/or record police activity within Department facilities") which *if violated may result in a sanction or penalty* ("enforcement action under the trespass statutes"). *See* CAPA § 1041(5)(a); NYPD Administrative Guide Procedure 304-21. Throughout the opposition, Defendant emphasizes that Plaintiff was arrested because he violated the standards set forth in the Trespass Policy:

- Defendant states that Plaintiff's June 2023 arrest "results from Plaintiff's ***violation of that Administrative Guide section.***" Opp. at 11 (emphasis added).

- Defendant states that the Trespass Policy is a "*regulation* grounded in the desire to maintain safety and privacy." Opp. at 12 (emphasis added).

- Defendant states that "*enforcement* of the relevant section of the NYPD Administrative Code will not cause irreparable harm." Opp. at 13 (emphasis added).

5

- Defendant describes Federal Rule of Criminal Procedure 53 as "analogous" to the Trespass Policy because "This Rule, like the NYPD Administrative Guide, *places a restriction on First Amendment rights*." Opp. at 14 (emphasis added).

Rule 53 is a good example of what a rule of this nature looks like once it has been vetted by the rulemaking process. The rule prohibits photographing or broadcasting in federal criminal courts, "[e]xcept as otherwise provided by a statute or these rules." Fed. R. Crim. Proc. 53. And of course, other rules do provide for broadcasting in criminal courts. *See, e.g.*, Rule 10(c) (teleconferencing of arraignments by consent); Rule 41(a) (permitting video testimony in open court). Proper public rulemaking[1] ensures that exceptions like those set forth in Rule 53 exist, particularly when a rule must be balanced against a constitutional right or a court decision. *Cf. Maryland v. Craig*, 497 U.S. 836 (1990). The Trespass Policy violates the First Amendment in part because it is, as Defendants concede, a "blanket prohibition of recording" with no exceptions to speak of. Opp. at 18. This is unsurprising given it was enacted by fiat without the public participation required by law.

If the NYPD believes it can craft a recording prohibition that is "reasonable" (if a police precinct is a Limited Public Forum) or "narrowly tailored" (if it is a Designated Public Forum), CAPA provides a way for it to try. But its arguments regarding the First

---

[1] Rule 53 was enacted pursuant to a transparent process authorized by the Rules Enabling Act of 1934 (28 U.S.C. § 2071). *See generally*, United States Courts, "How the Rulemaking Process Works." The federal judiciary engaged in a four-year pilot program to consider lifting the ban in civil proceedings but ultimately decided not to.

6

Amendment not only fail in their own right, as set forth below, but they highlight the fact that the Trespass Policy's flaws stem directly from the fact that it "was promulgated in violation of the New York City Administrative Procedure Act and is thus null and void." *Ousmane v. City of New York*, 22 Misc. 3d 1136(A) (Sup. Ct. 2009).

        2.       <u>Plaintiff was not Interfering or Breaking the Law</u>

Defendant writes that "Under the First Amendment and as well as the State and City Right to Record Statutes, Plaintiff will not succeed on the merits," before providing a forum analysis. Opp. at 15. But the Right to Record Acts go beyond the protections of the First Amendment; they protect the right to record except when someone is physically interfering with law enforcement or breaking the law. *See* N.Y. Civ. Rights Law. § 79-P(2); N.Y.C. Admin. Code § 14-189. Defendants do not allege that Plaintiff was interfering with law enforcement, and he plainly was not. The only purported rule he was accused of breaking is the unlawfully promulgated Trespass Policy. If the "other law" exception in the Right to Record Act included any policy of the NYPD limiting recording, the Act would be entirely toothless.

        3.       <u>Precinct Public Lobbies are Designated Public Forums</u>

Defendant claims that precinct lobbies are limited public forums by noting that the criminal court in *People v. Reape* wrote that a lobby is a place used by those "who seek to give or obtain information about public safety." 22 Misc. 3d 615, 618 (N.Y. Crim. 2008). But *Reape* did not conduct a forum analysis; it only set the standard for legally

7

ejecting someone from a police lobby, allowing ejection only when a person "interfere[s] with the ordinary use of the property of the Police Department and by other members of the public." *Reape* at 619.[2] But here, Plaintiff did not interfere with the use of the precinct.

Peter Callaghan sets forth a "belief" that "victims of gang violence, domestic violence, sex crimes, and even juveniles" who are concerned with confidentiality wait in line in a public precinct lobby to file and discuss complaints. *See* Sept. 1, 2023, Declaration of Peter Callaghan, Doc. 20-5, ¶¶ 6, 7, 8, 9. This is at odds with the NYPD's policies to ensure that those concerned with confidentiality do not need to come to a precinct at all. The Special Victims Unit boasts of its new facilities designed to make victims [feel more secure than a precinct would](#).[3] Domestic Violence Prevention Officers conduct home visits precisely to protect a potential victim's confidentiality. *See* PG 202-07(5)–(8).[4] And NYPD Youth Officers conduct home visits and school visits. *See* PG 202-08(6), (13), (15). The Patrol Guide has a provision for responding to the scene of a sex crime and for responding to a report at a hospital. *See* PG 207-33, PG 207-33(15). If

---

[2] This matter only concerns publicly-accessible precinct lobbies and vestibules; the confidentiality concerns of the secure interior of a precinct that Defendant relies on are not relevant. (Opp. at 17)

[3] Sager, Stacey, "NYPD Gives Special Victims Division Makeover to Help Sex Assault Victims Feel More Comfortable," ABC News, Sept. 6, 2019.

[4] For copies of these Patrol Guide Provisions *see* September 20, 2023 Declaration of Andrew Case, Exhibits A–C.

8

victims frequently presented in-person at the public window, the department would likely have a policy to address it.

And NYPD officers themselves frequently post videos inside the precinct, most recently in the "mannequin challenge" series of videos circulated on official social media pages of the NYPD.[5] And Even if a police precinct were a limited forum dedicated to discussions of public safety, Plaintiff's reporting on police activity is squarely within that dedication.

As set forth above, recording police activity is a particularized First Amendment right. Defendant claims that Plaintiff "has alternatives to exercise his right to free press," but he is not seeking to exercise the First Amendment generally. Opp. at 14. He is seeking to report on what happens when a civilian walks to the window of the Sixty-First Precinct and asks an officer for a complaint form. Denying someone the right to report on the topic of their choosing and telling them that instead they can go report upon some other topic does not comply with the First Amendment. *See Specht v. City of New York*, 15 F.4th 594 (2d Cir. 2021).

C.   **Plaintiff is Being Irreparably Harmed**

Plaintiff is being denied the right to record police activity and report on a specific aspect of police interaction with the public: how one can expect to be treated when

---

[5] NYPD Precincts that have posted video of the inside of precincts on social media include the Sixty-First (at least twice) the Sixtieth (which posted a Christmas video that includes members of the public standing in the lobby), and the Forty-Third.

9

requesting information from or reporting crime to the NYPD. The Third Circuit has held that "[a]ccess to information regarding public police activity is particularly important because it leads to citizen discourse on public issues, 'the highest rung of the hierarchy of First Amendment values and is entitled to special protection.'" *Fields*, 862 F.3d at 359 (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)).

Plaintiff cannot continue this reporting because he will be arrested, as he has been already. Defendant suggests that Plaintiff is "still entitled to journalistic speech via the First Amendment" because he can "speak about the First Amendment as much as he wanted." Opp. at 13, 14. But general protections for speech about police activity do not protect the "particularly important" right to record. *Fields*, 862 F.3d at 359.

## IV. Conclusion

For the reasons stated above, Plaintiff respectfully requests that this court enter an injunction 1) prohibiting the NYPD from enforcing the Trespass Policy, as set forth in NYPD Patrol Guide Procedure 203-29(7) and NYPD Administrative Guide Procedure 304-21(7), and 2) requiring the NYPD to remove the signs in precincts setting forth the Trespass Policy.

Dated: September 20, 2023
New York, New York

                                                                             Respectfully Submitted,
                                                                              */s/ Andrew Case*
                                                                              Andrew Case
                                                                              Meena Roldán Oberdick
                                                                              LatinoJustice PRLDEF
                                                                              475 Riverside Drive

Suite 1901
New York New York
(212) 739-7506
acase@latinojustice.org
*Attorneys for Plaintiff*