EXHIBIT A


MOTION TO DISMISS AND INSPECT PREMISES

DEFENDANT SEANPAUL REYES

CR-019322-23KN

KINGS COUNTY CRIMINAL COURT PART AP3

CRIMINAL COURT: CITY OF NEW YORK
COUNTY OF KINGS: PART AP3

THE PEOPLE OF THE STATE OF NEW YORK,

v

SEANPAUL REYES

CR-019322-23KN

NOTICE OF MOTION

PLEASE TAKE NOTICE that upon the annexed affirmation of JACOB URIEL, ESQ., dated September 19, 2023, an attorney duly admitted to the practice of law in the State of New York and Partner to the Uriel Criminal Defense, P.C., 540 Court Street #4011, Brooklyn, NY 11231, attorney of record for defendant SEANPAUL REYES, that DEFENDANT will move this Court located at 120 Schermerhorn Street, Brooklyn, NY 11201, on the **20th day of September, 2023**, at nine o'clock in the forenoon, or as soon thereafter as counsel can be heard for an Order: to dismiss the accusatory instrument in this case, allow inspection of the alleged crime scene, and for further relief this Court deems just and proper.

Dated: September 19th, 2023
      Brooklyn, New York

1

CRIMINAL COURT: CITY OF NEW YORK
COUNTY OF KINGS: PART AP3

THE PEOPLE OF THE STATE OF NEW YORK,

v

SEANPAUL REYES

CR-019322-23KN

MOTION TO DISMISS AND
INSPECT PREMISES

I, Jacob Uriel, Esq., an attorney duly admitted to practice law in the courts of the State of New York, herby affirms under penalty of perjury:

1.      I am an attorney, appearing on behalf of Uriel Criminal Defense P.C., 540 Court Street, #4011, Brooklyn, NY 11231. I represent Defendant SeanPaul Reyes and as such I am fully familiar with the facts and circumstances of this matter.

2.      This affirmation is made in support of Mr. Reyes' motion to dismiss the accusatory instrument pursuant to CPL § 170.30(1)(a), (e), (f), and (g). Specifically, the Defendant is requesting that the court dismiss the complaint because it is defective, fails to establish that a crime occurred, is precluded by other statutes, has exceeded statutory speedy trial time, and that this prosecution does not further the interests of justice. In the alternative, the Mr. Reyes is requesting permission to inspect the alleged crime scene in this case per CPL § 245.30(2). Mr. Reyes is also reserving his right to seek further relief in subsequent motions.

3.      Unless otherwise indicated, all allegations of fact are made upon information and belief based upon inspection of the record in this case, bodycam and other discovery provided by the People, the case file, and conversations with relevant witnesses.

## ABOUT SEANPAUL REYES

4.      SeanPaul Reyes is a journalist who conducts public business with public officials (including police officers), while recording the encounters. He is the owner of Long Island Audit, Inc., a domestic corporation.

2

5.      Mr. Reyes' sincere belief is that recording public officials, including police officers, in the performance of their duties is an essential means of holding them accountable to the public at large and falls squarely within protected expressive speech and press activity as articulated in the First Amendment to the United States constitution and incorporated to the states by the Fourteenth Amendment. Mr. Reyes hopes, by drawing attention to police abuse through his journalism and activism, that such abuse can be addressed and eventually eliminated.

6.      Mr. Reyes edits the raw videos of these encounters (for clarity and length, but not substantive content) and posts them on his YouTube channel, where he is known as "Long Island Audit."[1]

7.      Mr. Reyes has been recording and posting these videos for several years. In that short time, he has posted over 300 videos and has amassed over 500,000 subscribers to the "Long Island Audit" channel. At the start of each video, Mr. Reyes advises his audience that, in sum and in substance, he seeks to *peacefully* exercise his First Amendment right to film in public and publicly accessible areas.

8.      Mr. Reyes also posts videos recorded by others which capture police officers and other public servants abusing their authority.

9.      Recently, Mr. Reyes has been a guest speaker and trainer at several local police departments in the tri-state area, bridging the divide between law enforcement and the public.

### THE LOCATION

10.      The New York Police Department's ("NYPD") 75th Precinct ("the 75") is located at 1000 Sutter Avenue, in Brooklyn, New York. The public front lobby of the 75 is separated from the street by a vestibule. The vestibule is sandwiched by six transparent glass doors, three on the vestibule's Sutter Avenue side and three on the public lobby side.  Once past the vestibule and inside the lobby, there is a glass wall and several glass doors that lead into the non-public portion of the precinct. A person standing on the public sidewalk on Sutter Avenue and looking through the glass doors has an unobstructed view inside of the precinct.

---

[1] The YouTube channel is available at: https://www.youtube.com/c/LongIslandAudit

11.    The doors on both sides of the vestibule remain unlocked throughout the day and members of the public are ostensibly welcome to freely enter the vestibule and public lobby.

12.    Inside the lobby, on the glass partition that separates the lobby from the restricted portion of the precinct, is a small sign advising the public, in sum and in substance, that recording by members of the public is not allowed inside the precinct. This sign cites no lawful authority in support of this bold declaration.

13.    Also inside of the public lobby, the 75 has posted several public notices. Some of these notices have quick-response ("QR") codes which require the use of a cellular phone's camera. Not ironically, at least one of those signs asks the public to scan a QR code and review their experience with the police.

14.    There are surveillance video cameras inside the public lobby of the precinct which record and store video.

15.    According to the People (*Exhibit* A), the 75 is a dwelling, meaning a building "usually occupied by a person lodging therein at night" (Penal Law § 140.00).

### THE INCIDENT

16.    On June 1, 2023 at approximately 11:10am, Mr. Reyes visited the 75 for three reasons. The first was to request a complaint form, the second was to file a complaint, and the third was to document the process consistent with his personal and journalistic purposes.

17.    Before entering the 75, Mr. Reyes began recording audio and video. Mr. Reyes did not attempt to hide his behavior and was soon confronted by NYPD officers.

18.    Shortly after he entered, a female officer first told Mr. Reyes that he could not record in the lobby, but she did not threaten to trespass or arrest Mr. Reyes. As soon as Mr. Reyes tried to speak to this female officer, she left the lobby and entered the restricted area of the precinct. Shortly thereafter, approximately four more officers confronted Mr. Reyes. These officers ordered Mr. Reyes to leave the lobby or stop recording. They then grabbed Mr. Reyes and pushed him out of the lobby into the vestibule; the officers then continued to push Mr. Reyes onto the street. When Mr. Reyes re-entered the vestibule a moment later, he was arrested and his property was seized.

19.     After Mr. Reyes was arrested, his devices continued to record audio, including one officer suggesting that the police delete the videos on Mr. Reyes's phone. Thankfully, another officer refused.

20.     While processing Mr. Reyes's, he was denied a desk appearance ticket ("DAT") for which he would have been otherwise eligible (CPL § 150.20[1][a]). The sole reason for the denial appears to be that two officers requested orders of protection in an apparent retaliatory scheme to keep Mr. Reyes' in custody longer than legally authorized by misusing CPL § 150.20[1][b][vi] to subvert Mr. Reyes' right to a DAT.

**PROCEDURAL HISTORY**

21.     On June 1, 2023,[2] Mr. Reyes was arraigned in New York City Criminal Court for Kings County, part AR3A (Robinson, J.), on a criminal complaint (*Exhibit* A) which charged Mr. Reyes with Obstruction of Governmental Administration (Penal Law § 195.05); Criminal Trespass in the Third Degree (Penal Law § 140.10[A]), and Trespass (Penal Law § 140.05).

22.     At the arraignment, Mr. Reyes pled not guilty. The People were not ready and requested an order of protection against Mr. Reyes and in favor of the arresting officers. This request was, obviously, denied.  The case was adjourned to July 24, 2023 in part AP3.

23.     On July 24, 2023, the case was on in part AP3 (Ambekar, J.). The People were not ready. The case was adjourned to September 20, 2023 in part AP3.

24.     On August 10, 2023, the People completed discovery and filed a certificate of compliance ("COC").

25.     The original criminal complaint was never superseded.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law, Mr. Reyes moves this court to dismiss all counts in this matter, or in the alternative to allow him to

---

[2] This is per the official court record. In reality, it was closer to 1:00am on June 2, 2023.

inspect the alleged crime scene, and for any other relief the Court deems just and proper.

Dated:          September 19, 2023
                Brooklyn, New York


JACOB URIEL, ESQ.
Uriel Criminal Defense P.C.
540 Court Street, #4011
Brooklyn, New York 11231
Jacob@LawUriel.com
Office: 833-733-4448
Cell: 718-775-0689

CRIMINAL COURT: CITY OF NEW YORK
COUNTY OF KINGS: PART AP3

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, | CR-019322-23KN |
| v | MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND INSPECT PREMISES |
| SEANPAUL REYES | |

"It is emphatically the province and duty of the judicia[ry] to say what the law is" (*Marbury v Madison*, 5 U.S. [1 Cranch] 137 [1803]). This principle is as fundamental to the law as it is elemental. Yet, the entirety of this prosecution hinges upon a profoundly flawed premise advanced by the New York Police Department ("NYPD")—a premise that unwarrantedly grants it the authority to unilaterally assume legislative and judicial powers. In essence, the NYPD purports to possess the ability to create and construe criminal and civil rights laws in the State of New York at its own discretion.

However, as this memorandum of law will demonstrate in detail, the NYPD's assertion of such powers is fundamentally flawed and runs counter to the very essence of our Constitutional and statutory framework. It is precisely for this reason that nothing contained within the People's complaint, whether presently alleged or hypothetically claimable, can ever adequately constitute a criminal offense.

The complaint in this case should be dismissed because it is defective on multiple grounds, and is therefore past speedy trial. The court should otherwise dismiss this case in the interests of justice. Should the court deny dismissal, the defense seeks permission to inspect the alleged crime scene pending a motion to reargue the denial of dismissal.

## I.   MOTION TO DISMISS FOR FACIAL INSUFFICIENCY

After arraignment upon an information or a misdemeanor complaint, the Court, upon motion of the defendant, should dismiss such instrument or any count thereof upon the ground that it is defective for failing to conform to the requirements established in CPL § 100.15 (*see* CPL §§ 170.30[1][a]; 170.35[1][a]; 100.40[1][a]). A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution.

A valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution (*People v Case*, 42 NY2d 98 [1977]) A misdemeanor information must allege non-hearsay "facts of an evidentiary character" (CPL § 100.15) demonstrating "reasonable cause" to believe the defendant committed the crime(s) charged (§ 100.40 [b]). This is because a "'misdemeanor complaint is designed to provide the court with sufficient facts for the court to determine whether the defendant should be held for further action'… and the requirement for factual allegations of an evidentiary character establishing reasonable cause should be assessed in that light." (*People v Dumas*, 68 NY2d 729, 731 [1986] [citing *People v Weinberg*, 34 NY2d 429 [1974]). Conclusory statements are not acceptable unless there is a sufficient basis for that conclusion articulated within the accusatory instrument (*Dumas, supra*).

Furthermore, the charges cannot be duplicitous under CPL § 100.15 (*People v. Smiley*, 28 Misc. 3d 1229 [Crim Ct, NY County 2010]). Furthermore, CPL § 200.30 provides, "[e]ach count of an indictment may charge one offense only." The proscription against duplicitous counts applies to misdemeanor complaints and informations (*see People v Evangelista*, 1 Misc 3d 873, 878 [Crim Ct, Bronx Co 2003]; *People v Minton*, 170 Misc 2d 272, 273, [Crim Ct, Bronx Co 1996]; *People v Mitchell S.,* 151 Misc 2d 208, 211 [Crim Ct, Kings Co 1991]; *People v Rios*, 142 Misc 2d 357,

358-359 [Crim Ct, Bronx Co 1989]; *People v Todd*, 119 Misc 2d 488, 489-490 [Crim Ct, NY County 1983]).

In order to survive a motion to dismiss for failure to state a crime, an information must allege facts establishing conduct that the penal law actually criminalizes (*Case*, 42 NY2d at 99 [information alleging that defendant broadcast to motorists the warning "there is a Smokey takin' pictures up the road" does not allege crime of obstructing governmental administration]). Even if an information "alleges some of the elements of the crime… [t]he central issue… is whether [the charges fall] within the contemplation of the statute" (*People v Weg*, 113 Misc. 2d 1017, 1018-1019 [Crim Ct, Kings County 1982]).

The complaint in this case involves long-winded narrative that fails to establish that any specific crime occurred:

> "THE DEPONENT STATES, THAT DEPONENT WAS PERFORMING DEPONENT'S OFFICIAL DUTIES IN THAT DEPONENT WAS WORKING INSIDE OF THE 75 COMMAND AND THE DEPONENT OBSERVED THE DEFENDANT VIDEO RECORDING WITHIN THE POLICE STATION AND THE DEPONENT ASKED THE DEFENDANT TO STOP VIDEO RECORDING WITH THE DEFENDANT'S CELLPHONE, TRIPOD, MICROPHONE, AND A SMARTWATCH AND DEFENDANT CONTINUED TO VIDEO RECORD AND REFUSED TO COMPLY AND THEN THE DEPONENT ASKED THE DEFENDANT TO LEAVE THE POLICE STATION WHEREUPON DEFENDANT STATED IN SUM AND SUBSTANCE, I HAVE A RIGHT TO BE INSIDE AND YOU CAN'T KEEP ME OUT AND THEN THE DEPONENT ESCORTED THE DEFENDANT OUT OF THE POLICE STATION WHILE THE DEFENDANT PREVENTED THE DOORS FROM CLOSING AND UPON THE DEFENDANT EXITING THE POLICE STATION THE DEPONENT TOLD THE DEFENDANT IF THE DEFENDANT REENTERS THE POLICE STATION THE DEFENDANT WOULD BE ARRESTED FOR TRESPASSING AND SUBSQUENTLY (sic) THE DEFENDANT REENTERED THE POLICE STATION AND STARTED TO

VIDEO RECORD AND THE DEPONENT ARRESTED THE DEFENDANT.

THE DEPONENT FURTHER STATES THAT THE DEPONENT IS THE CUSTODIAN OF THE ABOVE-DESCRIBED DWELLING AND DEFENDANT DID NOT HAVE PERMISSION OR AUTHORITY TO ENTER OR REMAIN THEREIN" (*Exhibit* A).

As described more fully herein, the complaint fails to satisfy the CPL's requirements on myriad grounds and should be dismissed.

A. The Trespass offences are insufficiently charged because there is no claimed lawful authority to exclude Defendant from a public place and must therefore be dismissed:

A person is guilty of trespass when "he knowingly enters or remains unlawfully in or upon premises" (Penal Law § 140.05). "A person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so" (Penal Law § 140.00). However, when a premises is open to the public at the time of the alleged trespass, the defendant is "presumed to have a license and privilege to be present."  The People, in such cases, "have the burden of proving that a lawful order excluding the defendant from the premises issued, that the order was communicated to the defendant by a person with authority to make the order, and that the defendant defied that order" (*People v Munroe*, 18 Misc 3d 9, 10-11 [App Term, 2d Dept. 2007] [internal citations omitted]).

At issue in this case is whether the order requiring Mr. Reyes to abstain from filming inside the precinct was lawful. If it was not, then the complaint does not sufficiently establish a key element of trespass: that Mr. Reyes entered or remained in the 75 lobby unlawfully.

There is nothing within the four corners of the complaint to support the inference that the NYPD officer had any right to order Mr. Reyes to leave the building or to stop recording; if such a right exists, the complaint makes no mention of it. The complaint simply states, in sum and in

substance, that Mr. Reyes was ordered to leave the precinct because he was filming. The complaint

fails to establish any lawful authority to this order and the court may not simply infer such authority

given that filming the police is a constitutionally and statutorily protected activity. Furthermore,

there is no allegation that the filming was somehow disruptive to the police. Contrast these facts

with those in *People v Reape* (22 Misc. 3d 615 [Crim Ct, Kings County 2008]). In *Reape*, the court

found an accusatory instrument charging trespass in a police precinct was facially sufficient when

it alleged that, prior to being ordered to leave the precinct, the defendant was "'yelling and

screaming' and adamantly demanded to see a particular detective[ in a manner which] interfere[d]

with the ordinary use of the property...." (*id*. at 619).

　　In addition to the reasons listed above, the trespass counts are also defective because they

do not allege that Mr. Reyes' license or privilege to be in the building was actually revoked.  Per

the complaint, the *only reason* Mr. Reyes was arrested for trespassing is that he was not allowed

to be inside *while recording*; it is *not* alleged that he was not allowed to be in the building generally.

The People are thus essentially arguing for a theory of "conditional trespass," which is not

supported by any statutory or case law the defense could find. In other words, according to the

complaint, Mr. Reyes was in a publicly accessible premises while filming (an act that itself violates

no laws but rather is protected by multiple laws and the United States Constitution) but is guilty

of Trespass simply because the police said so. This is a misapplication and bastardization of New

York's trespass laws; the Court should not stand for it.

　　To the extent that the People may claim that an NYPD policy authorizes the arrest of

anyone taking pictures inside police precincts and charge them with trespass, this "policy can[not

be] consider[ed by the court in determining the sufficiency of the complaint instrument because]

it's not contained within the four corners of the accusatory instrument itself" (*People v Pennisi*, 61

Misc. 3d 1224 [Crim Ct, Queens County 2018]). Even if the policy was somehow incorporated in the complaint, the policy is not binding on the court (*id*.; see also *Pesola v City of NY*, US Dist Ct, SD NY, 2016, Castel, J. [holding the Patrol Guide cannot authorize unconstitutional behavior]. Lastly as discussed further (*infra* at § II), the NYPD policy is entirely unenforceable and unlawful.

B. The crime of Criminal Trespass in the Third Degree is insufficiently charged because it fails to properly plead that the premises are enclosed in a manner designed to exclude intruders and must therefore be dismissed:

To sufficiently plead the crime of Criminal Trespass in the third Degree, the People must establish that defendant "knowingly enter[ed] or remain[ed] unlawfully in a building or upon real property… which is fenced or otherwise enclosed in a manner designed to exclude intruders" (Penal Law § 140.10[A]).

"The public has a perfect right to enter a public building as long as they do not create a disturbance or remain unlawfully in that building after a *lawful* order to leave" (*People v Wolf*, 63 Misc. 2d 178, 312 NYS.2d 721 [Dist Ct, Suffolk County 1970] [emphasis added]). When the People are required to prove entry into a building which is enclosed in a manner to exclude intruders the People must allege that the premises are designed to exclude intruders. "In point of fact, [a public building is] not designed to exclude intruders during the business hours" (*id*). "To hold otherwise would… would give tremendous power to the [government official claiming trespass] to exclude everyone solely within his discretion and this cannot be the law because it is dictatorial in nature and no one can be invested with that sole power" (*id*).

Where a building is only partially open to the public the presumptive license and privilege of the public to enter and to remain inside the building does not extend to those areas that are not open to the public (*People v. Messina*, 32 Misc. 3d 318, 321 [Crim Ct, Kings County 2011]). An

12

otherwise public building may be restricted by signage which is conspicuously posted, but the "[a]bsence of such an allegation would render the information jurisdictionally defective" (*id.*).

The complaint in this case makes no mention of the police precinct being "enclosed in a manner designed to exclude intruders" (*Exhibit* A). The court must make all reasonable inferences in favor of the People, but bald speculation is not allowed. A police station is a public building and, as *Wolf* points out, is therefore *per se* "not designed to exclude intruders."

A person has license to enter a police precinct to conduct lawful business. A police station, by design, welcomes the public through its doors and into its lobby. To the extent that some parts of the Precinct are designed to exclude intruders, the complaint is silent. The People, in their vagueness, might have the court to assume that Mr. Reyes was in a portion of the building designed to exclude intruders and not a portion completely open to the public. The court cannot, however, simply infer that Mr. Reyes was in a restricted area of an otherwise public building in the face of a silent accusatory instrument.

As a matter of fact, as the People will likely concede, Mr. Reyes was in the public lobby and public vestibule of the precinct for the entirety of the events that led to his arrest. This fact matters for the same reason as discussed (*supra* § I[A]); there is no such thing as a conditional trespass.

To the extent that the People may claim that the 75 has some special status because the deponent police officer claims it is a dwelling, the 75 is clearly not actually a dwelling as that term is contemplated by legislature. While some unfortunate police officers and prisoners have doubtlessly been forced to spend the night within its walls, those individuals were clearly not "lodging" as envisioned by Penal Law section 140.00. The assertion that a police precinct is a

dwelling is laughable and should offer the police no greater authority to exclude members of the public.

C.  THE TRESPASS COUNTS ARE DUPLICITOUS AND MUST BE DISMISSED:

The People may not state ready for trial on an information that contains a duplicitous count (*People v Harris*, 2023 NY Slip Op 50167 [Crim Ct, Queens County 2023] [citing CPL § 30.30[5-a]).

An information is duplicitous "when a single count charges more than one offense." (*People v Alonzo*, 16 NY3d 267, 269 [2011]). Duplicity creates several problems because it makes unclear what specific acts constitute the count. It undermines the defense's "notice" as to what the specific charges are, impairing their "opportunity to defend" (*id*.). It undermines the requirement of jury unanimity because jurors may split on what acts they believe a person guilty, but all nonetheless vote guilty of the count (*id*.). And it impairs the protection against double jeopardy because it makes unclear what acts a jury convicted a person of in a prior case (*id*.). The problem of duplicity lies where multiple actions could each possibly constitute a single count (*Harris*, *supra*).

A defendant may be charged with either entering or remaining unlawfully, "but not both" (*People v Gaines*, 74 NY2d 358, 363 at n 2 [1989]) (citing CJI2d [NY] Penal Law §140.20). A person "enters" unlawfully when that person has no license to enter in the first place (*Gaines* at 362-363). The word "remain" in the phrase "enter or remain" is applicable to cases in which a person enters with a license or privilege, but remains after the license was revoked (*id*.). In a trespass case, multiple entries charged in a single count are duplicitous (*People v Stanley*, 173 AD2d 658 [2d Dept 1991]).

The complaint in this case claims that "the deponent asked the defendant to leave the police station whereupon [the defendant refused and was] escorted… out of the police station…" (*Exhibit A*). This would seem to allege that the defendant is accused of "remaining" unlawfully.

A few words later in the complaint's narrative, however, the complaint further alleges that after being escorted out, "the Defendant reentered the police station…" (*id*). This would make it seem like the defendant is accused of "entering" unlawfully.

Because the statutory language portion of the complaint states "enter or remain" without any specificity and the factual narrative supports both theories, it is impossible to know which specific conduct is alleged to have violated the statute. This violates the rule of duplicity requiring both trespass charges to be dismissed.

D. THE CRIME OF OBSTRUCTING GOVERNMENTAL ADMINISTRATION IS INSUFFICIENTLY CHARGED AND MUST BE DISMISSED:

To sufficiently plead Obstructing Governmental Administration in the Second Degree ("OGA"), the people must present sufficient facts alleging the Defendant "intentionally . . . prevent[ed] or attempt[ed] to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act…" (Penal Law § 195.05). "[A] defendant may not be convicted of obstructing governmental administration or interfering with an officer in the performance of an official function unless it is established that the police were engaged in authorized conduct" (*People v Lupinacci*, 191 AD2d 589, 590 [2d Dept 1993]). The complaint is jurisdictionally defective "if it fails to allege facts showing that the [officer's actions were] authorized" (*People v Sumter*, 151 AD3d 556 [1st Dept 2017]; *see also People v Vogel*, 116 Misc 2d 332 [App Term, 2d Dept 1982]).

In this complaint, the defense had difficulty finding any factual allegation that would support charging OGA. What specifically was the official governmental function that the defendant is alleged to have obstructed? We do not know which alleged act actually constitutes the charged obstruction (*see* discussion on duplicitous counts, *infra* at II[c]).

The defense can only assume that complaint is claiming that Mr. Reyes somehow obstructed the government by "prevent[ing] the doors from closing…" (*Exhibit* A). The complaint is silent as to how, specifically, the doors not closing obstructed governmental administration. Did Mr. Reyes prevent a cell door from closing, obstructing the government from detaining some prisoner? Did Mr. Reyes hold the lobby doors open, releasing the government's air conditioning? Is air conditioning even a government function?

The complaint also fails to offer anything but the conclusory statement that Mr. Reyes "prevented" the precinct doors from closing, but does nothing to allege that he did so by means of "intimidation, physical force or interference, or by means of any independently unlawful act" as required by the charging statute.[3]

Because the OGA charge is clearly insufficient on multiple grounds, it must be dismissed.

## II. THE NYPD TRESPASS POLICY IS UNLAWFUL:

The police trespass policy is illegal and unenforceable. It is arbitrary, violates Mr. Reyes' federal and state constitutional freedom of expression and of the press, violates the New York City and State right to record laws, is inconsistent with the NYPD's own policy on the right to record, and was implemented in violation of law. In making this policy, the NYPD tried to hijack the

---

[3] In reality, as the discovery provided by the People demonstrates, the only reason the doors were opened at all was because the police shoved Mr. Reyes into them.

criminal statutes of this state, legislating by fiat, and repurposing the State's criminal trespass

statutes as a cudgel to beat into submission anyone who insists on exercising their legal rights.

A. The background of the NYPD Trespass policy:

The Trespass Policy, enacted in 2018, purports to bar the public from recording inside

NYPD's public lobbies, and authorizes officers to arrest members of the public for trespassing if

they do. This policy violates the First Amendment, the New York State Right to Record Act, and

the City of New York's Right to Record Act. Further, it is a rule that was not passed pursuant to

the Citywide Administrative Procedure Act.

In 2018, the NYPD unilaterally enacted its unconstitutional, anti-transparency, trespass

policy ("the Trespass Policy"). In doing so, it modified the NYPD Patrol Guide ("PG") § 203-

29[7] (*Exhibit* B) and NYPD Administrative Guide ("AG") § 304-21(7) (*Exhibit* C). Both NYPD

policies are innocuously titled "When a member of the service encounters an individual

observing, photographing, and/or recording police activity."  Both read identically:

> *Members of the public are not allowed to photograph and/or record*
> *police activity within Department facilities. Members of the service*
> *may order any member of the public who is photographing or*
> *recording within Department facilities to stop such activity. If such*
> *person refuses to stop, then they should be ordered to leave the*
> *premises. If such person refuses to leave the premises, members of*
> *the service may take proper enforcement action under the trespass*
> *statutes (i.e., Penal Law section 140.05 and 140.10)*

Ironically, the Police department's trespass policy itself concedes that a person has a right

to record the police, even in private buildings, so long as they are lawfully there:

> *Individuals have a right to lawfully observe and/or record police*
> *activity including, but not limited to detentions, searches, arrests or*
> *uses of force. This right extends to individuals in public places, such*
> *as streets, sidewalks, and parks, as well as private property in which*
> *the individual has a legal right to be present, such as buildings,*
> *lobbies, workplaces, or an individual's own property* (PG § 203-
> 29[1]; AG § 304-21[1]).

17

This is not a purely magnanimous policy statement by the police department. It reflects the current state of not only constitutional law, but to applicable statutes specifically recognizing that New Yorkers can film the police.

How can we reconcile a policy that, recognizes the public has an established legal right to film the police (specifically) in public places and even in the lobby of a private building (more specifically), but then asserts that the only building lobby you cannot avail yourself of the right to record the police happens to be the lobby of the police station itself? We cannot. The police department's reasoning is circular and designed to frustrate New York laws. Like a petulant child, the police department is attempting to opt-out of compliance with the law by simply closing its eyes, pretending the law does not apply, and concocting a half-baked scheme to simply charge people with trespassing as a means to enforce their otherwise unenforceable policy.

B. The Trespass policy violates the New York City and State "Right to Record" and "Right To Monitor" Acts, respectively:

When interpreting a statute, the "primary consideration is to discern and give effect to the Legislature's intention" (*Matter of Albany Law School v New York State Off. of Mental Retardation & Dev Disabilities*, 19 NY3d 106, 120 [2012]). The text of a statute is the "clearest indicator" of such legislative intent and "courts should construe unambiguous language to give effect to its plain meaning" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). "It is an accepted rule that all parts of a statute are intended to be given effect and that a statutory construction which renders one part meaningless should be avoided" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 515, [1991]). Furthermore, "a statute ... must be construed as a whole and ... its various sections must be considered together and with reference to each other" (*Matter of New York County Lawyers' Assn. v Bloomberg*, 19 NY3d 712, 721 [2012]).

Public agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute (*Matter of Jones v Berman*, 37 NY2d 42, 53 [1975]). Moreover, an administrative body may not disregard definitions made by legislative bodies under the guise of "interpreting" regulations it is empowered to administer. "The plain language of the legislative enactment is controlling, and the administrative agency may not make a unilateral ruling that is at variance with the legislative enactment" (*Two Assoc., v Brown*, 127 AD2d 173, 183 [1st Dept 1997], *appeal dismissed lv denied* 70 NY2d 792).

1. The NY City Right to Record Act.

The New York City Right to Record Act ("RTRA") provides that "[a] person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording" (Administrative Code of City of NY § 14-189).

This broad, straightforward provision means what it says: people can record the police. Reading into the law an exception that is not in the text – *except inside police precincts* – would "extend a statute beyond its express terms or the reasonable implications of its language" (*Matter of Petersen v Inc. Vill. of Saltaire*, 77 AD3d 954, 956 [2nd Dept 2010]).

When the language of a statute is clear and unambiguous, there is no need to consult legislative history (*see Xiang Fu He v Troon Mgmt., Inc.*, 34 NY3d 167, 173 [2019]). But if the Court were to consider that legislative history, it supports concluding that the RTRA applies in precincts. Chair Donovan Richards of the City Council's Public Safety Committee said that the RTRA would specifically address the Trespass Policy and the fact that it creates a "double standard in police stations" (*see* Ashley Southall, *Video of Man Berating Officer Opens Debate Over Recording in Police Stations*, NY Times [Aug. 21, 2018]).

19

The City Charter does not permit an agency to issue a rule that is "in conflict with other applicable rules," namely the Right to Record Act (NY City Charter § 1043[4][d]). And "an agency cannot promulgate rules or regulations that contravene the will of the legislature or the terms of the authorizing statute" (*Comm. for Taxi Safety, Inc. v City of NY*, 40 Misc. 3d 930, 934 [Sup Ct, NY County 2013].

2.  The NY State Right to Monitor Act.

The New York State Right to Monitor Act (RTMA) establishes that "[a] person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity and to maintain custody and control of that recording and of any property or instruments used by that person to record law enforcement activities" (Civil Rights Law § 79-P[2]). The law defines "law enforcement activity" as "any activity by an officer acting under color of law," with no given exceptions.  (§ 79-P[1][b]).

Whenever a statute contains a "carefully worded and enumerated exception []" to a general rule, it suggests "that the Legislature intended the statute's reach to be… limited to its precise terms" (*People v Ayala*, 75 NY2d 422, 429 [1990]). The doctrine of *expressio unius est exclusio alterius* suggests that additional exceptions should not be implied (*see Colon v Martin*, 35 NY3d 75, 81 [2020]). Further, the general rule that "[i]n criminal matters the courts must avoid any construction that would extend the law beyond the "fair import of its language" (*id*.). The RTMA lists only one exception as a proviso; that the person who is recording is not yet "under arrest or in the custody of a law enforcement official" (Civil Rights Law § 79-P[2]). The court should not expand that specifically enumerated exception to allow the police to forbid recording in their own precincts, of all places. Such a construction – besides being legally baseless – would frustrate the purpose of the statute as it would create the exception that kills the rule.

The Sponsor Memo that accompanied the bill states that "[t]he purpose of [the Act] is to unambiguously affirm, by statutory enactment, the right of New Yorkers to record, **_with expressed exceptions_**, the actions of persons acting under the color of law" (_see_ S3253A Sponsor Memo,[4] Senator Kevin S. Parker [emphasis added]). Those express exceptions bar recording when a person is interfering with law enforcement or engaging in criminal conduct, but there is no exception for precinct lobbies (_see_ Civil Rights Law § 79-P[2]).

      C.   THE TRESPASS POLICY VIOLATES UNITED STATES AND NEW YORK STATE CONSTITUTIONS AND THE FUNDAMENTAL PRINCIPLES OF FREE SOCIETY:

In New York State, as a matter of law, the "government is the public's business and that the public, individually and collectively and represented by a free press" have a right to accessibility and accountability from their government (Public Officers Law § 84):

> "a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government… it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible. The people's right to know… is basic to our society… (id).

Filming the police is constitutionally protected expressive conduct. The First Amendment protects actual photos, videos, and recordings (_see Brown v Entm't Merchants Ass'n_, 564 U.S. 786, 790 [2011]).

The First Amendment protects the public's right of access to information about their officials' public activities. It "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of

---

[4] https://www.nysenate.gov/legislation/bills/2019/S3253/amendment/original

the public may draw" (*First Nat'l. Bank of Bos. v Bellotti*, 435 U.S. 765, 783 [1978]). Access to information regarding public police activity is particularly important because it leads to citizen discourse on public issues, "the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." (*Snyder v Phelps*, 562 U.S. 443, 452 [2011]). The public's constitutional right to record the police was clearly articulated in *Fields v City of Philadelphia* (862 F.3d 353 [3d Cir. 2017]:

> "To record what there is the right for the eye to see or the ear to hear corroborates or lays aside subjective impressions for objective facts. Hence to record is to see and hear more accurately. Recordings also facilitate discussion because of the ease in which they can be widely distributed via different forms of media. Accordingly, recording police activity in public falls squarely within the First Amendment right of access to information. As no doubt the press has this right, so does the public" (citing *PG Publ'g. Co. v Aichele*, 705 F.3d 91, 99 (3d Cir 2013); *Branzburg v Hayes*, 408 U.S. 665, 684 [1972]).

Not only has the Third Circuit upheld the right to record the police, but many circuits have as well (*see e.g. Project Veritas Action Fund v Rollins*, 982 F.3d 813 [1st Cir 2020] [constitutional guarantee of freedom of speech protects the right to audio and video record "government officials, including law enforcement officers, in the discharge of their duties in a public space even when the recording is undertaken without the consent of the person recorded]; *Smith v City of Cumming*, 212 F3d 1332, 1333 [11th Cir 2000] [recognizing the First Amendment "right to gather information about what public officials do on public property" and "to record matters of public interest"]; *Fordyce v City of Seattle*, 55 F.3d 436, 442 [9th Cir 1995] [finding a genuine dispute of material fact as to whether officers had interfered with the plaintiff's "First Amendment right to gather news"]).

While the constitutional right to record is subject to reasonable time and place restrictions, the Trespass Policy limits First Amendment expression in a public forum in a manner that is not

narrowly tailored to protect a significant government interest. A blanket ban, like the NYPD Trespass Policy is inherently unreasonable. To the extent the People may argue that confidential business occurs inside of the precinct lobby and that recording the police otherwise interferes with their jobs. This is unpersuasive and false. Recording NYPD officers does not interfere with their job and is not incompatible with their work. Moreover, the notion that recording somehow deters crime victims from coming into a precinct is laughable. First, there are already surveillance and body cameras operating whenever most people interact with the police – a person who is uncomfortable being recorded would find it very difficult to ever report a crime. Second, a person can just as easily record video from the Sutter Avenue sidewalk capturing people as they walk in and out of the precinct and can continue to record people inside the precinct through the glass doors. Moreover, few serious crimes are reported by a complainant who walks into a precinct and, if it happens, there are private areas to speak beyond the lobby.

Far from being reasonable, the Trespass Policy is a blanket prohibition on First Amendment activity and therefore illegal. This is true for any citizen under their right to expression, but also particularly applies to Mr. Reyes, who was also acting as a member of the press.

When the public enjoys broad license to utilize certain property, state trespass laws may not be enforced solely to exclude persons from exercising First Amendment or other protected conduct in a manner consistent with the use of the property (*People v Leonard*, 62 NY2d 404 [1984] [citing *Food Employees v Logan Val. Plaza*, 391 U.S. 308, 319-320; *Marsh v Alabama*, 326 U.S. 501) Therefore, a decision to exclude that is predicated on or impermissibly inhibits a constitutionally or a statutorily protected activity will not be lawful (*Leaonard*, *supra* [citing

*People v Bush*, 39 NY2d 529, 538-543; *People v De Clemente*, 110 Misc.2d 762 [Crim Ct, Queens County 1981]; *People v Rewald*, 65 Misc.2d 453 [Cuyuga County Ct 1971] [freedom of press]).

To satisfy its burden of proof with respect to the element of the crime that a "lawful order not to enter" the property issued, the People must demonstrate that the particular order of exclusion had a legitimate basis and that, considering the nature and use of the subject property, its enforcement did not unlawfully inhibit or circumscribe the defendant from engaging in constitutionally or statutorily protected conduct (*Leaonard*, *supra*). When, as in this case, the subject property is publicly owned and maintained, the People may not satisfy their burden of proof on this issue by relying on a presumption that the public official authorized to maintain order on campus discharged his or her responsibility, in the particular instance, in a lawful manner (*id*., citing *People v Session*, 34 NY2d 254, 256 [1974]; *People v Richetti*, 302 NY 290, 298 [1951]). A "mandatory" or "conclusive" presumption… may never be applied in a criminal case with respect to one of the elements of the crime being prosecuted. Shifting the burden of production or persuasion to the defendant under such circumstances would impermissibly relieve the People of their burden of proving every element of the crime beyond a reasonable doubt (*Leaonard, supra*).

D. The Trespass policy violates the City Administrative Procedures Act:

New York City's Administrative Procedures Act, CAPA requires city agencies to meet strict requirements when enacting rules (NY City Charter §§ 1041–46). CAPA defines a "rule" as "any statement or communication of general applicability that (i) implements or applies law or policy, or (ii) prescribes the procedural requirements of an agency including an amendment, suspension, or repeal of any such statement or communication" (§ 1041[5]).

CAPA specifically includes any "rule" or policy that "prescribes standards which, if violated, may result in a sanction or penalty" (§ 1041[5][a]). This definition is intentionally

expansive: Requiring taxi drivers to provide air conditioning to those in the rear seats is a rule (*NYC Comm. for Taxi Safety v NYC Taxi & Limousine Comm'n*., 177 Misc. 2d 855, 858 [Sup Ct, NY County 1998], *aff'd sub nom.* NYC *Comm. for Taxi Safety v NYC Taxi & Limousine Comm'n*., 256 AD2d 136 [1st Dept 1998]). Modifying the guidelines that Administrative Law Judges use to determine fines for street vending violations is a rule (*Ousmane v City of NY*, 7 Misc. 3d 1016[A] [Sup Ct, NY County 2005]). Prohibiting the ownership of pet ferrets is a rule (*1700 York Assocs. v Kaskel*, 182 Misc 2d 586, 593–94 (Civ Ct, NY Co. [1999]). A policy that requires you to comply or to lose rights is a rule under CAPA (*439 E. 88 Owners Corp. v Tax Comm'n*, 6 Misc. 3d 1014[A] [Sup Ct, NY County 2002], *aff'd.*, 307 AD2d 203 [1st Dept 2003]).

Under CAPA, City agencies are required to publish an annual regulatory agenda, subject to mayoral review, that describes and justifies proposed rules (NY City Charter §§ 1042[a]–[b]). If a City agency wishes to promulgate a rule not on this agenda, they must explain the omission and otherwise follow CAPA's rulemaking procedures (§ 1042[c]). To enact a rule, the agency must arrange and prominently announce a public hearing no sooner than thirty days after the full text of the proposed rule is made public (§ 1043[b]). The draft of the proposed rule must be approved by the Mayor's office and the New York City Law Department, which must confirm, among other things, that the proposed rule is "not in conflict with other applicable rules" (§ 1043[4][d]).

The Trespass Policy subjects members of the general public to arrest and prosecution for engaging in First Amendment activity in a place open to the public. It unquestionably "prescribes standards which, if violated, may result in a sanction or penalty" (*id.* § 1041[5][a]). Whether the NYPD itself considers the policy a "rule" is of no import because an agency "may not circumvent CAPA's rulemaking requirements by giving a different label to what is in purpose or effect a rule or amendment to a rule" (*Kaskel*, 182 Misc. 2d at 594).

Yet the NYPD did not comply with CAPA when it promulgated the Trespass Policy in 2018 and then again in 2021. The City of New York maintains a website listing all rules passed pursuant to CAPA since 2020[5] and the Trespass Policy is not among them. Because the Trespass Policy is a rule that was not promulgated pursuant to the requirements of CAPA, it does not have "the force and effect of law" (*Kaskel* at 592).

### III. MOTION TO DISMISS THE ACCUSATORY INSTRUMENT FOR OTHER JURISDICTIONAL OR LEGAL IMPEDIMENT TO CONVICTION OF THE DEFENDANT FOR THE OFFENSE CHARGED:

As fully discussed above (*supra* at § II), New York City and State law, as well as the Constitution, protect Mr. Reyes' actions. Thus, the "[t]here exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged" and the case must therefore be dismissed (CPL §170.30[1][f]).

### IV. MOTION TO DISMISS THE ACCUSATORY INSTRUMENT FOR SPEEDY TRIAL PER CPL § 30.30:

It is a "pre-requisite to a valid statement of readiness that an accusatory instrument is facially sufficient as to all charges not dismissed by the People" People v Matos, 78 Misc.3d 322 (Crim Ct, Kings County 2023); CPL § 30.30[5-a]). Assuming the court finds that any of the counts should are insufficient, the court should invalidate the People's statement of readiness. Because more than 90 days have elapsed from the beginning of this action, it is past speedy-trial under any calculation and should be dismissed (CPL 170.30[1][e]).

---

[5] https://rules.cityofnewyork.us/recently-adopted-rules/.

## V. MOTION TO DISMISS THE ACCUSATORY INSTRUMENT IN THE INTERESTS OF JUSTICE PURSUANT TO CPL § 170.40:

An accusatory instrument in criminal court may be dismissed in the interest of justice even though there may be no basis for dismissal as a matter of law upon any ground specified in CPL section 170.30 (CPL § 170.40[1]). In such cases, dismissal is required as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such accusatory instrument or count would constitute or result in injustice (*id*). The court may issue such a dismissal <u>sua sponte</u>, upon motion of the People, or the defense (§ 170.40[2]). Dismissal is governed by several factors (§ 170.40[1]):

> (a)  the seriousness and circumstances of the offense; (b)  the extent of harm caused by the offense; (c)  the evidence of guilt, whether admissible or inadmissible at trial; (d) the history, character and condition of the defendant; (e) any exceptionally serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant; (f) the purpose and effect of imposing upon the defendant a sentence authorized for the offense; (g) the impact of a dismissal on the safety or welfare of the community; (h) the impact of a dismissal upon the confidence of the public in the criminal justice system; (i)  where the court deems it appropriate, the attitude of the complainant or victim with respect to the motion; (j)  any other relevant fact indicating that a judgment of conviction would serve no useful purpose.

The offense in this case can hardly be considered criminal, and while this prosecution is serious to Mr. Reyes, the charges are objectively not serious (lest we live in a society where holding a door open or filming the police is viewed as a serious crime). No harm was caused by the charged conduct. The evidence that Mr. Reyes committed the acts alleged is overwhelming, but these actions do not constitute the crimes charged, therefore evidence of guilt is weak. Mr. Reyes is a respected citizen-journalist who is devoted to not only public accountability but meaningfully working with the police to bridge the gap between law enforcement and the public. The police in

this case acted disgracefully. Not only did they unlawfully push Mr. Reyes out of the building (even if they had a right to arrest him when he refused to leave, the police did not have the right to 'bounce' Mr. Reyes out of the building), but the officers also discussed deleting the videos Mr. Reyes took and forced him to stay in jail longer by requesting a bogus order of protection. Given the unique circumstances of this case, dismissal of this action would not negatively impact public safety but would actually boost the public's confidence in the judicial system. A conviction in this case would serve no useful purpose but would chill freedom of the press and expression.  For those reasons, the defense requests that even if the Court denies dismissal on all other grounds, the Court nevertheless dismiss this action under its discretionary CPL § 170.40 authority.

## VI. MOTION TO INSPECT, PHOTOGRAPH, AND MEASURE THE ALLEGED CRIME SCENE OR PREMISES:

Pursuant to CPL § 245.30(2), "the defendant may move, for a court order to access a crime scene or other premises relevant to the subject matter of the case, requiring that counsel for the defendant be granted reasonable access to inspect, photograph, or measure such crime scene or premises…" An application to inspect a premises must be made upon notice to the prosecution and any impacted agency or entity (*id*.), in this case the New York City Police Department. In deciding the motion, the court must consider (1) the defendant's need to access to the premises, (2) the view of any individual or entity with possessory or ownership rights to the premises, (3) the nature of the privacy interest and any perceived or actual hardship of the individual or entity with possessory or ownership rights, and (4) the position of the prosecution (*id*.).

The court may deny access to the premises when the probative value of access to such location has been or will be preserved by specified alternative means. If the court grants access to the premises, the individual or entity with ownership or possessory rights to the premises may

request law enforcement presence at the premises while defense counsel or a representative thereof is present.

Mr. Reyes can establish his need to access the precinct's lobby in formulating his defense. On information and belief, the public-facing lobby of the 75th Precinct is plastered with public notices, advisories, and other information designed for public dissemination; several of these documents prominently display a quick-response ("QR") code, inviting the public to capture the QR code with the cameras built into their cellular telephones. There is also at least one poster with a QR code that invites that public to rate their experiences with the police department. Furthermore, it is expected that the prosecutor will argue that the police department's no-filming policy is a reasonable time/place restriction. In reality, the precinct lobby already has private areas where reports can be filed. Furthermore, the precinct's front doors are transparent, thus a ban on photography and video recording *inside* the lobby is futile and not reasonably related to a legitimate governmental purpose. An essential element of the defense in this case is that Mr. Reyes could not have been trespassed from a public place while engaged in otherwise lawful activity. Mr. Reyes and his attorney must therefore be able to access the precinct lobby, take photographs, and gather evidence relevant and necessary to his defense.

As to the second factor enumerated in CPL § 245.30(2), while the New York Police department has a nominal possessory interest in the precinct's lobby, it is actually owned by the taxpaying public and open to the public. This fact lines up neatly with the third factor, "privacy interest and any perceived or actual hardship" on the NYPD's part. The Police Department is a public agency and therefore has (at best) a nominal right to privacy within the precinct itself. To the extent that the NYPD has a privacy interest in some portions of the precinct, it cannot possibly

have an interest in the lobby of the building because it freely allows members of the public to enter.

Dated: September 19, 2023

Yours, etc.

JACOB URIEL, ESQ.
*Attorney for the Defendant*
Uriel Criminal Defense, P.C.
540 Court Street No. 4011
Brooklyn, NY 11231
Phone: 718-775-0689
Email: Jacob@LawUriel.com

Served Via Email and Electronic Document Delivery

To:     District Attorney,
        Kings County
        C/O A.D.A. James Hamilton
        350 Jay Street,
        Brooklyn, NY 11201
        hamiltonc@brooklynda.org

        New York Police Department, Civil Section
        1 Police Plaza, Room 110A
        New York, NY 10038

        Clerk of the Court, Part AP3
        Criminal Court, Kings County

# EXHIBIT A

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR COUNTY OF KINGS

_____          STATE OF NEW YORK
THE PEOPLE OF THE STATE OF NEW YORK          COUNTY OF KINGS

                     V

SEANPAUL   REYES

_____

POLICE OFFICER JONATHAN ORTEGA SAYS THAT ON OR ABOUT JUNE 01,2023 AT
APPROXIMATELY 11:15 AM AT 1000 SUTTER AVENUE COUNTY OF KINGS, STATE OF NEW YORK,

THE DEFENDANT COMMITTED THE OFFENSE(S) OF:

PL 195.05                 OBSTRUCTING GOVERNMENTAL ADMINISTRATION IN THE
                          SECOND DEGREE
PL 140.10(A)              CRIMINAL TRESPASS IN THE THIRD DEGREE
PL 140.05                 TRESPASS


IN THAT THE DEFENDANT DID:

KNOWINGLY ENTER OR REMAIN UNLAWFULLY IN OR UPON PREMISES; KNOWINGLY ENTER OR
REMAIN UNLAWFULLY IN A BUILDING OR UPON REAL PROPERTY WHICH WAS FENCED OR
OTHERWISE ENCLOSED IN A MANNER DESIGNED TO EXCLUDE INTRUDERS; INTENTIONALLY
OBSTRUCT, IMPAIR OR PERVERT THE ADMINISTRATION OF LAW OR OTHER GOVERNMENTAL
FUNCTION OR PREVENT OR ATTEMPT TO PREVENT A PUBLIC SERVANT FROM PERFORMING AN
OFFICIAL FUNCTION, BY MEANS OF INTIMIDATION, PHYSICAL FORCE OR INTERFERENCE,
OR BY MEANS OF ANY INDEPENDENTLY UNLAWFUL ACT, OR BY MEANS OF INTERFERING, WHETHER
OR NOT PHYSICAL FORCE IS INVOLVED, WITH RADIO, TELEPHONE, TELEVISION OR OTHER
TELECOMMUNICATIONS SYSTEMS OWNED OR OPERATED BY THE STATE, OR A COUNTY, CITY,
TOWN, VILLAGE, FIRE DISTRICT OR EMERGENCY MEDICAL SERVICE OR BY MEANS OF
RELEASING A DANGEROUS ANIMAL UNDER CIRCUMSTANCES EVINCING THE DEFENDANT'S INTENT
THAT THE ANIMAL OBSTRUCT GOVERNMENTAL ADMINISTRATION.

THE SOURCE OF DEPONENT'S INFORMATION AND THE GROUNDS FOR DEPONENT'S BELIEF ARE
AS FOLLOWS:


THE DEPONENT STATES, THAT DEPONENT WAS PERFORMING DEPONENT'S OFFICIAL DUTIES IN
THAT DEPONENT WAS WORKING INSIDE OF THE 075 COMMAND AND THE DEPONENT OBSERVED
THE DEFENDANT VIDEO RECORDING WITHIN THE POLICE STATION AND THE DEPONENT ASKED
THE DEFENDANT TO STOP VIDEO RECORDING WITH THE DEFENDANT'S CELLPHONE, TRIPOD,
MICROPHONE, AND A SMARTWATCH AND DEFENDANT CONTINUED TO VIDEO RECORD AND REFUSED
TO COMPLY AND THEN THE DEPONENT ASKED THE DEFENDANT TO LEAVE THE POLICE STATION
WHEREUPON DEFENDANT STATED IN SUM AND SUBSTANCE, I HAVE A RIGHT TO BE INSIDE AND
YOU CAN'T KEEP ME OUT AND THEN THE DEPONENT ESCORTED THE DEFENDANT OUT OF THE
POLICE STATION WHILE THE DEFENDANT PREVENTED THE DOORS FROM CLOSING AND UPON THE
DEFENDANT EXITING THE POLICE STATION THE DEPONENT TOLD THE DEFENDANT IF THE
DEFENDANT REENTERS THE POLICE STATION THE DEFENDANT WOULD BE ARRESTED FOR
TRESPASSING AND SUBSQUENTLY THE DEFENDANT REENTERED THE POLICE STATION AND
STARTED TO VIDEO RECORD AND THE DEPONENT ARRESTED THE DEFENDANT.

THE DEPONENT FURTHER STATES THAT THE DEPONENT IS THE CUSTODIAN OF THE ABOVE-
DESCRIBED DWELLING AND DEFENDANT DID NOT HAVE PERMISSION OR AUTHORITY TO ENTER
OR REMAIN THEREIN.




                          FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
                          PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
                          TO SECTION 210.45 OF THE PENAL LAW.

        6/1/23                              _____
DATE                                        SIGNATURE

# EXHIBIT B



## PATROL GUIDE

| Section:  General Regulations | Procedure No:   203-29 |
|---|---|

### WHEN A MEMBER OF THE SERVICE ENCOUNTERS AN INDIVIDUAL OBSERVING, PHOTOGRAPHING, AND/OR RECORDING POLICE ACTIVITY

| DATE ISSUED:<br>01/10/21 | DATE EFFECTIVE:<br>01/10/21 | REVISION NUMBER: | PAGE:<br>1 of 2 |
|---|---|---|---|

1.     Individuals have a right to lawfully observe and/or record police activity including, but not limited to detentions, searches, arrests or uses of force. The right to lawfully observe and/or record police activity extends to individuals in public places, such as streets, sidewalks, and parks, as well as private property in which the individual has a legal right to be present, such as buildings, lobbies, workplaces or an individual's own property.  This right to observe and/or record police action can be limited for reasons such as the safety of officers or other members of the public, or when a violation of law is committed by the individual(s) who are observing/recording.  The following guidelines should be utilized by members of the service whenever the above situation exists:

    a.    DO NOT:
- (1) Intentionally prevent, or attempt to prevent, an individual from recording police activities,
- (2) Threaten, intimidate, or otherwise discourage an observer from recording police activities,
- (3) Command an individual to cease recording when an individual is authorized to do so under law,
- (4) Stop, seize, search, summons, or arrest an individual solely because such individual recorded police activities,
- (5) Seize property or instruments used by an individual to record police activities,
- (6) Delete or seize recorded images of police activity from an individual's recording device, unless authorized by law, and/or
- (7) Copy a recording of police activity without consent of the individual who made the recording.

    b.    Absent additional actions constituting a violation of law, an individual CANNOT be arrested for:
- (1) Taking photographs, videotaping, or making a digital recording,
- (2) Requesting or making note of shield numbers or names of members of the service,
- (3) Criticizing the police or objecting to police activity,
- (4) Refusing to leave the area, and/or
- (5) Using crude or vulgar speech.

2.     An arrest for Obstruction of Governmental Administration (Penal Law section 195.05) requires probable cause to believe the person(s) is obstructing governmental administration.  Actual interference with the performance of an official police function is required.  Interference can include actual physical force (touching or physically interfering with the officer or the suspect, (e.g., using a camera so close to the officer's face that it intentionally obstructs their view), intruding into the physical space necessary to safely perform police operations and refusing to obey an order to move back, or purposefully engaging in passive behavior that prevents an officer from taking enforcement action (e.g., blocking a prisoner van, etc.). Members of the service are required by Administrative Code 14-189 to document instances in which an individual who was recording police activities is arrested or summonsed, as per P.G. 209-03, P.G. 209-09, and P.G. 209-12, by indicating "RTR" for "Right to Record" on the summons.

### NEW • YORK • CITY • POLICE • DEPARTMENT

## PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 203-29 | 01/10/21 | | 2 of 2 |

      3.     This procedure is not intended in any manner to limit the authority of the police to establish police lines (e.g., crowd control at scenes of fires, demonstrations, special events, etc.).

      4.     When probable cause exists that a recording device contains evidence of a crime:

     a.    Inform the observer that there is probable cause to believe that the recording contains evidence of a crime,

     b.    Request consent to view the recording in a manner that elicits a clear "yes" or "no" response. If possible, use Body-Worn Camera to record request and the individual's response. If consent is given, it may be possible for the individual to email the recording directly to the member of the service's Department-issued smartphone,

     c.    If the observer refuses to give consent, inform them that a search warrant for the device will be requested.  Inform the observer that deletion of the content of the recording may be considered tampering with physical evidence in violation of Penal Law section 215.40,

     d.    If the member of the service reasonably believes that the observer will delete the recording, obtain approval from a supervisor to seize the device if feasible (or obtain approval from a supervisor either before or immediately after seizing a device). Seize the device only for the time necessary to secure a warrant,

     e.    Do not view or delete the recording,

     f.    Obtain a search warrant, and

     g.    If there is probable cause to believe that an exigency exists and that the recording contains evidence of a crime, contact a supervisor to determine whether review of the recording absent a warrant is permitted.

      5.     A supervisor must be requested to respond where an observer is arrested for interference with police action or where the contents of a recording device are believed to contain evidence of a crime.

      6.     Members of the service may contact the Legal Bureau if they have any questions regarding an arrest for Obstruction of Governmental Administration or the seizure of a recording device that may contain evidence of a crime.

      7.     Members of the public are not allowed to photograph and/or record police activity within Department facilities.  Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity.  If such person refuses to stop, they then should be ordered to leave the premises.  If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law sections 140.05 and 140.10).

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# EXHIBIT C

# ADMINISTRATIVE GUIDE



| Section:   General Regulations | Procedure No:   304-21 |
|---|---|
| **WHEN A MEMBER OF THE SERVICE ENCOUNTERS AN INDIVIDUAL OBSERVING, PHOTOGRAPHING, AND/OR RECORDING POLICE ACTIVITY** | |

| DATE EFFECTIVE:<br>06/10/21 | LAST REVISION:<br>I.O. 47 | PAGE:<br>1 of 2 |
|---|---|---|

1.    Individuals have a right to lawfully observe and/or record police activity including, but not limited to detentions, searches, arrests or uses of force. The right to lawfully observe and/or record police activity extends to individuals in public places, such as streets, sidewalks, and parks, as well as private property in which the individual has a legal right to be present, such as buildings, lobbies, workplaces or an individual's own property.  This right to observe and/or record police action can be limited for reasons such as the safety of officers or other members of the public, or when a violation of law is committed by the individual(s) who are observing/recording.  The following guidelines should be utilized by members of the service whenever the above situation exists:

 a. DO NOT:

  (1) Intentionally prevent, or attempt to prevent, an individual from recording police activities,

  (2) Threaten, intimidate, or otherwise discourage an observer from recording police activities,

  (3) Command an individual to cease recording when an individual is authorized to do so under law,

  (4) Stop, seize, search, summons, or arrest an individual solely because such individual recorded police activities,

  (5) Seize property or instruments used by an individual to record police activities,

  (6) Delete or seize recorded images of police activity from an individual's recording device, unless authorized by law, and/or

  (7) Copy a recording of police activity without consent of the individual who made the recording.

 b. Absent additional actions constituting a violation of law, an individual CANNOT be arrested for:

  (1) Taking photographs, videotaping, or making a digital recording,

  (2) Requesting or making note of shield numbers or names of members of the service,

  (3) Criticizing the police or objecting to police activity,

  (4) Refusing to leave the area, and/or

  (5) Using crude or vulgar speech.

2.    An arrest for Obstruction of Governmental Administration (Penal Law section 195.05) requires probable cause to believe the person(s) is obstructing governmental administration.  Actual interference with the performance of an official police function is required.  Interference can include actual physical force (touching or physically interfering with the officer or the suspect, (e.g., using a camera so close to the officer's face that it intentionally obstructs their view), intruding into the physical space necessary to safely perform police operations and refusing to obey an order to move back, or purposefully engaging in passive behavior that prevents an officer from taking enforcement action (e.g., blocking a prisoner van, etc.). Members of the service are required by Administrative Code 14-189 to document instances in which an individual who was recording police activities is arrested or summonsed, as per P.G. 209-03, P.G. 209-09, and P.G. 209-12, by indicating "RTR" for "Right to Record" on the summons.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# ADMINISTRATIVE GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | LAST REVISION: | PAGE: |
|---|---|---|---|
| 304-21 | 06/10/21 | I.O. 47 | 2 of 2 |

    3.     This procedure is not intended in any manner to limit the authority of the police to establish police lines (e.g., crowd control at scenes of fires, demonstrations, special events, etc.).

    4.     When probable cause exists that a recording device contains evidence of a crime:

       a.     Inform the observer that there is probable cause to believe that the recording contains evidence of a crime,

       b.     Request consent to view the recording in a manner that elicits a clear "yes" or "no" response. If possible, use Body-Worn Camera to record request and the individual's response. If consent is given, it may be possible for the individual to email the recording directly to the member of the service's Department-issued smartphone,

       c.     If the observer refuses to give consent, inform them that a search warrant for the device will be requested.  Inform the observer that deletion of the content of the recording may be considered tampering with physical evidence in violation of Penal Law section 215.40,

       d.     If the member of the service reasonably believes that the observer will delete the recording, obtain approval from a supervisor to seize the device if feasible (or obtain approval from a supervisor either before or immediately after seizing a device). Seize the device only for the time necessary to secure a warrant,

       e.     Do not view or delete the recording,

       f.     Obtain a search warrant, and

       g.     If there is probable cause to believe that an exigency exists and that the recording contains evidence of a crime, contact a supervisor to determine whether review of the recording absent a warrant is permitted.

    5.     A supervisor must be requested to respond where an observer is arrested for interference with police action or where the contents of a recording device are believed to contain evidence of a crime.

    6.     Members of the service may contact the Legal Bureau if they have any questions regarding an arrest for Obstruction of Governmental Administration or the seizure of a recording device that may contain evidence of a crime.

    7.     Members of the public are not allowed to photograph and/or record police activity within Department facilities.  Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity.  If such person refuses to stop, they then should be ordered to leave the premises.  If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law sections 140.05 and 140.10).

**NEW • YORK • CITY • POLICE • DEPARTMENT**

CRIMINAL COURT: CITY OF NEW YORK
COUNTY OF KINGS: PART AP3

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK, | CR-019322-23KN |
| v | |
| SEANPAUL REYES | AFFIRMATION OF SERVICE |

I, JACOB URIEL, an attorney duly admitted to the practice of law in the State of New York, depose and affirm as follows:

On September 19, 2023, I served a true copy of the affixed Motion to Dismiss upon the District Attorney, County of Kings, by emailing the same to hamiltonj@brooklynda.org, which is an authorized method of service approved by the District Attorney on notice to the court.

On September 19, 2023, I also served the New York Police Department, Civil Section with a copy of the affirmation and section § VI of the memorandum of law via certified mail to 1 Police Plaza, Room 110A, New York, NY 10038.

The above statement is made under penalty of perjury pursuant to CPLR. 2106.

JACOB URIEL, ESQ.