23 Civ. 6369 (JGLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEANPAUL REYES,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

### HON. SYLVIA O. HINDS-RADIX

*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
100 Church Street, Room 3-133b
New York, New York 10007-2601

*Of Counsel:*   Mark D. Zuckerman
*Tel:*  (212) 356-3519

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT

    POINT I

        PLAINTIFF'S CLAIMS UNDER THE FIRST
        AMENDMENT FAIL.................................................................. 7

        A.  The Facilities Policy Is a Reasonable,
            Viewpoint-Neutral Regulation of a Limited
            Public Forum or Nonpublic Forum....................................... 7

        B.  Plaintiff's First Amendment Retaliation Claim
            Should Also Be Dismissed. .................................................. 12

    POINT II

        THE COURT SHOULD DECLINE
        SUPPLEMENTAL JURISDICTION OVER
        PLAINTIFF'S STATE AND CITY LAW CLAIMS .............................. 13

        A.  The Court Should Decline Supplemental
            Jurisdiction over Plaintiff's Right to Record Act
            Claims. ............................................................................. 13

        B.  Regardless of Whether the Court Dismisses
            Plaintiff's Federal Claim, It Should Decline
            Supplemental Jurisdiction over His CAPA
            Claim................................................................................ 15

    POINT III

        PLAINTIFF'S RIGHT TO RECORD ACT
        CLAIMS FAIL........................................................................ 18

        A.  The NYPD May Impose Conditions of Entry
            that Safeguard Privacy and Security as
            Proprietor of its Own Facilities........................................... 18

**Page**

B.   Legislative History Shows That the Right to Record Acts Codify a Pre-Existing Right to Record in Public, Not Expand That Right to Police Precincts............................................................... 20

CONCLUSION............................................................................................................. 23

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Pages**

ACLU v. Alvarez,
    679 F.3d 583 (7th Cir. 2012) ...................................................................21

Aquino v. City of New York,
    16 Civ. 1577 (GHW),
    2017 U.S. Dist. LEXIS 10436 (S.D.N.Y. Jan. 25, 2017)......................................7

Ark. Educ. Television Comm'n v. Forbes
    523 U.S. 666 (1998)................................................................................9

Ashcroft v. Iqbal,
    556 U.S. 662 (2008).................................................................................5

Bd. of Higher Ed. v. Students for a Democratic Soc'y,
    60 Misc.2d 114 (N.Y. Sup. Ct., Queens Cty. 1969) ..............................................18

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................5

Bey v. City of N.Y.,
    99 Civ. 3873 (LLM),
    2010 U.S. Dist. LEXIS 99645 (S.D.N.Y. Sept. 20, 2010).......................................4

Broder v. Cablevision Sys. Corp.,
    418 F.3d 187 (2d Cir. 2005)........................................................................6

Cartagena v. City of New York,
    257 F. Supp.2d. 708 (S.D.N.Y. 2003)..............................................................17

Carver v. Nassau Cty. Interim Fin. Auth.,
    730 F.3d 150 (2d Cir. 2013)................................................................16, 17, 18

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)........................................................................6

City of Almaty v. Ablyazov,
    15 U.S. Civ. 5345 (AJN),
    2019 U.S. Dist. LEXIS 55183 (S.D.N.Y. Mar. 29, 2019) .......................................4

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983)................................................................................12

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
    473 U.S. 788 (1985)..............................................................................8, 9

**Cases**                                                                                                                       **Pages**

DeLuca v. AccessIT Group, Inc.,
    695 F. Supp.2d 54 (S.D.N.Y. 2010)............................................................................6

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)......................................................................................6

Dorsett v. Cnty. of Nassau,
    732 F.3d 157 (2d Cir. 2013)....................................................................................13

Ellis v. Allen,
    4 A.D.2d 343 (3d Dep't 1957)................................................................................18

Field v. City of Phila.,
    862 F.3d 353 (3d Cir. 2017) (3d Cir. 2017)............................................................21

Fighting Finest v. Bratton,
    898 F.Supp. 192 (S.D.N.Y. 1995),
    aff'd 95 F.3d 224 (2d Cir. 1996)..............................................................................11

Glik v. Cunniffe,
    655 F.3d 78 (1st Cir. 2011)......................................................................................21

Hill v. Colorado,
    530 U.S. 703 (2000)................................................................................................10

Hirsch v. Complex Media, Inc.,
    18 Civ. 5488 (CM),
    2018 U.S. Dist. LEXIS 209701 (S.D.N.Y. Dec. 10, 2018) .....................................6

Hotel Emps. & Rest. Union, Loc. 100 of New York v. City of New York Parks
    and Recreation,
    311 F.3d 534 (2d Cir. 2002)..................................................................................8, 9

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)......................................................................................5

Irish Lesbian & Gay Org. v. Giuliani,
    143 F.3d 638 (2d Cir. 1998)......................................................................................4

Kaehny v. Lynn,
    172 Misc. 2d 295 (N.Y. Sup., N.Y. Cty. 1997) .....................................................16

Klein & Co. Futures, Inc. v. Board of Trade of City of New York,
    464 F.3d 255 (2d Cir. 2006)....................................................................................14

**Cases**        **Pages**

Kolari v. N.Y. Presbyterian Hosp.,
  455 F.3d 118 (2d Cir. 2006).................................................................................14

Liang v. City of N.Y.,
  10 Civ. 3849 (ENV),
  2014 U.S. Dist. LEXIS 141090 (E.D.N.Y. Sept. 29, 2014).....................................4

Los Angeles County v. Humphries,
  562 U.S. 29 (2010)................................................................................................7

Lubonty v. U.S. Bank Nat'l Ass'n,
  34 N.Y.3d 250 (2019) ..........................................................................................20

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992)..............................................................................................12

Make The Rd. by Walking, Inc. v. Turner,
  378 F.3d 133 (2d Cir. 2004)..........................................................................8, 9, 10

Malone v. City of New York,
  192 A.D.3d 510 (1st Dep't 2021) .........................................................................16

Monell v. Dep't of Social Services,
  436 U.S. 658 (1978)............................................................................................4, 7

Morse v. Univ. of Vt.,
  973 F.2d 122 (2d Cir. 1992)..................................................................................14

Pani v. Empire Blue Cross Blue Shield,
  152 F.3d 67 (2d Cir. 1998)....................................................................................20

Patriot Organics LLC v. N.Y.C. Dep't of Envt'l Protection,
  2022 Misc. LEXIS 17715 (Sup. Ct., Queens Co. Oct. 20, 2022) ...........................16

People v. Alderson,
  144 Misc. 2d 133 (N.Y. Crim. Ct., N.Y. Cty. 1989)..............................................18

People v. Graves,
  76 N.Y.2d 16 (1990) ............................................................................................18

People v. Martinez,
  43 Misc.2d 94 (N.Y. Crim. Ct., N.Y. Cty. 1964) ..................................................19

People v. Munroe,
  18 Misc.3d 9 (N.Y. App. Term, 2d Dep't 2007) ...................................................18

**Cases**                                             **Pages**

People v. Reape,
   22 Misc.3d 615 (N.Y. Crim. Ct., Kings Cty. 2008) ................................................................ 19

People v. Wallace,
   31 N.Y.3d 503 (2018) ........................................................................................................ 20, 21

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
   460 U.S. 37 (1983) ..................................................................................................................... 9

Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,
   37 N.Y.3d 591 (2021) ............................................................................................................... 18

Reyes v. City of N.Y.,
   23 Civ. 6369 (JGLC), 2023 U.S. Dist. LEXIS 196602
   (S.D.N.Y. Nov. 2, 2023) ....................................................... 7, 8, 9, 10, 12, 14, 15, 18

Rodney v. City of N.Y.,
   22 Civ. 1445 (LAK)(OTW),
   2023 U.S. Dist. LEXIS 223117 (S.D.N.Y. Dec. 14, 2023) ............................................ 7, 11

Rothenberg v. Daus,
   08 Civ. 587 (SHS),
   2014 U.S. Dist. LEXIS 105598 (S.D.N.Y. Jul. 31, 2014) ............................................... 16, 17

Rounseville v. Zahl,
   13 F.3d 625 (2d Cir. 1994) ....................................................................................................... 14

Seabrook v. Jacobson,
   153 F.3d 70 (2d Cir. 1998) ..................................................................................... 13, 14, 15, 16

Tyler v. City of Kingston,
   74 F.4th 57 (2d Cir. 2023) .............................................................................................. 8, 10, 11

Vail v. City of N.Y.,
   68 F.Supp.3d 412 (S.D.N.Y. 2014) ........................................................................................... 4

Wheelock v. Noonan,
   108 N.Y. 179 (1888) ................................................................................................................. 18

Williamsburg Around the Bridge Block Ass'n v. Giuliani,
   167 Misc. 2d 980 (N.Y. Sup., N.Y. Cty. 1995) ....................................................................... 16

**Cases**                                                                                     **Pages**

YMCA of Greater Rochester v. Town of Milo,
    563 F.Supp.3d 71 (W.D.N.Y. 2021) ..................................................................16

**Statutes**

28 U.S.C. § 1367(a) ..........................................................................................................13

28 U.S.C. § 1367(c) ..........................................................................................................13

28 U.S.C. § 1367(c)(1) ......................................................................................................14

28 U.S.C. § 1367(c)(3) ................................................................................................14, 17

42 U.S.C. § 1983 .................................................................................................................7

Fed. R. Civ. P. 8(a)(2) .......................................................................................................6

Fed. R. Civ. P. 12(b)(6) ........................................................................................4, 11, 20

Fed. R. Civ. P. 12(c) ...........................................................................................1, 4, 11

N.Y.C. Admin. Code §14-189(b) ..................................................................................2, 19

N.Y.C. Charter § 1043 ..................................................................................................4, 16

N.Y. Civ. Rights L. §79-p(1)(a) .......................................................................................20

N.Y. Civ. Rights L. § 79-p(2) .......................................................................................3, 19

N.Y. Penal Law § 140.00(5) .............................................................................................18

N.Y. Penal Law § 140.05 ..............................................................................................2, 18

N.Y. Penal Law § 140.10 ....................................................................................................2

**Other Authorities**

Restatement 2d of Torts §168 ...........................................................................................18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

SEANPAUL REYES,

                                        Plaintiff,

                -against-

THE CITY OF NEW YORK,

                                        Defendant.

------------------------------------------------------------------------ x

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

23 Civ. 6369 (JGLC)

## <u>PRELIMINARY STATEMENT</u>

Defendant City of New York (the "City") hereby respectfully submits its Memorandum of Law in Support of its motion for judgment on the pleadings and the dismissal with prejudice of plaintiff's complaint (the "Complaint") pursuant to Rule 12(c), Fed. R. Civ. P. For the reasons set forth herein, the City's motion should be granted in its entirety. Simply, plaintiff's federal claims fail as plaintiff does not have an underlying First Amendment right to record in the lobbies of NYPD precincts. As such, since plaintiff's federal claims are all subject to dismissal, the Court should decline supplemental jurisdiction over plaintiff's state law claims. Regardless, should the Court nevertheless decide plaintiff's state law claims upon the City's motion, plaintiff's claims fail as the State Right to Record Act (hereinafter "SRTRA") and the City Right to Record Act (hereinafter "CRTRA"), do not grant a right to record in the lobbies of police precincts. As such, dismissal of the Complaint with prejudice is warranted.

## <u>STATEMENT OF FACTS</u>

The following facts are alleged to be true by plaintiff. SeanPaul Reyes is an independent journalist who records his encounters with public officials who are performing public duties. (Complaint, ¶1) He alleges that he does so to "educate others on what to expect from such

encounters and as an expression of his First Amendment rights."  (Complaint, ¶1)  Plaintiff publishes his journalism on YouTube under the name "Long Island Audit."  (Complaint, ¶2)  Plaintiff alleges that, over the course of more than two years, he has posted close to 300 videos on his channel and amassed over 500,000 subscribers.  (Complaint, ¶20)

In 2018, the NYPD issued Patrol Guide Procedure No. 203-29 (Complaint, ¶34), which generally allows civilians to record the police in public places such as "streets, sidewalks, and parks, as well as private property in which the individual has a legal right to be present … (Exhibit B to Complaint, ¶1). However, the procedure curtails civilian recordings inside NYPD facilities themselves, where privacy and safety concerns are elevated.  Specifically, the procedure states: "Members of the public are not allowed to photograph and/or record police activity within Department facilities.  Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity.  If such person refuses to stop, then they should be ordered to leave the premises.  If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law Sections 140.05 and 140.10)."  (Exhibit B to Complaint, ¶7 (the "Facilities Policy"))  The NYPD has posted signs in every or nearly every precinct stating that recording in precincts is prohibited.  (Complaint, ¶40)

Following the May 25, 2020 murder of George Floyd and ensuing nationwide demonstrations, the New York City Council passed the CRTRA, which Mayor de Blasio signed on June 18, 2020.  (Complaint, ¶46)  The CRTRA states, in relevant part, that "[a] person may record police activities...."  N.Y.C. Admin. Code §14-189(b).  The similarly worded SRTRA, which became effective in July 2020, states that "[a] person not under arrest or in the custody of a

law enforcement official has the right to record law enforcement activity...." L. 2020, ch. 100, § 2 (codified at N.Y. Civ. Rights L. § 79-p(2)).

Plaintiff alleges that, on April 4, 2023, he chose to file a complaint at the Sixty-First Precinct in Brooklyn.  (Complaint, ¶61)  He alleges that he "chose to record the incident, as he does regularly, to document to his viewers the process of obtaining a complaint form and filing a complaint with the NYPD."  (Complaint, ¶61)  He began recording a video before he entered the 061 and continued to record until he was arrested and his equipment was confiscated.  (Complaint, ¶62)

Plaintiff entered a small waiting area, accessible to the public, where a line of people waited to speak with an NYPD representative who sat behind a glass barrier.  (Complaint, ¶63)  A door led from the waiting area into the precinct proper.  (Complaint, ¶63)  Plaintiff took his place in line to wait for his turn at the window.  (Complaint, ¶64)  Plaintiff recorded several civilians in the lobby and zoomed in on a police officer standing in the doorway of a restricted area.  (Video, Exhibit A to Declaration of Mark D. Zuckerman (hereinafter "Zuckerman Decl."))  Plaintiff also later zoomed in to the restricted area behind the desk where civilians are able to speak with officers.  (Ex. A to Zuckerman Decl.)  Plaintiff also video recorded the hallway of the restricted area.  (Ex. A to Zuckerman Decl.)  The video recording captures NYPD Sgt. Tosares Korchimet entering a security code into a keypad.  (Ex. A to Zuckerman Decl.) Plaintiff's video also captures the NYPD security cameras in the lobby.  (Ex. A to Zuckerman Decl.)

Sgt. Korchimet pointed to a sign in the window of the booth, which read, "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO OR VIDEO RECORDING OR PHOTOGRAPHING THIS FACILITY."  (Complaint, ¶65)  Plaintiff was subsequently arrested when he refused to stop recording or leave the Precinct.  (Complaint, ¶¶66-72)  He was

charged with trespassing, but the District Attorney's Office declined to prosecute.  (Exhibits D, E to Complaint)

On July 24, 2023, plaintiff sued the City of New York, bringing five causes of action: (i) a First Amendment Monell claim alleging that the Facilities Policy is unconstitutional; (ii) a First Amendment retaliation claim arising out of plaintiff's April 4, 2023 arrest; (iii) a claim that the Facilities Policy was not promulgated in accordance with the rulemaking provisions of the City Administrative Procedure Act (CAPA), N.Y.C. Charter § 1043; (iv) a claim under the CRTRA; and (v) a claim under the SRTRA.  (Complaint, ¶¶130)  Although plaintiff's claims are purportedly based on his past arrest, he does not seek damages.  Instead, he seeks a forward-looking injunction that would bar the City from enforcing the Facilities Policy in future cases. (Complaint, Prayer for Relief)  The City filed an amended answer on December 11, 2023  (ECF No. 52).

## **LEGAL STANDARD**

"[T]he test for evaluating a 12(c) motion is the same as that applicable to a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6)."  Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).[1]  "To survive a motion to dismiss, a complaint must contain sufficient factual

---

[1] A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). This motion will not delay trial, as no trial date has been set and fact discovery does not close until May at the earliest (ECF No. 55 at 2). See City of Almaty v. Ablyazov, 15 U.S. Civ. 5345 (AJN), 2019 U.S. Dist. LEXIS 55183, at *10 (S.D.N.Y. Mar. 29, 2019) ("When, as here, the Rule 12(c) motion has no effect on the trial schedule, it need not be barred as untimely."); Vail v. City of N.Y., 68 F.Supp.3d 412, 422-23 (S.D.N.Y. 2014) (Rule 12(c) motion timely where it was filed seven months after the plaintiff amended their complaint, discovery was ongoing, and a trial date had not yet been set); Liang v. City of N.Y., 10 Civ. 3849 (ENV), 2014 U.S. Dist. LEXIS 141090, at *6-*7 (E.D.N.Y. Sept. 29, 2014) (Rule 12(c) timely even though fact discovery was closed). Moreover, to the extent some or all of plaintiff's claims can be resolved on purely legal grounds, this motion "serves the interest of judicial economy." Bey v. City of N.Y., 99 Civ. 3873 (LLM), 2010 U.S. Dist. LEXIS 99645, at *13 (S.D.N.Y. Sept. 20, 2010).

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (quoting Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

Two working principles determine whether a complaint may survive a motion to dismiss.  Ashcroft, 556 U.S. at 678-679.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id. (citing Twombly, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  "But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]" – "that the pleader is entitled to relief.'"  Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit'").  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document integral to the complaint."  Chambers, 282 F.3d at 152-53. "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents…[and] [t]o be integral to a complaint, the plaintiff must have 1) actual notice of the extraneous information and 2) relied upon the documents in framing the complaint."  DeLuca v. AccessIT Group, Inc., 695 F. Supp.2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers at 153).  "Insofar as the complaint relies on the terms" of a document either annexed or deemed incorporated by reference, the court "need not accept its description," but may look to the document itself.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  Where a video is incorporated by reference or integral to the complaint, it may be considered upon a motion to dismiss, and the "[c]ourt need not accept the party's characterizations" of it.  See Hirsch v. Complex Media, Inc., 18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701, at *6-7 (S.D.N.Y. Dec. 10, 2018).

**ARGUMENT**

**POINT I**

**PLAINTIFF'S CLAIMS UNDER THE FIRST AMENDMENT FAIL**

A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978); see also Los Angeles County v. Humphries, 562 U.S. 29 (2010) (Monell's bar on *respondeat superior* liability under § 1983 applies to claims for injunctive relief). Instead, to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). While there is no dispute that plaintiff has plausibly alleged that the Facilities Policy is an "official policy or custom," plaintiff's § 1983 claims nevertheless fail because the policy does not violate the Constitution.

**A.    The Facilities Policy Is a Reasonable, Viewpoint-Neutral Regulation of a Limited Public Forum or Nonpublic Forum.**

This Court has already held, in the context of plaintiff's motion for a preliminary injunction, that the Facilities Policy likely does not violate the First Amendment. See Reyes v. City of N.Y., 23 Civ. 6369 (JGLC), 2023 U.S. Dist. LEXIS 196602, at *14-*30 (S.D.N.Y. Nov. 2, 2023). Since then, in another case in this district challenging the Facilities Policy, the Honorable Ona T. Wang recommended that the plaintiff's First Amendment claims be dismissed—citing this Court's reasoning with approval. See Rodney v. City of N.Y., 22 Civ. 1445 (LAK)(OTW), 2023 U.S. Dist. LEXIS 223117, at *14 (S.D.N.Y. Dec. 14, 2023) ("…Judge Clarke found that the NYPD Policy did not violate the First Amendment … and I agree with her analysis.") (M.J. Wang).

In line with those decisions, this Court should hold that the Facilities Policy does not contravene the First Amendment.  "Although the right to record police conducting official duties in public places is a constitutional right, '[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'" Reyes, at *16 (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985)).  Instead, speech restrictions are subject to a "forum based" analysis.  Id., at *16.  "[F]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: 1) the traditional public forum; 2) the designated public forum; 3) the limited public forum; and 4) the non-public forum."  Id., at *16-*17 (quoting Tyler v. City of Kingston, 74 F.4th 57, 61 (2d Cir. 2023).

"In determining the type of forum, courts 'examine the forum's physical characteristics and the context of the property's use, including its location and purpose.'"  Id., at *19 (quoting Hotel Emps. & Rest. Union, Loc. 100 of New York v. City of New York Parks and Recreation, 311 F.3d 534, 547 (2d Cir. 2002)).  "Courts additionally consider the 'government's intent in constructing the space and its need for controlling expressive activity on the property, evidenced by its policies or regulations.'"  Id.  "Finally, courts 'consider whether the property in question is part of a class of property which by history or tradition has been open and used for expressive activity.'"  Id.  "The fact that members of the public are permitted freely to visit a forum…does not abrogate its nonpublic status if the visitors are not permitted to express themselves freely in that forum."  Id., at *20 (quoting Make The Rd. by Walking, Inc. v. Turner, 378 F.3d 133, 144 (2d Cir. 2004)).  "Courts 'will not find that a public forum has been created in

the face of clear evidence of a contrary intent,' nor will courts 'infer that the government intended

to create a public forum when the nature of the property is inconsistent with expressive activity.'"

Id., at *22 (quoting Cornelius, supra, at 803).

      "The first category of public property — 'traditional' public fora — are places such

as streets and parks which have 'immemorially been held in trust for the use of the public, and

time out of mind, have been used for purposes of assembly, communicating between citizens, and

discussing public questions.'"  Id., at *17 (quoting Perry Educ. Ass'n v. Perry Local Educators'

Ass'n, 460 U.S. 37, 45 (1983)).  The second category, a "designated public forum," is one in which

the government "intentionally open[s] a nontraditional public forum for public discourse[.]" Id.,

at *18 (quoting Ark. Educ. Television Comm'n v. Forbes 523 U.S. 666, 677 (1998).  The third

category, a "limited public forum," exists "where the government opens a non-public forum but

limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects."

Id. (citing Hotel Emps. & Rests. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO

v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 545 (2d Cir. 2002)). The fourth

category, a "nonpublic" forum, "is public property that the government has not opened for

expressive activity by members of the public." Id., at *19 (citing Hotel Emps., 311 F.3d at 546).

      Here, as this Court held, precinct lobbies are not traditional public fora because they

are not historically used for "unrestricted expressive activities" such as assembly, communications

between citizens, or discussion of public questions. Id. at *22. Nor are they designated public fora

as  dedicated to such expressive activity, as "[t]here is no evidence that the government intended

to open up police precinct lobbies for expressive activities, like peaceful protesting and leafleting,

beyond being open to members of the public seeking assistance from the police."  Id.  Instead,

these lobbies are nonpublic fora, akin to "waiting rooms at a city agency."  Id.; see Make the Rd.

by Walking, supra, at 145 ("Job Center waiting rooms must be categorized as nonpublic forums.").
**At most**, as this Court has previously held, police precinct lobbies are limited public fora dedicated to interactions between civilians and police on matters of public safety, such as reporting crimes, filing complaints, and obtaining information from law enforcement. See Reyes, at *20-*21.

Regardless of whether precinct lobbies are classified as limited public fora or nonpublic fora, the constitutional test is the same: the Facilities Policy should be upheld if it is reasonable and viewpoint neutral. See id. at *24; Make The Rd. by Walking, Inc., supra, at 143 ("Restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral."); id. ("Restrictions on speech in a nonpublic forum need only be reasonable and viewpoint neutral.").[2] And indeed, the Facilities Policy satisfies both of those requirements. Plaintiff does not dispute that the policy is viewpoint neutral on its face. See Reyes, at *30. And, as this Court has already suggested, it is a reasonable restriction in light of the "privacy, safety and security interests that are implicated by video recordings in police precinct lobbies." Cf. id. at *29-30. "Indeed, there is a legitimate state interest in protecting the safety of citizens." Id. at *25 (citing Hill v. Colorado, 530 U.S. 703, 715 (2000)). "Victims and witnesses of crime may be less willing to go to a precinct to make a report if they know that they may be captured on camera doing so ... especially when that recording may be posted online for anyone to access." Id.

---

[2] This Court rightly rejected plaintiff's argument that, "[e]ven if a police precinct were a limited public forum dedicated to discussions of public safety, [p]laintiff's reporting on police activity is squarely within that dedication." Reyes, at *23. For one thing, this is a facial challenge to the Facilities Policy itself, as the only relief plaintiff seeks is a citywide injunction against the policy. (Complaint, Prayer for Relief)  Since there is no as-applied challenge, plaintiff's own conduct is irrelevant.  And in any event—as this Court correctly held—"in limited public fora, 'government entities are permitted to restrict the form or manner of speech offered by members of the public, even if such speech addresses the topic or agenda of that forum.'" Reyes, at *23 (quoting Tyler, 74 F.4th at 63).

While people and objects in a precinct lobby can already be seen by others, "being able to view or listen to these occurrences is different from being able to record them and post them to the internet for anyone to view." Id. at *28.  Indeed, by seeking to vindicate a supposed right to record the police, plaintiff implicitly acknowledges that recording an event *is* different from seeing it.  The very same aspects of audiovisual recordings that can make them useful to independent journalists like plaintiff can also make them invasive, even dangerous, when they compromise someone's privacy.  "Recording creates a permanent image," and "[a]udio may pick up on conversations or noises that a person's ear cannot hear." Id.  NYPD's policy is a reasonable balancing of these concerns, establishing a broad right to record in public spaces like "streets, sidewalks, and parks" while narrowly restricting this right in precinct buildings where privacy and security risks are elevated.  (See Exhibit B to Complaint)

Although this Court's previous conclusion that the Facilities Policy is reasonable arose in a different procedural posture, the reasonableness of the policy is apparent from the pleadings themselves and may therefore be resolved on a Rule 12(c) motion.  See Tyler, 74 F.4th at 63-66 (affirming Rule 12(b)(6) dismissal of First Amendment claim on grounds that challenged regulation was reasonable); Fighting Finest v. Bratton, 898 F.Supp. 192, 197-98 (S.D.N.Y. 1995), aff'd 95 F.3d 224 (2d Cir. 1996) (same); Rodney, 2023 U.S. Dist. LEXIS 223117, at *14, *16 (recommending dismissal under Rule 12(b)(6) of First Amendment claims challenging Facilities Policy).  Here, the material incorporated in the Complaint explains that police stations are "frequented by crime victims, undercover officers and other people who need privacy," according to NYPD's assistant deputy commissioner of legal matters. (Ashley Southall, *Video of Man Berating Officer Opens Debate Over Recording in Police Stations*, N.Y. TIMES (Aug. 21, 2018),

cited in Complaint, ¶39)[3] And plaintiff's own recording of the 61st Precinct—also incorporated by reference in the Complaint (Complaint, ¶62)—shows how such activities create security risks; plaintiff was able to film an entry code on a keypad and the location of security cameras. See Reyes, at *29. Further underscoring the reasonableness of the policy is plaintiff's admission that Patrol Guide Procedure No. 203-29 (which contains the policy) was issued in settlement of another lawsuit in this district—a lawsuit whose aim was to *expand* the public's right to record police activities (Complaint, ¶34 & Exhibits A, B thereto).

**B.    Plaintiff's First Amendment Retaliation Claim Should Also Be Dismissed.**

Insofar as plaintiff brings a First Amendment retaliation claim, that claim should also be dismissed. For one thing, plaintiff's claim that his *past* arrest was unconstitutional (Complaint, ¶¶104-11), in and of itself, does not confer Article III standing to sue for *forward-looking* relief.  (Complaint, Prayer for Relief). See City of Los Angeles v. Lyons, 461 U.S. 95, 100-05 (1983) (gathering cases).  That is because even if plaintiff were granted the full relief he seeks—an injunction prohibiting the City from enforcing the Facilities policy in the future—it would not redress the injury, if any, that he suffered because of his prior arrest.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (to possess standing to bring a claim, "it must be likely … that the injury will be redressed by a favorable decision.") (cleaned up).  Indeed, the only consequence of that arrest was a short-lived prosecution that was dismissed before this lawsuit was filed.  (Exhibits D, E to Complaint)

In any event, plaintiff's retaliation claim fails on the merits. To prevail on a First Amendment retaliation claim, plaintiff must prove that (1) that he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise

---

[3] https://www.nytimes.com/2018/08/21/nyregion/recording-in-police-stations-newyork.html.

of that right; and 3) the defendants' actions caused him some injury.  <u>Dorsett v. Cnty. of Nassau</u>, 732 F.3d 157, 160 (2d Cir. 2013).  Here, plaintiff alleges that he was retaliated against because he exercised "his First Amendment right to record police performing their official duties in public." (Complaint,  ¶110)  But as explained above, the First Amendment does not grant plaintiff a right to record the police inside precinct lobbies.  Dismissal of plaintiff's First Amendment retaliation claim is therefore warranted.

**POINT II**

**THE   COURT   SHOULD   DECLINE SUPPLEMENTAL   JURISDICTION   OVER PLAINTIFF'S   STATE   AND   CITY   LAW CLAIMS**

**A.**   **The Court Should Decline Supplemental Jurisdiction over Plaintiff's Right to Record Act Claims.**

"Under 28 U.S.C. § 1367(a), federal courts have jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy." <u>Seabrook v. Jacobson</u>, 153 F.3d 70, 71 (2d Cir. 1998).  "Subsection (c) of § 1367 lists several circumstances in which the federal court may choose not to exercise that jurisdiction: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  <u>Id</u>.  "Other than the catch-all provision, the listed circumstances reflect concerns about the relationship between state and federal courts."  <u>Id</u>. "Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts.  This

13

is particularly true if the federal claim on which the state claim hangs has been dismissed." Id., at 72 (citing Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994)).

Because plaintiff's federal claims should be dismissed (Point I, supra), this Court should decline to exercise supplemental jurisdiction over plaintiffs' Right to Record Act claims. See 28 U.S.C. § 1367(c)(3); Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).[4] As the Second Circuit has articulated, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over the remaining state law claims." Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006). In the "usual case" where all federal claims "are eliminated before trial" the balance of factors to be considered – judicial economy, convenience, fairness, and comity – "will point toward declining to exercise jurisdiction over the remaining state law claims." Kolari, supra. As seen, plaintiff has failed to plausibly allege any federal claims.

There are other reasons that the Court should decline jurisdiction over plaintiff's state and municipal law claims as well. First, these claims present novel and unresolved issues of state and local law, 28 U.S.C. § 1367(c)(1), to wit, whether the CRTRA and SRTRA override the NYPD's common-law prerogative, as a proprietor of its facilities, to enforce reasonable conditions of entry upon its premises (Point III, infra). See Morse v. Univ. of Vt., 973 F.2d 122, 127-28 (2d Cir. 1992) (where federal claim was dismissed and state claim involved novel questions, "[p]rinciples of comity … dictate that [the state law] question be left for decision by the state

---

[4] This presents a different situation from the one that confronted the Court when it exercised supplemental jurisdiction in its decision deciding plaintiff's preliminary injunction motion. Reyes, supra, at *30-31. There, the Court had not dismissed the federal claim, so 28 U.S.C. § 1367(c)(3) did not then weigh in favor of dismissal. See Reyes, at *30.

courts"). Although this Court previously held that plaintiff's claims under the CRTRA and SRTRA do not implicate novel issues, see Reyes, at *31, it did not have the full benefit of the arguments below relating to those enactments. And the City is not aware of any published New York decisions construing the Acts—let alone in the context of government buildings, as opposed to the more typical case of civilians recording police on the streets.

A final factor weighing against supplemental jurisdiction is the fact that plaintiff's claims "concern[] the administration of state [and City] government and the balancing of important state policies[.]" Seabrook, supra, at 71; see also id. at 73 (concluding that where federal claim was dismissed and remaining claim "turn[ed] on a question of state law which not only is undecided, but which also requires a balancing of numerous important policies of state government," district court abused its discretion in exercising supplemental jurisdiction). As this Court already noted, the Facilities Policy safeguards the City's "legitimate state interest in protecting the safety of citizens," because "[v]ictims and witnesses of crime may be less willing to go to a precinct to make a report if they know that they may be captured on camera doing so." Reyes, at *25. And recordings may capture sensitive information, as plaintiff did here when he "zoomed in on various people and objects, underscoring some of the City's concerns about allowing recording inside police precinct lobbies." See id., at *28. Forcing the NYPD to permit such recordings at every precinct would mark a significant policy shift—one that should not be compelled before the New York State courts have had a chance to weigh in.

**B.**    **Regardless of Whether the Court Dismisses Plaintiff's Federal Claim, It Should Decline Supplemental Jurisdiction over His CAPA Claim.**

In its November 2 order, this Court did not expressly decide whether to exercise supplemental jurisdiction over plaintiff's CAPA claim. See Reyes, at *30-*31. It should now decline to do so. Like plaintiff's Right to Record Act claims, his CAPA claim concerns an

undecided question: whether a policy that merely expresses what people can do inside NYPD buildings, and provides that officers "may" direct individuals to cease recording, is a "rule" that must be promulgated in accordance with CAPA's rulemaking provisions (see ECF No. 20, at 19-22 (arguing that the Facilities Policy is not a "rule" as defined by CAPA)).  Furthermore, resolving that question would deeply implicate the citywide administration of the NYPD—not only with regard to its recording policy, but other restrictions it may seek to impose to maintain order and security on its premises.  Seabrook, supra, at 71

But there is yet another reason to decline supplemental jurisdiction over this claim: it could only have been brought under N.Y. C.P.L.R. Article 78.  See Carver v. Nassau Cty. Interim Fin. Auth., 730 F.3d 150, 155 (2d Cir. 2013).[5]  And courts in this circuit rarely exercise supplemental jurisdiction over Article 78 claims. See YMCA of Greater Rochester v. Town of Milo, 563 F.Supp.3d 71, 79-80 (W.D.N.Y. 2021) ("It is generally inappropriate for a federal district court to exercise supplemental jurisdiction over an Article 78 claim") (cleaned up); Rothenberg v. Daus, 08 Civ. 587 (SHS), 2014 U.S. Dist. LEXIS 105598, at *77-*80 (S.D.N.Y. Jul. 31, 2014).  Indeed, the Second Circuit has recognized a split in authority as to whether a federal court even *could* exercise such jurisdiction.  See Carver v. Nassau Cty. Interim Fin. Auth., 730 F.3d 150, 155 (2d Cir. 2013) ("We need not decide … whether Article 78 can, on its own, deprive a federal court of jurisdiction over claims brought under that provision, as some district court cases

---

[5] Article 78 appears to be the only statutory vehicle that could authorize plaintiff seek injunctive relief on the ground that the Facilities Policy violates CAPA. See, e.g., Kaehny v. Lynn, 172 Misc. 2d 295 (N.Y. Sup., N.Y. Cty. 1997); Williamsburg Around the Bridge Block Ass'n v. Giuliani, 167 Misc. 2d 980 (N.Y. Sup., N.Y. Cty. 1995).  Nothing in the text of CAPA itself authorizes private rights of action to enforce its rulemaking provisions.  See N.Y.C. Charter §1043; Malone v. City of New York, 192 A.D.3d 510, 511 (1st Dep't 2021); Patriot Organics LLC v. N.Y.C. Dep't of Envt'l Protection, 2022 Misc. LEXIS 17715, at *7 (Sup. Ct., Queens Co. Oct. 20, 2022),

have held"); see also Cartagena v. City of New York, 257 F. Supp.2d. 708, 709-10 & n.1 (S.D.N.Y. 2003).

This Court need not tackle the question—left unresolved in Carver—as to whether federal courts are not categorically prohibited from hearing Article 78 claims.  That is because Carver held that it was nevertheless an abuse of discretion to assert supplemental jurisdiction over an Article 78 claim that "raises an unresolved issue of state law" and "implicates significant state interests."  Carver, supra, at 154-155.  As Carver explained, "Article 78 reflects a state preference for a state mode of procedure," and that "state preference to try Article 78 claims in state court bears on our assessment" of whether to exercise supplemental jurisdiction "where other factors, too, strongly support declining that jurisdiction."  Id., at 155; see also Rothenberg, 2014 U.S. Dist. LEXIS 105598, at *12, *76-*80 (declining to exercise supplemental jurisdiction over plaintiff's Article 78 claims, which included a CAPA claim, and noting that federal courts might be precluded from exercising jurisdiction over such claims altogether).  The very same factors that led the Carver court to conclude that supplemental jurisdiction was improper are found in this case.  Here too, plaintiff's CAPA claim arises under Article 78; it addresses an undecided question of local law; and it bears significantly on how the City operates its police facilities.

If this Court dismisses plaintiff's First Amendment claim—as it should—then that would further erode any basis for exercising supplemental jurisdiction over his CAPA claim.  See 28 U.S.C. § 1367(c)(3).  But it is important to note that the Carver factors counsel in favor of dismissal of this Article 78 claim even if this Court does not dismiss plaintiff's federal claim.  See Carver, at 153, 156 (holding that supplemental jurisdiction over an Article 78 claim was inappropriate even though the plaintiff's federal claim was not dismissed).  Indeed, Carver did not address the merits of plaintiff's federal claim at all, see id., at 154, whereas here, the Court has

already found that plaintiff was not likely to succeed on the merits of his sole federal claim, see Reyes, at *30.  Thus, if anything, there is an even greater reason here than in Carver to decline supplemental jurisdiction.

## POINT III

## PLAINTIFF'S RIGHT TO RECORD ACT CLAIMS FAIL

**A.      The NYPD May Impose Conditions of Entry that Safeguard Privacy and Security as Proprietor of its Own Facilities.**

Under New York law, "statutes in derogation of the common law must be strictly construed."  Plymouth Venture Partners, II, L.P. v. GTR Source, LLC, 37 N.Y.3d 591 (2021) (cleaned up).  A foundational principle of property law prescribes that "a person is licensed or privileged to enter private premises [only] when [they have' obtained the consent of the owner[.]"  People v. Graves, 76 N.Y.2d 16, 20 (1990) (cleaned up).  A property owner may impose conditions on this license to enter.  See Restatement 2d of Torts §168.  When a licensee exceeds those conditions, consent may be revoked, and the licensee thereby becomes a trespasser.  See Id. §§168 cmt d, 171; Wheelock v. Noonan, 108 N.Y. 179, 183-84 (1888); Penal Law §§140.00(5), 140.05.

Subject to constitutional constraints, governmental property owners enjoy the same right to exclude.  See People v. Munroe, 18 Misc.3d 9, 10-11 (N.Y. App. Term, 2d Dep't 2007) (community college); People v. Alderson, 144 Misc. 2d 133, 145 (N.Y. Crim. Ct., N.Y. Cty. 1989) (Department of Health building).  The fact that the government chooses to open certain facilities to the public, for certain purposes, does not mean that "the use thereof may be demanded as a matter of right by any individual[.]"  Ellis v. Allen, 4 A.D.2d 343, 344 (3d Dep't 1957) (school building); see Bd. of Higher Ed. v. Students for a Democratic Soc'y, 60 Misc.2d 114, 118 (N.Y. Sup. Ct., Queens Cty. 1969) (college campus).

Thus, New York courts have long understood that the NYPD, as a proprietor, may exclude individuals from its buildings.  In People v. Martinez, 43 Misc.2d 94 (N.Y. Crim. Ct., N.Y. Cty. 1964), the court found defendants guilty of trespass after they occupied a "public corridor" at Police Headquarters and ignored instructions to leave.  Id., at 96-98. As the court explained, a government building, "especially one which houses so vital a functioning department as the Police Department, may not be used in a manner which suits the whim or caprice of every citizen, without reducing our government to chaos[.]  Id., at 97.  In so holding, Martinez relied heavily on common-law precepts, including the NYPD's "unrestricted and exclusive right … to exclude" individuals from "property owned by the City of New York."  Id.

Similarly, in People v. Reape, 22 Misc.3d 615 (N.Y. Crim. Ct., Kings Cty. 2008), the court denied a motion to dismiss a trespass count where the defendant ignored an order to leave a police precinct.  The court explained that the police, as the "custodian[s]" of such premises, were in the best position to know whether the defendant had acted in a way that required him to be asked to leave."  Id., at 619.  The Court underscored that precincts are used by "citizens who seek to give or obtain information about public safety," and "[t]hose who enter in order to use the facilities…need to know that their safety is being protected while they are present there."  Id., at 618-19.

Nothing in either the SRTRA or CRTRA purported to displace the NYPD's common law privileges as proprietor.  While the Acts guarantee a substantive right to record the police and enumerate *conduct*-based exceptions to this right, Civ. Rights L. §79-p(2); Admin. Code §14-189(b), their text says nothing about *where* such recordings are permitted.  Given the Acts' silence on this point, they cannot be read to impliedly supersede the NYPD's proprietary authority to require visitors at its precincts to observe its rules.  In other words, the City does not propose an

19

unwritten "exception" to the Acts, but rather use of settled canons of construction to identify their intended boundaries.

It cannot be that the statutory right to record is unrestricted as to location. A contrary reading would lead to the sort of "absurd application[s]" that courts construing New York legislation must avoid. Lubonty v. U.S. Bank Nat'l Ass'n, 34 N.Y.3d 250, 255 (2019) (cleaned up). For example, if the SRTRA did not import the government's traditional prerogative as a proprietor, there would be no textual basis to bar courtroom spectators from bringing their cellphones into State courthouses and recording court security officers. See N.Y. Civ. Rights L. §79-p(1)(a) (defining "Officer" to include "security officer, security guard or similar official"). And if the police were called to a home on a sensitive matter, officers would be barred from assisting a homeowner who sought removal of a guest who insisted on recording over the owner's express objection. Furthermore, under plaintiff's view, even civilians in *non-public* areas of police precincts (or other government buildings) would, presumably, be entitled to bring their recording devices and film any police or security officers they see. There is no reason to assume the State Legislature and City Council intended such sweeping but unannounced policy changes.

**B.    Legislative History Shows That the Right to Record Acts Codify a Pre-Existing Right to Record in Public, Not Expand That Right to Police Precincts.**

The foregoing conclusions are reinforced by the legislative history of the Acts.[6] See People v. Wallace, 31 N.Y.3d 503, 507 (2018) ("Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." (cleaned up)) In Wallace, for example, the Court of Appeals

---

[6] "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

declined to ascribe a literal interpretation to the seemingly categorical language of a firearm law and instead relied entirely on legislative history to clarify the statute's locational boundaries.  See id., at 507-10.  Here, too, the legislative history makes clear that the State Legislature and City Council intended to codify—and add teeth to—a pre-existing right to record "the *public* activities of law enforcement."  (Ex. B to Zuckerman Decl., S3253A Introducer's Mem. In Supp. 1) (emphasis added).  It reveals no intention to authorize, nor even any consideration of, recording within police facilities.

Prior to 2020, several federal courts of appeals recognized the right to record public officials "in a public place."  Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011); see Field v. City of Phila., 862 F.3d 353, 356 (3d Cir. 2017) (3d Cir. 2017); ACLU v. Alvarez, 679 F.3d 583, 597 (7th Cir. 2012).  But state lawmakers were concerned that individual officers may not have been complying with that mandate.  The solution, was as one assemblymember explained, was to "[t]ak[e] something that we already know is a right and mak[e] it statutory so that there's a civil right of action."  (Ex. C to Zuckerman Decl., N.Y. Assembly Debate Tr., at 108)  The bill's sponsor claimed that the bill's purpose was to affirm[] this so that the police agencies like the NYPD will know for sure and…respect that right."  (Ex. C to Zuckerman Decl., at 101)  In the State Senate, the Sponsor's Memorandum likewise suggested that the bill would embody the constitutional standard articulated by "several Federal Circuit Courts."  (Ex. B to Zuckerman Decl.)  In short, lawmakers understood that the SRTRA would enforce a constitutional standard—which, as seen, is entirely compatible with the Facilities Policy (Point I, supra).

The City Council was moved by similar concerns when considering the CRTRA. As noted above, two years before the CRTRA was enacted, NYPD already directed its officers not to interfere with lawful recordings "in public places, such as streets, sidewalks, and parks, as well

as private property in which the individual has a legal right to be present." (Ex. A to Complaint, ¶1) Indeed, an NYPD representative supported the "substance" of the bill that eventually became the CRTRA, which, he testified, was already reflected "in our Patrol Guide" (Ex. D to Zuckerman Decl., 6/9/20 N.Y.C. Council Comm. on Public Safety Hr'g Tr., at 63)—the same Patrol Guide that contains the Facilities Policy. (See Ex. A to Complaint). Furthermore, the CRTRA's sponsor told the Council that the law already "allow[ed] people to record in a public space," signaling an intention to strengthen that existing right (Ex. D to Zuckerman Decl. at 36). But the Council noted instances in which civilians reported that individual officers had nonetheless interfered with such recordings (Ex. E to Zuckerman Decl., N.Y.C. Council, Comm. on Public Safety, Comm. Rep. of the Justice Div., at 6; Ex. D to Zuckerman Decl. at 35), which underscored the perceived need for a statutory enforcement mechanism.

These state and city lawmakers repeatedly emphasized that the right to record was most urgently needed in "public" spaces. (Ex. C to Zuckerman Decl. at 117-18, 120, 126; Ex. D to Zuckerman Decl. at 36) That emphasis made sense in light of recent events, in particular George Floyd's murder, which weighed heavily in the lawmakers' debates. (Ex. C to Zuckerman Decl. at 114, 122, 128, 129, 131) Lawmakers also alluded to the public's need to record how police were responding to ongoing protests—which, of course, were predominantly occurring on public streets and sidewalks. (Ex. C to Zuckerman Decl. at 123, 124-25; Ex. D at 34-35) The SRTRA's sponsor in the Assembly explained that, in a paradigmatic case, "people on the streets" would need the law's protection to record "officers misbehaving." (Ex. C to Zuckerman Decl. at 103)

In short, the legislative history shows that the Acts added a private enforcement mechanism to strengthen a preexisting right to record in public places—not to expand the substance of that right beyond what was already recognized under federal First Amendment

jurisprudence and NYPD policy.   There is no legislative history indicating that the Acts were intended to curtail the NYPD's longstanding, proprietary authority to restrict recordings inside its buildings, and every reason to believe they were not so intended.

### CONCLUSION

For the foregoing reasons, the City's motion for judgment on the pleadings should be granted in its entirety and the Complaint dismissed.

Dated:      New York, New York
            January 9, 2024

                              HON. SYLIVIA O. HINDS-RADIX
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant City of New York
                              100 Church Street, Room 3-133b
                              New York, New York 10007
                              (212) 356-3519


                       By:    /s/ Mark D. Zuckerman
                              MARK D. ZUCKERMAN
                              Senior Counsel

23