23 Civ. 6369 (JGLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEANPAUL REYES,

Plaintiff,

-against-

THE CITY OF NEW YORK,

Defendant.

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark D. Zuckerman*
*Tel:  (212) 356-3519*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ III

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 2

LEGAL STANDARD .......................................................................................... 5

ARGUMENT

      POINT I

           PLAINTIFF'S CLAIMS UNDER THE FIRST AND
           FOURTH AMENDMENT FAIL ................................................. 7

           A.   The Facilities Policy, As Applied to Police
               Precincts, Does Not Violate the First
               Amendment ......................................................................... 7

               1.   The Facilities Policy Is a Reasonable,
                   Viewpoint-Neutral Regulation of a Limited
                   Public Forum or Nonpublic Forum .................................. 7

               2.   Plaintiff's First Amendment Retaliation
                   Claim Should Also Be Dismissed ................................... 13

           B.   The Facilities Policy, As Applied to Police
               Precincts, Does Not Violate the Fourth
                Amendment ...................................................................... 14

      POINT II

           THE COURT SHOULD DECLINE
           SUPPLEMENTAL JURISDICTION OVER
           PLAINTIFF'S STATE AND CITY LAW CLAIMS .............................. 19

           A.   The Court Should Decline Supplemental
                Jurisdiction over Plaintiff's Right to Record Act
                Claims. .............................................................................. 19

           B.   Regardless of Whether the Court Dismisses
                Plaintiff's Federal Claim, It Should Decline
                Supplemental Jurisdiction over His CAPA
                Claim ................................................................................. 21

**Page**

POINT III

      PLAINTIFF'S RIGHT TO RECORD ACT CLAIMS FAIL.................................................................... 24

      A.  The NYPD May Impose Conditions of Entry that Safeguard Privacy and Security as Proprietor of its Own Facilities............................................. 24

      B.  Legislative History Shows That the Right to Record Acts Codify a Pre-Existing Right to Record in Public, Not Expand That Right to Police Precincts............................................... 26

      C.  Plaintiff Interfered With Law Enforcement Activities Prior to His Subject Arrest ................................................. 29

POINT IV

      PLAINTIFF'S CAPA CLAIM FAILS ..................................................... 29

POINT V

      INSOFAR AS THE COMPLAINT SEEKS DECLARATORY RELIEF, THAT CLAIM FAILS .............................. 31

      A.  Plaintiff Has Not Alleged a Controversy of "Sufficient Immediacy and Reality"................................................. 31

      B.  Plaintiff's Newly Added Declaratory Relief Claim Is Barred By Younger ............................................................. 33

CONCLUSION.......................................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Abortion Rights Mobilization v. Regan,
    544 F. Supp. 471 (S.D.N.Y. 1982) ......................................................................32

ACLU v. Alvarez,
    679 F.3d 583 (7th Cir. 2012) ........................................................................27

Matter of Alca Indus. v Delaney,
    92 N.Y.2d 775 (1999) ...................................................................................30

Aquino v. City of New York,
    16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
    (S.D.N.Y. Jan. 25, 2017) .................................................................................7

Ark. Educ. Television Comm'n v. Forbes,
    523 U.S. 666 (1998) ........................................................................................9

Ashcroft v. Iqbal,
    556 U.S. 662 (2008) ........................................................................................5

Basinski v. City of New York,
    706 Fed. App'x 693 (2d Cir. 2017) ................................................................16

Bd. of Higher Ed. v. Students for a Democratic Soc'y,
    60 Misc.2d 114 (N.Y. Sup. Ct., Queens Cty. 1969) .....................................24

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007) ........................................................................................5

Breitkopf v. Gentile,
    12 Civ. 1084 (JFB), 2014 U.S. Dist. LEXIS 121581
    (E.D.N.Y. Aug. 29, 2014) .............................................................................17

Broder v. Cablevision Sys. Corp.,
    418 F.3d 187 (2d Cir. 2005) ...........................................................................6

Cartagena v. City of New York,
    257 F. Supp.2d. 708 (S.D.N.Y. 2003) ...........................................................23

Carver v. Nassau Cty. Interim Fin. Auth.,
    730 F.3d 150 (2d Cir. 2013) ...............................................................22, 23, 24

Cavanagh v. Geballe,
    28 F.4th 428 (2d Cir. 2022) ...........................................................................34

**Cases**                                                                      **Pages**

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)..............................................................................6

Childs v. Bane,
    194 A.D.2d 221 (3d Dep't 1993)..................................................................30

Chiste v. Travelocity.com, LP,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)........................................................31

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983)................................................................................13, 15

Cont'l Cas. Co. v. Coastal Sav. Bank,
    977 F.2d 734 (2d Cir. 1992)........................................................................32

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
    473 U.S. 788 (1985)................................................................................8, 9

Cullen v. Fliegner,
    18 F.3d 96 (2d Cir. 1994)...........................................................................35

Curry v. City of New York,
    10 Civ. 5847 (SLT)(LB), 2010 U.S. Dist. LEXIS 135461
    (E.D.N.Y. Dec. 22, 2010) ...........................................................................13

In re Davan L.,
    91 N.Y.2d 88 (1997) ............................................................................16, 17

Davis v. Lansing,
    851 F.2d 72 (2d Cir. 1988)..........................................................................35

Matter of DeJesus v. Roberts,
    296 A.D.2d 307 (App. Div. 1st Dep't 2002) ..........................................30, 31

DeLuca v. AccessIT Group, Inc.,
    695 F. Supp.2d 54 (S.D.N.Y. 2010)..............................................................6

Diamond "D" Constr. Corp. v. McGowan,
    282 F.3d 191 (2d Cir. 2002).......................................................................33

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)..........................................................................6

District of Columbia v. Westby,
    583 U.S. 48 (2018)......................................................................................16

**<u>Cases</u>**                                                                                           **<u>Pages</u>**

<u>Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment</u>
  <u>Corp.</u>,
  08 Civ. 1558 (RMB)(THK), 2009 U.S. Dist. LEXIS 21938
  (S.D.N.Y. Mar. 2, 2009) ...................................................................................31, 32

<u>Dorsett v. Cnty. of Nassau</u>,
  732 F.3d 157 (2d Cir. 2013)........................................................................14

<u>Ellis v. Allen</u>,
  4 A.D.2d 343 (3d Dep't 1957)......................................................................24

<u>Field v. City of Phila.</u>,
  862 F.3d 353 (3d Cir. 2017) (3d Cir. 2017)...............................................27

<u>Fighting Finest v. Bratton</u>,
  898 F.Supp. 192 (S.D.N.Y. 1995),
  <u>aff'd</u> 95 F.3d 224 (2d Cir. 1996).................................................................12

<u>Glik v. Cunniffe</u>,
  655 F.3d 78 (1st Cir. 2011)..........................................................................27

<u>Goodman v. City of New York, et. al.</u>,
  14 Civ. 5261 (CM), 2015 U.S. Dist. LEXIS 37063
  (S.D.N.Y. Feb. 18, 2015).............................................................................17

<u>Harty v. Simon Property Group, L.P.</u>,
  428 Fed. App'x. 69 (2d Cir. 2011)...............................................................13

<u>Helms Realty Corp. v. City of New York</u>,
  320 F. Supp.3d 526 (S.D.N.Y. 2018)..........................................................34

<u>Hilderbrandt v. City of New York</u>,
  13 Civ. 1955 (ARR), 2014 U.S. Dist. LEXIS 128170
  (E.D.N.Y. Sept. 11, 2014)............................................................................17

<u>Hill v. Colorado</u>,
  530 U.S. 703 (2000)......................................................................................11

<u>Hirsch v. Complex Media, Inc.</u>,
  18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701
  (S.D.N.Y. Dec. 10, 2018)...............................................................................6

<u>Hotel Emps. & Rest. Union, Loc. 100 of New York v. City of New York Parks</u>
  <u>and Recreation</u>,
  311 F.3d 534 (2d Cir. 2002).................................................................8, 9, 11

**Cases**                                                                                      **Pages**

ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp.,
    699 F. Supp. 2d 664 (S.D.N.Y. 2010).................................................................32

Illinois v. Gates,
    462 U.S. 213 (1983).................................................................................................16

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)................................................................................. 5-6

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006).....................................................................................16

Joy v. Godair,
    1:16 Civ. 187, 2016 U.S. Dist. LEXIS 174853
    (W.D. Mich. Dec. 19, 2016) ....................................................................................14

Kaehny v. Lynn,
    172 Misc. 2d 295 (N.Y. Sup., N.Y. Cty. 1997) ......................................................22

Kass v. City of New York,
    864 F.3d 200 (2d Cir. 2017)....................................................................................16

In re Kendall R.,
    71 A.D.3d 553 (1st Dep't 2010) ....................................................................... 16-17

Kirschner v. Klemons,
    225 F.3d 227 (2d Cir. 2000)....................................................................................34

Klein & Co. Futures, Inc. v. Board of Trade of City of New York,
    464 F.3d 255 (2d Cir. 2006)....................................................................................20

Kolari v. N.Y. Presbyterian Hosp.,
    455 F.3d 118 (2d Cir. 2006)....................................................................................20

Los Angeles County v. Humphries,
    562 U.S. 29 (2010)....................................................................................................7

Lubonty v. U.S. Bank Nat'l Ass'n,
    34 N.Y.3d 250 (2019) .............................................................................................26

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992)........................................................................................... 13-14

Make The Rd. by Walking, Inc. v. Turner,
    378 F.3d 133 (2d Cir. 2004).................................................................................9, 10

**<u>Cases</u>** **<u>Pages</u>**

Malone v. City of New York,
  192 A.D.3d 510 (1st Dep't 2021) ...............................................................22

Marcavage v. The City of New York,
  689 F.3d 98 (2d Cir. 2012).........................................................................13

Monell v. Dep't of Social Services,
  436 U.S. 658 (1978)..............................................................................7, 14

Morse v. Univ. of Vt.,
  973 F.2d 122 (2d Cir. 1992).......................................................................20

Nat'l Private Truck Council v. Okla. Tax. Comm'n,
  515 U.S. 582 (1995)............................................................................. 34-35

O'Shea v. Littleton,
  414 U.S. 488 (1974)...................................................................................15

Pani v. Empire Blue Cross Blue Shield,
  152 F.3d 67 (2d Cir. 1998).........................................................................26

Patriot Organics LLC v. N.Y.C. Dep't of Envt'l Protection,
  2022 Misc. LEXIS 17715
  (Sup. Ct., Queens Co. Oct. 20, 2022) ........................................................22

Paulsen v. Cty. of Nassau,
  925 F.2d 65 (2d Cir. 1991).........................................................................29

Pennzoil Co. v. Texaco, Inc.,
  481 U.S. 1 (1987).......................................................................................33

People v. Alderson,
  144 Misc. 2d 133 (N.Y. Crim. Ct., N.Y. Cty. 1989)...................................24

People v. Beam,
  866 N.Y.S.2d 564 (N.Y. Sup. Ct. 2008) ....................................................17

People v. Graves,
  76 N.Y.2d 16 (1990) ..................................................................................24

People v. Martinez,
  43 Misc.2d 94 (N.Y. Crim. Ct., N.Y. Cty. 1964) .................................. 24-25

People v. Munroe,
  18 Misc.3d 9 (N.Y. App. Term, 2d Dep't 2007) .........................................24

**Cases**                                                                              **Pages**

People v. Pennisi,
    2018 N.Y. Misc. LEXIS 5585
    (N.Y. Sup., Queens Co. Dec. 3, 2018)...................................................................30

People v. Reape,
    22 Misc.3d 615 (N.Y. Crim. Ct., Kings Cty. 2008)...............................................25

People v. Romeo,
    9 A.D.3d 744 (3d Dep't 2002) .............................................................................16

People v. Wallace,
    31 N.Y.3d 503 (2018) ..........................................................................................26

Perry Educ. Ass'n v. Perry Local Educators' Ass'n,
    460 U.S. 37 (1983).................................................................................................9

Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,
    37 N.Y.3d 591 (2021) .....................................................................................15, 24

In re REFCO Inc. Securities Litig.: Krys v. Aaron,
    07-md-1902, 08 Civ. 7416 (JSR),
    2010 U.S. Dist. LEXIS 142588 (S.D.N.Y. July 19, 2010) ....................................32

Reyes v. City of N.Y.,
    23 Civ. 6369, 2023 U.S. Dist. LEXIS 196602
    (S.D.N.Y. Nov. 2, 2023) .........................................7, 8, 10, 11, 12, 20, 21, 24, 33

Rodney v. City of N.Y.,
    22 Civ. 1445 (LAK)(OTW), 2023 U.S. Dist. LEXIS 223117
    (S.D.N.Y. Dec. 14, 2023)..................................................................................8, 12

Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,
    66 N.Y.2d 948 (1985) ..........................................................................................30

Rothenberg v. Daus,
    08 Civ. 587 (SHS), 2014 U.S. Dist. LEXIS 105598
    (S.D.N.Y. Jul. 31, 2014) .............................................................................22, 23, 29

Rounseville v. Zahl,
    13 F.3d 625 (2d Cir. 1994)...................................................................................20

Samuels v. Mackell,
    401 U.S. 66 (1971)...............................................................................................34

Seabrook v. Jacobson,
    153 F.3d 70 (2d Cir. 1998)........................................................................19, 21, 22

**Cases**                                                                                     **Pages**

Shain v. Ellison,
   356 F.3d 211 (2d Cir. 2004).................................................................15

Sprint Communs., Inc. v. Jacobs,
   571 U.S. 69 (2013)..............................................................................34

Techu-El v. Conetta,
   2023 U.S. App. LEXIS 9405 (2d Cir. Apr. 20, 2023) ..........................18

Tyler v. City of Kingston,
   74 F.4th 57 (2d Cir. 2023) ........................................................8, 10, 12

U.S. v. Bernacet,
   724 F.3d 269 (2d Cir. 2013)................................................................18

U.S. v. Wilson,
   699 F.3d 235 (2d Cir. 2012)................................................................19

United States v. Doherty,
   786 F.2d 491 (2d Cir. 1986)................................................................32

Virginia v. Moore,
   553 U.S. 164 (2008)............................................................................18

Weyant v. Okst,
   101 F.3d 845 (2d Cir. 1996)................................................................16

Wheelock v. Noonan,
   108 N.Y. 179 (1888)...........................................................................24

Williamsburg Around the Bridge Block Ass'n v. Giuliani,
   167 Misc. 2d 980 (N.Y. Sup., N.Y. Cty. 1995) ..................................22

Wilton v. Seven Falls Co.,
   515 U.S. 277 (1995)............................................................................31

Wright v. Magill,
   18 Civ. 1815, 2019 U.S. Dist. LEXIS 18392
   (D. Minn. Jan. 7, 2019).......................................................................33

YMCA of Greater Rochester v. Town of Milo,
   563 F.Supp.3d 71 (W.D.N.Y. 2021) ...................................................22

**Statutes**

28 U.S.C. § 1367(a) .......................................................................................19

**Statutes**                                                                 **Pages**

28 U.S.C. § 1367(c) ...................................................................................19

28 U.S.C. § 1367(c)(1) .............................................................................20

28 U.S.C. § 1367(c)(3) .........................................................................20, 23

42 U.S.C. § 1983 .................................................................................7, 14

C.P.L. § 460.10(1) ..................................................................................33

Fed. R. Civ. P. 8 .......................................................................................5

Fed. R. Civ. P. 8(a)(2) ...............................................................................6

Fed. R. Civ. P. 12(b)(1) .........................................................................1, 13

Fed. R. Civ. P. 12(b)(6) ...............................................................1, 12, 14, 26

N.Y.C. Admin. Code § 14-189(b) .........................................................3, 25, 29

N.Y.C. Charter § 1041(5)(a) ......................................................................30

N.Y.C. Charter § 1043 ..............................................................................22

N.Y. Civ. Rights L. § 79-p(1)(a) ..................................................................26

N.Y. Civ. Rights L. § 79-p(2) .............................................................3, 25, 29

Penal Law § 140.00 ..................................................................................30

Penal Law § 140.00(5) ..............................................................................24

Penal Law § 140.05 ......................................................................2, 15, 19, 24, 30

Penal Law § 140.10 ........................................................................2, 15, 19

**Other Authorities**

L. 2020, ch. 100, § 2 ..................................................................................3

Restatement 2d of Torts § 168 .....................................................................24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

SEANPAUL REYES,

Plaintiff,

-against-

THE CITY OF NEW YORK,

Defendant.

------------------------------------------------------------------------ x

**DEFENDANT CITY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

23 Civ. 6369 (JGLC)

## <u>PRELIMINARY STATEMENT</u>

Defendant City of New York (the "City") hereby respectfully submits its Memorandum of Law in Support of its motion to dismiss plaintiff's amended complaint (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. For the reasons set forth herein, the City's motion should be granted in its entirety. Simply, plaintiff's federal claims fail as plaintiff does not have an underlying First Amendment right to record in the lobbies of NYPD precincts. Plaintiff's Fourth Amendment claims are subject to dismissal as well as such claims fail to state a cause of action upon which relief may be granted. As such, the Court should decline supplemental jurisdiction over plaintiff's state law claims. Regardless, should the Court nevertheless decide plaintiff's state law claims upon the City's motion, plaintiff's claims fail as the State Right to Record Act (hereinafter "SRTRA") and the City Right to Record Act (hereinafter "CRTRA"), do not grant a right to record in the lobbies of police precincts. Further, plaintiff physically interfered with the officers' official functions immediately preceding his underlying subject arrest. Finally, plaintiff's City Administrative Procedure Act (hereinafter "CAPA") and declaratory relief claims fail as a matter of law. As such, dismissal of the Complaint in its entirety with prejudice is warranted.

## STATEMENT OF FACTS

The following facts are alleged to be true by plaintiff.  SeanPaul Reyes is an independent journalist who records his encounters with public officials who  are performing public duties.  (Complaint, ¶1)  He alleges that he does so to "educate others on what to expect from such encounters and as an expression of his First Amendment rights."  (Complaint, ¶1)  Plaintiff publishes his journalism on YouTube under the name "Long Island Audit."  (Complaint, ¶2)  Plaintiff alleges that, over the course of more than two years, he has posted close to 300 videos on his channel and amassed over 500,000 subscribers.  (Complaint, ¶20)

In 2018, the NYPD issued Patrol Guide Procedure No. 203-29 (Complaint, ¶34), which generally allows civilians to record the police in public places such as "streets, sidewalks, and parks, as well as private property in which the individual has a legal right to be present … (Exhibit B to Complaint, ¶1).  However, the procedure curtails civilian recordings inside NYPD facilities themselves, where privacy and safety concerns are elevated.  Specifically, the procedure states: "Members of the public are not allowed to photograph and/or record police activity within Department facilities.  Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity.  If such person refuses to stop, then they should be ordered to leave the premises.  If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law Sections 140.05 and 140.10)."  (Exhibit B to Complaint, ¶7 (the "Facilities Policy"))  The same language is contained in the Administrative Guide, Procedure No. 304-21, issued in June, 2021.  (See Complaint, ¶50)  The NYPD has posted signs in every or nearly every precinct stating that recording in precincts is prohibited.  (Complaint, ¶40)

Following the May 25, 2020 murder of George Floyd and ensuing nationwide demonstrations, the New York City Council passed the CRTRA on June 18, 2020.  (Complaint,

¶46)  The CRTRA states, in relevant part, that "[a] person may record police activities...."  N.Y.C. Admin. Code §14-189(b).  The similarly worded SRTRA, also enacted in June 2020, states that "[a] person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity...."  L. 2020, ch. 100, § 2 (codified at N.Y. Civ. Rights L. § 79-p(2)).

Plaintiff alleges that, in April 2023, he chose to file a complaint at the Sixty-First Precinct in Brooklyn.  (Complaint, ¶61)  He alleges that he "chose to record the incident, as he does regularly, to document to his viewers the process of obtaining a complaint form and filing a complaint with the NYPD."  (Complaint, ¶61)  He began recording a video before he entered the Sixty-First Precinct and continued to record until he was arrested and his equipment was confiscated.  (Complaint, ¶62 and Video, Exhibit A to Declaration of Mark D. Zuckerman (hereinafter "Zuckerman Decl."))

Plaintiff entered a small waiting area, accessible to the public, where a line of people waited to speak with an NYPD representative who sat behind a glass barrier.  (Complaint, ¶63 and Exhibit A to Zuckerman Decl.)  Plaintiff recorded several civilians in the lobby who were waiting to speak to the NYPD representative and zoomed in on a police officer standing in the doorway of a restricted area.  (Ex. A to Zuckerman Decl. at 2:15)  Plaintiff also video and audio recorded the conversations of civilians in the lobby speaking with the NYPD representative who was behind the glass barrier.  (Ex. A to Zuckerman Decl. 2:47-3:24) Plaintiff also later zoomed in to the restricted area behind the desk where civilians are able to speak with officers and video recorded police officers who were undertaking their duties in the restricted area.  (Ex. A to Zuckerman Decl. at 5:47-5:49)  Plaintiff also video recorded and in fact zoomed in to the hallway of the restricted area.  (Ex. A to Zuckerman Decl. at 2:51-2:58)  The video recording captures NYPD Sgt. Tosares Korchimet entering a security code into a keypad to allow him to enter the

restricted area.  (Ex. A to Zuckerman Decl. at 6:51)  Plaintiff's video additionally focuses on an NYPD security camera in the lobby.  (Ex. A to Zuckerman Decl. at 2:03)  At one point, plaintiff's video captures an NYPD officer having her attention diverted from the individuals she was interacting with, and having to turn her attention to plaintiff in the precinct lobby.  (Ex. A to Zuckerman Decl. at 7:51)

Sgt. Korchimet told plaintiff that he was not allowed to record and pointed to a sign in the window of the booth, which read, "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO OR VIDEO RECORDING OR PHOTOGRAPHING THIS FACILITY." (Complaint, ¶65; Ex. A to Zuckerman Decl. at 6:07)  As plaintiff continued to record in defiance of these instructions, P.O. Cucuzza told plaintiff to leave the Precinct (Ex. A to Zuckerman Decl. at 7:38-8:30)  Plaintiff was subsequently arrested when he refused to leave.  (Complaint, ¶¶66-72; Ex. A to Zuckerman Decl. at 8:30)  He was charged with trespassing, but the District Attorney's Office declined to prosecute.  (Exhibits D, E to Complaint)

In the Complaint, plaintiff has brought six causes of action: (i) a First Amendment municipal liability claim alleging that the Facilities Policy is unconstitutional; (ii) a First Amendment retaliation claim arising out of plaintiff's April 4, 2023 arrest; (iii) a claim that the Facilities Policy was not promulgated in accordance with the rulemaking provisions of CAPA; (iv) a claim under the CRTRA; (v) a claim under the SRTRA; and (vi) a municipal liability claim under the Fourth Amendment.  Although plaintiff's claims are purportedly based on his past and underlying subject arrest, he does not seek monetary damages.  Instead, he seeks a forward-looking injunction that would bar the City from enforcing the Facilities Policy in future cases.  (Complaint, Prayer for Relief)

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. (quoting Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (quoting Twombly, 550 U.S. at 557).

Two working principles determine whether a complaint may survive a motion to dismiss.  Ashcroft, 556 U.S. at 678-679.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Id. (citing Twombly, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d

Cir. 2007)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]" – "that the pleader is entitled to relief.'"  Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiff[] had knowledge and relied on in bringing suit'").  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document integral to the complaint." Chambers, 282 F.3d at 152-53. "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents…[and] [t]o be integral to a complaint, the plaintiff must have 1) actual notice of the extraneous information and 2) relied upon the documents in framing the complaint."  DeLuca v. AccessIT Group, Inc., 695 F. Supp.2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers at 153).  "Insofar as the complaint relies on the terms" of a document either annexed or deemed incorporated by reference, the court "need not accept its description," but may look to the document itself.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  Where a video is incorporated by reference or integral to the complaint, it may be considered upon a motion to dismiss, and the "[c]ourt need not accept the party's characterizations" of it.  See Hirsch v. Complex Media, Inc., 18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701, at *6-7 (S.D.N.Y. Dec. 10, 2018).

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS UNDER THE FIRST AND FOURTH AMENDMENT FAIL[1]

A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978); see also Los Angeles County v. Humphries, 562 U.S. 29 (2010) (Monell's bar on *respondeat superior* liability under § 1983 applies to claims for injunctive relief). Instead, to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). While there is no dispute that plaintiff has plausibly alleged that the Facilities Policy is an "official policy or custom," plaintiff's § 1983 claims nevertheless fail because the policy does not violate the Constitution.

**A.     The Facilities Policy, As Applied to Police Precincts, Does Not Violate the First Amendment.**

**1.     The Facilities Policy Is a Reasonable, Viewpoint-Neutral Regulation of a Limited Public Forum or Nonpublic Forum.**

This Court has already held, in the context of plaintiff's motion for a preliminary injunction, that plaintiff failed to show that the Facilities Policy likely violates the First Amendment. See Reyes v. City of N.Y., 23 Civ. 6369 (JGLC), 2023 U.S. Dist. LEXIS 196602, at *14-*30 (S.D.N.Y. Nov. 2, 2023). Since then, in another case in this district challenging the

---

[1] Although the Complaint purports to bring claims under the "First" and "Fourth" Amendments (Complaint, ¶¶87-111, 131-46), those Amendments are inapplicable to the City of New York. Nevertheless, the rights enshrined therein are incorporated against the states and state subdivisions under the Due Process Clause of the Fourteenth Amendment.

Facilities Policy, the Honorable Ona T. Wang recommended that the plaintiff's First Amendment claims be dismissed—citing this Court's reasoning with approval.  See Rodney v. City of N.Y., 22 Civ. 1445 (LAK)(OTW), 2023 U.S. Dist. LEXIS 223117, at \*14 (S.D.N.Y. Dec. 14, 2023) (M.J. Wang) ("…Judge Clarke found that the NYPD Policy did not violate the First Amendment … and I agree with her analysis.").

      In line with these decisions, this Court should dismiss plaintiff's First Amendment claim.  "Although the right to record police conducting official duties in public places is a constitutional right, '[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'"  Reyes, at \*16 (quoting  Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985)).  Instead, speech restrictions are subject to a "forum based" analysis.  Id., at \*16.  "[F]ora for expression are classified into four categories, which fall along a spectrum extending from those deserving the greatest constitutional protection to those deserving the least constitutional protection: 1) the traditional public forum; 2) the designated public forum; 3) the limited public forum; and 4) the non-public forum."  Id., at \*16-\*17 (quoting Tyler v. City of Kingston, 74 F.4th 57, 61 (2d Cir. 2023)).

      "In determining the type of forum, courts 'examine the forum's physical characteristics and the context of the property's use, including its location and purpose.'"  Id., at \*19 (quoting Hotel Emps. & Rest. Union, Loc. 100 of New York v. City of New York Parks and Recreation, 311 F.3d 534, 547 (2d Cir. 2002)).  "Courts additionally consider the 'government's intent in constructing the space and its need for controlling expressive activity on the property, evidenced by its policies or regulations.'"  Id.  "Finally, courts 'consider whether the property in

question is part of a class of property which by history or tradition has been open and used for expressive activity.'" Id. "The fact that members of the public are permitted freely to visit a forum…does not abrogate its nonpublic status if the visitors are not permitted to express themselves freely in that forum." Id., at *20 (quoting Make The Rd. by Walking, Inc. v. Turner, 378 F.3d 133, 144 (2d Cir. 2004). "Courts 'will not find that a public forum has been created in the face of clear evidence of a contrary intent,' nor will courts 'infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity.'" Id., at *22 (quoting Cornelius, supra, at 803).

"The first category of public property — 'traditional' public fora — are places such as streets and parks which have 'immemorially been held in trust for the use of the public, and time out of mind, have been used for purposes of assembly, communicating between citizens, and discussing public questions.'" Id., at *17 (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). The second category, a "designated public forum," is one in which the government "intentionally open[s] a nontraditional public forum for public discourse[.]" Id., at *18 (quoting Ark. Educ. Television Comm'n v. Forbes 523 U.S. 666, 677 (1998). The third category, a "limited public forum," exists "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." Id. (citing Hotel Emps. & Rests. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 545 (2d Cir. 2002)). The fourth category, a "nonpublic" forum, "is public property that the government has not opened for expressive activity by members of the public." Id., at *19 (citing Hotel Emps., 311 F.3d at 546).

Here, as this Court held, precinct lobbies are not traditional public fora because they are not historically used for "unrestricted expressive activities" such as assembly, communications

between citizens, or discussion of public questions.  Id. at *22.  Nor are they designated public fora as dedicated to such expressive activity, as "[t]here is no evidence that the government intended to open up police precinct lobbies for expressive activities, like peaceful protesting and leafleting, beyond being open to members of the public seeking assistance from the police."  Id. Instead, these lobbies are best characterized as nonpublic fora, akin to "waiting rooms at a city agency."  Id.; see Make the Rd. by Walking, supra, at 145 ("Job Center waiting rooms must be categorized as nonpublic forums.").  **At most**, as this Court has previously held, police precinct lobbies are limited public fora dedicated to interactions between civilians and police on matters of public safety, such as reporting crimes, filing complaints, and obtaining information from law enforcement.  See Reyes, at *20-*21.

Regardless of whether precinct lobbies are classified as limited public fora or nonpublic fora, the constitutional test, at a minimum, is the same: the Facilities Policy should be upheld if it is reasonable and viewpoint neutral.  See id. at *24; Make The Rd. by Walking, Inc., supra, at 143 ("Restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral."); id. ("Restrictions on speech in a nonpublic forum need only be reasonable and viewpoint neutral.").  This Court rightly rejected plaintiff's argument that, "[e]ven if a police precinct were a limited public forum dedicated to discussions of public safety, [p]laintiff's reporting on police activity is squarely within that dedication."  Reyes, at *23.  As this Court held, "in limited public fora, 'government entities are permitted to restrict the form or manner of speech offered by members of the public, even if such speech addresses the topic or agenda of that forum.'"  Reyes, at *23 (quoting Tyler, supra, at 63). Thus, even if "reporting" must be allowed, the use of recording devices need not be.  See id.  Even more fundamentally, while communications regarding public safety between civilians and law

enforcement may fall within the designated purpose of precinct lobbies, <u>see</u> <u>id.</u> at *20-*21, there is no evidence that the City intends these lobbies to be used for civilians to "report[]" on what goes on inside there.  Hence, even if precinct lobbies are characterized as limited public fora, recording police activities—even for "reporting" purposes—may be proscribed in any manner that is reasonable and viewpoint neutral.  <u>See</u> <u>Hotel Emps.</u>, 311 F.3d at 546.

   And indeed, the Facilities Policy satisfies both of those requirements. Plaintiff does not dispute that the policy is viewpoint neutral on its face.  <u>See</u> <u>Reyes</u>, at *30.  And, as this Court has already suggested, it is a reasonable restriction in light of the "privacy, safety and security interests that are implicated by video recordings in police precinct lobbies." <u>Cf.</u> <u>id.</u> at *29-30.  "Indeed, there is a legitimate state interest in protecting the safety of citizens."  <u>Id.</u> at *25 (citing <u>Hill v. Colorado</u>, 530 U.S. 703, 715 (2000)).  "Victims and witnesses of crime may be less willing to go to a precinct to make a report if they know that they may be captured on camera doing so ... especially when that recording may be posted online for anyone to access."  <u>Id.</u>

   While people and objects in a precinct lobby can already be seen by others, "being able to view or listen to these occurrences is different from being able to record them and post them to the internet for anyone to view."  <u>Id.</u> at *28.  Indeed, by seeking to vindicate a supposed right to record the police, plaintiff implicitly acknowledges that recording an event *is* different from seeing it.  The very same aspects of audiovisual recordings that can make them useful to independent journalists like plaintiff can also make them invasive, even dangerous, when they compromise someone's privacy.  "Recording creates a permanent image," and "[a]udio may pick up on conversations or noises that a person's ear cannot hear."  <u>Id</u>.  NYPD's policy is a reasonable balancing of these concerns, establishing a broad right to record in public spaces like "streets,

sidewalks, and parks" while narrowly restricting this right in precinct buildings where privacy and security risks are elevated.  (<u>See</u> Exhibit B to Complaint)

Although this Court's previous conclusion that the Facilities Policy is reasonable arose in a different procedural posture, the reasonableness of the policy is apparent from the pleadings themselves and may therefore be resolved on a Rule 12(b)(6) motion.  <u>See</u> <u>Tyler</u>, <u>supra</u>, at 63-66 (affirming Rule 12(b)(6) dismissal of First Amendment claim on grounds that challenged regulation was reasonable); <u>Fighting Finest v. Bratton</u>, 898 F.Supp. 192, 197-98 (S.D.N.Y. 1995), <u>aff'd</u> 95 F.3d 224 (2d Cir. 1996) (same); <u>Rodney</u>, <u>supra</u>, 2023 U.S. Dist. LEXIS 223117, at *14, *16 (recommending dismissal under Rule 12(b)(6) of First Amendment claims challenging Facilities Policy).  Here, the material incorporated in the Complaint explains that police stations are "frequented by crime victims, undercover officers and other people who need privacy," according to NYPD's assistant deputy commissioner of legal matters.  (Ashley Southall, *Video of Man Berating Officer Opens Debate Over Recording in Police Stations*, N.Y. TIMES (Aug. 21, 2018), cited in Complaint, ¶39)[2] And plaintiff's own recording of the 61st Precinct—also incorporated by reference in the Complaint (Complaint, ¶62)—shows how such activities create security risks; plaintiff was able to film an entry code on a keypad and the location of a security camera.  <u>See</u> <u>Reyes</u>, at *29; (Ex. A to Zuckerman Decl. at 6:51 and 2:03, respectively).  Plaintiff also video- and audio-recorded conversations that civilians had with the NYPD representative behind the glass window.  (Ex. A to Zuckerman Decl. at 2:47-3:24) Further underscoring the reasonableness of the policy is plaintiff's admission that Patrol Guide Procedure No. 203-29 (which contains the policy) was issued in settlement of another lawsuit in this district—a lawsuit

---

[2] https://www.nytimes.com/2018/08/21/nyregion/recording-in-police-stations-newyork.html.

whose aim was to *expand* the public's right to record police activities (Complaint, ¶34 & Exhibits A, B thereto).

### 2. Plaintiff's First Amendment Retaliation Claim Should Also Be Dismissed.

Insofar as plaintiff brings a First Amendment retaliation claim (Complaint, ¶¶106-7), that claim should be dismissed under Rule 12(b)(1).  Plaintiff's claim that his past arrest was unconstitutional (Complaint, ¶¶104-11) does not confer Article III standing to sue for forward-looking relief.  (Complaint, Prayer for Relief).  See City of Los Angeles v. Lyons, 461 U.S. 95, 100-05 (1983) (gathering cases).  "[A] plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm."  Harty v. Simon Property Group, L.P., 428 Fed. App'x. 69, 71 (2d Cir. 2011) (summary order) (citing Lyons at 105).  In fact, plaintiff must show "a sufficient likelihood that he [or she] will again be wronged in a similar way."  Marcavage v. The City of New York, 689 F.3d 98, 103 (2d Cir. 2012) (quoting Lyons at 111).  "In other words, [a plaintiff] asserting an injunction . . . must allege the probability of a future encounter with the defendant which is likely to lead to a similar violation of some protected right."  Curry v. City of New York, 10 Civ. 5847 (SLT)(LB), 2010 U.S. Dist. LEXIS 135461, at *8 (E.D.N.Y. Dec. 22, 2010) (internal citation omitted).  The only consequence of plaintiff's underlying arrest was a short-lived prosecution that was dismissed before this lawsuit was filed.  (Exhibits D, E to Complaint).[3]  Plaintiff suffers no ongoing injury from that arrest that would be redressed by the prospective injunction against the Facilities Policy that he seeks and any allegation that he will be retaliated against in the future is completely hypothetical.  See Lyons, supra; Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (to possess standing to bring a

---

[3] Plaintiff was arrested on at least one other occasion but alleges that this second arrest "do[es] not form the basis for [his] claims" in this lawsuit. (Complaint, ¶79)

claim, "it must be likely … that the injury will be redressed by a favorable decision.") (cleaned up).

If this Court finds that it has subject matter jurisdiction over plaintiff's retaliation claim, it should still dismiss the claim under Rule 12(b)(6).  To prevail on a First Amendment retaliation claim, plaintiff must prove that (1) that he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) the defendants' actions caused him some injury.  <u>Dorsett v. Cnty. of Nassau</u>, 732 F.3d 157, 160 (2d Cir. 2013).  Here, plaintiff alleges that he was retaliated against because he exercised "his First Amendment right to record police performing their official duties in public." (Complaint, <u>e.g.</u>, ¶110)  But as explained above, the First Amendment does not grant plaintiff a right to record the police inside precinct lobbies.  Dismissal is thus proper for this reason as well.

**B.    The Facilities Policy, As Applied to Police Precincts, Does Not Violate the Fourth Amendment.**

Plaintiff's Fourth Amendment claim is premised on the notion that, because the SRTRA and CRTRA supposedly allow individuals to record in the lobbies of police precincts, that he has plausibly alleged municipal liability for Fourth Amendment violations by the City. Plaintiff's claim fails for a number of reasons.

First, plaintiff is improperly using §1983 as conduit to have the court enjoin the Facilities Policy, but which is truly based on state-law grounds.  "<u>Monell</u> liability attaches only to constitutional violations, and not to state-law violations."  <u>Joy v. Godair</u>, 1:16 Civ. 187, 2016 U.S. Dist. LEXIS 174853, at *18 (W.D. Mich. Dec. 19, 2016) (citing <u>Monell</u>, 436 U.S. at 694)). Plaintiff is, without authority, attempting to convert his state and city law claims into a Fourth Amendment violation.  His SRTRA and CRTRA claims are truly state and city law claims, not federal claims.  For this reason alone, plaintiff's Fourth Amendment claims should be dismissed.

Second, as seen, Plaintiff's claim that his one past subject arrest was unconstitutional (Complaint, ¶¶104-11) does not confer Article III standing to sue for forward-looking relief.  (Complaint, Prayer for Relief).  See City of Los Angeles v. Lyons, supra, at 95. Plaintiff's claim that he will be arrested again in the same way as his past underlying subject arrest is completely hypothetical and insufficient to confer standing to seek injunctive relief based on alleged Fourth Amendment violations.  See Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (quoting O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'")

Third, nothing in either the SRTRA or CRTRA purports to displace the NYPD's common law privileges as proprietor, as under New York law, "statutes in derogation of the common law must be strictly construed."  Plymouth Venture Partners, II, L.P. v. GTR Source, LLC, 37 N.Y.3d 591 (2021) (cleaned up).[4]  This conclusion is bolstered by the fact that the trespass Penal Law §§ 140.05 and 140.10 were not altered or amended in any way following the enactments of either the SRTRA or the CRTRA.  Property owners, including NYPD, continue to have the right, if done lawfully, to exclude persons from its buildings and to have New York's trespass laws enforced.  Plaintiff does not plead, nor could he, that there was not probable cause to arrest him for trespass under §§ 140.05 and 140.10 but for his flawed SRTRA and CRTRA arguments, as plaintiff unlawfully remained in the 61st Pct. stationhouse even after he was lawfully ordered to stop recording or leave the premises.  Nor has plaintiff plausibly alleged any other violation of his rights beyond his claims that the SRTRA and CRTRA allow recording in police precinct lobbies.

---

[4] Defendant's complete arguments as to its common law rights as proprietor, as well as the supportive legislative history of the Acts, is set forth in Point III, infra, and is incorporated by reference herein.

Fourth, there was probable cause for plaintiff's underlying arrest in April, 2023 based on Obsruction of Governmental Administration (hereinafter "OGA").  Probable cause for an arrest defeats a Fourth Amendment claim.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  If there is probable cause to arrest, the arrest is not unlawful by virtue of the fact that the arresting officer did not identify a particular charge supported by said probable cause at the time of the arrest.  Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  "An individual…may be convicted under [the OGA] statute when 1) a public servant is performing an official function; 2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and 3) the individual does so intentionally."  Kass v. City of New York, 864 F.3d 200, 207 (2d Cir. 2017).  "[Probable cause] 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity[,]' from the perspective of an objectively reasonable officer.  District of Columbia v. Westby, 583 U.S. 48, 57 (2018) (quoting Illinois v. Gates, 462 U.S. 213, 243-44, n. 13 (1983)).

There was probable cause for plaintiff's April, 2023 arrest.  In the OGA context, "New York courts,…, have construed [the requirement of] 'physical interference' broadly."  Basinski v. City of New York, 706 Fed. App'x 693, 698 (2d Cir. 2017) (summary order) (citing In re Davan L., 91 N.Y.2d 88, 91 (1997)) (stating that the legislature "intended and enacted that criminal responsibility should attach to minimal interference set in motion to frustrate police activity.").  Courts have held that unlawful physical interference includes "inappropriate and disruptive conduct at the scene of the performance of an official function."  Kass, supra, at 209-210 (quoting People v. Romeo, 9 A.D.3d 744, 745 (3d Dep't 2002)).  There is physical interference, therefore, when an individual "'intrude[s] himself into, or get[s] in the way of, an ongoing police activity.'"  Id., at 210 (quoting In re Kendall R., 71 A.D.3d 553, 554 (1st Dep't

2010)).  "'Interrelated conduct-'actions coupled with words' or conduct causing some 'physical reaction and dispersal' is sufficient to satisfy OGA's physical component requirement." Goodman v. City of New York, et. al., 14 Civ. 5261 (CM), 2015 U.S. Dist. LEXIS 37063, at *12 (S.D.N.Y. Feb. 18, 2015) (quoting Breitkopf v. Gentile, 12 Civ. 1084 (JFB), 2014 U.S. Dist. LEXIS 121581, at *110-111 (E.D.N.Y. Aug. 29, 2014)) (citing In re Davan L., supra, at 91-92).  "The law [of OGA] prohibits 'an intentional insertion of one's self or one's intentions into steps taken by police officers to fulfill their duties.'" Id. (quoting People v. Beam, 866 N.Y.S.2d 564, 567 (N.Y. Sup. Ct. 2008)).  "'The obvious and well-settled intent of the statute is to allow police officers to go about their business without any obstacles put in their way.'" Id.; see also Hilderbrandt v. City of New York, 13 Civ. 1955 (ARR), 2014 U.S. Dist. LEXIS 128170, at *10 (E.D.N.Y. Sept. 11, 2014) ("The physical requirement [of OGA]…can be met [] by the physical encroachment on police officers' work or by the performance of threatening and distracting movements near officers.").

Under the foregoing authorities, plaintiff's intentional conduct which led to his underlying subject April, 2023 arrest, amounted to "physical interference" with NYPD officers' official and lawful functions at the 61st Precinct.  Plaintiff approached, remained and video and audio recorded within feet (or less) of individuals who either were on line to speak with the NYPD representative behind the glass window and/or who were filling out paperwork in connection with such interactions.  (Ex. A to Zuckerman Decl.)  Plaintiff audio and video recorded individuals' interactions as they were speaking to the NYPD representative behind the glass window for which no permission was granted.  (Ex. A to Zuckerman Decl. at 2:47-3:24)  Plaintiff also intentionally video recorded the security code that officers used to enter the restricted area of the Precinct (Ex. A to Zuckerman Decl. at 6:51), creating an obvious security concern.  Plaintiff additionally video recorded the adjacent hallway to the precinct lobby in the restricted area of the Precinct (Ex. A to

Zuckerman Decl. at 2:51-2:58), also creating a potential security concern.  Plaintiff also video recorded a security camera on the ceiling of the lobby (Ex. A to Zuckerman Decl. at 2:08), potentially creating yet another security concern.  Plaintiff  also recorded NYPD officers though the glass window who were performing their duties in the restricted area, and the officer he was recording appeared to have been distracted by plaintiff's conduct.  (Ex. A to Zuckerman Decl. at 5:47-5:49)  Plaintiff's acts clearly intruded upon, and disrupted the officers' duties as exemplified by the [female] officer's having to divert her attention away from her interactions that she was having with the individuals present, and turn her attention to plaintiff.  (Ex. A to Zuckerman Decl. at 7:51)  All of these acts were performed by plaintiff while he gave an audible and ongoing narrative of what was occurring.  (Ex. A to Zuckerman Decl.)  Plaintiff then ignored multiple orders by NYPD officers to either stop recording or leave the Precinct.  (Ex. A to Zuckerman Decl. at 7:38-8:30)  Plaintiff's conduct amounted to OGA.  As such, there was probable cause for his underlying arrest on this basis as well, which defeats his Fourth Amendment claim.

Fifth, an arrest purportedly in violation of the state or city right to record acts do not, *ipso facto*, violate the Fourth Amendment.  Virginia v. Moore, 553 U.S. 164 (2008) (holding that a police officer does not violate the Fourth Amendment "by making an arrest based on probable cause but prohibited by state law"); Techu-El v. Conetta, 2023 U.S. App. LEXIS 9405, at *3 (2d Cir. Apr. 20, 2023) (summary order) ("Techu-El also failed to state a constitutional claim premised on his arrest or detention because the Fourth Amendment does not forbid a warrantless arrest for offenses such as speeding or unlicensed driving, *even if—as Techu-El asserts—those are not 'arrestable' offenses under state law*.") (emphasis added) (citing Moore, 553 U.S. at 176); U.S. v. Bernacet, 724 F.3d 269 (2d Cir. 2013) ("[T]he Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and … the violation of such

restrictions will not generally affect the constitutionality of a seizure supported by probable cause.") (quoting <u>U.S. v. Wilson</u>, 699 F.3d 235, 243 (2d Cir. 2012)).  As arrests of the type complained of in the Complaint do not violate the Fourth Amendment, plaintiff's claim based on the SRTRA and CRTRA fails.

Sixth, plaintiff has not plausibly alleged any other violations of federal law either. As seen, plaintiff's First Amendment rights were not violated.  <u>See</u> Point I, <u>supra</u>.  Further, plaintiff has not plausibly alleged that Penal Law §§ 140.05 and 140.10 were otherwise unconstitutionally applied to him.  Plaintiff's Fourth Amendment claim should therefore be dismissed.

**POINT II**

**THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE AND CITY LAW CLAIMS**

**A.    The Court Should Decline Supplemental Jurisdiction over Plaintiff's Right to Record Act Claims.**

Defendant City is also moving for the dismissal of plaintiff's state law claims for lack of jurisdiction.  "Under 28 U.S.C. § 1367(a), federal courts have jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy." <u>Seabrook v. Jacobson</u>, 153 F.3d 70, 71 (2d Cir. 1998).  "Subsection (c) of § 1367 lists several circumstances in which the federal court may choose not to exercise that jurisdiction: (1) the state claim raises a novel or complex issue of state law; (2) the state claim substantially predominates over the claim over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it had original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." <u>Id</u>.  "Other than the catch-all provision, the listed circumstances reflect concerns about the relationship between state and federal courts." <u>Id</u>.

19

"Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts.  This is particularly true if the federal claim on which the state claim hangs has been dismissed."  Id., at 72 (citing Rounseville v. Zahl, 13 F.3d 625, 631 (2d Cir. 1994)).

Because plaintiff's federal claims should be dismissed (see Point I, supra), this Court should decline to exercise supplemental jurisdiction over plaintiffs' Right to Record Act claims.  See 28 U.S.C. § 1367(c)(3); Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).[5]  As the Second Circuit has articulated, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over the remaining state law claims."  Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006).  In the "usual case" where all federal claims "are eliminated before trial" the balance of factors to be considered – judicial economy, convenience, fairness, and comity – "will point toward declining to exercise jurisdiction over the remaining state law claims."  Kolari, supra.  Plaintiff has failed to plausibly allege any federal claims.

There are other reasons that the Court should decline jurisdiction over plaintiff's state and municipal law claims as well.  First, these claims present novel and unresolved issues of state and local law, 28 U.S.C. § 1367(c)(1), to wit, whether the CRTRA and SRTRA override the NYPD's common-law prerogative, as a proprietor of its facilities, to enforce reasonable conditions

---

[5] This presents a different situation from the one that confronted the Court when it exercised supplemental jurisdiction in its decision deciding plaintiff's preliminary injunction motion.  Reyes, supra, at *30-31.  There, the Court had not dismissed the federal claim, so 28 U.S.C. § 1367(c)(3) did not then weigh in favor of dismissal.  See Reyes, at *30.

of entry upon its premises (Point III, infra).  See Morse v. Univ. of Vt., 973 F.2d 122, 127-28 (2d Cir. 1992) (where federal claim was dismissed and state claim involved novel questions, "[p]rinciples of comity … dictate that [the state law] question be left for decision by the state courts").  Although this Court previously held that plaintiff's claims under the CRTRA and SRTRA do not implicate novel issues, see Reyes, at *31, it did not have the full benefit of the arguments below relating to those enactments.  And the City is not aware of any published New York decisions construing the Acts—let alone in the context of government buildings, as opposed to the more typical case of civilians recording police on the streets.

A final factor weighing against supplemental jurisdiction is the fact that plaintiff's claims "concern[] the administration of state [and City] government and the balancing of important state policies[.]"  Seabrook, supra, at 71; see also id. at 73 (concluding that where federal claim was dismissed and remaining claim "turn[ed] on a question of state law which not only is undecided, but which also requires a balancing of numerous important policies of state government," district court abused its discretion in exercising supplemental jurisdiction).  As this Court already noted, the Facilities Policy safeguards the City's "legitimate state interest in protecting the safety of citizens," because "[v]ictims and witnesses of crime may be less willing to go to a precinct to make a report if they know that they may be captured on camera doing so."  Reyes, at *25.  And recordings may capture sensitive information, as plaintiff did here when he "zoomed in on various people and objects, underscoring some of the City's concerns about allowing recording inside police precinct lobbies."  See id., at *28.  Forcing the NYPD to permit such recordings at every precinct would mark a significant policy shift—one that should not be compelled before the New York State courts have had a chance to weigh in.

**B.      Regardless of Whether the Court Dismisses Plaintiff's Federal Claim, It Should Decline Supplemental Jurisdiction over His CAPA Claim.**

In its November 2 order, this Court did not expressly decide whether to exercise supplemental jurisdiction over plaintiff's CAPA claim. <u>See</u> <u>Reyes</u>, at \*30-\*31.  It should now decline to do so.  Like plaintiff's Right to Record Act claims, his CAPA claim concerns an undecided question: whether a policy that merely expresses what people can do inside NYPD buildings, and provides that officers "may" direct individuals to cease recording, is a "rule" that must be promulgated in accordance with CAPA's rulemaking provisions.  Furthermore, resolving that question would deeply implicate the citywide administration of the NYPD—not only with regard to its recording policy, but other restrictions it may seek to impose to maintain order and security on its premises.  <u>Seabrook</u>, <u>supra</u>, at 71.

But there is yet another reason to decline supplemental jurisdiction over this claim: it could only have been brought under N.Y. C.P.L.R. Article 78.  <u>See</u> <u>Carver v. Nassau Cty. Interim Fin. Auth.</u>, 730 F.3d 150, 155 (2d Cir. 2013).[6]  And courts in this circuit rarely exercise supplemental jurisdiction over Article 78 claims. <u>See</u> <u>YMCA of Greater Rochester v. Town of Milo</u>, 563 F.Supp.3d 71, 79-80 (W.D.N.Y. 2021) ("It is generally inappropriate for a federal district court to exercise supplemental jurisdiction over an Article 78 claim") (cleaned up); <u>Rothenberg v. Daus</u>, 08 Civ. 587 (SHS), 2014 U.S. Dist. LEXIS 105598, at \*77-\*80 (S.D.N.Y. Jul. 31, 2014).  Indeed, the Second Circuit has recognized a split in authority as to whether a federal court even *could* exercise such jurisdiction.  <u>See</u> <u>Carver v. Nassau Cty. Interim Fin. Auth.</u>, 730 F.3d 150, 155 (2d Cir. 2013) ("We need not decide … whether Article 78 can, on its own, deprive

---

[6] Article 78 appears to be the only statutory vehicle that could authorize plaintiff to seek injunctive relief on the ground that the Facilities Policy violates CAPA. <u>See</u>, <u>e.g.</u>, <u>Kaehny v. Lynn</u>, 172 Misc. 2d 295 (N.Y. Sup., N.Y. Cty. 1997); <u>Williamsburg Around the Bridge Block Ass'n v. Giuliani</u>, 167 Misc. 2d 980 (N.Y. Sup., N.Y. Cty. 1995).  Nothing in the text of CAPA itself authorizes private rights of action to enforce its rulemaking provisions.  <u>See</u> N.Y.C. Charter §1043; <u>Malone v. City of New York</u>, 192 A.D.3d 510, 511 (1st Dep't 2021); <u>Patriot Organics LLC v. N.Y.C. Dep't of Envt'l Protection</u>, 2022 Misc. LEXIS 17715, at \*7 (Sup. Ct., Queens Co. Oct. 20, 2022).

a federal court of jurisdiction over claims brought under that provision, as some district court cases have held"); see also Cartagena v. City of New York, 257 F. Supp.2d. 708, 709-10 & n.1 (S.D.N.Y. 2003).

This Court need not tackle the question—left unresolved in Carver—as to whether federal courts are not categorically prohibited from hearing Article 78 claims.  That is because Carver held that it was nevertheless an abuse of discretion to assert supplemental jurisdiction over an Article 78 claim that "raises an unresolved issue of state law" and "implicates significant state interests."  Carver, supra, at 154-155.  As Carver explained, "Article 78 reflects a state preference for a state mode of procedure," and that "state preference to try Article 78 claims in state court bears on our assessment" of whether to exercise supplemental jurisdiction "where other factors, too, strongly support declining that jurisdiction."  Id., at 155; see also Rothenberg, 2014 U.S. Dist. LEXIS 105598, at *12, *76-*80 (declining to exercise supplemental jurisdiction over plaintiff's Article 78 claims, which included a CAPA claim, and noting that federal courts might be precluded from exercising jurisdiction over such claims altogether).  The very same factors that led the Carver court to conclude that supplemental jurisdiction was improper are found in this case.  Here too, plaintiff's CAPA claim arises under Article 78; it addresses an undecided question of local law; and it bears significantly on how the City operates its police facilities.

If this Court dismisses plaintiff's federal claims—as it should—then that would further erode any basis for exercising supplemental jurisdiction over his CAPA claim.  See 28 U.S.C. § 1367(c)(3).  But it is important to note that the Carver factors counsel in favor of dismissal of this Article 78 claim even if this Court does not dismiss plaintiff's federal claim.  See Carver, at 153, 156 (holding that supplemental jurisdiction over an Article 78 claim was inappropriate even though the plaintiff's federal claim was not dismissed).  Indeed, Carver did not address the merits

of plaintiff's federal claim at all, <u>see id.</u>, at 154, whereas here, the Court has already found that plaintiff was not likely to succeed on the merits of his sole federal claim, <u>see Reyes</u>, at *30.  Thus, if anything, there is an even greater reason here than in <u>Carver</u> to decline supplemental jurisdiction.

**POINT III**

**PLAINTIFF'S RIGHT TO RECORD ACT
CLAIMS FAIL**

**A.      The NYPD May Impose Conditions of Entry that Safeguard Privacy and Security as Proprietor of its Own Facilities.**

Under New York law, "statutes in derogation of the common law must be strictly construed."  <u>Plymouth Venture Partners, II, L.P. v. GTR Source, LLC</u>, <u>supra</u>, at 591.   A foundational principle of property law prescribes that "a person is licensed or privileged to enter private premises [only] when [they have' obtained the consent of the owner[.]"  <u>People v. Graves</u>, 76 N.Y.2d 16, 20 (1990) (cleaned up).  A property owner may impose conditions on this license to enter.  <u>See</u> Restatement 2d of Torts §168.  When a licensee exceeds those conditions, consent may be revoked, and the licensee thereby becomes a trespasser.  <u>See</u> <u>Id</u>. §§168 cmt d, 171; <u>Wheelock v. Noonan</u>, 108 N.Y. 179, 183-84 (1888); Penal Law §§ 140.00(5), 140.05.

Subject to constitutional constraints, governmental property owners enjoy the same right to exclude.  <u>See</u> <u>People v. Munroe</u>, 18 Misc.3d 9, 10-11 (N.Y. App. Term, 2d Dep't 2007) (community college); <u>People v. Alderson</u>, 144 Misc. 2d 133, 145 (N.Y. Crim. Ct., N.Y. Cty. 1989) (Department of Health building).  The fact that the government chooses to open certain facilities to the public, for certain purposes, does not mean that "the use thereof may be demanded as a matter of right by any individual[.]"  <u>Ellis v. Allen</u>, 4 A.D.2d 343, 344 (3d Dep't 1957) (school building); <u>see</u> <u>Bd. of Higher Ed. v. Students for a Democratic Soc'y</u>, 60 Misc.2d 114, 118 (N.Y. Sup. Ct., Queens Cty. 1969) (college campus).

24

Thus, New York courts have long understood that the NYPD, as a proprietor, may exclude individuals from its buildings.  In People v. Martinez, 43 Misc.2d 94 (N.Y. Crim. Ct., N.Y. Cty. 1964), the court found defendants guilty of trespass after they occupied a "public corridor" at Police Headquarters and ignored instructions to leave.  Id., at 96-98. As the court explained, a government building, "especially one which houses so vital a functioning department as the Police Department, may not be used in a manner which suits the whim or caprice of every citizen, without reducing our government to chaos[.]  Id., at 97.  In so holding, Martinez relied heavily on common-law precepts, namely, the NYPD's "right … to exclude" individuals from "property owned by the City of New York."  Id.

Similarly, in People v. Reape, 22 Misc.3d 615 (N.Y. Crim. Ct., Kings Cty. 2008), the court denied a motion to dismiss a trespass count where the defendant ignored an order to leave a police precinct.  The court explained that the police, as the "custodian[s]" of such premises, were in the best position to know whether the defendant had acted in a way that required him to be asked to leave."  Id., at 619.  The Court underscored that precincts are used by "citizens who seek to give or obtain information about public safety," and "[t]hose who enter in order to use the facilities…need to know that their safety is being protected while they are present there."  Id., at 618-19.

Nothing in either the SRTRA or CRTRA purported to displace the NYPD's common law privileges as proprietor.  While the Acts guarantee a substantive right to record the police and enumerate *conduct* based exceptions to this right, Civ. Rights L. § 79-p(2); Admin. Code § 14-189(b), their text says nothing about *where* such recordings are permitted.  Given the Acts' silence on this point, they cannot be read to impliedly supersede the NYPD's proprietary authority to require visitors at its precincts to observe its rules.  In other words, the City does not

propose an unwritten "exception" to the Acts, but rather use of settled canons of construction to identify their intended boundaries.

It cannot be that the statutory right to record is unrestricted as to location. A contrary reading would lead to the sort of "absurd application[s]" that courts construing New York legislation must avoid. <u>Lubonty v. U.S. Bank Nat'l Ass'n</u>, 34 N.Y.3d 250, 255 (2019) (cleaned up). For example, if the SRTRA did not import the government's traditional prerogative as a proprietor, there would be no textual basis to bar courtroom spectators from bringing their cellphones into State courthouses and recording court security officers. <u>See</u> N.Y. Civ. Rights L. § 79-p(1)(a) (defining "Officer" to include "security officer, security guard or similar official"). And if the police were called to a home on a sensitive matter, officers would be barred from assisting a homeowner who sought removal of a guest who insisted on recording over the owner's express objection. Furthermore, under plaintiff's view, even civilians in *non-public* areas of police precincts (or other government buildings) would, presumably, be entitled to bring their recording devices and film any police or security officers they see. There is no reason to assume the State Legislature and City Council intended such sweeping but unannounced policy changes.

**B.      Legislative History Shows That the Right to Record Acts Codify a Pre-Existing Right to Record in Public, Not Expand That Right to Police Precincts.**

The foregoing conclusions are reinforced by the legislative history of the Acts.[7] <u>See</u> <u>People v. Wallace</u>, 31 N.Y.3d 503, 507 (2018) ("Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." (cleaned up)) In <u>Wallace</u>, for example, the Court of Appeals

---

[7] "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998).

declined to ascribe a literal interpretation to the seemingly categorical language of a firearm law and instead relied entirely on legislative history to clarify the statute's locational boundaries.  See id., at 507-10.  Here, too, the legislative history makes clear that the State Legislature and City Council intended to codify—and add teeth to—a pre-existing right to record "the *public* activities of law enforcement."  (Ex. B to Zuckerman Decl., S3253A Introducer's Mem. In Supp. 1) (emphasis added).  It reveals no intention to authorize, nor even any consideration of, recording within police facilities.

Prior to 2020, several federal courts of appeals recognized the right to record public officials "in a public place."  Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011); see Field v. City of Phila., 862 F.3d 353, 356 (3d Cir. 2017) (3d Cir. 2017); ACLU v. Alvarez, 679 F.3d 583, 597 (7th Cir. 2012).  But state lawmakers were concerned that individual officers may not have been complying with that mandate.  The solution, was as one assemblymember explained, was to "affirm[] this so that the police agencies like the NYPD will know for sure and…respect that right." (Ex. C to Zuckerman Decl., N.Y. Assembly Debate Tr. at 101; see also id. at 108 (statement from a different assemblymember that the bill "[t]ak[es] something that we already know is a right and mak[e] it statutory so that there's a civil right of action"))  In the State Senate, the Sponsor's Memorandum likewise suggested that the bill would embody the constitutional standard articulated by "several Federal Circuit Courts."  (Ex. B to Zuckerman Decl.)  In short, lawmakers understood that the SRTRA would enforce a constitutional standard—which, as seen, is entirely compatible with the Facilities Policy (Point I, supra).

The City Council was moved by similar concerns when considering the CRTRA. As noted above, two years before the CRTRA was enacted, NYPD already directed its officers not to interfere with lawful recordings "in public places, such as streets, sidewalks, and parks, as well

as private property in which the individual has a legal right to be present." (Ex. A to Complaint, ¶1)  Indeed, an NYPD representative supported the "substance" of the bill that eventually became the CRTRA, which, he testified, was already reflected "in our Patrol Guide" (Ex. D to Zuckerman Decl., 6/9/20 N.Y.C. Council Comm. on Public Safety Hr'g Tr., at 63)—the same Patrol Guide that contains the Facilities Policy. (See Ex. A to Complaint).  Furthermore, the CRTRA's sponsor told the Council that the law already "allow[ed] people to record in a public space," signaling an intention to strengthen that existing right (Ex. D to Zuckerman Decl. at 36).  But the Council noted instances in which civilians reported that individual officers had nonetheless interfered with such recordings (Ex. E to Zuckerman Decl., N.Y.C. Council, Comm. on Public Safety, Comm. Rep. of the Justice Div., at 6; Ex. D to Zuckerman Decl. at 35), which underscored the perceived need for a statutory enforcement mechanism.

These state and city lawmakers repeatedly emphasized that the right to record was most urgently needed in "public" spaces. (Ex. C to Zuckerman Decl. at 117-18, 120, 126; Ex. D to Zuckerman Decl. at 36)  That emphasis made sense in light of recent events, in particular George Floyd's murder, which weighed heavily in the lawmakers' debates. (Ex. C to Zuckerman Decl. at 114, 122, 128, 129, 131)  Lawmakers also alluded to the public's need to record how police were responding to ongoing protests—which, of course, were predominantly occurring on public streets and sidewalks. (Ex. C to Zuckerman Decl. at 123, 124-25; Ex. D at 34-35)  The SRTRA's sponsor in the Assembly explained that, in a paradigmatic case, "people on the streets" would need the law's protection to record "officers misbehaving." (Ex. C to Zuckerman Decl. at 103)

In short, the legislative history shows that the Acts added a private enforcement mechanism to strengthen a preexisting right to record in public places—not to expand the substance of that right beyond what was already recognized under federal First Amendment

28

jurisprudence and NYPD policy.  There is no legislative history indicating that the Acts were intended to curtail the NYPD's longstanding, proprietary authority to restrict recordings inside its buildings, and every reason to believe they were not so intended.

**C.    Plaintiff Interfered With Law Enforcement Activities Prior to His Subject Arrest**

The SRTRA, in pertinent part, states as follows:  "Nothing in this subdivision shall be construed to permit a person to engage in actions that physically interfere with law enforcement activity or otherwise constitute a crime defined in the penal law involving obstructing governmental administration [OGA]."  Civ. Rights L. § 79-p(2).  Similarly, the CRTRA states that "[n]othing in this chapter shall be construed to permit a person to engage in actions that physically interfere with an official and lawful police function,…."  N.Y.C. Admin. Code § 14-189(b).

For the reasons set forth in Point I(B), <u>supra</u>, at pp. 16-18 herein, plaintiff physically interfered with law enforcement official and lawful functions and activities preceding his underlying subject arrest.  Plaintiff's conduct amounts to "physical interference" within the meaning of the SRTRA and CRTRA.  "[I]mproper conduct for which monetary remedies cannot provide adequate compensation" may give rise to the irreparable harm necessary for an injunction to issue.  <u>See</u> <u>Paulsen v. Cty. of Nassau</u>, 925 F.2d 65, 68 (2d Cir. 1991).  Here, there was no improper conduct by the NYPD under the Acts because plaintiff physically interfered with officers' official functions and duties.  Plaintiff committed prohibited conduct.  Thus, because the NYPD never committed improper conduct under the Acts as to Plaintiff's allegations in the Complaint, this by itself defeats plaintiff's claims for injunctive relief under the Acts.

**POINT IV**

**<u>PLAINTIFF'S CAPA CLAIM FAILS</u>**

If the Court determines that it can exercise supplemental jurisdiction over plaintiff's CAPA claim, <u>but</u> <u>see</u> <u>Rothenberg</u>, <u>supra</u>, at *12, 76-80, it should dismiss this claim on the merits

29

because the Facilities Policy is not a "rule" as defined under CAPA, and rulemaking is thus not required under CAPA.  CAPA, in relevant part, defines a "rule" to include "standards which, if violated, may result in a sanction or penalty." N.Y.C. Charter § 1041(5)(a).  But "rule[s]" under CAPA exclude policies that preserve the agency's discretion to mete out a sanction.  See Matter of DeJesus v. Roberts, 296 A.D.2d 307, 310 (App. Div. 1st Dep't 2002) ("The rulemaking process is mandated when an agency establishes precepts that remove its discretion by dictating specific results in particular circumstances.").  "Only a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation" that must be formally adopted.  Id. (quoting Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 N.Y.2d 948, 951 (1985)).  "Rules are not required for 'ad hoc decision making based on individual facts and circumstances,' id. (quoting Matter of Alca Indus. v Delaney, 92 N.Y.2d 775, 778 (1999), or for 'interpretive statements and statements of general policy that are merely explanatory and have no legal effect.'"  Id. (quoting Childs v. Bane, 194 A.D.2d 221, 228 (3d Dep't 1993)).

        The statement in the Facilities Policy that "[m]embers of the public are not allowed to photograph and/or record police activity within Department facilities"  (Exhibit B to Complaint ¶7) is explanatory and does not, in and of itself, carry any legal effect.  The only "sanction or penalty" is the possibility that a person will be arrested for trespass.  But a person who violates the Facilities Policy does not *ipso facto* become a trespasser; to be guilty of trespass, the person must also defy "a lawful order not to remain[.]"  People v. Pennisi, 2018 N.Y. Misc. LEXIS 5585, at *5 (N.Y. Sup., Queens Co. Dec. 3, 2018); see Penal Law § 140.05 ("A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon the premises"); id. § 140.00 ("A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to

the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him...."). The Facilities Policy states only that the officer "*may* order a member of the public" to stop recording, and should only direct a person to leave if they refuse that order (Exhibit B to Complaint ¶ 7 (emphasis added)). In other words, people recording inside police precincts do not automatically become trespassers until they defy a lawful order, and the Facilities Policy assigns officers discretion whether to communicate such orders in the first place. Because the Facilities Policy does not preordain the imposition of a sanction in a rigid, preset manner, but rather assigns officers discretion to communicate orders to stop recording, i.e., in the totality of the circumstances, they believe such recording is inappropriate, it is not a rule within the meaning of CAPA, and rulemaking is not required. See DeJesus, supra, at 310. As such, for these reasons, plaintiff's CAPA claim should be dismissed.

## POINT V

## INSOFAR AS THE COMPLAINT SEEKS DECLARATORY RELIEF, THAT CLAIM FAILS

Plaintiff's amended Complaint seeks "[s]uch other relief as the Court deems just and proper" and eliminates a clause that had appeared in the original complaint stating that he "does not seek a Declaratory Judgment." (Compare Docket 1, Prayer for Relief, Par. E, with Docket 68, Prayer for Relief, Par. E). To the extent that plaintiff now seeks declaratory relief under this catch-all provision, this claim should be dismissed.

### A.    Plaintiff Has Not Alleged a Controversy of "Sufficient Immediacy and Reality"

Federal courts have "'unique and substantial discretion in deciding whether to declare the rights of litigants.'" Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entertainment Corp., 08 Civ. 1558 (RMB)(THK), 2009 U.S. Dist. LEXIS 21938, at *35 (S.D.N.Y. Mar. 2, 2009) (quoting Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)); see also Chiste v.

Travelocity.com, LP, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010).  In deciding whether to exercise this jurisdiction, the Second Circuit has held that courts should consider "whether a declaratory judgment will [i] 'serve a useful purpose in clarifying and settling the legal relations in issue'; or [ii] 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Dolphin Direct, 2009 U.S. Dist. LEXIS 21938, at *35 (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)).

Courts require an "actual controversy between the parties" for declaratory relief to lie.  In re REFCO Inc. Securities Litig.: Krys v. Aaron, No. 07-md-1902 (JSR), 08 Civ. 7416 (JSR), 2010 U.S. Dist. LEXIS 142588, at *41 (S.D.N.Y. July 19, 2010) (citing United States v. Doherty, 786 F.2d 491, 498-99 (2d Cir. 1986)).  To warrant declaratory relief, "[t]here must be a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  ICOS Vision Systems Corp., N.V. v. Scanner Technologies Corp., 699 F. Supp. 2d 664, 667 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

The Complaint does not plausibly allege a controversy of "sufficient immediacy and reality" to warrant declaratory judgment.  Plaintiff fails to recognize the "different purposes of the declaratory and the injunctive remedies—the former allow a litigant to seek an order from the court *before* subjecting [himself] to liability,…, while the latter more often is invoked to terminate *ongoing* injurious activity…."  See Abortion Rights Mobilization v. Regan, 544 F. Supp. 471, 490 (S.D.N.Y. 1982) (emphasis added).  Plaintiff does not allege that he is suing to redress a present injury; he merely expresses a desire to record in NYPD police precinct lobbies at an unspecified future time of his choosing (Complaint, ¶78).  Since plaintiff has not made specific allegations as to future recording in an NYPD precinct, i.e., when, where or exactly what he plans

to do, there are not "adverse legal" consequences that are "immedia[te] and real[]." <u>ICOS</u>, <u>supra</u>, at 667. For now, they are future and distant. Because a forward-looking injunction would afford plaintiff complete relief, he may not seek a declaration.

**B.      Plaintiff's Newly Added Declaratory Relief Claim Is Barred By <u>Younger</u>**

If this lawsuit satisfies the prerequisites for declaratory relief, then the Court should still dismiss plaintiff's declaratory relief claim under the <u>Younger</u> abstention doctrine, as any declaration that the Constitution, SRTRA, CRTRA, or CAPA forbids the City from disallowing recordings in the lobbies of police precincts would interfere with plaintiff's prosecution arising out of his June 1, 2023 arrest at the NYPD's 75th Precinct (Complaint, ¶ 79; Docket 20-4).[8] As noted, plaintiff's initial complaint contained a curious provision waiving any claim for declaratory relief. Transparently, the purpose of that carveout was to sidestep <u>Younger</u>. And indeed, this Court held in <u>Reyes</u>, <u>supra</u>, that plaintiff's initial complaint did not mandate <u>Younger</u> abstention. But to the extent plaintiff has reinserted a claim for declaratory relief, the Court's preliminary injunction decision is no longer apposite and <u>Younger</u> is back in play.

"The <u>Younger</u> doctrine generally prohibits federal courts 'from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.'" <u>Reyes</u>, at *7 (quoting <u>Diamond "D" Constr. Corp. v. McGowan</u>, 282 F.3d 191, 198 (2d Cir. 2002)). "'So long as such challenges relate to pending state proceedings, proper respect for the ability of

---

[8] This prosecution has not concluded despite the Criminal Court's January 30, 2024 order granting plaintiff's motion to dismiss the charging instrument, as the People still have the right to appeal that order pursuant to C.P.L. §460.10(1). (<u>See</u> Complaint ¶79 and Zuckerman Decl., ¶8). <u>See</u> <u>Wright v. Magill</u>, 18 Civ. 1815 (JRT/SER), 2019 U.S. Dist. LEXIS 18392, n. 2 (D. Minn. Jan. 7, 2019) ("While there was, in the academic sense, an ongoing state judicial proceeding because Wright filed this federal suit before his appeal right had expired in state court, that time has since passed and there is no indication whatsoever that Wright appealed Judge Magill's decision.")

state courts to resolve federal questions presented in state court litigation mandates that the federal court stay its hand.'"  Id., at *8 (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 2 (1987)).

The Supreme Court has explained that Younger abstention applies in to "ongoing state criminal prosecutions"  Id., at *8 (quoting Sprint Communs., Inc. v. Jacobs, 571 U.S. 69, 78 (2013)).  "Before invoking Younger, a court may consider three additional factors:  whether there is '1) an ongoing state judicial proceeding, which 2) implicates important state interests, and 3) provides an adequate opportunity to raise federal challenges.'"  Id. (quoting Sprint Communs., at 81).  "[T]hese conditions are not dispositive;  they are, instead, additional factors appropriately considered by the federal court before invoking Younger.'"  Id., at *8-9 (quoting Cavanagh v. Geballe, 28 F.4th 428, 432 (2d Cir. 2022)).

"Younger abstention is applicable when the plaintiff 'in the federal action seek[s] to enjoin or otherwise supervise' or interfere with a pending state criminal prosecution."  Id., at *10 (quoting Helms Realty Corp. v. City of New York, 320 F. Supp.3d 526, 538 (S.D.N.Y. 2018)). The issuance of a declaratory judgment of the type that plaintiff seems to seek here—namely, that the City is barred under the Constitution, the SRTRA, the CRTRA, and/or CAPA from enforcing the Facilities Policy in police precinct lobbies—would improperly interfere with criminal proceedings that have not yet concluded, particularly since these very same defenses were raised by plaintiff  in his successful bid to dismiss the charges.  (Ex. F to Zuckerman Decl.).  See Kirschner v. Klemons, 225 F.3d 227, 235-37 (2d Cir. 2000) (declining to exercise jurisdiction under Younger and abstaining from hearing the plaintiff's claims for declaratory relief against a state proceeding).  Indeed, the Supreme Court has made clear that a court should abstain under Younger when a plaintiff who is a criminal defendant in a parallel case seeks a declaration that the rule they were charged under is unlawful. See Samuels v. Mackell, 401 U.S. 66 (1971) (abstention

of district court required for federal claim seeking declaration that state criminal anarchy statute was unconstitutional where state prosecution was ongoing); Nat'l Private Truck Council v. Okla. Tax. Comm'n, 515 U.S. 582, 591 (1995) (reaffirming Samuels's "holding that prohibition against enjoining pending state criminal proceedings applies to granting of declaratory relief")

Nor do the discretionary factors that the Court may apply change the result here. There is an ongoing state prosecution that is not completed, which is clearly an important state interest. See Davis v. Lansing, 851 F.2d 72, 76 (2d Cir. 1988) ("There is no question that [an] ongoing prosecution implicates important state interests") There is also no indication that plaintiff cannot raise federal constitutional challenges in that proceeding. See Cullen v. Fliegner, 18 F.3d 96, 103 (2d Cir. 1994) (a state criminal proceeding ordinarily provides an adequate forum for constitutional challenges to the prosecution). The Younger abstention doctrine should thus clearly be applied here and plaintiff's declaratory relief claim dismissed for this reason as well.

## **CONCLUSION**

For the foregoing reasons, the City's motion to dismiss should be granted in its entirety and the Complaint dismissed with prejudice.

Dated:       New York, New York
             February 5, 2024

                              HON. SYLVIA O. HINDS-RADIX
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant City of New York
                              100 Church Street, Room 3-133b
                              New York, New York 10007
                              (212) 356-3519


                       By:    /s/ Mark D. Zuckerman
                              MARK D. ZUCKERMAN
                              Senior Counsel