In the United States District Court for the
Southern District of New York

SeanPaul Reyes
*Plaintiff*

       v.

The City of New York,
*Defendant*

Case No. 23-cv-6369

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Meena Roldán Oberdick
Andrew Case
LatinoJustice PRLDEF
475 Riverside Drive
Suite 1901
New York New York
(212) 739-7506
moberdick@latinojustice.org
acase@latinojustice.org

February 27, 2024
New York, New York

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

STANDARD ....................................................................................................................... 2

FACTS ............................................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

   I.     DEFENDANT'S PROCEDURAL ARGUMENTS FAIL .................................... 3

     A.    The Court Should Not Look Beyond The Pleadings Of The FAC .......................... 3

     B.    Plaintiff Has Standing To Sue For Injunctive Relief ................................. 5

     C.    *Younger* Abstention Would Be Improper Here ........................................ 6

   II.    PLAINTIFF STATES A CLAIM UNDER THE FIRST AMENDMENT .................... 6

     A.    Infringing On The Right To Record Is Evaluated Under Intermediate Scrutiny Regardless Of Forum and The Policy Fails This Scrutiny ....................... 7

       1.    Most Circuit Courts That Have Recognized The Right To Record Apply Intermediate Scrutiny Regardless Of Forum ............................ 7

       2.    The Trespass Policy Fails Intermediate Scrutiny ................................ 12

     B.    Even Under Traditional Forum Analysis, the FAC States a First Amendment Claim. .............................................................................. 13

       1.    The FAC Alleges Facts Sufficient To Find That Precincts Are Designated Public Forums ................................................................ 13

       2.    Even If Precincts Are Limited Forums, The FAC Alleges That The Trespass Policy Is Not Rational ........................................................ 16

         a.    *The Policy Does Not Serve NYPD's Purported Privacy Interest* .......................... 17

         b.    *The Policy Does Not Advance NYPD's Purported Security Interest* ................... 19

     C.    Plaintiff States a First Amendment Retaliation Claim ............................ 19

   III.    PLAINTIFF STATES A CLAIM FOR FALSE ARREST ............................... 20

   IV.   PLAINTIFF STATES CLAIMS UNDER THE STATE AND CITY RIGHT TO RECORD ACTS ....................................................................................... 25

     A.    The Right to Record Acts Are Clear And Unambiguous. ........................ 26

     B.    The Legislative History Affirms The Right to Record Acts' Plain Text Application To The Public Lobbies Of NYPD Precincts. ......................... 30

   V.    PLAINTIFF STATES A CAPA CLAIM .................................................... 31

CONCLUSION .................................................................................................................. 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1700 York Assocs. v. Kaskel*, 701 N.Y.S.2d 233 (Civ. Ct. 1999)..................................................31

*ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)..........................................................7, 9, 18

*Aguilar v. Immigr. & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F.
    Supp. 2d 803 (S.D.N.Y. 2011)......................................................................................................5

*American Civ. Lib. Union v. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003) ...........................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................2

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ................................. 13, 16

*Beck v. Ohio*, 379 U.S. 89 (1964) ..................................................................................................20

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007)......................................................................................2

*Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678 (9th Cir. 2023)....................................21

*Biton v. City of New York*, 416 F. Supp. 3d 244 (E.D.N.Y. 2018)...................................................21

*Cent. Hardware Co. v. N.L.R.B.*, 407 U.S. 539 (1972) ...................................................................27

*Chandler v. Florida*, 449 U.S. 560 (1981)......................................................................................29

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)............................................................................5

*Development Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961) ........................................................4

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) .......................................................2

*Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012)............................................2

*Dorsett v. County of Nassau*, 732 F.3d 157 (2d Cir. 2013) ...........................................................20

*Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017) ......................................................................9

*Flannery v. City of Rochester*, 640 F. Supp. 3d 267 (W.D.N.Y. 2022) .........................................25

*Gaymon v. Borough of Collingdale*, 150 F. Supp. 3d 457 (E.D. Pa. 2015) .....................................8

*Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014)...................................................................................9

*Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) .................................................................................9

*Hayden v. Pataki*, 449 F.3d 305 (2d Cir. 2006)........................................................................26, 27

*Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) .........................................................2

*Hotel Emps. & Restaurant Emps. Union, Loc. 100 v. City of New York Dep't of Parks &
    Recreation*, 311 F.3d 534 (2d Cir. 2002) ..................................................................................10

*Houston v. Hill*, 482 U.S. 451 (1987) .............................................................................................9

*Iacobucci v. Boulter*, 193 F.3d 14 (1st Cir. 1999).....................................................................9, 18

*J.A. v. Miranda*, 2017 WL 3840026 (D. Md. 2017)........................................................................8

*Jackson v. Jimino*, 506 F. Supp. 2d 105 (N.D.N.Y. 2007) ...........................................................13

*Johnson v. Perry*, 859 F.3d 156 (2d Cir. 2017) ............................................................................15

*Kelly v. Borough of Carlisle*, 622 F.3d 248 (3d Cir. 2010) ...........................................................7

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000)...............................................................3

*Megibow v. Hagen*, 09-cv-6993 (S.D.N.Y. 2009) .........................................................................26

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) ........................................................16

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005).............................................................................29

*Miah v. Taxi & Limousine Comm'n of the City of New York*, 306 A.D.2d 203 (Sup. Ct.
    N.Y. 2003) ...................................................................................................................................32

*Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*, 834 F.3d 435 (3d
    Cir. 2016).....................................................................................................................................17

*Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 75 F. Supp. 2d 154 (S.D.N.Y.
    1990)..............................................................................................................................................5

*New York City Comm. for Taxi Safety v. New York City Taxi & Limousine Comm'n*, 256 A.D.2d 136 (1998) .................................................................................................... 31

*New York Magazine v. Metro. Transp. Auth.*, 136 F.3d 123 (2d Cir. 1998) ................................ 15

*New York State Rest. Assn. v. New York City Dep't of Health & Mental Hygiene*, 5 Misc. 3d 1009(A) (Sup. Ct. N.Y. Cnty. 2004) ........................................................................... 32

*Nicacio v. U.S. I.N.S.*, 797 F.2d 700 (9th Cir. 1985) ...................................................................... 5

*Ousmane v. City of New York*, 7 Misc. 3d 1016(A) (Sup. Ct. 2005).................................. 31, 32

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)......................................... 26

*Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617 (2d Cir. 2005) ....................... 11

*People v. Hedemann*, 438 N.Y.S.2d 172 (App. Term 1981) ....................................................... 28

*People v. Leonard*, 62 N.Y.2d 404 (N.Y. Ct. App. 1984)................................................. 21, 22, 24

*People v. Reape*, 868 N.Y.S.2d 497 (Crim. Ct. 2008) ............................................................... 28

*Pinter v. City of New York*, 976 F. Supp. 2d 539 (S.D.N.Y. 2013).................................. 20, 21, 25

*Pitta v. Medeiros*, 90 F.4th 11 (1st Cir. 2024) ............................................................................... 9

*Price v. Garland*, 45 F.4th 1059 (D.C. Cir. 2022)................................................................... 8, 17

*Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020)............................. 7, 10, 18

*Rodney v. City of New York*, 22-cv-1445 (S.D.N.Y. 2023) ......................................................... 27

*Sharpe v. Winterville Police Dep't*, 59 F.4th 674 (4th Cir. 2023).............................................. 7

*Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324 (S.D.N.Y. 2005)............................................. 2

*Storman v. Klein*, 395 F. App'x 790 (2d Cir. 2010) ........................................................... 13, 16

*Tancredi v. Malfitano*, 567 F. Supp. 2d 506 (S.D.N.Y. 2008) ................................................... 18

*Transportation Alternatives, Inc. v. City of New York*, 218 F. Supp. 2d 423 (S.D.N.Y. 2002)........................................................................................................................................... 11

*Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017) ......................................................... 7

*United States v. Messina*, 806 F.3d 55 (2d Cir. 2015)............................................................... 26

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) .............................. 16

*Univ. of Texas v. Camenisch*, 451 U.S. 390 (1981)...................................................................... 4

*Vega v. State Univ. of New York Bd. of Trustees*, 67 F. Supp. 2d 324 (S.D.N.Y. 1999) .......... 13, 16

*Walker v. United States*, 18-cv-2829 (E.D.N.Y. 2021)............................................................... 22

*Westmoreland v. Columbia Broad. Sys.*, Inc., 752 F.2d 16 (2d Cir. 1984)................................... 29

*Wilson v. Cnty. of Contra Costa*, 14-cv-03491 (N.D. Cal. 2015)............................................. 10

*Younger v. Harris*, 401 U.S. 37 (1971) ...................................................................................... 6

**Statutes**

18 U.S.C.A. § 1508................................................................................................................... 29

28 U.S.C. § 2071-2077............................................................................................................. 29

CAPA § 1041(5).......................................................................................................................... 32

N.Y. City Charter § 1041(4)...................................................................................................... 31

N.Y. Civ. Rights Law § 79(2)(3).............................................................................................. 25

N.Y. Penal Law § 140.05 .......................................................................................................... 21

N.Y.C. Admin. Code § 14-189(c) ............................................................................................. 25

**Other Authorities**

Ashutosh Bhagwat, *The Test That Ate Everything: Intermediate Scrutiny in First Amendment Jurisprudence*, 2007 U. Ill. L. Rev. 783 (2007) .................................................... 11

New York City Council, Committee Report of the Justice Division, June 18, 2020................... 30

## INTRODUCTION

In November of last year, this Court found that the NYPD's Trespass Policy—a blanket prohibition on recording inside an NYPD facility, including in public lobbies, under threat of arrest—likely violates both the New York City and New York State Right to Record Acts. *See* Nov. 23, 2023, Opinion and Order ("Order"), Doc. 28 at 24. Undeterred, the NYPD asks this court to find that the allegations set forth in the complaint do not state a cause of action. Defendant's motion should be dismissed.

Defendant first makes procedural arguments, each of which lacks merit. It asks that this Court rely on evidence from the preliminary injunction hearing to grant a motion to dismiss, but this is improper on a 12(b)(6) motion. It claims that Plaintiff lacks standing for injunctive relief, but Plaintiff has alleged that he is refraining from exercising his rights under threat of arrest. And Defendant asks the Court to exercise *Younger* abstention even though Plaintiff's criminal case has been dismissed.

Second, Defendant asks this Court to dismiss Plaintiff's First Amendment claim based on a simple forum analysis. But the right to record police officers is an information-gathering right that implicates unique First Amendment interests. As such, restrictions on it are always subject to intermediate scrutiny, which the Trespass Policy cannot survive.

Third, Defendant seeks dismissal of Plaintiff's Fourth Amendment Claim on the grounds that the underlying legal question is one of state law. But a policy of arresting individuals without probable cause violates the Fourth Amendment. And such claims typically involve state law because whether probable cause exists is usually a state law question.

Finally, Defendant asks this Court to decline to exercise jurisdiction over Plaintiff's state law claims, or alternatively dismiss them. But those laws are straightforward and their

1

application here is simple, as this Court found when it enjoined Defendant pursuant to them in November.

Defendant's motion should be denied.

## STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), "a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor." *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 330 (S.D.N.Y. 2005). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010). The motion should be denied unless "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013).

In considering a motion under Rule 12(b)(1) to dismiss for lack of Article III standing, "the courts 'borrow from the familiar Rule 12(b)(6) standard,' construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." *Morrell v. WW Int'l., Inc.*, 551 F. Supp.3d 173, 180 (S.D.N.Y. 2021) (*quoting Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012)). Additionally, "[i]n resolving a motion to dismiss

2

for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## FACTS

The NYPD forbids anyone from recording inside its facilities, including in the lobbies that are open to the public twenty-four hours a day. If someone is recording in a precinct lobby, the NYPD's policy is to instruct them to leave or stop recording; those who do neither are arrested for criminal trespass (the "Trespass Policy.") FAC ¶ 3. Plaintiff is an independent journalist who seeks to promote transparency in government, including by recording public officials carrying out their public duties. FAC ¶ 1. Plaintiff was arrested when he was recording his experience while standing in line with other members of the public in the public lobby of the 61st Precinct. FAC ¶ 5. He brings this action to enjoin the NYPD from enforcing the Trespass Policy. FAC ¶ 7.

## ARGUMENT

## I.    DEFENDANT'S PROCEDURAL ARGUMENTS FAIL

Defendant asks this Court to rely on facts outside the pleadings, which is improper in resolving a 12(b)(6) motion. Defendant also argues that Plaintiff is not entitled to forward-looking relief, but the FAC establishes that he intends to exercise his rights again but cannot do so under threat of arrest. And Defendant renews its *Younger* claim although Plaintiff's criminal charges were dismissed.

### A.  The Court Should Not Look Beyond The Pleadings Of The FAC

Plaintiff Reyes has alleged that he was arrested, subsequently re-arrested, and faces a significant likelihood of future re-arrest, for exercising his First Amendment right to film police officers performing their official duties in a public place. FAC ¶¶ 87–111. The FAC states facts

that, if proven through discovery, plausibly establish that no contrary significant or even reasonable state interest is served by NYPD's enforcement of the Trespass Policy.

In support of its motion to dismiss, Defendant repeatedly asks this Court to rely on the preliminary findings made in the Order denying Plaintiff's motion for a preliminary injunction on the First Amendment claim. *See* Memorandum of Law In Support of Defendant's Motion to Dismiss ("DMOL"), Doc. 75 at 7, 8, 10, 11, 12, 20, 21, 24, 23. But Plaintiff "is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (*citing Progress Development Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961)).

Defendant also misstates the allegations of the FAC, wrongly asserting that Mr. Reyes seeks to record information without regard to the legitimate privacy interests of "crime victims, undercover officers and other people who need privacy" within "police stationhouses." DMOL at 23. But the FAC made no such claims. Instead, it could not have been clearer: Plaintiff seeks only to record the police in the "**public areas** of NYPD Precincts." FAC ¶ 78. He alleges that "recording officers **in a precinct lobby** does not provide officers probable cause to arrest the individual for trespassing." FAC ¶ 128. He alleges that NYPD Officers are "trained to arrest those recording in **the publicly accessible areas** of NYPD Precincts." FAC ¶ 136 (All emphasis added). His intent is specifically limited to the lobbies and foyers of precincts, which are open to the public and where neither civilians nor the police have a reasonable expectation of privacy.

This Court should limit its review to the allegations as pleaded in the First Amended Complaint when evaluating Defendant's 12(b)(6) motion.

4

### B.  Plaintiff Has Standing To Sue For Injunctive Relief

Periodically, Defendant argues for dismissal pursuant to Rule 12(b)(1), claiming that Plaintiff lacks standing to sue for injunctive relief. *See, e.g.*, DMOL at 24. A plaintiff only has standing to obtain injunctive relief against an illegal practice if he shows it is likely "that he will again experience injury as the result of that practice." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Plaintiff has done so.

Plaintiff has alleged in his complaint and testified at the preliminary injunction hearing that he has concrete plans to continue his reporting at NYPD precincts, including to honor requests from his viewers to accompany them and record while they file complaints. He claims he would do so now except for the fact that he would be arrested under the Trespass Policy. *See, e.g.,* FAC at ¶ 79, ¶¶ 81–86; Transcript of Proceedings ("Tr."), September 28, 2023, Doc. 39 at 12:25–13:9 ("I'm trying to continue my investigation into the NYPD. I have received numerous tips on a weekly basis from people in the New York City area about police misconduct. A lot of people want me to help them file complaints and record that interaction… but I can't do that. I can't do that because I will be arrested").

In addition, Plaintiff has already been subject to re-arrest under the Trespass Policy. *See* FAC ¶ 79. This fact alone is enough to defeat a challenge under *Lyons*. *See, e.g.*, *Aguilar v. Immigr. & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 827 (S.D.N.Y. 2011) (allegations that ICE planned to return to those it had previously visited satisfied *Lyons*); *Nicacio v. U.S. I.N.S.*, 797 F.2d 700, 702 (9th Cir. 1985) ("The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented"); *Nat'l Cong. For Puerto Rican Rts. v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1990), *on reconsideration in part,* 191 F.R.D. 52 (S.D.N.Y. 1999) (when plaintiffs allege they have been

5

subject to the policy multiple times "there is no chain of contingencies making the threat of future harm speculative.").

### C. *Younger* Abstention Would Be Improper Here

Oral argument on Plaintiff's motion for a preliminary injunction contained a substantial discussion of the application of *Younger v. Harris*, 401 U.S. 37 (1971). Defendant sought to have the Court abstain because, even if an order here would not bind the Kings County Criminal Court, "by prohibiting the prosecution to end up going forward by prohibiting the rule to end up staying in place, there would be no attempt by a district attorney to go forward with the prosecution along those lines." Tr. at 67:18–22. But this Court did issue an order, the prosecution did move forward, and the charges were dismissed.

The Kings County Criminal Court issued a written decision holding that the NYPD's Trespass Policy did not support a finding "that the NYPD officer's orders for defendants to cease filming or to leave the premises were lawful." *People v. Reyes*, CR-019322-23KN, Decision and Order, January 30, 2024 (attached as Exhibit 1 to the February 27, 2024 Declaration of Meena Roldán Oberdick ("Roldán Oberdick Decl.")). Justice Auguste conducted an independent review and did not claim to be bound by this Court's Order. Defendant suggests that the state may appeal, but not that an order from this Court would bind the Second Department. *Younger* does not bar this case from going forward any more than it did before the criminal case was dismissed.

## II.    PLAINTIFF STATES A CLAIM UNDER THE FIRST AMENDMENT

Defendant claims that NYPD public lobbies are limited public forums and the Trespass Policy is a reasonable content-neutral restriction on speech. But the right to record law enforcement under the First Amendment is not subject to a forum analysis; as an information gathering right that implicates special First Amendment interests, it is always subject to

intermediate scrutiny. And even if a forum analysis were appropriate here, that analysis should be done on a full record after discovery.

### A. Infringing On The Right To Record Is Evaluated Under Intermediate Scrutiny Regardless Of Forum And The Policy Fails This Scrutiny

1. Most Circuit Courts That Have Recognized The Right To Record Apply Intermediate Scrutiny Regardless Of Forum**Error! Bookmark not defined.**

The majority of federal courts of appeal to have considered challenges to government regulations on the right to record police carrying out their official duties in public spaces have declined to apply traditional speech forum analysis. Instead, they apply intermediate scrutiny, even in cases where the nature of the forum was or could reasonably be in dispute. *See, e.g., Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 835 (1st Cir. 2020) (finding no compelling reason that forum analysis applies in the context of the right to engage in information gathering and applying intermediate scrutiny to strike down restrictions on recording police in any public spaces); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010) (affirming prior circuit cases in which it "declined to apply the speech forum doctrine" to cases "involving the First Amendment right to access information"); *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 681 (4th Cir. 2023) (requiring the police department to demonstrate that its policy was "sufficiently tailored to furthering" "weighty enough interests"); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) (regulations on the right to record the police must be "narrowly tailored to serve a significant governmental interest"); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 604-605 (7th Cir. 2012) (reviewing the Supreme Court's use of intermediate scrutiny in numerous contexts to justify its application of intermediate scrutiny to restrictions on openly recording police in public spaces).

In a recent case regarding the fees for permits for recording in national parks, the D.C. Circuit had occasion to discuss caselaw on recording law enforcement and noted that the cases shared a proposition:

> that it is unreasonable to issue a blanket prohibition against the recording of a public official performing public duties on public property, so long as the recording does not interfere with the performance of the official's duties. . . . This helps explain why these cases **make no effort to determine whether the location of the recording is a public forum**: Because prohibiting the recording of a public official performing a public duty on public property is unreasonable, **the specific nature of the public property is irrelevant**.

*Price v. Garland*, 45 F.4th 1059, 1071 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2432, 216 (2023) (emphasis added).

The incidents that gave rise to these decisions took place in a variety of forums; sometimes the regulations that were challenged could be enforced in different forums.[1] Notably, *Project Veritas* and *Alvarez* both involved challenges to state eavesdropping statutes that prohibited the non-consensual recording of police officers generally, including in public spaces that could be classified as limited or non-public forums. The First and Seventh Circuits respectively made no distinction based on the classification of the public property and expressly declined to apply forum analysis in holding that the eavesdropping statutes violated Plaintiff's right to record police officers "discharging their official duties in public spaces." *Project Veritas*, 982 F.3d at 834-35; *Alvarez*, 679 F.3d at 604-605.

As these cases establish, filming the police carrying out their official duties is presumptively protected unless the government can show its restriction on recording is narrowly tailored to serving a significant governmental interest. The specific nature of the public property

---

[1] District courts have ruled that interfering with the recording of police can violate the First Amendment on private property, impossible under a forum analysis. *See J.A. v. Miranda*, 2017 WL 3840026 at *6 (D. Md. 2017); *Gaymon v. Borough of Collingdale*, 150 F. Supp. 3d 457, 469 (E.D. Pa. 2015).

8

is irrelevant in this context because prohibiting the recording of a police officer performing a public duty in a public place burdens interrelated cardinal First Amendment interests, including information and newsgathering, protecting and promoting the free discussion of governmental affairs, aiding in the uncovering of law enforcement abuses, and increasing law enforcement accountability to the people. *See, e.g., Gericke v. Begin*, 753 F.3d 1, 8-9 (1st Cir. 2014) (describing this "cardinal First Amendment interest") (citing *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011)); *Fields v. City of Phila.*, 862 F.3d 353, 359 (3d Cir. 2017) ("Access to information regarding public police activity is *particularly* important" and distinct from other First Amendment protections) (emphasis added).

As the Supreme Court held in *Houston v. Hill*, 482 U.S. 451, 462 (1987); "the First Amendment protects a significant amount of [] criticism and challenge directed at police officers," in specific, compared with other types of government officials.); *see also Pitta v. Medeiros*, 90 F.4th 11, 21–22 (1st Cir. 2024) ("Unlike police officers, teachers are not expected to endure significant burdens caused by citizens' exercise of their First Amendment Rights") (cleaned up).

Instead of conducting a forum analysis, therefore, federal courts of appeal considering the limits of the First Amendment right to record police consider whether the Plaintiff's conduct was "*otherwise lawful* – that is, not disruptive of public order or safety, and carried out by people who have a legal right to be in a particular location and to watch and listen to what is going on around them." *Alvarez*, 679 F.3d at 606 (describing the right of both the press and public "[t]o record what there is the right for the eye to see or the ear to hear"); *Iacobucci v. Boulter*, 193 F.3d 14, 25 (1st Cir. 1999) (finding a plausible First Amendment violation where a journalist recorded in the interior hallway of the town hall because he was otherwise "doing nothing wrong: he was

in a public area of a public building; he had a right to be there; he filmed the group from a comfortable remove; and he neither spoke to nor molested them in any way"); *Wilson v. Cnty. of Contra Costa*, 14-cv-03491-SI, 2015 WL 2124762, at \*7 (N.D. Cal. May 6, 2015) (Plaintiff stated a plausible First Amendment claim where he recorded "police officers engaged in their duties in the public lobby" of the sheriff's department). Whether the FAC states a First Amendment complaint is therefore not subject to a forum analysis. Rather, it is subject to intermediate scrutiny, which involves considering whether Plaintiff was recording the police in a public location in which he otherwise had a right to be and whether police had a legitimate expectation of privacy in that space.

Neither the Second Circuit Court of Appeals nor the U.S. Supreme Court has expressly held that the First Amendment protects the right to record police. But as the First Circuit noted, "there is no indication in [Supreme Court] precedent that the forum-based approach that is used to evaluate a regulation of ***speech*** on government property necessarily applies to a regulation on the ***collection of information*** on public property." *See Project Veritas*, 982 F.3d at 835 (cleaned up; emphasis added). The First Circuit explicitly considered, and rejected, the argument that it should use a lower level of scrutiny to evaluate restrictions on recording in "limited and nonpublic fora, such as the shoulders of highways and certain areas of public buildings." *Id.* Intermediate scrutiny applies across the board.

The Second Circuit has recognized that while forum analysis is a helpful tool to balance competing interests in challenges to regulations on speech, it is not a rigid set of analytical steps to be applied in every First Amendment context. *See Hotel Emps. & Restaurant Emps. Union, Loc. 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 546 (2d Cir. 2002) ("[W]e do not view the [forum analysis] approach as a straightjacket, but instead as a useful

means of analyzing the parties' competing interests"); *American Civ. Lib. Union v. City of Las Vegas*, 333 F.3d 1092, 1099–1100 (9th Cir. 2003) (noting the lack of any "clear-cut test").

Indeed, in numerous First Amendment contexts, the Second Circuit—following the growing trend among federal courts nationwide—has declined to engage in traditional forum analysis, instead tailoring its approach to suit the special interest implicated by a particular form of First Amendment protected activity. For example, instead of applying traditional forum analysis, the Second Circuit applies the *Central Hudson* intermediate scrutiny test to cases involving "commercial speech." *Transportation Alternatives, Inc. v. City of New York*, 218 F. Supp. 2d 423, 439–40 (S.D.N.Y. 2002). Similarly, given the unique competing interests implicated by school censorship of students, the Second Circuit has developed a bi-furcated approach, applying the more speech-protective *Tinker* test for "personal expression" (*e.g.*, wearing an anti-war armband) and the *Hazelwood* reasonableness test for "school-sponsored" forms of expression (*e.g.*, an essay). *See Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 627–28 (2d Cir. 2005).

The Supreme Court's shift away from tiered-forum analysis in certain contexts can also be seen in its cases involving regulations of symbolic conduct, the mass media, commercial speech, government employees, sexually oriented businesses, charitable solicitations, and political contributions. *See* Ashutosh Bhagwat, *The Test That Ate Everything: Intermediate Scrutiny in First Amendment Jurisprudence*, 2007 U. Ill. L. Rev. 783, 785–800 (2007) (collecting cases and noting that intermediate scrutiny has become "so important and ubiquitous" that Justice Scalia has described it as "some sort of default standard"); *Alvarez*, 679 F.3d at 604–605 (citing the Supreme Court's intermediate scrutiny cases before applying intermediate scrutiny to a regulation on the right to record police). Observing this shift in federal First Amendment

11

jurisprudence, the D.C. Circuit has gone as far as asserting that "based on the historical underpinnings of forum analysis, the evolution of this analytical framework, and the cases in which the Supreme Court has applied it, [] it would be a **category error** to apply the speech-protective rules of a public forum" to regulations of other types of expressive activity, in that case commercial filmmaking. *Price*, 45 F.4th at 1068 (emphasis added).

This Court should follow the majority view of the federal circuit courts thus far to have ruled on the issue and hold that intermediate scrutiny applies given the special balancing of interests implicated by the public's right to record police carrying out their official duties in public spaces.

        2.    <u>The Trespass Policy Fails Intermediate Scrutiny</u>

The well-pled allegations of the FAC aver that the Trespass Policy is a blanket prohibition on recording that provides for no exceptions or tailoring whatsoever. FAC ¶¶ 93–99. Plaintiff does not seek to record in any private or sensitive area of an NYPD precinct. Plaintiff merely seeks to record what any civilian could see with their own eyes and hear with their own ears while waiting in line to conduct official business at the public window of a public precinct lobby. The Trespass Policy is not narrowly tailored and does not address a significant government interest. *See Fields*, 862 F.3d at 359.

Defendant cannot point to any government interest that the policy protects set forth in the four corners of the complaint, nor is the policy tailored in any way. Defendant seeks to have this Court rely on purported "privacy, safety, and security" interests that were discussed in the November Order but not set forth in the FAC. DMOL at 11. Defendant asks that the court rely on an unsupported quote by an NYPD lawyer in 2018 because the article in which the officer was quoted was attached to the complaint. DMOL at 12. But hearing testimony cannot be considered

at this stage and "hearsay, and news articles in particular, which are being offered for the truth asserted are inadmissible to defeat a motion for summary judgment," let alone to support a motion to dismiss. *Jackson v. Jimino*, 506 F. Supp. 2d 105, 113 (N.D.N.Y. 2007).

**B. Even Under Traditional Forum Analysis, the FAC States a First Amendment Claim.**

1. The FAC Alleges Facts Sufficient To Find That Precincts Are Designated Public Forums

Even were the Court to apply the traditional multi-tiered forum analysis here, the FAC alleges sufficient facts which, if proved through discovery, would show that the public entryways of NYPD precincts are designated public forums, rather than limited public forums as Defendant argues. Determining whether a particular public space is properly categorized as a public forum involves a fact-intensive inquiry that often cannot be resolved on a motion to dismiss. *See Vega v. State Univ. of New York Bd. of Trustees*, 67 F. Supp. 2d 324, 342 (S.D.N.Y. 1999) ("The inquiry required to evaluate whether [defendant's] policy comports with the requirements of the First Amendment is a fact intensive one that cannot be resolved on a motion to dismiss"); *Storman v. Klein*, 09-cv-338, 2009 WL 10740175, at *1 (S.D.N.Y. Aug. 17, 2009), *aff'd*, 395 F. App'x 790 (2d Cir. 2010) (questions that "turn on fact-intensive inquiries and depend on factual findings" are not properly decided on a 12(b)(6) motion); *see also Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1045 (9th Cir. 2018) (forum analysis is a fact-intensive inquiry and "[h]ow these factors apply here should not be answered without development of the record").

First, in considering how NYPD's public precinct lobbies are used, the FAC plausibly alleges that the use of precincts is compatible with civilian recording. FAC at ¶¶ 52–59 ("The NYPD already records nearly everything that goes on inside the publicly accessible areas of a precinct, including all encounters with members of the public in such areas. Most, if not all,

13

precinct lobbies have fixed interior video cameras, and officers are equipped with body-worn cameras ("BWC") that must be turned on when interacting with the public"); ¶¶ 60-63 (detailing Plaintiff's attempt to record in this space).

The NYPD itself has published long videos detailing the interior of its precincts to its social media pages, including those showing not only what is now the public lobby of its 61st precinct, but also what is now sectioned off as the private interior of the precinct. *See* Ex. 2, September 28, 2023, Hearing on Plaintiff's Motion for a Preliminary Injunction ("Mannequin Challenge Video"). The NYPD's Mannequin Challenge Video was apparently intended to foster good rapport between the NYPD and the community it serves, thereby improving community trust, fostering communication, and increasing accountability. Permitting civilians to record is compatible with this use.

Defendant relies on the Court's November Order repeatedly, but that Order was issued based on evidence that was introduced at a hearing, not on the allegations as set forth in the complaint. To the extent that hearing evidence should be considered at all, Plaintiff notes that the NYPD's witness admitted that the best way to determine how the NYPD uses the public lobbies would be contained in the NYPD documentation generated at the public windows in those lobbies. *See* Tr. at 46:5-49:11. Plaintiff should be permitted to take the discovery necessary to permit a robust forum analysis, as confirmed by Defendant's witness.

Second, in considering the government's intent to open police precincts to recording, Defendant asks the Court to find that the FAC states no facts that, if proven, could show that the government intended to open up police precinct lobbies for recording.[2] However, the FAC

---

[2] In support of its Motion to Dismiss, Defendant misstates the standard for determining governmental intent. DMOL at 21. The question is not whether Defendant intended to

alleges that the NYPD's intent in enacting the Trespass Policy was not to safeguard any legitimate privacy or security interests, but rather to protect itself from criticism, public accountability, and civil liability. FAC at ¶¶ 51–57 (noting that the NYPD records everything that goes on in precincts to improve accountability but that these recordings are rarely used for this intended purpose).

The FAC also specifically alleges that "NYPD has a long history of hostility towards those who record its officers, particularly those who record officers for the purpose of holding them accountable," and that "Prior to 2016, the NYPD had an unconstitutional policy to arrest anyone who attempted to record police activity." FAC at ¶¶ 30-31. Indeed, this history is part of the reason that the New York City Council passed Right to Record Acts in the first place. FAC ¶¶ 43-59. The FAC then asserts that NYPD enacted the Trespass Policy not to safeguard any legitimate privacy or security interest, but rather, as a response to a single embarrassing incident in which one person posted to a social media platform a recording of himself cursing at a Sergeant in the 28th precinct. FAC ¶¶ 37–38.

These facts, if proven, demonstrate that the NYPD's stated intent in banning civilian recording within its precincts is mere pretext, and that its real intention is to stifle criticism and avoid embarrassment. *See Johnson v. Perry*, 859 F.3d 156, 176 (2d Cir. 2017) (excluding First Amendment activities "because of possible annoyance" is not permissible); *New York Magazine v. Metro. Transp. Auth.*, 136 F.3d 123, 130 (2d Cir. 1998) (excluding protected activity for the

---

open up its public property to *any* type of expressive activity, such as protests or pamphleting. Rather the question is whether the NYPD intended to open its lobbies to the type of activity at issue: here, the purposes of creating a record, increasing accountability, and furthering public debates on matters of public concern. The lobbies of police precincts are undoubtedly open for increasing police accountability and improving interactions with the public.

purpose of "avoiding litigation" suggests the government was acting in a proprietary, rather than governmental capacity, and supported finding that its property was a designated, rather than limited public forum).

The FAC makes allegations which, if confirmed, will demonstrate that the NYPD operates precinct lobbies as designated public forums. Defendant has testified that the best evidence to support or refute the allegations is in the NYPD's possession. If the evidence shows that the precincts are designated forums, the Trespass Policy would fail intermediate scrutiny for the same reasons set forth above. The FAC's allegations that NYPD only subsequently excluded this protected activity for the impermissible purposes of stifling criticism, avoiding embarrassment and annoyance, and limiting its liability to litigation further demonstrate that the policy fails intermediate scrutiny.

> 2. Even If Precincts Are Limited Forums, The FAC Alleges That The Trespass Policy Is Not Rational

Even if the Court were to find that the public lobbies of NYPD precincts are limited public forums, it should deny Defendant's motion because the FAC's allegations, if proven, would demonstrate that the Trespass Policy is not reasonable. Reasonableness, too, is a fact-intensive inquiry not properly resolved at the motion to dismiss stage. *See Vega*, 67 F. Supp. 2d at 342 (S.D.N.Y. 1999); *Storman v. Klein*, 09-cv-338, 2009 WL 10740175, at *1 (S.D.N.Y. Aug. 17, 2009), *aff'd*, 395 F. App'x 790 (2d Cir. 2010); *Askins*, 899 F.3d at 1045.

Evaluating speech restrictions for reasonableness is more searching than mere rational basis review and the burden to show that the policy is reasonable falls on Defendant. *See, e.g., United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000) (unlike with normal rational-basis review, when "the Government restricts speech, [it] bears the burden of proving the constitutionality of its actions"); *Metromedia, Inc. v. City of San Diego*, 453 U.S.

16

490, 519, (1981) (it has been the Supreme Court's "consistent position that democracy stands on a stronger footing when courts protect First Amendment interests against legislative intrusion, rather than deferring to merely rational legislative judgments in this area"); *Price*, 45 F.4th at 1072 ("'reasonableness' requires something more than the toothless 'rational basis' test used to review the typical exercise of a state's police power"); *Nat'l Ass'n for Advancement of Colored People v. City of Philadelphia*, 834 F.3d 435, 443 (3d Cir. 2016) ("[W]hen a law or regulation burdens a fundamental right such as the First Amendment, rational basis yields to more exacting review"). When it denied Plaintiff's motion for a preliminary injunction on the First Amendment claim, the Court wrote that decision was "based on the evidence ***currently presented and at this juncture***." Order at 21. Preliminary evidence cannot be marshalled to grant a motion to dismiss.

> a. *The Policy Does Not Serve NYPD's Purported Privacy Interest*

Defendant claims that the Trespass Policy is reasonable because "police stations are 'frequented by crime victims, undercover officers and other people who need privacy.'" DMOL at 23. In doing so, it asks the Court to rely on evidence submitted outside the complaint and which Plaintiff disputes. As the NYPD's own witness testified, the NYPD has private channels of communication available to people who seek confidentiality, including private rooms within each neighborhood precinct, telephone hotlines, and special offices, including a Special Victims Unit office for victims of sex crimes and child abuse. Tr. at 37:6–38:6. The NYPD provides and maintains these confidential channels precisely because the NYPD knows that public places such as sidewalks, the hallway of a townhall, or the public lobbies of its precincts are not environments in which civilians or police have a reasonable expectation of privacy. *Id.* at 38:10–13; 38:24–39:13.

Neither patrons nor police officers have a reasonable expectation of privacy in the public foyer of a public building. Like the public hallway of a town hall, *Iacobucci*, 193 F.3d 14, the public lobbies of NYPD precincts in which Plaintiff seeks to exercise his right to record are public spaces in which there is no reasonable expectation of privacy. *See, e.g., Tancredi v. Malfitano*, 567 F. Supp. 2d 506, 510–11 (S.D.N.Y. 2008) ("[The Police] Headquarters is a building open to the public at all times, and at any time a member of the public can enter the reception area and approach the front desk… For this reason, the area is similar to the public areas of apartment buildings, such as hallways and lobbies, to which no expectation of privacy attaches") (collecting Second Circuit cases); *see also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 605-606 (7th Cir. 2012) ("The ACLU wants to openly audio record police officers performing their duties in public places and speaking at a volume audible to bystanders. Communications of this sort lack any 'reasonable expectation of privacy'").

As other federal courts have done when confronted with similarly unpersuasive privacy arguments, this Court should "presume [that] officers are already careful when engaging in such sensitive conversations within earshot of others." *Project Veritas*, 982 F.3d at 837 (finding no support for the conclusion that recording police officers in public spaces would interfere with the officer's responsibilities in the "mine-run of circumstances"); *see also Alvarez*, 679 F.3d at 607 ("Anyone who wishes to speak to police officers in confidence can do so… Police discussions about matters of national and local security do not take place in public where bystanders are within earshot").

Because there is no reasonable expectation of privacy in the public lobby of a precinct, the NYPD's purported privacy interests are not reasonable nor reasonably served by the Trespass Policy.

*b.   The Policy Does Not Advance NYPD's Purported Security Interest*

Defendant argues that the Trespass Policy is reasonable because recording can "create security risks," namely, that "plaintiff was able to film an entry code on a keypad and the location of a security camera." DMOL at 23. The Trespass Policy does not serve this purported security interest and is therefore unreasonable.

First, NYPD does not have any reasonable interest in keeping the location of a *readily visible* security camera secret. It's not clear why the location of its cameras would even need to be secret, but regardless, the location is readily discernible to any member of the community who enters a precinct lobby. Moreover, the security footage itself is not confidential and is subject to public disclosure via the Freedom of Information Laws as well as to independent investigators in the Civilian Complaint Review Board ("CCRB"), though in practice, the NYPD often refuses to provide sufficient access to its camera footage, even to the CCRB. *See, e.g.*, FAC at 53–57.

Second, anyone standing in the public lobby could easily view the security code entry pad with their naked eye. Although the entry code is *not* clearly visible from Mr. Reyes' recording, as Defendant suggests, even if it were, depending where in line other individuals were standing in the precinct, they could have gotten an even closer view of the entry code, written it down, and posted that information online. Regardless, if NYPD was genuinely concerned about the security of its precincts, it could easily adopt an alternative entry mechanism such as a keycard swipe. It is not reasonable for NYPD to expect that it can categorically prohibit recording because of its own decision to adopt an unsecure practice.

**C.  Plaintiff States a First Amendment Retaliation Claim**

Defendants' only argument in support of its motion to dismiss Plaintiff's Retaliation claim (Second Cause of Action; FAC ¶¶ 104–111) is that "the First Amendment does not grant

plaintiff a right to record inside precinct lobbies." DMOL, ECF 75 at 25. For the reasons described in Section II above, this argument should be rejected. Defendants do not contest that (a) Plaintiff's arrest pursuant to the Trespass Policy was "motivated or substantially caused" by his exercise of his right to record (either on that day or generally) or (b) that his arrests pursuant to the Trespass Policy interfered with his ability to record. *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *see* FAC ¶ 106 ("PO Cucuzza arrested Plaintiff on or about April 4, 2023 *in retaliation* for his protected First Amendment activity"). The motion should be denied with regard to the retaliation claim.

In sum, the FAC states plausible claims that the Trespass Policy unreasonably prevents Plaintiff from exercising his well-established First Amendment right to record police officers carrying out their official duties in a public place in which there is no reasonable expectation of privacy. The NYPD has not met its burden of proving the constitutionality of its actions and, to the extent that fact questions remain on this point, they are not properly decided on a motion to dismiss.

## III.   PLAINTIFF STATES A CLAIM FOR FALSE ARREST

An arrest made without probable cause violates the Fourth Amendment protection against unreasonable seizures. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Pinter v. City of New York*, 976 F. Supp. 2d 539, 552 (S.D.N.Y. 2013). Probable cause exists "when, based on the totality of circumstances, the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Id*. (internal quotation omitted).

To state a claim that the NYPD has a policy of false arrest, Plaintiff must allege (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Biton v. City of New York*, 416 F. Supp. 3d 244, 247 (E.D.N.Y. 2018); *see also Pinter*, 976 F. Supp. 2d at 554. The FAC alleges that Plaintiff was arrested pursuant to NYPD's official policy of ordering those recording in precinct lobbies to either stop recording or leave and arresting individuals for criminal trespass if they refuse. FAC ¶¶ 140–44.

In New York, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05 (McKinney). Defendants do not claim that Plaintiff unlawfully entered the 61st precinct, which is continuously open to the public for precisely the type of business Mr. Reyes sought to carry out (namely, obtaining a complaint form). The question of whether the Trespass Policy violates the Fourth Amendment turns, therefore, on whether the order for Plaintiff to comply with the Trespass Policy or leave the premises was lawful.

Defendant carries the ultimate "burden of showing the order's lawfulness," by demonstrating that "given the nature and purpose of the property, the particular exercise of the power to exclude had a legitimate basis. The purpose would not be legitimate if, for example, its enforcement unduly infringed upon *an independent statutory or constitutional right* of the defendant to be present on the property." *People v. Leonard*, 62 N.Y.2d 404, 407 (N.Y. Ct. App. 1984). Defendant has not carried its burden of showing the order's lawfulness.

As made clear in the FAC, there was no probable cause for Plaintiff's arrest because no lawful order to leave was ever issued. *See, e.g., Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 694 (9th Cir. 2023) ("Verbally challenging and recording officers are not illegal actions, and thus orders to cease such actions are not lawful orders"). The FAC alleges that

21

"Because arrests made pursuant to the Trespass Policy lack probable cause, the Trespass Policy results in seizures made without probable cause in violation of the Fourth Amendment." FAC ¶ 140. Because recording police does not provide probable cause for an arrest under the trespassing statutes, the policy on its face authorizes arrests without probable cause. *See Walker v. United States*, 18-cv-2829, 2021 WL 4988151, at *5 (E.D.N.Y. 2021) ("Nonconsensual one-way recording is not illegal in the State of New York); *People v. Leonard*, 62 N.Y.2d 404, 408 (N.Y. Ct. App. 1984) ("A trespass charge cannot lie where those trespass charges would "circumscribe the defendant from engaging in constitutionally or statutorily protected conduct").

In addition, there was no probable cause to believe that Mr. Reyes violated N.Y.P.L. § 195.05 for obstruction of governmental administration ("OGA"). New York courts interpreting the OGA statute have explained it has three elements: "(1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017). These courts have also made clear that to be subject to OGA, a person must physically impede government actors trying to do their job. *Dowling v. City of New York*, 11-cv-4954, 2013 WL 5502867, at *5 (E.D.N.Y. Sept. 30, 2013) ("New York courts have long read 'physical' as modifying 'interference' in the text of the statute").

Based on the facts and circumstances leading up to Plaintiff's arrest, no reasonable officer would have probable cause to believe that Mr. Reyes committed the crime of OGA. First, there is no plausible way to read the FAC as alleging, nor has the City alleged itself, that Plaintiff acted with the intent to impede a public servant from carrying out an official function. Quite the opposite, Plaintiff's express purpose was to ask for and fill out a complaint form, a straight-forward request that could have easily been completed in a matter of minutes. But instead of

allowing their colleagues to assist Plaintiff with that simple request, Sgt. Korchimet and PO Cucuzza arrested him for trespass without probable cause. Thus, as the FAC makes clear, Plaintiff did not have any intention to interfere with any officer's ability to carry out his official duties.

Second, there is no plausible way to read the FAC as alleging, nor has the City alleged itself, that Mr. Reyes made any contact with the officers, let alone physically obstructed them from carrying out their duties. The only physical contact between the officers and Mr. Reyes was initiated by the officers themselves. *See In re Kendall R.*, 71 A.D.3d 553, 554 (1st Dept 2010) (no probable cause for OGA where the only physical contact "was initiated by the officer"). Defendant's only argument in support of its OGA claim is that Plaintiff did not immediately comply with the officer's order to stop recording or otherwise leave the precinct lobby. But Plaintiff merely asked the officers to explain the Trespass Policy. Neither a failure to disperse nor responding to an officer's order with a question provides the requisite probable cause. *See, e.g., Hilderbrandt v. City of New York*, 13-cv-1955, 2014 WL 4536736, at *5 (E.D.N.Y. Sept. 11, 2014) (engaging in dialogue with police does not constitute OGA); *In re Kendall R.*, 71 A.D.3d at 554 (failure to disperse and using obscene language not sufficient to constitute OGA); *People v. Case*, 365 N.E.2d 872, 873 (N.Y Ct. App. 1977) ("mere words alone do not constitute 'physical force or interference.'").

Here, Plaintiff remained calm and courteous throughout his encounter with Sgt. Korchimet and PO Cucuzza. While standing at a distance, without ever making physical contact with them, and without the intent to obstruct them from carrying out their official duties, he asked them to explain the basis of the Trespass Policy. Before he could finish the business he

came to conduct at the precinct (obtaining a complaint form), he was abruptly and unlawfully arrested for trespass. The arrest, pursuant to the Trespass Policy, lacked probable cause.

Helpfully, Justice Germaine A. Auguste of Kings County Criminal Court has already conducted this analysis in a case where Plaintiff was charged with Criminal Trespass and OGA and came to the same conclusions. In *People v. Reyes*, CR-019322-23KN (Jan. 30, 2024), the court dismissed all criminal charges against Plaintiff connected to his June 1, 2023 arrest in the 75th precinct. Roldán Oberdick Decl. Ex. 1 at 3–4. There, the accusatory instrument consisted of a declaration that Plaintiff had been observed "video recording within the police station," and that when an officer "asked the defendant to stop video recording with the defendant's cellphone, tripod, microphone and a smartwatch," Plaintiff had "refused to comply." *Id.* at 2. The instrument continues by stating that the officer "asked the defendant to leave the police station whereupon defendant state in sum and substance, I have a right to be inside and you can't keep me out," after which point the officer "escorted the defendant out of the police station while the defendant prevented the doors form closing." *Id.* Finally, the instrument states that the officer told Plaintiff that if he "reenters the police station the defendant would be arrested and subsequently the defendant reentered the police station and started to video record and the deponent arrested the defendant." *Id.*

The court found, after hearing extensive briefing on the First Amendment, the Right to Record Act, and the weight to afford this Court's preliminary injunction order, that "there are no allegations within the four corners of the instrument supporting the inference that the NYPD officer's orders for defendants to cease filming or to leave the premises were lawful orders as contemplated by the Court in *People v. Leonard*." Roldán Oberdick Decl. Ex. 1 at 4. A copy of

the Kings County District Attorney's briefing on the Motion to Dismiss is attached as Roldán

Oberdick Decl. Exhibit 2.

Because there was no probable cause to arrest Plaintiff for trespass or OGA, and because

Plaintiff was arrested pursuant to an unlawful official municipal policy, the Court should deny

Defendant's motion to dismiss Plaintiff's Fourth Amendment claim. Defendant's argument that

the Fourth Amendment claim is merely a state law claim in disguise also fails: determining

whether probable cause to arrest exists is a matter of state law and no additional federal claim is

required to trigger federal jurisdiction. *See Pinter*, 976 F. Supp. 2d at 557 ("A reasonable jury

could find based on the record evidence that the City had a custom of carrying out arrests like

Pinter's and that the City was deliberately indifferent to the obvious risk of arresting gay men for

prostitution without probable cause.")

## IV.    PLAINTIFF STATES CLAIMS UNDER THE STATE AND CITY RIGHT TO RECORD ACTS

As a preliminary matter, this Court properly exercised jurisdiction over Plaintiff's state

law claims at the preliminary injunction stage and should continue to do so for the reasons stated

in its November Order. *See* Order at 21–22.

To state a claim under the Right to Record Acts, Plaintiff need only allege that (1) he

exercised or attempted to exercise his right to record law enforcement activity and (2) that an

officer intentionally acted to prevent him from recording. v; N.Y.C. Admin. Code § 14-189(c);

*Flannery v. City of Rochester*, 640 F. Supp. 3d 267, 279 (W.D.N.Y. 2022). The FAC meets this

pleading standard.

The only affirmative defense to a violation of the Right to Record Acts is the existence of

probable cause to arrest the person recording for obstructing governmental administration. N.Y.

Civ. Rights Law § 79-p (3)(b). Although affirmative defenses are not generally appropriate

25

grounds for dismissal on a 12(b)(6) motion, they can be raised when the defense is apparent from the face of the complaint." *Megibow v. Hagen*, 09-cv-6993, 2009 WL 10740287, at *2 (S.D.N.Y. Dec. 30, 2009) (*citing Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.")).

The FAC states facts that, if proven through discovery, establish that there was no probable cause to arrest Mr. Reyes for any crime, including for physically interfering with the performance of any lawful police function. Defendant's conclusory assertion that "Plaintiff's conduct amounts to 'physical interference'" is not sufficient to support its motion to dismiss this claim. DMOL at 40.

Indeed, Defendant does not appear to contest that Mr. Reyes has met the Right to Record Acts's straightforward two-prong pleading standard. Instead, Defendant argues that (1) NYPD has an unfettered proprietary common law right to exclude or eject people from precinct lobbies, and (2) that the legislative history suggests an intent to exclude the public lobbies of NYPD precincts from the otherwise expansive right to record, even though no such exception is found in the statutory text. Neither of these arguments is persuasive because the plain text of the statutes is clear, unambiguous, and affirmed by the legislative history.

### A.  The Right to Record Acts Are Clear And Unambiguous.

It is a well-established rule of statutory construction that courts should begin with the statutory text. Where the language at issue "has a plain and unambiguous meaning… that meaning controls without need for further inquiry." *United States v. Messina*, 806 F.3d 55, 67 (2d Cir. 2015); *Hayden v. Pataki*, 449 F.3d 305, 314–15 (2d Cir. 2006) ("[I]n interpreting a statute,

we must first look to the language of the statute itself, and… if the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words.").

As this Court rightfully observed in its November Order, the Right to Record Acts are clear and unambiguous in their meaning. Order at 23–24. The Acts allow for the recording of "law enforcement activity" and "police activities," and there is no dispute that "officers interacting with civilians in a police precinct are performing law enforcement or police activities." *Id.* The Acts make no carve out for the public lobbies of police precincts and this Court should decline to read such a limitation into the Acts, particularly in ruling on a motion to dismiss. *Id.* Since then, in another matter, Magistrate Judge Wang wrote that "I agree" with this Court's analysis that "the NYPD Policy violates the broadly-worded RTRAs, which allow for recording of 'law enforcement activity' and 'police activities.'" *Rodney v. City of New York*, 22-cv-1445 (S.D.N.Y), Report and Recommendations, Doc. 148, at 12 (Dec. 14, 2023). And Justice Auguste dismissed the criminal charges against Plaintiff in January as discussed above.

Defendant's recitation of principles of private property law does not support creating an exception not provided by the statutory text. Firstly, it is incorrect that government property owners enjoy the same right to exclude as private property owners. While government property owners certainly possess some exclusionary rights, the very point of the federal courts' First Amendment jurisprudence, including the forum doctrine, is to balance the government's rights to possession with citizens' rights to exercise their rights on government property. *See, e.g., Cent. Hardware Co. v. N.L.R.B.*, 407 U.S. 539, 547 (1972) (distinguishing between private and public property). No such balancing applies to private property owners unless there is a showing that the private property owner is effectively acting in a governmental capacity. *Id.*

27

None of the cases Defendant relies on establish otherwise. DMOL at 35–36. The line of cases Defendant cites stand only for the uncontested proposition that the public's right to use government property is not absolute. Rather, in certain proscribed circumstances, government property owners may give *lawful* orders for individuals to leave government property "so as to prevent *interference* with the *ordinary use* of the property by other members of the public with an equal right of access to it." *See, e.g., People v. Reape*, 868 N.Y.S.2d 497 (Crim. Ct. 2008) (quoting *People v. Hedemann*, 438 N.Y.S.2d 172 (App. Term 1981) (emphasis added)). None of the cases Defendant cites support its proposition that the government has the proprietary right to issue blanket exclusion policies however and whenever it pleases, including in violation of city, state, and federal laws. These cases support only the principle that the government may issue an exclusion order when "the manner of expression is **basically incompatible** with the normal activity of a particular place at a particular time." *Hedemann*, 438 N.Y.S.2d at 172 (emphasis added).

There is no way to read the FAC as alleging that Plaintiff was acting incompatibly with the normal activities that go on in the public lobbies of NYPD precincts. To the contrary, the FAC alleges that Plaintiff seeks to "peacefully exercise his First Amendment right to film in public and publicly accessible areas." FAC ¶ 60. Plaintiff has not sought to enter areas not open to the general public nor has he alleged he will act in a manner that is incompatible with the public uses of the precinct lobbies.

Defendant is also incorrect that the common-sense, plain-language reading of the Right to Record Acts would lead to "absurd applications." DMOL at 37. Nothing in the Right to Record Acts prohibits courts from complying with federal restrictions on recording or from imposing their own regulations on recording. Prohibitions on recording in courthouses come from federal

statutes that a state law cannot override. *See, e.g.*, 18 U.S.C.A. § 1508 (restricting recording of grand or petit juries); Fed. R. Crim. Proc. 53 (restricting recording federal criminal cases) (promulgated pursuant to the Rules Enabling Act of 1934, 28 U.S.C. § 2071-2077). Even where no federal law prohibits recording in courtrooms, there are numerous reasons why courts would be given more latitude to regulate recording compared with the NYPD. *See, e.g.*, *Chandler v. Florida*, 449 U.S. 560, 574 (1981) (steps "to prevent publicity about a trial from infecting jury deliberations" may be necessary to "guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law"); *Westmoreland v. Columbia Broad. Sys.*, Inc., 752 F.2d 16, 23 (2d Cir. 1984) (courts must balance "concerns with expenditure of judicial time on administration and oversight of broadcasting; the necessity of sequestering juries so that they will not look at the television program of the trial itself; the difficulty in empaneling an impartial jury in the case of a retrial; the necessity of larger jury panels or increased use of marshals; the psychological effects on witnesses, jurors, lawyers, and judges; and related considerations of "solemnity," "dignity," and the like"); *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (noting that attorney speech has always been tightly regulated by various procedural and evidentiary rules as well as by individual judicial discretion).

Defendant is also incorrect that a plain-language reading of the RTRAs would allow recording in private homes or in the non-public areas of NYPD precincts. Nothing in the Acts would permit a civilian to enter into someone's home, without permission, simply to record the police, nor could a civilian lawfully slip into the backrooms of an NYPD precinct for the purpose of recording law enforcement officers. Such an intrusion, if done intentionally, could constitute the crime of trespassing. As the plain text of the statute makes clear, "[n]othing in this chapter shall be construed to… prohibit any officer from enforcing any other provision of law," which

29

includes New York trespass law. The Right to Record Acts neither expand nor restrict the scope and effect of New York trespass law.

The NYPD's Trespass Policy, in contrast, is unlawful for, among other reasons, doing just that: directing the arrests of individuals for the mere act of recording, which does not provide probable cause to arrest for Trespass under New York law. The Trespass Policy is also unlawful because it is clearly preempted by the plain language of the New York State and City Right to Record Acts.

### B. The Legislative History Affirms The Right to Record Acts' Plain Text Application To The Public Lobbies Of NYPD Precincts.

Because the plain texts of the statutes are clear and unambiguous, the Court need look no further. But if the Court were inclined to wade into the Right to Record Acts' legislative histories, those histories only confirm that the legislatures intended exactly what they wrote.

When first informed of the Trespass Policy, Chair Donovan Richards specifically announced that the Right to Record Act would address the ban, which he said created a "double standard in police stations."[3] In addition, Public Advocate Jumaane Williams, the bill's lead sponsor, has sworn that he specifically intended the Act to supersede the NYPD's Trespass Policy. *See* Declaration of Jumaane Williams**,** Roldán Oberdick Decl. Exhibit 3. The sponsor stated that he understood and intended that the bill would "prohibit police officers from impeding recording in public spaces, including such spaces within police precincts." Williams Decl. ¶13.

Defendant's citation to numerous instances of the phrase "public place" in the legislative record does not support its argument that the public lobbies of NYPD precincts were not

---

[3] New York City Council, Committee Report of the Justice Division, June 18, 2020, at 7, available at
https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=3371660&GUID=CCE66AB
B-0E5C-4FB0-A21F-F9CB0BE4D6EA.

included in the legislatures' understanding and use of the term "public place." In the absence of any evidence that the legislative intent conflicts with the plain language of the statutes, the court should defer to the plain textual meaning of the Acts. Defendant's motion should be denied with regard to the RTRA claims.

## V.        PLAINTIFF STATES A CAPA CLAIM

The New York City Charter's City Administrative Procedures Act ("CAPA") requires city agencies to meet strict notice and comment requirements when enacting rules, which it defines as "any statement or communication of general applicability that (i) implements or applies law or policy, or (ii) prescribes the procedural requirements of an agency including an amendment, suspension, or repeal of any such statement or communication." N.Y. City Charter § 1041(4). CAPA specifies that a rule includes any statement or communication that "prescribes standards which, if violated, may result in a sanction or penalty." *Id*. § 1041(5). CAPA's definition of a rule is intentionally expansive. *See, e.g., 1700 York Assocs. v. Kaskel*, 701 N.Y.S.2d 233, 241 (Civ. Ct. 1999) (prohibiting ownership of pet ferrets); *New York City Comm. for Taxi Safety v. New York City Taxi, Limousine Comm'n*, 677 N.Y.S.2d 449, 452 (Sup. Ct. 1998), *aff'd sub nom. New York City Comm. for Taxi Safety v. New York City Taxi & Limousine Comm'n*, 256 A.D.2d 136 (1998) (requiring taxi drivers to provide air conditioning); *Ousmane v. City of New York*, 7 Misc. 3d 1016(A), 801 N.Y.S.2d 238, 3 (Sup. Ct. 2005) (modifying the guidelines that Administrative Law Judges use to determine fines for street vending violations).

Defendant argues that the Trespass Policy does not constitute a "rule" under CAPA because officers retain the discretion to not arrest any particular individual. This argument was manifestly rejected in a challenge to the Department of Health's rating system under CAPA. As the New York State Supreme Court wrote, "While the court recognizes that an inspector, as a

practical matter, may well in good faith exercise discretion in determining whether a condition truly warrants the issuance of a violation, there is nothing in the provisions set forth in the Booklet providing such authority when the condition found constitutes a violation of the Code." *New York State Rest. Assn. v. New York City Dep't of Health & Mental Hygiene*, 5 Misc. 3d 1009(A), 798 N.Y.S.2d 711 (Sup. Ct. N.Y. Cnty 2004); *see also Kaskel*, 701 N.Y.S.2d at 241 (ban on pet ferrets was a rule because it applied to all ferrets "regardless of whether any particular breed, form, or variety of the animals is not wild or harmful"); *Miah v. Taxi & Limousine Comm'n of the City of New York*, 760 N.Y.S.2d 845, 846 (Sup. Ct. N.Y. 2003) (policy was a rule where it "applied generally to all cab drivers seeking renewal of their taxi drivers' licenses, without regard to individual circumstances or mitigating factors"). Here, the NYPD's Trespass Policy affects the rights of any individual who seeks to record inside an NYPD facility, without exception or consideration of any mitigating circumstances. As such, it amounts to a rule under CAPA.

Defendant's argument that the recording prohibition does not have an independent legal effect is nonsensical. Defendant asserts that "people recording inside police precincts do not automatically become trespassers until they defy a lawful order [to comply with the Trespass Policy]." DMOL at 42. But it is the Trespass Policy that purportedly authorizes the order, and therefore the Trespass Policy that sets forth "standards which, if violated, ***may result*** in a sanction or penalty." CAPA § 1041(5) (emphasis added); *see Osumane*, 801 N.Y.S. 2 at *2 (change in fee schedule is a penalty), *see also* Black's Law Dictionary, "sanction" "2: A provision that gives force to a legal imperative by either rewarding obedience or punishing disobedience."

Defendant has put forth no plausible argument for disputing that the NYPD's Trespass Policy is a rule of "general applicability" that "if violated, may result in a sanction or penalty." § 1041(4)–(5).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

February 27, 2024
New York, NY

                          */s/   Meena Roldán Oberdick*
                          Meena Roldán Oberdick
                          Andrew Case
                          LatinoJustice PRLDEF
                          475 Riverside Drive, Suite 1901
                          New York New York
                          (212) 739-7506
                          moberdick@latinojustice.org
                          acase@latinojustice.org
                          *Attorneys for Plaintiff*