# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA RODNEY<br><br>*Plaintiff*<br>v.<br><br>THE CITY OF NEW YORK, ET AL.,<br><br>*Defendants* | Case No.: 22-cv-1445 (LAK) |

**DECLARATION OF NYC PUBLIC ADVOCATE JUMAANE D. WILLIAMS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

I, JUMAANE D. WILLIAMS, herby declare and state:

1. I am the Public Advocate for the City of New York, serving in this position since March 2019. As Public Advocate, I am one of three City-wide elected officials with the sole mission of protecting and defending New York City constituents. As Public Advocate, I have a duty to protect the safety of New Yorkers.

2. As Public Advocate, I act as an ombudsman for City government, providing oversight for City agencies such as the New York City Police Department (NYPD), investigating citizens' complaints, and making proposals to address shortcomings or failures in City services. In the event of a vacancy or incapacity of the Mayor, I am the first in line to serve as Mayor. I am a non-voting member of the New York City Council, with the right to introduce and co-sponsor legislation and an *ex officio* member of all Council committees.

3. I write in opposition to Defendants' Motion to Dismiss. As explained in greater detail below, I believe this matter — NYPD's unlawful prohibition of a citizen's right to record within the

public spaces of a police precinct — raises urgent constitutional and public safety concerns, impedes transparency, and fails to promote government accountability. These are matters of great concern.

4. As detailed below, the proliferation of citizen recording of police work, due to the ubiquity of cell phones and other mobile devices, has changed the nature of policing in New York City — citizen recordings have played a critical role in safeguarding New Yorkers and in holding police officers accountable for misconduct. While citizen recordings cannot solve the problem of police misconduct in public spaces, limiting such recordings serves to make citizens more vulnerable.

5. Before my team drafted the RTRA, I was aware that the Supreme Court had long held that the creation and dissemination of information is speech within the protection of the First Amendment. Prohibiting citizen recordings interferes with this constitutional right — the right to create speech and the end-product of such speech itself.

6. I was also aware that federal courts throughout the nation have specifically ruled that recording official police business is constitutionally protected activity.

7. Well before 2018, I became aware that NYPD officers were brazenly impeding this fundamental right by detaining, questioning, threatening arrest, and, *in many cases*, arresting and charging citizens recording either their interactions with officers or that of bystanders.

8. These violations were well-documented by the CCRB, an agency I cultivated a close relationship with as a Council member and one I have preserved during my time as Public Advocate.

9. In addition to this general interference and in violation of the constitutionally protected right of citizens to record in all public spaces, the NYPD defiantly issued an internal manual that

prohibited the recording of police activity within the entirety of police stations, including areas open to the general public.

10. Unfortunately, the internal manual included misinterpreted law and ignored the salient body of law that permits civilian recording in public spaces.

11. Moreover, the NYPD policy ignored the possibility of police misconduct occurring within police stations. It also ignored that police officers themselves are allowed to record within their precincts.

12. In response and in an attempt to end these proscriptive practices, the Council codified the right to record in the RTRA, which defended the right of citizens to record interactions with officers performing their official duties, with the goal of deterring well-documented police misconduct in public spaces, including misconduct inside the public spaces of a police station.

13. I intended and expected that passage of the RTRA would supersede the NYPD No Recording Policy and prohibit police officers from impeding recording in public spaces, including such spaces within police precincts.

14. I anticipated that this tool of ensuring police accountability would have a profound impact on civilians by fostering their belief that police work and practices would be fair since they would have eyes on the officers.

15. I also want to underscore that the RTRA, which I first introduced in 2016 and reintroduced in early 2018, and which was passed by the Council in 2020, had as a primary goal codifying the right of New Yorkers to record NYPD official activity in public spaces so as to protect the rights of our citizens and free them from fearing for their safety whenever and wherever they interacted with police. Such protections demand the right to record police activity within the

public spaces of police stations. While citizen recordings cannot solve the problem of police misconduct, they do protect citizens who record their own legitimate and lawful conduct.

16. The evidence demonstrates that recordings of police work have been central in documenting police misconduct. In fact, following the passage of RTRA, the increase in official findings of police misconduct, such as lying about official interactions with citizens, demonstrates the importance of civilian recording. And, because police misconduct is not limited to the streets and can occur in precincts, this check on government activity cannot be excluded from police stations. The recording of all police work in all public spaces is what we intended when the bill was passed.

17. In addition, I envisioned that a more robust protection of a citizen's right to record would address past concerns of police violence in our communities by shifting power differentials between police officers and the communities they police. Civilian recordings of police work can even out the playing field and act as a tool to protect the rights of those interacting with the police and of promoting social change overall.

18. While police do surveil and record their interactions with citizens, as happened in the instant case, too often the NYPD act as gatekeepers of police bodycam recordings. Citizens cannot control when officers turn on and off their cameras, cannot stop police from manipulating footage, and cannot stop the NYPD from delaying or refusing to make recordings public. With citizen recordings, citizens are free to publish their recordings for present and for future use.

19. Thus, citizen recordings of police work have become a tool of police accountability and act as a check on government abuse. Despite, or because of these facts, police officers continue to interfere with a citizen's right to record their official activities in all public spaces.

20. I also trusted and continue to believe that the affirmative defenses we placed into the bill struck a balance that would ensure the safety of police officers, while also ensuring the civil liberties of our fellow New Yorkers.

21. Finally, I hoped that the possibility of dual recordings from citizens and officer bodycams would start a rich and productive dialogue concerning law enforcement interactions.

22. Unfortunately, the NYPD continues to act contrary to local law by prohibiting civilian recording within the public areas of precincts, as this case demonstrates.

23. I do hope that, in future, police adherence to the dictates of the RTRA leads to a productive policing environment for officers and communities, as was envisioned by RTRA supporters.

November 1, 2022

Jumaane D. Williams
Public Advocate for the City of New York

# Exhibit B

# ADMINISTRATIVE GUIDE




| Section: General Regulations | | Procedure No: 304-21 |
|---|---|---|
| **WHEN A MEMBER OF THE SERVICE ENCOUNTERS AN INDIVIDUAL OBSERVING, PHOTOGRAPHING, AND/OR RECORDING POLICE ACTIVITY** | | |
| DATE EFFECTIVE: 06/10/21 | LAST REVISION: I.O. 47 | PAGE: 1 of 2 |

1. Individuals have a right to lawfully observe and/or record police activity including, but not limited to detentions, searches, arrests or uses of force. The right to lawfully observe and/or record police activity extends to individuals in public places, such as streets, sidewalks, and parks, as well as private property in which the individual has a legal right to be present, such as buildings, lobbies, workplaces or an individual's own property. This right to observe and/or record police action can be limited for reasons such as the safety of officers or other members of the public, or when a violation of law is committed by the individual(s) who are observing/recording. The following guidelines should be utilized by members of the service whenever the above situation exists:

a. DO NOT:

(1) Intentionally prevent, or attempt to prevent, an individual from recording police activities,
(2) Threaten, intimidate, or otherwise discourage an observer from recording police activities,
(3) Command an individual to cease recording when an individual is authorized to do so under law,
(4) Stop, seize, search, summons, or arrest an individual solely because such individual recorded police activities,
(5) Seize property or instruments used by an individual to record police activities,
(6) Delete or seize recorded images of police activity from an individual's recording device, unless authorized by law, and/or
(7) Copy a recording of police activity without consent of the individual who made the recording.

b. Absent additional actions constituting a violation of law, an individual CANNOT be arrested for:

(1) Taking photographs, videotaping, or making a digital recording,
(2) Requesting or making note of shield numbers or names of members of the service,
(3) Criticizing the police or objecting to police activity,
(4) Refusing to leave the area, and/or
(5) Using crude or vulgar speech.

2. An arrest for Obstruction of Governmental Administration (Penal Law section 195.05) requires probable cause to believe the person(s) is obstructing governmental administration. Actual interference with the performance of an official police function is required. Interference can include actual physical force (touching or physically interfering with the officer or the suspect, (e.g., using a camera so close to the officer's face that it intentionally obstructs their view), intruding into the physical space necessary to safely perform police operations and refusing to obey an order to move back, or purposefully engaging in passive behavior that prevents an officer from taking enforcement action (e.g., blocking a prisoner van, etc.). Members of the service are required by Administrative Code 14-189 to document instances in which an individual who was recording police activities is arrested or summonsed, as per P.G. 209-03, P.G. 209-09, and P.G. 209-12, by indicating "RTR" for "Right to Record" on the summons.

# ADMINISTRATIVE GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | LAST REVISION: | PAGE: |
|---|---|---|---|
| 304-21 | 06/10/21 | I.O. 47 | 2 of 2 |

3. This procedure is not intended in any manner to limit the authority of the police to establish police lines (e.g., crowd control at scenes of fires, demonstrations, special events, etc.).

4. When probable cause exists that a recording device contains evidence of a crime:
   a. Inform the observer that there is probable cause to believe that the recording contains evidence of a crime,
   b. Request consent to view the recording in a manner that elicits a clear “yes” or “no” response. If possible, use Body-Worn Camera to record request and the individual’s response. If consent is given, it may be possible for the individual to email the recording directly to the member of the service’s Department-issued smartphone,
   c. If the observer refuses to give consent, inform them that a search warrant for the device will be requested. Inform the observer that deletion of the content of the recording may be considered tampering with physical evidence in violation of Penal Law section 215.40,
   d. If the member of the service reasonably believes that the observer will delete the recording, obtain approval from a supervisor to seize the device if feasible (or obtain approval from a supervisor either before or immediately after seizing a device). Seize the device only for the time necessary to secure a warrant,
   e. Do not view or delete the recording,
   f. Obtain a search warrant, and
   g. If there is probable cause to believe that an exigency exists and that the recording contains evidence of a crime, contact a supervisor to determine whether review of the recording absent a warrant is permitted.

5. A supervisor must be requested to respond where an observer is arrested for interference with police action or where the contents of a recording device are believed to contain evidence of a crime.

6. Members of the service may contact the Legal Bureau if they have any questions regarding an arrest for Obstruction of Governmental Administration or the seizure of a recording device that may contain evidence of a crime.

7. Members of the public are not allowed to photograph and/or record police activity within Department facilities. Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity. If such person refuses to stop, they then should be ordered to leave the premises. If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law sections 140.05 and 140.10).