23 Civ. 6369 (JGLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEANPAUL REYES,

Plaintiff,

-against-

THE CITY OF NEW YORK,

Defendant.

**DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Mark D. Zuckerman*
*Tel:  (212) 356-3519*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. III

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT

    POINT I

        PLAINTIFF'S FIRST AMENDMENT CLAIMS
        FAIL.......................................................................................................... 2

    POINT II

        PLAINTIFF'S FOURTH AMENDMENT CLAIMS
        SHOULD BE DISMISSED ........................................................................ 9

    POINT III

        THE COURT SHOULD DECLINE
        SUPPLEMENTAL JURISDICTION OVER
        PLAINTIFF'S STATE LAW CLAIMS .................................................... 11

    POINT IV

        THE SRTRA AND CRTRA DO NOT GRANT
        INDIVIDUALS THE RIGHT TO RECORD IN
        POLICE PRECINCT LOBBIES............................................................... 12

        A.  The SRTRA and CRTRA Do Not Derogate the
            NYPD's Common Law Rights as Proprietor.................................... 13

        B.  Plaintiff's Interpretation Would Lead to Absurd
            and Unintended Results ................................................................... 15

        C.  The Legislative Histories of the Acts Support
            the City's Position........................................................................... 16

        D.  Plaintiff Physically Interfered With the
            Officers' Official Functions............................................................. 18

    POINT V

        PLAINTIFF'S CAPA CLAIMS SHOULD
        DISMISSED ............................................................................................ 19

**Page**

POINT VI

    PLAINTIFF'S    DECLARATORY    RELIEF
    CLAIMS SHOULD BE DISMISSED ..................................................... 19

CONCLUSION...................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Pages**

ACLU of Ill. v. Alvarez,
    679 F.3d 583 (7th Cir. 2012) ................................................................6

Matter of Alca Industries, Inc. v. Delaney,
    92 N.Y.2d 775 (1999) .......................................................................18

Askins v. U.S. Dep't of Homeland Sec.,
    899 F.3d 1035 (9th Cir. 2018) ..............................................................5

Carver v. Nassau Cty. Interim Fin. Auth.,
    730 F.3d 150 (2d Cir. 2013)................................................................12

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983)........................................................................9, 11

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
    473 U.S. 788 (1985)......................................................................6, 9

Crocker v. Beatty,
    995 F.3d 1232 (11th Cir. 2021) ............................................................5

Estes v. Texas,
    381 U.S. 532 (1965)........................................................................4

Fighting Finest v. Bratton,
    898 F. Supp. 192 (S.D.N.Y. 1995) ........................................................9

Glik v. Cuniffe,
    655 F.3d 78 (1st Cir. 2011)................................................................7

Hechter v. New York Life Ins. Co.,
    46 N.Y.2d 34 (1978) ......................................................................13

Hills v. Davis,
    52 F.4th 997 (6th Cir. 2022) ..............................................................5

Hirsch v. Complex Media, Inc.,
    18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701
    (S.D.N.Y. Dec. 10, 2018)..................................................................8

Iacobucci v. Boulter,
    193 F.3d 14 (1st Cir. 1999)................................................................6

Irizarry v. Yehia,
    38 F.4th 1282 (10th Cir. 2022) ............................................................5

**Cases**                                                                                                                    **Pages**

John K. Maciver Inst. For Pub. Policy, Inc. v. Evers,
    994 F.3d 602 (7th Cir. 2021) ......................................................................5, 6

Kass v. City of New York,
    864 F.3d 200 (2d Cir. 2017).............................................................................17

Kelly v. Borough of Carlisle,
    622 F.3d 248 (3d Cir. 2010)................................................................................6

Kolari v. N.Y. Presbyterian Hosp.,
    455 F.3d 118 (2d Cir. 2006)..............................................................................11

Lubonty v. U.S. Bank Nat'l Ass'n,
    34 N.Y.3d 250 (2019) ......................................................................................15

Make the Rd. by Walking, Inc. v. Turner,
    378 F.3d 133 (2d Cir. 2004)................................................................................3

Ness v. City of Bloomington,
    11 F.4th 914 (8th Cir. 2021) ..............................................................................5

People v. Hedemann,
    438 N.Y.S.2d 172 (1st Dep't, 1981) .................................................................13

People v. Leonard,
    62 N.Y.2d 404 (1984) ......................................................................................14

People v. Martinez,
    43 Misc.2d, 94, 97 (N.Y. Crim. Ct. N.Y. Cty. 1964).......................................14

People v. Reape,
    22 Misc.3d 615 (N.Y. Crim. Ct., Kings Cty. 2008)..........................................14

People v. Wallace,
    31 N.Y.3d 503 (2018) ......................................................................................16

Pitta v. Medeiros,
    90 F.4th 11 (1st Cir. 2024)..................................................................................6

Price v. Garland,
    45 F.4th 1059 (D.C. Cir. 2022)......................................................................6, 7

Project Veritas Action Fund v. Rollins,
    982 F.3d 813 (1st Cir. 2020)...............................................................................7

**Cases**                                                     **Pages**

Reyes v. City of New York,
23 Civ. 6369 (JGLC), 2023 U.S. Dist. LEXIS 196602
(S.D.N.Y. Nov. 2, 2023) ................................................................................. 2-3, 7, 8

Rodney v. City of New York,
22 Civ. 1445 (LAK)(OTW) ...................................................................................16

Rogers v. N.Y.C. Tr. Auth.,
89 N.Y.2d 692 (1997) ..................................................................................... 13, 15

Samuels v. Mackell,
401 U.S. 66 (1971) ................................................................................................19

Seabrook v. Jacobson,
153 F.3d 70 (2d Cir. 1998) ....................................................................................11

Sharpe v. Winterville Police Dep't,
59 F.4th 674 (4th Cir. 2023) ...................................................................................6

Sheets v. City of Punta Gorda,
415 F.Supp.3d 1115 (M.D. Fla. 2019) ................................................................ 4-5

Silverberg v. Bd. of Elections of N.Y.,
272 F.Supp.3d 454 (S.D.N.Y. 2017) .......................................................................5

Smith v. City of Cumming,
212 F.3d 1332 (11th Cir. 2000) ...............................................................................5

Stout v. Mischou,
20 Civ. 147 (RDA/TCB), 2021 U.S. Dist. LEXIS 32531
(E.D. Va. Feb. 5, 2021) ...........................................................................................4

Tancredi v. Malfitano,
567 F. Supp.2d 506 (S.D.N.Y.) ..............................................................................8

Turner v. Lieutenant Driver,
848 F.3d 678 (5th Cir. 2017) ...................................................................................6

Tyler v. City of Kingston,
74 F.4th 57 (2d Cir. 2023) .......................................................................................9

United States v. Yonkers Bd. of Educ.,
747 F.2d 111 (2d Cir. 1984) ................................................................................3, 4

Virginia v. Moore,
553 U.S. 164 (2008) ......................................................................................... 10-11

**Cases**                                                                                          **Pages**

Westmoreland v. CBS,
    752 F.2d 16 (2nd Cir. 1984)...................................................................................4

Whiteland Woods, L.P. v. Township of W. Whiteland,
    193 F.3d 177 (3d Cir. 1999)............................................................................. 3-4, 6

**Statutes**

28 U.S.C. §1367(c)(1)..................................................................................................11

N.Y. Civ. Rights L. § 79-p(1)(a)..................................................................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

SEANPAUL REYES,

                                                Plaintiff,

                        -against-

THE CITY OF NEW YORK,

                                     Defendant.

------------------------------------------------------------------------- x

**DEFENDANT CITY OF NEW YORK'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

23 Civ. 6369 (JGLC)

## PRELIMINARY STATEMENT

Defendant City of New York (the "City"), hereby respectfully submits its Reply Memorandum of Law in Support of its motion to dismiss plaintiff's amended complaint (the "Complaint") with prejudice. For the reasons set forth in its opening brief, as well as herein, the City's motion should be granted in its entirety. With respect to plaintiff's First Amendment claims, the law in this Circuit is that the traditional public forum analysis should be applied, and not the heightened intermediate level of scrutiny that plaintiff suggests for the first time in this litigation. With respect to plaintiff's Fourth Amendment claims, the SRTRA and CRTRA are purely state and local law remedies which are not intended to create the right to record in police precinct lobbies, and do not vitiate the existence of probable cause for plaintiff's subject arrest created by New York Penal Law. Further, plaintiff, in response to the City's motion, does not even attempt to address the City's arguments as to the lack of supplemental jurisdiction for plaintiff's state and local law claims other than to point out that the Court decided the SRTRA and CRTRA claims upon plaintiff's motion for a preliminary injunction in a different procedural posture. Should the Court not decline to exercise supplemental jurisdiction over plaintiff's SRTRA and CRTRA claims, such claims still fail. The legislative histories of the Acts do not

support the grant of a right to record in NYPD police precinct lobbies, plaintiff continues to argue for an outcome that would lead to absurd and unintended interpretations of the Acts, and the NYPD as proprietor of its own buildings has the right to preserve its properties for the uses to which such buildings are dedicated, as well as to lawfully have the trespass laws enforced.  With respect to his  CAPA claims, plaintiff does not dispute that NYPD officers have the discretion as to whether or not to issue orders upon encountering individuals recording in NYPD lobbies, which defeats such claim.  Finally, the <u>Younger</u> abstention doctrine does apply to plaintiff's declaratory judgment claim, which was only raised for the first time in the Complaint (upon plaintiff's amendment), in light of ongoing criminal proceedings arising from plaintiff's June 1, 2023 arrest at the NYPD's 75th Pct.

## **ARGUMENT**

### **POINT I**

### **PLAINTIFF'S FIRST AMENDMENT CLAIMS FAIL**

In its opening brief, the City argued that NYPD precinct lobbies should be treated as "non-public" fora under the public forum analysis applied by courts to determine whether expression is to be allowed on government properties, and not that such areas are "limited public properties," as plaintiff purposely misrepresents in response to the City's motion.  (<u>See</u> D's MOL, p. 10) ("Instead, these lobbies are best characterized as nonpublic fora, akin to "waiting rooms at a city agency.") (quotations omitted).  Therefore, the City argued that, at a minimum, and consistent with the Court's preliminary injunction decision, the test to be applied as to plaintiff's First Amendment claim is as follows: the Facilities Policy should be upheld if it is reasonable and viewpoint neutral.  <u>See</u> <u>Reyes v. City of New York</u>, 23 Civ. 6369 (JGLC), 2023

U.S. Dist. LEXIS 196602, at *24 (S.D.N.Y. Nov. 2, 2023); <u>Make the Rd. by Walking, Inc. v. Turner</u>, 378 F.3d 133, 143 (2d Cir. 2004).

        The City further argued in its opening brief that based on this Court's rulings as a matter of law upon its decision on plaintiff's motion for a preliminary injunction, the pleadings and the documents incorporated by reference or which are integral thereto, that there are privacy, safety and security interests implicated by recording in NYPD precinct lobbies.  (<u>See</u> D's MOL, pp. 11-13)[1].  The City therefore argued that the Facilities Policy is reasonable as a matter of law. The City also argued that the Facilities Policy was indisputably viewpoint neutral on its face, as also already found by the Court, albeit in a different procedural context.  <u>See</u> <u>Reyes</u>, <u>supra</u>, at *30.  Thus, under the traditional public forum test for determining whether expression is to be allowed on a government property, the City argued that the NYPD's Facilities Policy easily passes the appropriate level of constitutional scrutiny.

        In response, for the first time in this litigation, plaintiff argues that the public forum analysis should not be applied by the Court to this dispute, but rather that the Facilities policy should be subjected to a heightened level of constitutional scrutiny, an "intermediate" level of scrutiny.  Plaintiff provides no Supreme Court authority for such a proposition, and Second Circuit authority is clearly to the contrary.  The Second Circuit has not applied heightened intermediate scrutiny to any right to either film or access information.  In <u>United States v. Yonkers Bd. of Educ.</u>, 747 F.2d 111 (2d Cir. 1984), the Second Circuit considered whether prohibiting the press from audio-recording courtroom proceedings violated the First Amendment.  The Court rejected heightened scrutiny and held that the prohibition "should be

---

[1] In fact, it is plaintiff who repeatedly cites to the preliminary injunction record in opposition to the City's motion.  <u>See</u> <u>e.g.</u> P's MOL, p. 14, raising, i.e., the so-called "Mannequin Challenge Video" presented by plaintiff at the preliminary injunction hearing, and testimony given by the NYPD's witness at the hearing.  (<u>See</u> P's MOL, at p. 17)

upheld if reasonable." Id., at 114; see also Whiteland Woods, L.P. v. Township of W. Whiteland, 193 F.3d 177, 182, 183 (3d Cir. 1999) (noting that Yonkers "evaluated a ban on audio recording using criteria similar to those governing restrictions on expressive speech in a nonpublic forum").

The Second Circuit reached a similar conclusion in Westmoreland v. CBS, 752 F.2d 16 (2nd Cir. 1984), which upheld a ban on televising courtroom proceedings, also without applying any heightened level of constitutional scrutiny. Id.; see Whiteland Woods, supra, 193 F.3d at 183 (noting that Westmoreland's analysis was "consistent" with Yonkers). In upholding the recording ban in Westmoreland, the Second Circuit essentially characterized courthouses as limited public fora. See Id. at 24, n.13 ("[C]ourts, like schools and libraries, are at most only secondarily institutions to foster public debate. Rather courts exist primarily to adjudicate legal controversies. Thus, they are public forums only in a special sense, with government enjoying … the power to preserve such tranquility as the facilities' central purpose requires.") (cleaned up). Indeed, Westmoreland held that the televising restriction would be constitutional *even if* a courtroom were deemed a public forum, because the public's speech interests in public forums don't require that there be elevated protections for other expressive activities like video recording. See Id. at 21-22.

The Second Circuit's decisions in Yonkers and Westmoreland are also consistent with the United States Supreme Court's decision in Estes v. Texas, 381 U.S. 532 (1965). In Estes, the Court held that there is no First Amendment right to film courtroom proceedings and did not apply any type of intermediate level scrutiny. Id. And various district courts have applied the forum analysis in contexts similar to the factual context raised in this case. Stout v. Mischou, 20 Civ. 147 (RDA/TCB), 2021 U.S. Dist. LEXIS 32531, at *12-17 (E.D. Va. Feb. 5,

4

2021) (applying public form analysis to restriction on recording on police property); <u>Sheets v. City of Punta Gorda</u>, 415 F.Supp.3d 1115 (M.D. Fla. 2019) (applying public forum analysis to restriction on recording in a City Hall); <u>see also</u> <u>Silverberg v. Bd. of Elections of N.Y.</u>, 272 F.Supp.3d 454 (S.D.N.Y. 2017) (applying the forum doctrine to assess the constitutionality of the "ballot selfie" law).

Plaintiff's out of Second Circuit citations are against the weight of authority[2]. Plaintiff ignores the fact that the Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have explicitly applied the public forum doctrine to restrictions on recording or information gathering.  See <u>Hills v. Davis</u>, 52 F.4th 997, 1003-04 (6th Cir. 2022) (applying public forum doctrine to prohibition on police officers and their union representatives recording videotaped interviews during investigations into police misconduct); <u>John K. Maciver Inst. For Pub. Policy, Inc. v. Evers</u>, 994 F.3d 602, 611-612 (7th Cir. 2021) ("But forum analysis is not merely about who has the right to speak on government property.  It also addresses who has the right of access to government property to engage in various expressive pursuits—whether that expressive pursuit is leafletting teachers, soliciting charitable  donations, wearing political buttons at a polling place, or gathering information for new dissemination."); <u>Ness v. City of Bloomington</u>, 11 F.4th 914, 923-24 (8th Cir. 2021) (applying public forum doctrine to restrictions on filming in public parks);  <u>Askins v. U.S. Dep't of Homeland Sec.</u>, 899 F.3d 1035, 1044-47 (9th Cir. 2018) (applying public forum doctrine to restrictions on photographing U.S. ports of entry); <u>Irizarry v. Yehia</u>, 38 F.4th 1282, 1292 n. 10 (10th Cir. 2022) (applying public forum doctrine to restrictions on filming traffic stop); <u>Crocker v. Beatty</u>, 995 F.3d 1232 (11th Cir. 2021) (clarifying that <u>Smith v. City of Cumming</u>, 212 F.3d 1332 (11th Cir. 2000), which recognized a constitutional right to

---

[2] None of such decisions even arise from the setting of a non-public form such as the lobby of an NYPD police precinct.

film the police, turned on the fact that "the plaintiff there attempted to film police activity while in a public forum of some sort").

Virtually all of the out of Second Circuit decisions that plaintiff cites to certainly do not hold that restrictions on recording are subject to intermediate scrutiny regardless of forum. See e.g. Kelly v. Borough of Carlisle, 622 F.3d 248 (3d Cir. 2010); Price v. Garland, 45 F.4th 1059 (D.C. Cir. 2022).  Rather, these Circuits reject the public forum doctrine in the context of recording bans only in the sense that they hold that such bans are subject to an even *lower* standard of constitutional scrutiny.  See Kelly, 622 F.3d at 262; Whiteland Woods, supra, 193 F.3d at 183; Price, 45 F.4th at 1064 ("We hold that regulation of filmmaking on government-controlled property is subject only to a 'reasonableness' standard, *even when the filmmaking is conducted in a public forum*") (emphasis added).  Further, the Courts in Sharpe v. Winterville Police Dep't, 59 F.4th 674 (4th Cir. 2023), Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017) and ACLU of Ill. v. Alvarez, 679 F.3d 583 (7th Cir. 2012), only decided the right to record issues presented in those cases in the contexts of public fora, not nonpublic fora[3].

Finally, in the First Circuit's latest decision on this issue, that Court stated, "[e]ven protected speech is not equally permissible in all places at all times," in rejecting the notion that some forum analysis was not appropriate even, *assuming arguendo*, that there was a First Amendment right to record a child's video recorded educational program.  Pitta v. Medeiros, 90 F.4th 11, 23 (1st Cir. 2024)[4] (citing Cornelius v. NAACP Legal Def. & Educ. Fund,

---

[3] Plaintiff never provides any support for his statement that Alvarez stands for the proposition that intermediate level scrutiny should be applied to non-public fora and/or how Alvaraz could stand for such a proposition in light of Evers, supra.

[4] In Pitta, the First Circuit noted that its decision in Iacobucci v. Boulter, 193 F.3d 14 (1st Cir. 1999), another First Circuit decision upon which plaintiff relies, "did not raise a First Amendment claim."  Pitta, supra, at 18, n.7.

Inc., 473 U.S. 788, 799 (1985)); see also Glik v. Cuniffe, 655 F.3d 78, (1ˢᵗ Cir. 2011) (protecting under the First Amendment a recording made "in the Boston Common, the oldest park in the United States and the apotheosis of a public forum").  Based on the foregoing, Project Veritas Action Fund v. Rollins, 982 F.3d 813 (1ˢᵗ Cir. 2020), hardly stands for the proposition that there is a consensus among Circuit Courts that an intermediate level of heightened scrutiny should be applied to filming restrictions in nonpublic fora, and, as seen, even the First Circuit itself has been less than clear that even it has eliminated the public forum analysis in these sort of cases (as seen it has not).

Finally, plaintiff's quotation from Price, supra, at p. 8 of his opposition MOL, is misleading.  That quotation from Price was directed at cases determining a right to record in traditional public places and fora.  Price, supra, at 1071 (internal citations omitted).  The NYPD's policy that is challenged herein, which came about in settlement to a challenge to the NYPD's right to record practices, in fact, generally allows civilians the right to record the police in public places such as "streets, sidewalks, and parks, as well as private property in which the individual has a legal right to be present…"  (Complaint, Exhibit B, ¶1)  So, the NYPD does not have a blanket prohibition on the right to record that the Price court was alluding to in its decision.

Plaintiff argues that even if the Court uses the traditional public forum analysis, the City's motion to dismiss plaintiff's First Amendment claims should still be denied.  First, plaintiff argues without authority that NYPD precinct lobbies should be considered "designated public forums."  Plaintiff ignores the very definitions of the various *fora* used by this Court in rendering its decision denying plaintiff's motion for preliminary injunction.  "[A] 'non-public forum' is public property that the government has not opened for expressive activity by members

of the public."  Reyes, at *19 (internal citation omitted).  "The government may reserve such a forum 'for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  Id. (internal quotations omitted).  NYPD precinct lobbies are not "designated" public fora as they are not locations "which the state has opened for use by the public as a place for expressive activity."  Id., at *18 (internal quotation omitted).

        The video of plaintiff's underlying arrest of April 3, 2023, which is indisputably incorporated by reference to the Complaint, and which may therefore be considered upon the City's motion, see Hirsch v. Complex Media, Inc., 18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701, at *6-7 (S.D.N.Y. Dec. 10, 2018), clearly demonstrates how NYPD precinct lobbies are used and how the NYPD's policy is reasonable[5].  NYPD lobby precincts are used by members of the public to interact with NYPD personnel on issues that they wish to raise, including reporting crimes.  Such lobbies are also used as conduits to other parts of the precincts that plaintiff states he does not want to enter.  As the noted in the Court's preliminary injunction decision, "being able to view or listen to these occurrences is different from being able to record them and post them to the internet for anyone to view."  Reyes, supra, at *28.  "Recording creates a permanent image," and "[a]udio may pick up on conversations or noises that a person's ear cannot hear."  Id.  Obviously, members of the public are not going to police precincts with the idea that they are going to be discussing individualized issues and that someone who they don't even know will be

---

[5] Tancredi v. Malfitano, 567 F. Supp.2d 506 (S.D.N.Y.), cited by plaintiff, does not in any way impact the City's argument that its policy is reasonable.  Tancredi involved a Fourth Amendment challenge to officers' conversations at a desk in a police headquarters.  Unlike here, the protection of the privacy of crime victims or others wishing to interact with NYPD personnel was not at issue.  Clearly, crime victims do not go to police precincts to discuss issues with NYPD personnel with the expectation that persons such as plaintiff, who they seemingly do not even know, will be recording them for his own uses.

recording, like plaintiff did on April 3, 2023, their interactions.  That is simply not the intended use of police precinct lobbies, nor is the recording, as plaintiff also did on April 3, 2023, of NYPD security pads and internal areas off limits to the public in any capacity, and that can easily be used to compromise security.  Plaintiff's comparison of his recording to NYPD security cameras and officers' BWC footage is flawed as well:  NYPD recordings can be redacted in response to, i.e., FOIL requests and officers are directed not to record interactions with victims of sexual assaults.  (See Ex. A to the Declaration of Mark D. Zuckerman, dated March 19, 2024 hereinafter "Zuckerman Reply Decl.")   A government "workplace, like any place of employment, exists to accomplish the business of the employer." Cornelius, supra, 473 U.S. at 805.  Further, the Facilities Policy is clear that the NYPD has not opened precinct lobbies to recording by the public.  NYPD precinct lobbies are clearly non-public *fora* and further factual development as plaintiff proposes is completely unwarranted[6].  See Tyler v. City of Kingston, 74 F.4th 57, 63-66 (2d Cir. 2023); Fighting Finest v. Bratton, 898 F. Supp. 192, 197-198 (S.D.N.Y. 1995).  Using the public forum analysis, the Court should dismiss with prejudice plaintiff's First Amendment claims.[7]

## POINT II

## PLAINTIFF'S     FOURTH     AMENDMENT CLAIMS SHOULD BE DISMISSED

---

[6] And there is nothing in the Complaint that plausibly alleges that the Facilities Policy is anything but viewpoint neutral, or is being used by the NYPD as a means to allow favorable news coverage, while suppressing negative coverage.

[7] Plaintiff does not dispute that his claim for First Amendment retaliation also requires that he plausibly allege a First Amendment interest.  Given that plaintiff does not for the reasons set forth herein, plaintiff's First Amendment retaliation claim fails for this reason alone.  Further, given that plaintiff is relying on his past April 3, 2023 arrest alone, see Complaint, ¶79, he is relying on one past incident, which defeats his claim for injunctive relief on standing grounds as argued in the City's opening brief.  See City of Los Angeles v. Lyons, 461 U.S. 95 (1983).

The City made a number of meritorious arguments in support of its motion for dismissal of plaintiff's Fourth Amendment claims in its opening Memorandum of Law.  (See D's MOL, pp. 14-19)  In response, plaintiff focuses on his contentions that he did not commit either trespass or OGA on April 3, 2023, at the NYPD's 61st Pct.  As to trespass, as more fully argued in Point IV, infra, the orders that NYPD officers gave to plaintiff to stop recording prior to his subject arrest were lawful.  There is no dispute that the NYPD is the proprietor of its precinct facilities.  In accordance with its proprietorship status, the NYPD has broad power and flexibility to preserve its facilities for its intended uses, which as to precinct lobbies are to principally allow the citizenry to interact with NYPD personnel as to issues individuals wish to raise.  The SRTRA and CRTRA do not demonstrate any intent by the State Legislature or City Counsel to derogate the NYPD's common law proprietorship rights or the NYPD's right to seek enforcement of the trespass laws.  The NYPD trespass laws were never even changed after the passage of the SRTRA or CRTRA.  Plaintiff's video and audio recording is not within the intended uses of NYPD precinct lobbies.  There was therefore probable cause to arrest plaintiff for trespassing on April 3, 2023, and which by itself defeats his Fourth Amendment claims.

As also argued in the City's opening Memorandum of Law, and herein at Point IV(D), infra, plaintiff physically interfered with the officers' official functions preceding his arrest of April 3, 2023, and intended to interfere therewith.  There is simply no other explanation for plaintiff's conduct which included recording officers in restricted areas of the Precinct, security cameras which could then be used to compromise NYPD security, and worst of all, video recording the security pad code which gives officers entry into the restricted area of the precinct.  Plaintiff also intentionally recorded interactions between members of the public and NYPD representatives without any regard for the fact that such members of the public expressed

10

no desire for their interactions to be recorded.  Plaintiff's conduct was intentional and intended to disrupt the legitimate police functions that were ongoing.

Plaintiff also does not offer any response to the line of cases cited by the City that stand for the proposition that a police officer does not violate the Fourth Amendment "by making an arrest based on probable cause but prohibited by state law."  Virginia v. Moore, 553 U.S. 164 (2008) (See D's MOL, pp. 18-19).  This would be the exact situation if the Court finds that the SRTRA and CRTRA somehow derogate New York's trespass laws and the NYPD's common law proprietorship rights.  Despite plaintiff's protestations and attempts to convert state and local law claims into Fourth Amendment claims to try to keep this case in federal court, plaintiff has no Fourth Amendment claim.   Plaintiff's Fourth Amendment claims should therefore be dismissed[8].

## POINT III

### THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

In its opening brief, the City argued that the Court should decline supplemental jurisdiction over plaintiff's state law claims for a number of reasons.  First, the City argued that should the Court dismiss plaintiff's federal claims upon the City's motion, the Court should then decline to exercise jurisdiction over plaintiff's remaining state law claims given the fact that this case is at an early stage thereof.  See Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006).  Second, the City argued that plaintiff's SRTRA and CRTRA claims present novel and unresolved issues of state and local law, see 28 U.S.C. §1367(c)(1), that "concern [] the

---

[8] Plaintiff is relying on one past arrest, and therefore does not have standing to seek injunctive relief based on alleged Fourth Amendment violations either.  See City of Los Angeles v. Lyons, supra.

administration of state [and City] government and the balancing of important state policies[.]"
See Seabrook v. Jacobson, 153 F.3d 70, 71 (2d Cir. 1998). Third, the City argued that even if the Court determines that it is not categorically prohibited from hearing Article 78 claims, which plaintiff's CAPA claim is, it would be an abuse of discretion to assert supplemental jurisdiction over an Article 78 claim that "raises an unresolved issue of state law" and "implicates significant state interests." See Carver v. Nassau Cty. Interim Fin. Auth., 730 F.3d 150, 155 (2d Cir. 2013).

In response, plaintiff merely argues that the Court addressed this issue in its decision upon plaintiff's motion for a preliminary injunction and that the SRTRA and CRTRA issues present "straightforward" and "simple" issues. (MOL at pp. 2-3) But, at the time that the Court decided plaintiff's application for a preliminary injunction, the City had not moved to dismiss the Complaint. And the Court did not have the benefit of the City's arguments regarding the effect of its common law proprietorship rights, rights to enforce the trespass laws and the legislative histories of the Acts. The Court also did not reach plaintiff's CAPA claim in deciding plaintiff's preliminary injunction application. So, there are different supplemental jurisdiction issues presented upon the City's motion to dismiss that plaintiff does not squarely address in his response. The Court decline supplemental jurisdiction over plaintiff's state law claims.

## POINT IV

### THE SRTRA AND CRTRA DO NOT GRANT INDIVIDUALS THE RIGHT TO RECORD IN POLICE PRECINCT LOBBIES

In its opening Memorandum of Law, the City advanced four specific arguments as to why plaintiff's claims under the SRTRA and CRTRA fail. First, the City argued that there was no intent by the State Legislature or City Council to displace the NYPD's common law rights as proprietor to its own properties, or the NYPD's rights to seek enforcement of the trespass laws. Second, the City argued that plaintiff's interpretation of the Acts would lead to

12

unintended and absurd results.  Third, the City argued that the legislative history of the Acts makes clear that the intents of the Acts were to embody the existing constitutional standard articulated by several federal courts, and not to create a new right that was not pre-existing. Fourth, the City argued that plaintiff physically interfered with the officers' official functions, leading to his arrest of April 3, 2023, and which is a complete defense to plaintiff's SRTRA and CRTRA claims.  In response, plaintiff opposes each of the City's arguments.

## A.      The SRTRA and CRTRA Do Not Derogate the NYPD's Common Law Rights as Proprietor

With respect to the City's first argument, plaintiff does not dispute that the NYPD does have common law rights as proprietor and has the right to seek lawful enforcement of the trespass laws.  Plaintiff, however, merely contends that the "statutory text" controls.  (P's MOL, p. 27)  But under New York law, "it is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law."  Hechter v. New York Life Ins. Co., 46 N.Y.2d 34, 39 (1978).  Plaintiff never explains, nor can he, given these legal principles, how the SRTRA or CRTRA intended to derogate the common law proprietorship rights that the NYPD enjoys or its right to lawfully enforce the trespass laws.  For this reason alone, plaintiff's SRTRA and CRTRA claims fail.

Plaintiff attempts to argue that the Facilities Policy is beyond the NYPD's common law rights as proprietor and its right to have enforced New York's penal trespass laws. Plaintiff argues that the appropriate legal standard to be applied is that the government may issue an exclusion order only when "the manner of expression is basically incompatible with the normal activity of a particular place at a particular time."  (Plaintiff's MOL, p. 28) (quoting People v. Hedemann, 438 N.Y.S.2d 172 (1st Dep't, 1981)).  However, that standard was overruled in Rogers v. N.Y.C. Tr. Auth., 89 N.Y.2d 692, 701-02 (1997) (rejecting plaintiff's

argument that "a person engaged in expressive conduct would have a right of access to public property, subject only to narrowly tailored restrictions, so long as the manner of expression is not basically incompatible with the intended use of the property"). Rather, Rogers affirmed that "the Government, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated," Id. at 698 (cleaned up), and that restrictions on expressive conduct are evaluated under the public forum doctrine for purposes of both the First Amendment and the New York State Constitution. See Id., at 697-702.

In cases construing New York's trespass laws, New York's criminal courts have stated, that a government building, "especially one which houses so vital a functioning department as the Police Department, may not be used in a manner which suits the whim or caprice of every citizen, without reducing our government to chaos." People v. Martinez, 43 Misc.2d, 94, 97 (N.Y. Crim. Ct. N.Y. Cty. 1964). Further, the police, as the "custodian[s]" of such premises, were in the best position to know whether the defendants had acted in a way that required him to be asked to leave." People v. Reape, 22 Misc.3d 615, 619 (N.Y. Crim. Ct., Kings Cty. 2008). "Those who enter in order to use the facilities…need to know that their safety is being protected while they are present there." Id., at 618-19.

Even in the case that plaintiff cites repeatedly in his responsive MOL, People v. Leonard, 62 N.Y.2d 404 (1984), that Court found that the state had "great power and great flexibility in maintaining order and securing the safety of others on the school campus." Id., at 410. The Court stated that the state's power was "not absolute." Id. "To satisfy its burden or proof with respect to the element of the crime that a 'lawful order not to enter' the property issued, the People must demonstrate that the particular order of exclusion had a legitimate basis and that, considering the nature and use of the subject property, its enforcement did not

14

unlawfully inhibit or circumscribe the defendant from engaging in constitutionally or statutorily protected conduct."[9] Id., at 411.

Based on the foregoing principles, as argued in Point I, supra, NYPD police precinct lobbies are created for the use of the citizenry to interact with the police as to their own individualized issues without interference by persons such as plaintiff who they do not even know.  As also seen, restrictions on recording in such areas do not violate the First Amendment. Finally, there is no indication that the State Legislature or City Council intended to override or alter the NYPD's rights as proprietor as described in the City's Memoranda of Law in support of dismissal.  The NYPD has a legitimate basis for the Facilities Policy in light of precinct lobbies' intended uses.  As such, for these reasons alone, plaintiff's SRTRA and CRTRA claims fail.

**B.      Plaintiff's Interpretation Would Lead to Absurd and Unintended Results**

Second, the City argued that plaintiff's interpretations of the SRTRA and CRTRA would lead to "absurd" and "unintended" results, which are to be avoided.  See Lubonty v. U.S. Bank Nat'l Ass'n, 34 N.Y.3d 250, 255 (2019).  In its opening Memorandum of Law, the City pointed out three examples of how plaintiff's interpretation of the Acts would lead to such unintended outcomes.  For example, if the SRTRA did not import the government's traditional prerogative as a proprietor, there would be no textual basis to bar courtroom spectators from

---

[9] The New York Court of Appeals in Rogers expressly rejected as "unpersuasive" that Leonard stood for the proposition that "a person engaged in expressive conduct would have a right of access to public property, subject only to narrowly tailored restrictions, so long as the manner of expression is not basically incompatible with the intended use of the property."  Id. at 701-02. Rogers instead held that such restraints were governed by the First Amendment's public forum doctrine, 89 N.Y.2d at 698-700, and that the public forum analysis also applied under the New York Constitution.  See Id. at 701-02; see also People for the Ethical Treatment of Animals v. Giuliani, 105 F.Supp.2d 294, 336 (S.D.N.Y. 2000) ("Even though New York courts are clear that the State is particularly disposed toward avoiding restrictions on free expression, they do not indicate that prior restraints in nonpublic forums are subject to higher standards than the First Amendment.").

bringing their cellphones into State courthouses and recording court security officers.  <u>See</u> N.Y. Civ. Rights L. § 79-p(1)(a) (defining "Officer" to include "security officer, security guard or similar official").  And if the police were called to a home on a sensitive matter, officers would be barred from assisting a homeowner who sought removal of a guest who insisted on recording over the owner's express objection.  Furthermore, under plaintiff's view, even civilians in *non-public* areas of police precincts (or other government buildings) would, presumably, be entitled to bring their recording devices and film any police or security officers they see.

In response, plaintiff agrees that such outcomes would be inappropriate. However, plaintiff never addresses the issue that the City raised:  under plaintiff's interpretation of the Acts, these are the exact outcomes that would be reached.  Thus, plaintiff's interpretation that the statutory right to record is unrestricted as to location is not logical and should be rejected for this reason as well.

## C.    The Legislative Histories of the Acts Support the City's Position

Third, the City argued that the legislative histories of the Acts support its position that the SRTRA and CRTRA do not grant individuals the right to record in NYPD police precincts.  In support of this argument, the City cited <u>People v. Wallace</u>, 31 N.Y.3d 503, 507 (2018), for the proposition that "[g]enerally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history."  <u>Id</u>. (cleaned up).  The City cited to numerous examples of the legislative histories of the Acts in support of its argument.  <u>See</u> D's Memorandum of Law, pp. 26-29.

In response, plaintiff does not distinguish <u>Wallace</u> in any way.  Nor does plaintiff refute the numerous examples of the legislative histories of the Acts submitted by the City supporting its position.  Instead, first, plaintiff (at p. 30 of his MOL) purports to cite to page 7 of the June 18, 2020 NYC committee report for the proposition that Donovan Richards specifically

addressed police stations when the CRTRA was being considered.  Plaintiff quotes the following statement from  Chairman Richards, which plaintiff's Memorandum of Law purports to source from the committee report: "When first informed of the Trespass Policy, Chair Donovan Richards specifically announced that the Right to Record Act would address the ban, which he said created a 'double standard in police stations'" (citing Committee Report).  In fact, the cited committee report contains no such statement from Chairman Richards and the quote actually came from the New York Times article cited at ¶39 of the Complaint.  There is no indication in any of the legislative histories to the CRTRA that there was an intent to grant the right to record in NYPD police precincts.  If Chairman Richards so intended, it should be somewhere in the legislative histories to the bill, but it was not.  Plaintiff's argument fails.

Second, plaintiff (at p. 30 of his **Memorandum** of Law) also cites to a declaration from Jumaane Williams -- the RTRA's sponsor in the Council – that Mr. Williams' office and LatinoJustice (as co-counsel) filed in an amicus capacity in <u>Rodney v. City of New York</u>, 22 Civ. 1445 (LAK)(OTW), two years after the CRTRA was enacted.  Plaintiff's resort to citing a single official's *post hoc*, litigation-oriented statements about supposed unexpressed intentions lays bare the absence of genuine support for his position.   And the contemporaneous legislative history directly refutes Williams' declaration.   Specifically, when Williams first introduced the CRTRA in 2018, he stated that the bill "does not create any new rights.  It just gives a private right because if you had to push forward on your right with the constitution, it is much more onerous …."  (Ex. B to Zuckerman Reply Decl., Transcript of the Minutes of the City Council Stated Meeting 42 (Mar. 7, 2018), at p. 42).  So, the Williams Declaration should not be given any weight when the Court determines the legislative history to the CRTRA either.  Simply, it cannot be seriously disputed that the legislative histories to the SRTRA and CRTRA

fully support the City's position that the Acts were not intended to grant the right to record in NYPD police precincts.

**D.**     **Plaintiff Physically Interfered With the Officers' Official Functions**

In its opening Memorandum of Law, the City argued that plaintiff's SRTRA and CRTRA claims were barred because he physically interfered with officers' official functions immediately preceding his subject April 3, 2023 arrest.  In response, plaintiff seems to concede that if he did in fact did physically interfere with officers' official functions preceding his subject arrest, that would defeat his claims under the Acts.  Despite plaintiff's protestations, it is clear from the subject video taken by plaintiff that was incorporated by reference to the Complaint that he did physically interfere with the officers' functions.  It is simply not required, as plaintiff asserts, that he make actual "contact with the officers" or "physically obstructed them." (MOL, p. 23)   All that is required is "inappropriate and disruptive conduct at the scene of the performance of an official function."  See Kass v. City of New York, 864 F.3d 200, 209-210 (2d Cir. 2017).  And that plaintiff did.  Plaintiff does not dispute that he video and audio recorded individuals who were interacting with NYPD personnel about issues they came to the precinct with, video recorded the location of NYPD security cameras, video recorded officers performing their duties in restricted areas as well as well as restricted areas themselves, and even video recorded an officer entering a security code into a keypad which allowed access into the restricted area of the 61st Precinct.  Clearly, as opposed to what plaintiff wishes to portray, that he was merely there to file a complaint report, plaintiff's intent was to intrude upon and to get in the way of the police activities that were ongoing at the 61st Precinct when plaintiff entered on April 3, 2023.

## POINT V

## PLAINTIFF'S   CAPA   CLAIMS   SHOULD DISMISSED

In response to the City's argument that the Facilities Policy is not subject to CAPA rulemaking because NYPD officers indisputably have discretion over whether to issue an order to stop recording, plaintiff does not argue that if such discretion exists, that plaintiff's CAPA claim survives..   Nor could he: the New York Court of Appeals has stated that "[r]ulemaking,…, sets standards that substantially alter or, in fact, can determine the result of future agency adjudications …. In contrast, agency penalty guidelines that 'vest inspectors with significant discretion, and allow for flexibility in the imposition of penalties, all with the view of imposing the appropriate sanction for the individual offense and offender in the particular case' are not rules under the State Administrative Procedure Act or the New York Constitution." Matter of Alca Industries, Inc. v. Delaney, 92 N.Y.2d 775, 778 (1999).   Given the undisputed discretion that NYPD officers have over whether or not to issue an order to stop recording, CAPA rulemaking was not required.

## POINT VI

## PLAINTIFF'S   DECLARATORY   RELIEF CLAIMS SHOULD BE DISMISSED

In response to the City's meritorious arguments made in its opening brief (D's MOL, pp. 31-35) as to why plaintiff's declaratory relief claim should be dismissed, plaintiff makes two arguments in response[10]:  first, plaintiff argues that the Court addressed the Younger abstention doctrine in its preliminary injunction decision.  Second, plaintiff argues that the State

---

[10] Plaintiff does even not address the City's argument as to the lack of "immediacy" presented by the facts set forth in the Complaint or the differences between injunctive and declaratory relief as discussed in the City's opening brief.

Criminal Appellate Court hearing the People's appeal (see Ex. C to Zuckerman Reply Decl.) would not be bound by this Court's decision. Plaintiff's arguments fail for a number of reasons.

First, the City's motion to dismiss on the basis of the <u>Younger</u> abstention doctrine is limited to plaintiff's declaratory relief claim which was only added by plaintiff in his Amended Complaint and which was filed after the Court's decision on plaintiff's motion for a preliminary injunction. Second, plaintiff fails to address the City's argument that there are ongoing criminal proceedings by virtue of the People's appeal of Justice Auguste's order dismissing the charges against plaintiff arising from his June 1, 2023 arrest. Third, plaintiff does not address the authority cited in the City's opening Memorandum of Law that the Court should abstain under <u>Younger</u> when a plaintiff who is a criminal defendant in a parallel case seeks a declaration that the rule they were charged under is unlawful (which is the case here). <u>See</u> <u>e.g.</u> <u>Samuels v. Mackell</u>, 401 U.S. 66 (1971) (abstention of district court required for federal claim seeking declaration that state criminal anarchy statute was unconstitutional where state prosecution was ongoing). Fourth, plaintiff does not address the discretionary factor that an ongoing state prosecution that is not completed is clearly an important state interest. Fifth, plaintiff does not address the City's argument that there is no indication that he cannot raise constitutional arguments in the state criminal proceedings. Abstention is thus clearly proper as to plaintiff's claim for declaratory relief, which is the only claim at which the City's invocation of the <u>Younger</u> abstention doctrine is aimed.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, as well as the reasons set forth in its opening brief, the City's motion to dismiss should be granted in its entirety and the Complaint dismissed with prejudice.

20

Dated:      New York, New York
              March 19, 2024

                              HON. SYLVIA O. HINDS-RADIX
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendant City of New York
                              100 Church Street, Room 3-133b
                              New York, New York 10007
                              (212) 356-3519

                    By:    /s/ Mark D. Zuckerman
                              MARK D. ZUCKERMAN
                              Senior Counsel