UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEANPAUL REYES,

                              Plaintiff,

                 -against-

CITY OF NEW YORK,

                              Defendant.

23-CV-6369 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff SeanPaul Reyes alleges that the policy of the New York Police Department ("NYPD") that prohibits recording in publicly accessible areas of NYPD precincts is unlawful and that he was arrested for filming in an NYPD precinct lobby in violation of the Fourth Amendment. Defendant City of New York moves to dismiss the First Amended Complaint in its entirety. At this stage, Plaintiff has plausibly alleged that the NYPD's policy violates the First Amendment. Plaintiff has also stated a claim that his rights under the Fourth Amendment were violated when he was arrested without probable cause for filming in a police precinct lobby because the language of the New York State Right to Record Act ("NYS RTRA") and the New York City Right to Record Act ("NYC RTRA," together with the NYS RTRA, the "Right to Record Acts") is clear and unambiguous: the statutes do not carve out police precinct lobbies as places where recording is prohibited. However, Plaintiff cannot bring a claim under the City Administrative Procedure Act ("CAPA"), which does not allow for a private right of action here. Accordingly, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss the First Amended Complaint.

# BACKGROUND

The following facts are, unless otherwise noted, taken from the First Amended Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court also considers materials incorporated by reference or integral to the First Amended Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). However, a "mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *QED, LLC v. Faber Daeufer & Itrato, P.C.*, No. 20-CV-2767 (VEC), 2021 WL 707073, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011)).

Plaintiff SeanPaul Reyes is an independent journalist who investigates and documents government conduct. ECF No. 67 ("First Amended Complaint" or "FAC") ¶ 14. He records his interactions with public officials in government buildings and other public spaces, and publishes the resulting videos. *Id*. ¶ 15. Plaintiff posts these videos on his YouTube channel, Long Island Audit. *Id*. ¶ 17. He has posted close to 300 videos and amassed over 500,000 subscribers. *Id*. ¶ 20. Plaintiff conducts his journalism "to protect the rights of others to record law enforcement officers engaged in misconduct." *Id*. ¶¶ 22, 59.

Plaintiff alleges that the NYPD "has a long history of hostility towards those who record its officers, particularly those who record officers for the purpose of holding them accountable." *Id*. ¶ 30. Prior to 2016, the NYPD had a policy of arresting anyone who attempted to record police activity. *Id*. ¶ 31. An individual who had been arrested for filming police officers in public sued Defendant, which resulted in a new NYPD Patrol Guide provision, Procedure No. 203-29. *Id*. ¶¶ 33–34. This provision allowed the recording of police, but still prohibited filming within

NYPD facilities. *Id.* ¶¶ 34–35. Issued in June 2018, it is titled "When a Member of the Service Encounters an Individual Observing, Photographing, and/or Recording Police Activity" (the "Procedure"). *Id.* ¶ 34; ECF No. 67-2 (the "Patrol Guide"). Section 7 states:

> Members of the public are not allowed to photograph and/or record police activity within Department facilities. Members of the service may order any member of the public who is photographing or recording within Department facilities to stop such activity. If such person refuses to stop, they then should be ordered to leave the premises. If such person refuses to leave the premises, members of the service may take proper enforcement action under the trespass statutes (i.e., Penal Law Sections 140.05 and 140.10).

FAC ¶ 36; Patrol Guide. The same language is contained in the Administrative Guide, Procedure No. 304-21, issued in June 2021. ECF No. 67-3 ("Administrative Guide"). The NYPD has also posted signs in nearly every precinct, if not every precinct, that read: "MEMBERS OF THE PUBLIC ARE PROHIBITED FROM AUDIO OR VIDEO RECORDING OR PHOTOGRAPHING THIS FACILITY." FAC ¶ 40.

Shortly after the Procedure was implemented, a man recorded himself shouting at officers in a precinct and posted the video to social media. *Id.* ¶ 38. Two or three days later, the NYPD claimed to have circulated a memo codifying the Procedure. *Id.*

Plaintiff also alleges that the NYPD itself records "nearly everything that goes on inside the publicly accessible areas of a precinct" through fixed interior video cameras and officers equipped with body-worn cameras. *Id.* ¶ 52. In 2020, however, the NYPD only responded to 33 of the 212 requests for body-worn camera footage made by the Civilian Complaint Review Board ("CCRB"). *Id.* ¶ 54. The following year, the New York City Department of Investigation issued a report outlining the failures of the NYPD to provide body-worn camera footage to the CCRB. *Id.* ¶ 55. In contrast, Plaintiff alleges that the NYPD provided 140,000 videos to the Brooklyn District Attorney's Office in 2018 and 2019. *Id.* ¶ 58.

Turning to the specific event underlying the FAC, although the Court has previously described the incident that occurred on April 4, 2023 in its decision on the motion for a preliminary injunction, the Court does so again here. *See* ECF No. 28 ("PI Order"). On that day, Reyes went to the NYPD's Sixty-First Precinct to file a complaint. FAC ¶¶ 60–61. He chose to record the incident to document the process of obtaining a complaint form and filing a complaint with the NYPD. *Id*. ¶ 61. About six minutes after Reyes began recording, Sergeant Tosares Korchimet entered the precinct lobby from the non-public area of the precinct and informed Reyes that he could not record in the precinct, pointing Reyes to a sign that stated: "Members of the public are prohibited from audio/video recording or photography inside this facility." ECF No. 74-1 (the "Video") at 6:00; FAC ¶ 65. Reyes asked for Sergeant Korchimet's name and badge number. Video at 6:16; FAC ¶ 66. Sergeant Korchimet provided this information while directing Reyes toward the doors leading from the precinct lobby to the outside, stating again that Reyes could not record in the precinct. Video at 6:18; FAC ¶¶ 66–67. Sergeant Korchimet then walked back into the non-public area of the precinct, and Reyes continued to record. Video at 6:50; FAC ¶ 67.

Shortly thereafter, Sergeant Korchimet reemerged into the precinct lobby, along with Officer Giovanni Cucuzza. Video at 7:29; FAC ¶ 68. Officer Cucuzza told Reyes that he could not record in the precinct lobby and had to leave. Video at 7:29; FAC ¶ 68. Sergeant Korchimet and Officer Cucuzza told Reyes multiple times that he was not allowed to record and that he would be arrested if he did not stop recording. Video at 7:40; FAC ¶¶ 68–70. Reyes did not stop recording and was subsequently arrested. Video at 8:27; FAC ¶ 72. Reyes was charged with violating New York Penal Law 104.05 and issued a Desk Appearance Ticket. FAC ¶¶ 73–74;

ECF No. 67-4 (the "Desk Appearance Ticket"). The Kings County District Attorney's Office declined to prosecute the arrest. FAC ¶ 75; ECF No. 67-5.

Plaintiff states that he will continue to enter and record in the public areas of NYPD precincts. FAC ¶ 78. Two months later, on June 1, 2023, Reyes attempted to record at the NYPD's Seventy-Fifth Precinct and was again arrested (the "June 2023 Arrest"). *Id*. ¶ 79. Reyes was charged with criminal trespass and obstructing governmental administration related to the June 2023 Arrest. *Id*. On September 19, 2023, he filed a motion to dismiss in that case in the Criminal Court of the City of New York, Kings County. ECF No. 74-6. The court granted the motion to dismiss on January 30, 2024. *See* ECF No. 82-1.

Reyes alleges that the Procedure, by prohibiting recording in the lobbies of police precincts, violates the First Amendment, the Fourth Amendment, the New York State Right to Record Act, and the New York City Right to Record Act. FAC ¶¶ 87–111, 121–46. Reyes further alleges that the Procedure qualifies as a rule pursuant to CAPA and that the NYPD did not undergo the required rulemaking process, making the Procedure null and void. *Id*. ¶¶ 112–20.

Plaintiff filed his Complaint on July 24, 2023. ECF No. 1. On July 25, 2023, Reyes moved for a preliminary injunction to (1) prohibit the NYPD from enforcing the Procedure and (2) require the NYPD to remove the signs in precincts setting forth the Procedure. ECF Nos. 6–9. On September 28, 2023, this Court held an evidentiary hearing and oral argument on Plaintiff's motion for a preliminary injunction. The Court granted Plaintiff's motion for a preliminary injunction on November 2, 2023, enjoining Defendant from enforcing the Procedure in NYPD police precinct lobbies except to the extent consistent with the New York State and City Right to Record Acts. *Reyes v. City of New York*, No. 23-CV-6369 (JGLC), 2023 WL 7212192 (S.D.N.Y. Nov. 2, 2023).

Defendant filed an appeal on November 3, 2023. Civil Appeal, *Reyes v. City of New York*, No. 23-7640 (2d Cir. Nov. 3, 2023). The Second Circuit granted Defendant-Appellant's motion for a stay of the preliminary injunction except to the extent that the preliminary injunction applies to Plaintiff-Appellee, for whom the preliminary injunction remains in effect pending further order. Order, *Reyes v. City of New York*, No. 23-7640 (2d Cir. Mar. 15, 2024). The Second Circuit has not yet issued an opinion on the merits of the preliminary injunction.

On January 18, 2024, Plaintiff filed the First Amended Complaint. *See* FAC. Defendant filed its motion to dismiss on February 5, 2024. *See* ECF No. 73. The Court held oral argument on Defendant's motion to dismiss on August 13, 2024.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

**DISCUSSION**

The Court first analyzes the First Amendment claim, finding that Plaintiff has sufficiently stated a claim. The Court next finds that Plaintiff states a claim under the Fourth Amendment, because the text of the Right to Record Acts is clear and unambiguous: people can record law enforcement activity. Plaintiff has also adequately alleged claims under the Right to Record Acts because he attempted to record the police and officers acted to interfere with his recording. Finally, the Court dismisses Plaintiff's claim under CAPA because CAPA does not provide for a private right of action here.

## I.     Plaintiff States a Claim Under the First Amendment

Plaintiff brings two claims under 42 U.S.C. § 1983 alleging violations of the First Amendment. First, Plaintiff argues that the Procedure deprives individuals of their First Amendment right to record NYPD officers in publicly accessible areas of NYPD facilities. "To state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Second, Plaintiff alleges First Amendment retaliation. To state a claim for First Amendment retaliation, a plaintiff must allege: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (internal citation omitted). Whether Plaintiff states First Amendment claims thus hinges on whether he was deprived of a right secured by the Constitution.

### A.  Forum Analysis Does Not Apply

There is no dispute in this action as to whether recording police performing their official duties in public is protected under the First Amendment and, as discussed in the PI Order and below, this Court finds that it is protected. *See Reyes*, 2023 WL 7212192, at *5. The question here is what standard applies when assessing whether the Procedure violates the First Amendment.

Defendant contends that the Court correctly applied a forum analysis in the PI Order and that a reasonableness test applies. Plaintiff contends that the Court should decline to apply traditional forum analysis to the First Amendment claims and should instead apply intermediate scrutiny. In particular, he contends that the standard is whether the Procedure is a "reasonable time, place, manner restriction[] that [is] content neutral and narrowly tailored to serve a significant government interest." ECF No. 102 ("Aug. 13, 2024 Tr.") at 18:12–19. To support the contention that forum analysis does not apply, Plaintiff cites several out-of-circuit cases where courts did not apply forum analysis to restrictions on recording. *See* ECF No. 81 ("Opp.") at 7–8 (citing *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 835 (1st Cir. 2020); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 262 (3d Cir. 2010); *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 681 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 488 (2023); *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 604–05 (7th Cir. 2012); *Price v. Garland*, 45 F.4th 1059, 1067 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2432 (2023)).

In opposition, Defendant argues that the Court, as it did in the PI Order, should conduct a forum analysis and based on the forum, apply a reasonableness test. In support of this argument, Defendant likewise cites out-of-circuit cases where courts did apply forum analysis to restrictions on recording. *See* ECF No. 95 ("Rep.") at 5–6 (citing *Hills v. Davis*, 52 F.4th 997, 1003–04 (6th Cir. 2022); *John K. MacIver Inst. for Pub. Pol'y, Inc. v. Evers*, 994 F.3d 602, 611–

12 (7th Cir. 2021); *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *Irizarry v. Yehia*, 38 F.4th 1282, 1292 n.10 (10th Cir. 2022); *Crocker v. Beatty*, 995 F.3d 1232, 1242 (11th Cir. 2021)). For the reasons below, the Court concludes that forum analysis does not apply, and the correct standard under which to analyze the constitutionality of the Procedure is intermediate scrutiny.

The Court starts by explaining the basis for concluding that the First Amendment protects the right to record police in public performing their official duties. Although the appellate courts that have addressed this question have uniformly recognized this right, courts differ on the source of this right under the First Amendment. Some courts focus on filming police as a step in the creation of speech. *See Alvarez*, 679 F.3d at 595 ("The act of *making* an . . . audiovisual recording is necessarily included within the First Amendment's guarantee of speech . . . as a corollary of the right to disseminate the resulting recording."); *Sharpe*, 59 F.4th at 681 ("Recording police encounters creates information that contributes to discussion about governmental affairs. . . . We thus hold that livestreaming a police traffic stop is speech protected by the First Amendment."); *see also Ness*, 11 F.4th at 923 ("The acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy.").

Other courts view the right to record police as stemming from the right to access information – analogous to free press rights – under the First Amendment. *See Glik v. Cunniffe,* 655 F.3d 78, 82 (1st Cir. 2011) (internal citation and quotation marks omitted) (concluding that recording police in public is consistent with the "undoubted right to gather news from any source by means within the law"); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017)

("[R]ecording police activity in public falls squarely within the First Amendment right of access to information."); *Fordyce v. City of Seattle*, 55 F.3d 436, 442 (9th Cir. 1995) (referring to the "First Amendment right to gather news").

Courts have also relied on both sources: that the right to record the police in public performing their official duties is understood as a step in the creation of speech protected by the First Amendment and that it is based on the right to access information. *See, e.g.*, *Turner*, 848 F.3d at 688–89 (stating that the First Amendment protects the act of making film, because "there is no fixed First Amendment line between the act of creating speech and the speech itself" and also that news gathering is entitled to First Amendment protection, because "without some protection for seeking out the news, freedom of the press could be eviscerated").

The Court agrees that the right to record police in public is supported under both theories. And, as alleged in this case, both rights are implicated. Plaintiff contends that he records his encounters with public officials performing public duties "to educate others on what to expect from such encounters," FAC ¶ 1, publishes the videos "to show his viewers various police practices," *id.* ¶¶ 15–16, and "conducts his journalism principally to protect the rights of others to record law enforcement officers engaged in misconduct," *id.* ¶ 22; *see also id.* ¶ 60 ("Plaintiff sought to peacefully exercise his First Amendment right to film in public and publicly accessible areas, to promote transparency and accountability within our government, and to ensure that our public servants recognize our rights and treat us with respect."); *id.* ¶ 83 ("Plaintiff's journalistic obligations require him to visit publicly accessible spaces—including NYPD precincts—and record his encounters with public officials.").

There is no clear test from the Supreme Court or Second Circuit as to whether a forum analysis applies when analyzing whether someone attempting to record themselves on

government property for information gathering and speech purposes is protected by the First Amendment. Generally, speech restrictions imposed by the government on the government's property are subject to a "forum based" analysis. *See Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992); *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985) ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.").

However, in at least two cases where the ability to record and the concomitant rights of creating speech and information gathering were implicated, the Second Circuit did not employ forum analysis. In *Westmoreland v. Columbia Broad. Sys., Inc.*, CNN argued that prohibiting it from televising a federal trial violated the First Amendment. 752 F.2d 16, 20 (2d Cir. 1984). The Second Circuit rejected CNN's argument that the trial served as a public forum. *Id*. at 21–22. It held that "[b]ecause the ability of neither [plaintiff] nor [defendant] to express views at trial is altered by the presence or absence of television cameras, CNN's public forum argument is, by itself, inapposite." *Id*. at 22. However, in the instant matter, Plaintiff is seeking to record himself and his interactions with law enforcement in order to educate others on police encounters. *Westmoreland*, which looked at a third party's right to record, is thus not directly on point.

The Second Circuit also declined to apply a forum analysis in *United States v. Yonkers Bd. of Educ.*, 747 F.2d 111 (2d Cir. 1984). There, the plaintiff was prohibited from taking a cassette recorder into a courtroom. *Id*. at 112. In determining that plaintiff did not have a right to record, the Court did not undertake a forum analysis. Instead, the Court held that because the prohibition "does not violate appellant's right of access and does not prohibit him from

communicating any of what he observes to his readers," the prohibition was "simply a 'time, place, and manner' restriction, which should not be subjected to strict scrutiny, but should be upheld if reasonable." *Id*. at 114 (internal citations omitted). In applying this test, the Court appeared to consider both potential sources of Plaintiff's right to record: creating speech and accessing information.

Based on the Second Circuit's decisions in *Westmoreland* and *Yonkers*, and despite this Court's analysis in the PI order, the Court is now convinced that the forum analysis is not the best fit here. Both *Westmoreland* and *Yonkers* involved an individual who sought to record on government property, and in both, the Second Circuit did not employ forum analysis. Moreover, the parties have not pointed to, and the Court has not seen, Second Circuit cases involving recording on government property in which the Court applied a forum analysis.

### B. Intermediate Scrutiny Applies

Finding that forum analysis does not apply, however, does not determine the appropriate test under which to analyze the Procedure. *Yonkers* provides little clarity here. Although Defendant contends that this case supports the Court applying a reasonableness test and not intermediate scrutiny, courts citing to *Yonkers* have differed on what test *Yonkers*, in fact, applied. One district court in the Second Circuit has discussed *Yonkers* with the language of intermediate scrutiny. *See Tsokalas v. Purtill*, 756 F. Supp. 89, 94 (D. Conn. 1991) (noting that *Yonkers* did not require strict scrutiny and relying on *Yonkers* in determining that the order at issue was narrowly tailored). In *Whiteland Woods, L.P. v. Twp. of W. Whiteland*, the Third Circuit noted that the Second Circuit "required only that restrictions on videotaping or audiotaping be content-neutral and reasonable, the standards applied to speech in a nonpublic forum." 193 F.3d 177, 182 (3d Cir. 1999).

Furthermore, since *Yonkers*, Supreme Court and Second Circuit jurisprudence on First Amendment analysis has evolved. The Supreme Court formulated the modern time, place, and manner test for content-neutral restrictions in *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). There, the Court held that "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* (internal citations and quotation marks omitted). Following *Ward*, the Second Circuit has used the language "reasonable time, place, and manner" along with the requirements that a restriction be content-neutral, narrowly tailored, and allow alternative channels for speech both when utilizing forum analysis, *see, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011), and when not, *see, e.g.*, *Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006). Accordingly, this Court applies the modern time, place, and manner test for content-neutral restrictions.

### C.  Plaintiff's Claim Survives Intermediate Scrutiny

During oral argument, Plaintiff argued that the Procedure is not content-neutral. Aug. 13, 2024 Tr. at 20:19–21:8. "A regulation is content neutral when it is 'justified without reference to the content of the regulated speech.'" *Marcavage v. City of New York*, 689 F.3d 98, 104 (2d Cir. 2012) (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)). Plaintiff acknowledges that the Procedure, on its face, is content-neutral. *See* Aug. 13, 2024 Tr. at 20:20–22 ("Certainly we agree that on the policy's face it applies to all facilities of the NYPD without referencing the content of the recording."). Instead, Plaintiff argues that the Procedure is only applied when there is an implication that a recording will be used to hold the NYPD accountable.

*Id*. at 20:22–21:1. Even assuming the Procedure is content-neutral, however, and applying intermediate scrutiny, Plaintiff states a claim.[1]

In terms of whether the Procedure is narrowly tailored to serve a significant government interest, the Court cannot reach such a conclusion without discovery. Regarding the government interests at play, the Court relies on much of its reasoning in the PI Order. *See Tyler v. City of Kingston*, 74 F.4th 57, 64 (2d Cir. 2023) (internal quotation marks and citation omitted) ("[C]ourts can take notice of government interests that ring of common-sense."). In short, the Court recognizes that there are legitimate state interests implicated in preventing recording in a police precinct. *See Reyes*, 2023 WL 7212192, at *9. These interests include protecting crime victims and limiting security risks. *See id*. However, it is not apparent, at this juncture, whether something less than a blanket ban could meet the government's stated interests. *See Deegan v. City of Ithaca*, 444 F.3d 135, 143 (2d Cir. 2006) (citing *Ward*, 491 U.S. at 788–89) ("The 'narrowly tailored' standard does not tolerate a time, place, or manner regulation that may burden substantially more speech than necessary to achieve its goal . . . ."). Discovery on this issue is necessary to make that determination.

The same is true with respect to whether there are ample alternative channels of communication. *See Case v. City of New York*, 233 F. Supp. 3d 372, 394 (S.D.N.Y. 2017). The Procedure is a blanket ban on recording in police precinct lobbies. Plaintiff has alleged that although the NYPD already records much of its precinct lobbies through fixed interior video cameras and body-worn cameras, the footage is not readily available. *See* FAC ¶¶ 52–55. Thus, it is unclear based on the allegations in the FAC whether civilians have access to any recording by

---

[1] Were the Procedure content-based, strict scrutiny would apply. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). The parties are permitted to explore further in discovery facts relevant to the justifications for the Procedure.

the NYPD that occurs in that lobby and accordingly unclear whether there are ample alternative channels for Plaintiff's news gathering. Because the Procedure plausibly fails intermediate scrutiny, Plaintiff has stated a claim for violation of the First Amendment.

### D.  Plaintiff States a Claim for First Amendment Retaliation

To state a claim for First Amendment retaliation, a plaintiff must allege: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (internal citation omitted). Defendant argues that the First Amendment does not grant Plaintiff the right to record inside precinct lobbies, ECF No. 75 ("Mot.") at 14, and so the First Amendment retaliation claim should be dismissed. Because the Court did not dismiss the First Amendment claim, the First Amendment retaliation claim likewise survives.

## II.    Plaintiff States a Claim Under the Fourth Amendment

The Fourth Amendment protects the right of individuals to be free from unreasonable seizures, including arrest without probable cause. *See Bailey v. United States*, 568 U.S. 186, 192 (2013). "Probable cause to arrest exists when the officers have reasonably trustworthy information as to facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (cleaned up). "In deciding whether probable cause existed for an arrest, [courts] assess whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id*. (internal citation and quotation marks omitted).

A claim for municipal liability under Section 1983 requires a plaintiff to "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3)

a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff has plausibly alleged each of these elements. There is no dispute that this arrest was pursuant to an official policy – namely, the Procedure. Plaintiff has plausibly alleged that he was arrested for recording in police precincts pursuant to that Procedure. His arrests were without probable cause in light of the Right to Record Acts. These laws permit a person, who is not physically interfering with law enforcement and not engaged in actions that constitute a crime, to record law enforcement activity. Plaintiff has plausibly alleged that he was lawfully present in the police precinct to obtain a complaint form and was not physically interfering with law enforcement. Instead, he was arrested pursuant to a policy that allows the NYPD to arrest individuals even though they are acting consistently with state and city laws. Defendant's arguments to the contrary, as set forth below, are all without merit.

## A.    The Right to Record Acts Cover the Public Portions of Police Precincts

Defendant argues that the Right to Record Acts do not apply in the public portions of police precincts. The NYS RTRA, enacted on July 14, 2020, provides that "[a] person not under arrest or in the custody of a law enforcement official has the right to record law enforcement activity and to maintain custody and control of that recording and of any property or instruments used by that person to record law enforcement activities . . . ." N.Y. Civ. Rights Law § 79-p(2). Persons are barred from recording if they "engage in actions that physically interfere with law enforcement activity or otherwise constitute a crime defined in the penal law involving obstructing governmental administration." *Id*. Similarly, the NYC RTRA, enacted on August 14, 2020, states that "[a] person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording." N.Y.C. Admin. Code

§ 14-189(b). The law further provides that "[n]othing in this chapter shall be construed to permit a person to engage in actions that physically interfere with an official and lawful police function, or to prevent the seizure of any property or instruments used in a recording of police activities where the seizure is otherwise authorized by law, or to prohibit any officer from enforcing any other provision of law." *Id*.

"Every exercise in statutory construction must begin with the words of the text." *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003)). Where the language of a statute is clear and unambiguous, "that meaning controls without need for further inquiry." *United States v. Messina*, 806 F.3d 55, 67 (2d Cir. 2015) (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)); *see also Hayden v. Pataki*, 449 F.3d 305, 314–15 (2d Cir. 2006) (internal citation and quotation marks omitted) ("[I]n interpreting a statute, we must first look to the language of the statute itself, and . . . if the statutory terms are unambiguous, our review generally ends and the statute is construed according to the plain meaning of its words.").

Here, as the City admits, the language of the statutes are unambiguous. *See* Aug. 13, 2024 Tr. at 10:20–11:2 (stating that the statutes are not ambiguous but are silent on where someone can record). As such, Plaintiff's alleged actions meet the elements of the Right to Record Acts. Plaintiff was "record[ing] law enforcement activities" – indeed, interacting with members of the public and dealing with complaints are quintessential law enforcement activities. *See* N.Y. Civ. Rights Law § 79-p(2); *see also* N.Y.C. Admin. Code § 14-189(b) ("A person may record police activities . . . ."). At the time he started recording, he was "not under arrest or in the custody of a law enforcement official." *See* N.Y. Civ. Rights Law § 79-p(2). And based on the facts of the First Amended Complaint, Plaintiff was not "physically interfer[ing] with law enforcement

17

activity." *See id.*; *see also* N.Y.C. Admin. Code § 14-189(b) ("Nothing in this chapter shall be construed to permit a person to engage in actions that physically interfere with an official and lawful police function . . . ."). Defendant does not argue that the text of the Right to Record Acts supports its position, nor could it.

Instead, Defendant argues that the Right to Record Acts are limited in where they apply. Defendant contends that reading the Right to Record Acts as unrestricted as to location would lead to absurd applications and so the Court should depart from the plain meaning of the Right to Record Acts. It is "well-established that a statute should be interpreted in a way that avoids absurd results." *Gibbons*, 919 F.3d at 705 (internal citation omitted). However, "courts should look beyond a statute's text under the canon against absurdity only where the result of applying the plain language would be, in a genuine sense, absurd, *i.e.*, where it is quite impossible that [the legislature] could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone." *Id.* at 705–06.

Here, Defendant suggests various hypothetical scenarios under which it contends that reading the Right to Record Acts without restricting where the law applies would lead to absurd results. Defendant argues that if there were no restrictions, individuals could record court security officers in state courthouses and "officers would be barred from assisting a homeowner who sought removal of a guest who insisted on recording over the owner's express objection." Mot. at 26.

As an initial matter, the Court takes no position on whether the first hypothetical is, in fact, "absurd." *See Gibbons*, 919 F.3d at 705 ("[A] statute is not "absurd" merely because it produces results that a court or litigant finds anomalous or perhaps unwise."). It is also unclear whether the second hypothetical would even be permitted under the Right to Record Acts. In any

event, neither of these scenarios occurred here. And, Defendant does not argue that applying the Right to Record in this precise case leads to an absurd result. "If the result proffered in the case being adjudged would be fair, concluding that the statute bespeaks absurd results based upon an atypical hypothetical is not an intellectually compelling claim." *People v. Pena*, 641 N.Y.S.2d 794, 800 (N.Y. Sup. Ct. 1996). As such, the Court focuses on the allegations before it, instead of speculating with respect to inapplicable hypothetical scenarios. *See Gibbons*, 919 F.3d at 706 (analyzing an application of the plain text of the contested statute to the issue in the case in front of the Court); *S.E.C. v. Rosenthal*, 650 F.3d 156, 162–63 (2d Cir. 2011) (same).

Next, Defendant contends that the legislative history supports its interpretation that the laws do not apply in police precincts. Because the language of the Right to Record Acts is clear and unambiguous, the Court need not look to legislative history. Even if the Court were to do so, however, Defendant would not prevail. What is clear from the legislative history is that elected officials were concerned about law enforcement accountability and transparency. *See* ECF No. 74-2, *New York State Senate Introducer's Memorandum in Support*, S3253A (N.Y. 2019) ("The right of people to document the public activities of law enforcement helps to ensure that the police and others engaged in law enforcement activities are accountable to the public."); ECF No. 74-3 at 4, *Civil Rights Law: Recording Certain Law Enforcement Activities* (June 8, 2020) (statement of Assemblymember N. Nick Perry) (stating that the bill asserted that New Yorkers have the right to record police activities).[2] Although certain legislators stated that the Right to Record Acts affirmed the constitutional right to record in public spaces, *see* ECF No. 74-2; ECF No. 74-3 at 4, the legislative history does not indicate whether the individuals were speaking of

---

[2] The Court declines to consider ECF No. 82-3 that Plaintiff filed in support of its legislative history argument, which is not part of the legislative history of the Right to Record Acts. *See Grimaldi v. Menifee*, No. 04-CV-1340 (DAB), 2004 WL 912099, at *6 (S.D.N.Y. Apr. 29, 2004).

traditional public fora, as a term of art used by courts. Indeed, as described above in Section I(A), it is unclear under First Amendment jurisprudence whether a forum analysis even applies to the right to record public police activity. And, nothing in the legislative history indicates that the legislature did not consider public precinct lobbies where members of law enforcement are interacting with members of the public as "the public activities of law enforcement."

Furthermore, the allegations in this case neatly fit with the apparent purpose of the Right to Record Acts. According to the FAC, Plaintiff was at the police precinct to file a complaint, and he sought to record those interactions to show how officers respond when such a request is made. Recording how police respond when a member of the public seeks to file a complaint furthers the transparency and accountability goals articulated throughout the legislative history.

Accordingly, the Court continues to construe the statutes according to their plain meaning. As the Court stated in the PI Order, "[t]he Right to Record Acts do not carve out police precinct lobbies as places where individuals are not allowed to record and the Court declines to read that limitation into the Right to Record Acts." *Reyes*, 2023 WL 7212192, at *11. "[T]he Right to Record Acts go beyond the protections of the First Amendment; they protect the right to record except when someone is physically interfering with law enforcement or breaking the law." *Id*. (internal citations omitted). And the Procedure does not fall under the limited exceptions permitted under the Right to Record Acts.

### B.    Plaintiff Properly Alleges a Constitutional Violation

Defendant also argues that Plaintiff is improperly using Section 1983 as a conduit to have the Court enjoin the Procedure, although the claim "is truly based on state-law grounds." Mot. at 14. It is true that Plaintiff is bringing state and city law claims. However, this does not mean that

he does not have a constitutional claim as well. Plaintiff argues that he was arrested without probable cause, a violation of the Fourth Amendment.

Defendant also contends that "an arrest purportedly in violation of the state or city right to record acts do[es] not, *ipso facto*, violate the Fourth Amendment." *Id*. at 18. Defendant, however, cites to cases that are inapposite. Defendant relies on cases where the courts held that officers did not violate the Fourth Amendment when the officers arrested the plaintiffs based upon probable cause that the plaintiffs committed some offense, even though the offenses were not "arrestable" under state law. *See Virginia v. Moore*, 553 U.S. 164, 176 (2008); *Techu-El v. Conetta*, No. 22-1717, 2023 WL 3014735, at *1 (2d Cir. Apr. 20, 2023); *United States v. Bernacet*, 724 F.3d 269, 277–78 (2d Cir. 2013). That is different from the case here, where the Right to Record Acts explicitly permit Plaintiff to undertake certain conduct for which Plaintiff was then arrested; the officer who arrested Plaintiff did not rely on the Right to Record Acts in arresting Plaintiff for a perceived violation of state or city law.

### C.    The Order to Leave the Police Precinct Was Not Lawful

Defendant claims that the officers had probable cause to arrest Plaintiff for trespass because the Right to Record Acts cannot displace the NYPD's common law privileges as proprietor. In New York, a "person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05. Plaintiff does not contest that the NYPD may, in certain scenarios, exclude individuals from its buildings. Opp. at 27. The Court agrees. But here, there is no question that, as alleged, Plaintiff lawfully entered the premises. And there are no allegations that, at the time of his arrest, Plaintiff was no longer lawfully at the police precinct.

The question, then, is whether the order for Plaintiff to comply with the Procedure or leave the premises was lawful. In *People v. Leonard*, the New York Court of Appeals held that when a property is open to the public at the time of an alleged trespass, an order to leave must be "lawful." 477 N.Y.S.2d 111, 115 (1984). "[A] decision to exclude that is predicated on or impermissibly inhibits a constitutionally or a statutorily protected activity will not be lawful." *Id*. Here, as described *supra* Section II(A), the order was not lawful, because the Right to Record Acts allow for recording in police precinct lobbies. *See People v. Reyes*, CR-019322-23KN (N.Y. Crim. Ct. Jan. 30, 2024).

### D.    Defendant Fails to Demonstrate that There Was Probable Cause for Plaintiff's Arrest Based on Obstruction of Governmental Administration

Defendant next argues that there was probable cause for Plaintiff's arrest based on Obstruction of Governmental Administration ("OGA"). Mot. at 16. Under New York law, a person is guilty of OGA when "[s]uch person intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ." N.Y. Penal Law § 195.05. "An individual, therefore, may be convicted under this statute when (1) a public servant is performing an official function; (2) the individual prevents or attempts to prevent the performance of that function by interfering with it; and (3) the individual does so intentionally." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017). "[T]he interference must at least in part be physical and cannot consist solely of verbal statements . . . ." *Id*. at 209 (internal citation and quotation marks omitted). Such conduct may consist of "inappropriate and disruptive conduct at the scene of the performance of an official function . . . ." *Id*. at 209–10 (internal citation omitted).

The parties dispute whether Plaintiff interfered with officers at the NYPD precinct at which he filmed. Defendant argues that Plaintiff video and audio recorded in the precinct lobby and ignored multiple orders by NYPD officers to either stop recording or to leave the precinct, constituting OGA. Mot. at 18. However, "[a] police officer is not a law unto himself; he cannot give an order that has no colorable legal basis and then arrest a person who defies it." *Iacobucci v. Boulter*, 193 F.3d 14, 25 (1st Cir. 1999); *cf. Kinsella v. Inc. Vill. of E. Hampton*, No. 15-CV-3948 (GRB) (SIL), 2021 WL 11633992, at *7 (E.D.N.Y. Dec. 6, 2021) ("In this Circuit, it is well-settled that refusal to comply with *lawful* orders from law enforcement officers provides those officers with probable cause to arrest for OGA.") (emphasis added). Here, the orders for Plaintiff to stop recording or leave the precinct were not lawful. *See supra* Section II(C).

Moreover, the First Amended Complaint does not allege that Plaintiff prevented officers from performing an official function or what official function was being obstructed. *See People v. Reyes*, CR-019322-23KN (N.Y. Crim. Ct. Jan. 30, 2024). And, the FAC does not allege that Plaintiff acted with the intent to impede police officers from carrying out an official function. Instead, Plaintiff alleges that he chose to file a complaint and record the incident, to document to his viewers the process of obtaining a complaint form and filing a complaint with the NYPD. FAC ¶ 61. Based on the allegations in the Complaint, the Court cannot conclude that the officers had probable cause to arrest Plaintiff. As such, the Court denies Defendant's motion to dismiss Count VI.

### E.    Plaintiff Has Standing to Seek Relief

Finally, Defendant argues that Plaintiff does not have standing to seek injunctive relief – the sole relief sought in this action. To establish standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly

traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1986 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). A plaintiff only has standing to obtain injunctive relief when the injury or threat of injury is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal citations and quotation marks omitted).

Plaintiff alleges in the First Amended Complaint that he "will continue to enter and record in the public areas of NYPD precincts." FAC ¶ 78. He also testified at the preliminary injunction hearing that he wants to continue his investigation into the NYPD, but that he cannot do so for fear of being arrested again. ECF No. 39 ("Sept. 28, 2023 Tr.") at 12:23–13:9.[3] Moreover, Plaintiff was arrested again on June 1, 2023 for recording inside an NYPD precinct. FAC ¶ 79. Plaintiff has provided sufficient evidence to establish standing.

## III.    The Court Exercises Supplemental Jurisdiction Over the State and City Law Claims

Courts may decline to exercise supplemental jurisdiction over a claim that "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). As the Court found in the PI Order, "the state and city Right to Record Acts do not involve the state's interest in the administration of its government nor do they present complex issues; the statutory language as applied to this circumstance is clear and unambiguous." *Reyes*, 2023 WL 7212192, at *10. Moreover, the federal claims remains in this action. Accordingly, the Court exercises supplemental jurisdiction over the Right to Record Act claims.

During oral argument, Plaintiff represented that the CAPA claim is not brought under N.Y. C.P.L.R Article 78. Aug. 13, 2024 Tr. at 30:9–10. Accordingly, Defendant's arguments as to why the Court should decline to exercise jurisdiction over a CAPA claim as brought under

---

[3] In resolving a motion to dismiss for lack of standing, a district court may refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Article 78, even if the Court exercises jurisdiction over the Right to Record Act claims, do not

apply. The Court exercises supplemental jurisdiction over the CAPA claim, but for the reasons

stated below, dismisses this claim.

## IV.    Plaintiff States a Claim under the Right to Record Acts

To state a claim under the NYS RTRA, a plaintiff must allege that she (1) exercised or

attempted to exercise the right established in subdivision two of the statute and (2) an officer

acted to interfere with her recording. N.Y. Civ. Rights Law § 79-p; *see also Flannery v. City of*

*Rochester*, 640 F. Supp. 3d 267, 279 (W.D.N.Y. 2022). The language on the NYC RTRA tracks

the language of the NYS RTRA. *See* N.Y.C. Admin. Code § 14-189. Plaintiff has alleged that he

tried to record in the Sixty-First Precinct and that officers prevented him from recording,

sufficient to state a claim under the Right to Record Act. *See Staab v. City of Rochester*, No. 22-

CV-6063 (FPG), 2022 WL 16856670, at *11 (W.D.N.Y. Nov. 10, 2022) (denying motion to

dismiss claim under the NYS RTRA when the plaintiff alleged that officers intentionally

prevented her from further recording law enforcement activity).

The Right to Record Acts provide for an affirmative defense that the individual recording

physically interfered with law enforcement activity or otherwise obstructed governmental

administration. N.Y. Civ. Rights Law § 79-p(2); N.Y.C. Admin. Code § 14-189(c)(2). For the

reasons stated *supra* Section II(D), Defendant's arguments that Plaintiff obstructed governmental

administration are not sufficient at this juncture to dismiss Plaintiff's claims under the Right to

Record Acts. Moreover, "affirmative defenses usually cannot be considered on a motion to

dismiss." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 400 (S.D.N.Y. 2023).

Although courts may consider any affirmative defense that appears on the face of the complaint,

*id*., the affirmative defense that Plaintiff physically interfered with law enforcement does not

arise in the First Amended Complaint. Defendant's motion to dismiss the claims under the Right to Record Acts is denied.

## V.    Plaintiff's Cause of Action under the City Administrative Procedure Act Is Dismissed

Plaintiff alleges that the NYPD did not undergo the rulemaking process set forth in CAPA when it first issued the Procedure. FAC ¶ 114. However, CAPA contains language throughout that notes that certain paragraphs, subdivisions, and clauses do not create a private right of action. *See* N.Y.C. Charter § 1043; *see also Malone v. City of New York*, 144 N.Y.S.3d 689, 691 (1st Dep't 2021) (stating that CAPA "expressly precludes a private right of action to enforce [CAPA's] provisions"). Plaintiff has only pointed to one case in federal court – and the Court only found one – in which a CAPA claim survived. *See New Jersey Limousine Ass'n v. Lusk*, No. 98-CV-2092 (MGC), 1991 WL 143710, at *8 (S.D.N.Y. July 22, 1991). The court there did not explicitly address whether CAPA provides for a private right of action. This Court declines to rely on this singular case over the statutory language of CAPA, which states that it does not provide for a private right action.[4] Count III is therefore dismissed.

## VI.    Defendant's Motion to Dismiss a Claim for Declaratory Relief Is Denied

Finally, Defendant asks the Court to dismiss Plaintiff's alleged claim for declaratory relief, arguing that the case is in a different posture from the preliminary injunction such that *Younger* abstention applies. The Court disagrees. There is no reason why a declaratory judgment that the Right to Record Acts prohibit recording in police precinct lobbies would bind a state court more now than it did then. Additionally, the declaratory relief sought is not to enjoin any state court proceeding. As such, the reasoning in the Court's PI Order regarding *Younger*

---

[4] Plaintiff confirmed that he is not bringing the CAPA claim under Article 78, which may provide a vehicle to bring such claims. Aug. 13, 2024 Tr. at 30:9–10.

abstention remains applicable. Accordingly, Defendant's motion to dismiss a claim for declaratory relief is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Counts I, II, IV, V, and VI remain and Count III is dismissed. The parties are directed to file a proposed amended Case Management Plan and Scheduling Order, available at https://nysd.uscourts.gov/hon-jessica-g-l-clarke, by **October 15, 2024**. The Clerk of Court is directed to terminate ECF No. 73.

Dated:  September 30, 2024
New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge