

Lourdes M. Rosado
**President and General Counsel**

May 28, 2025

The Hon. Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street, Room 1040
New York, NY 10007

<u>**Via ECF**</u>

Re:   *Reyes v. City of New York*, 23-cv-6369
      Pursuant to Local Rule 37.2 and Individual Practice 4(k)

Dear Judge Clarke,

      Counsel in the above-referenced matter write jointly pursuant to Local Rule 37.2 and Individual Practice 4(k) regarding a dispute over a question that was posed during the May 1, 2025 deposition of Detective Giovanni Cucuzza. During that deposition, Karen Muñoz Treviño, counsel for Plaintiff, asked Detective Cucuzza the following:

      "If you were working at a press conference and a lieutenant told you to enforce the trespass policy against the cameraman of New York One, would you do it?"[1] Defendant's counsel instructed Detective Cucuzza not to answer the question, and a short colloquy followed. *See* Transcript of the May 1, 2025 Deposition of Giovanni Cucuzza ("Cucuzza Tr.") at 99:21–103:4.

      Counsel for Plaintiff wrote to counsel for Defendant on May 22, 2025 seeking a meet-and-confer pursuant to individual practice 4(k) to resolve the matter. That meet-and-confer took place at approximately 1:15 p.m. on May 27, by phone, between Mark Zuckerman and Andrew Case, lasting approximately fifteen minutes.

---

[1] The transcript states "or New York One" but we believe that is an error.

**NEW YORK OFFICE** | 475 Riverside Drive, Suite 1901 New York, NY 10115 | D: 212.219.3360 G: 800.328.2322
**SOUTHEAST REGIONAL OFFICE** | 523 West Colonial Drive Orlando, FL 32804 | D: 321.250.2853
**SOUTHWEST REGIONAL OFFICE** | 611 South Congress Ave STE: 450D Congress Square II Austin, TX 78704 | D: 512-649-9129
latinojustice.org



**Plaintiff's position**

Prior to the meet-and-confer, Plaintiff's position was that the question should have been answered. Plaintiff offered to accept a written response to the question. After the meet-and-confer, Plaintiff's counsel re-iterated that he would accept a written response to the questions. Plaintiff does not find Defendant's proposal that the question remain unanswered sufficient for the reasons set forth below.

There are three appropriate bases on which to refuse to answer a question:"1) when refusal is necessary to preserve a privilege; 2) when a deponent objects to enforce a limitation ordered by a court; and 3) when a deponent moves under Rule 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent." *Sacerdote v. Cammack LaRhette Advisors*, 24-cv-3129 (AT) (VF), 2025 WL 893720, at *4 (S.D.N.Y. Mar. 24, 2025). As courts recognize "the hypothetical nature of a question is not one" of the valid reasons to refuse to answer. *Ice Cube Bldg., LLC v. Scottsdale Ins. Co.*, 17-cv-00973(KAD), 2019 WL 2323890, at *6 (D. Conn. May 31, 2019).

In its September 30, 2024 order, the Court ruled that plaintiff stated a retaliation claim under the First Amendment. *See* ECF 104 at 15. The essence of that claim is that the NYPD's policy forbidding recording in NYPD "facilities" is only enforced against people seeking to hold NYPD officers accountable and is not enforced against people who are seeking to put the NYPD in a positive light. The many photographs and videos inside NYPD facilities, including photographs of Detective Cucuzza himself, support Plaintiff's claim.

Plaintiff had established earlier in the deposition that One Police Plaza, where the press conferences are held, is an NYPD facility. *See* Cucuzza Tr. at 25:25–26:2 ("Q: Is One Police Plaza an NYPD facility? A: Yes."). Whether or not officers enforce this policy uniformly across different NYPD facilities and whether line officers have the discretion to choose whether to enforce it at all are questions that are central to Plaintiff's First Amendment claim.

Defendant's counsel now claims that the question was one of a "slew" of improper questions. The transcript demonstrates that it was rather the culmination of a series of improper objections designed to bully and intimidate a junior attorney taking her second deposition. Defendant's counsel repeatedly sought to revise questions and

signal to Detective Cucuzza how to answer through speaking objections. *See, e.g.*, Cucuzza Tr. at 65–66 (after a series of speaking objections and a re-reading of a question, Cucuzza answers "I don't understand the question"). He also misrepresented Detective Cucuzza's answers even after they were read back. *Compare* Cucuzza Tr. at 69:9–10; ("this is why members of the public are not allowed to record inside the precinct") *with* 74:19–21 (after the reporter read this answer back, Q: "Detective you said this is why member of the public can't record?" Mr. Zuckerman: "He didn't say that").

The question posed was proper and the direction not to answer was not. Detective Cucuzza should be required to answer.

**Defendant's position**

The issue presented in this dispute is a continuation of the problem raised by defendant as to the confidentiality of the videotaped depositions of the officers involved in plaintiff's subject arrest. When I met and conferred with Ms. Munoz on the confidentiality issue, she in no uncertain terms stated that the entire purpose of videorecording the officer depositions was for plaintiff to post them online following the completion of the litigation. The attempt to have P.O. Cucuzza answer the above deposition question seems to be a continuation of plaintiff's attempts to make posts online and to profit from this litigation by selling certain aspects of it to his subscribers.

P.O. Cucuzza's only role in this litigation is as a fact witness: He arrested plaintiff at the 61st Pct. upon Sgt. Korchimet's order when plaintiff was videorecording in the precinct lobby. There is not one scintilla of evidence that P.O. Cucuzza has ever worked in 1 PP in any capacity, much less at a press conference. P.O. Cucuzza is not a policy witness of any kind in this case nor makes policy for the NYPD. In fact, the question that plaintiff's counsel proposes to ask does not involve a precinct lobby at all, which is what this case only is about.

Plaintiff's proposed question does not seek relevant information, and only amounts to another attempt to harass P.O. Cucuzza by trying to force him to answer whether he would abide by or refuse to follow an order by a superior officer (and then for plaintiff to post it online for his subscribers to see). Plaintiff's proposed question does not attempt to discover relevant evidence. Rule 701, Fed. R. Civ. P., sets forth allowable opinion testimony by a lay witness. P.O. Cucuzza is clearly not testifying as an expert witness. He is being asked a completely hypothetical and speculative

**NEW YORK OFFICE** | 475 Riverside Drive, Suite 1901 New York, NY 10115 | D: 212.219.3360 G: 800.328.2322
**SOUTHEAST REGIONAL OFFICE** | 523 West Colonial Drive Orlando, FL 32804 | D: 321.250.2853
**SOUTHWEST REGIONAL OFFICE** | 611 South Congress Ave STE: 450D Congress Square II Austin, TX 78704 | D: 512-649-9129

**latinojustice.org**

question not "rationally based on [his] perception," F.R.E. 701(a), and it is not "helpful to clearly understanding" his testimony in determining a fact issue as to whether plaintiff's subject arrest was proper, see F.R.E. 701(b), which is the only basis for P.O. Cucuzza's testimony in this case.  Plaintiff has not established that P.O. Cucuzza has ever remotely encountered the situation set forth in the disputed question and he is only a witness as to plaintiff's subject arrest.

As the Court is aware, P.O. Cucuzza was subjected to harassment upon plaintiff's posting of his subject arrest video.  This is the exact type of situation that will likely lead to more of it since plaintiff's only goal here is to see if P.O. Cucuzza would answer that he would or would not follow a direct order from a hypothetical superior order, which is not what this case is about either.

Nor can P.O. Cucuzza be forced to answer the question yes or no should the Court order the question be answered.  At a minimum, the question is devoid of any of the crucial facts as to the conduct of the "cameraman."  It is a completely unfair question for this reason as well and only posed to harass and attempt embarrass  P.O. Cucuzza.

It should be noted that P.O. Cucuzza's deposition lasted a few hours and this was the only question that I directed him not to answer (despite a slew of other similar improper questions) because this question was so egregious.  I begged plaintiff's counsel to seek a ruling on this question during the deposition but they even refused to do that because they had no confidence that it was a proper question, nor is it.  Our compromise position is that these sort of hypothetical and opinion questions should be asked at the Rule 30(b)(6) deposition that plaintiff is pursuing, and not of fact witnesses who do not make policy for the NYPD.  Plaintiff's counsel rejected that reasonable approach because plaintiff's only goal here is to attempt to embarrass P.O. Cucuzza for the benefit of his subscribers who pay for this sort of material.

Counsel are prepared to discuss this matter at the May 29 conference.

Respectfully submitted,

\_\_\_\_/s/ *Andrew Case*_____
Andrew Case
cc: All Counsel via ECF

**NEW YORK OFFICE** | 475 Riverside Drive, Suite 1901 New York, NY 10115 | D: 212.219.3360 G: 800.328.2322
**SOUTHEAST REGIONAL OFFICE** | 523 West Colonial Drive Orlando, FL 32804 | D: 321.250.2853
**SOUTHWEST REGIONAL OFFICE** | 611 South Congress Ave STE: 450D Congress Square II Austin, TX 78704 | D: 512-649-9129
latinojustice.org

1                   Detective G. Cucuzza
2              (WHEREUPON, the above-referred-to
3          document, nypdcolumbia Instagram post, four
4          pages, was marked as Plaintiff's Exhibit 4,
5          for identification, as of this date.)
6          Q    So, Detective Cucuzza, what are we
7    looking at, can -- what can you see right now?
8          A    A picture at -- at One Police Plaza.
9          Q    This is the NYPD's Instagram?
10         A    No.  That's a fraternal organization
11   within the NYPD.
12         Q    Thank you.  Okay.  Fraternal organization
13   within the NYPD.
14              And this photo's also in One Police
15   Plaza?
16         A    Yes.
17         Q    Who took the photo for this Instagram?
18         A    I don't know.
19         Q    Were -- were friends and family members
20   at this ceremony?
21         A    Yes.
22         Q    Did any friends or family members take
23   photos?
24         A    Yeah, they took photos.  Yes.
25         Q    Is One Police Plaza an NYPD facility?

1                    Detective G. Cucuzza
2          A     Yes.
3          Q     Okay.  I'm just getting rid of my
4    additional exhibit tabs.
5                Okay.  Detective, what training have you
6    received specifically related to the First Amendment?
7          A     Basic training in the NYPD for all --
8    when we -- when we were in the academy classes.
9          Q     What did that training entail specific to
10   the First Amendment portion?
11         A     I don't remember.
12         Q     What was the policy on recording police
13   officers when you joined the NYPD?
14               MR. ZUCKERMAN:  Object to form.
15               You can answer if you understand.
16         A     Can you repeat the question, I'm sorry?
17         Q     What was the policy on recording police
18   officers when you joined the NYPD?
19               MR. ZUCKERMAN:  Object to form.
20         A     That peop- -- you know, people were
21   allowed to record in public.
22         Q     Okay.  I'm just gonna -- I'm gonna pull
23   another exhibit.
24               But before I do, very quickly, Detective,
25   so you started at the 61st Precinct in 2016; right?

Detective Giovanni Cucuzza
May 01, 2025                                                         99

                    Detective G. Cucuzza

   speeches or press briefings inside One Police Plaza;
   don't they?
            A      Reporters?
            Q      (Head gesture)
            A      So members of the media?
            Q      My question is, reporters record police
   officials giving speeches or press briefings in
   One Police Plaza; don't they?
            A      Yeah.
            Q      So why isn't the policy enforced in those
   situations?
            A      I don't know.
            Q      Is there an exception for ceremonies in
   the policy?
                   MR. ZUCKERMAN:  Object to form.
            A      I wouldn't have that answer.
            Q      Is there an exception for press
   conferences?
            A      I wouldn't have that answer as well.
            Q      If you were working at a press conference
   and a lieutenant told you to enforce the trespass
   policy against the cameraman or New York One, would
   you do it?
                   MR. ZUCKERMAN:  Objection.  I -- I'm --

                    U.S. LEGAL SUPPORT, INC
                         713-653-7100

```
 1                    Detective G. Cucuzza
 2           I'm not -- directing him not to answer.  I
 3      mean, it's -- it's a hypothetical, way off
 4      base, has nothing to do with this case.  It's
 5      harassment; okay?  At some point, you -- you
 6      got to stay to the -- to the case.
 7               He -- he's not the policy maker.  He's --
 8      he's a detective in the intelligence unit.  He
 9      was a patrol officer.  I mean, at some point,
10      you -- you --
11               MR. CASE:  Mark --
12               MR. ZUCKERMAN:  -- it's harassment.
13               MR. CASE:  Mark --
14               MR. ZUCKERMAN:  Yes.
15               MR. CASE:  -- the word "harassment" is --
16         is -- that's pretty excessive.
17               MR. ZUCKERMAN:  Yeah.  Well, that -- that
18         question, I -- I mean, he can't -- he can't
19         answer.  He's not a -- he's not a --
20               MR. CASE:  Of course he can answer that
21         question.
22               MR. ZUCKERMAN:  -- a policy maker for
23         the --
24               MR. CASE:  He was --
25               MR. ZUCKERMAN:  -- NYPD.
```

1                  Detective G. Cucuzza

2            MR. CASE:  He has said he's not a policy

3       maker for the NYPD.  He has said he -- he

4       follows the commands of his supervisory

5       officers, and the question was about what he

6       would do if the supervisory office gave a

7       command, not whether that would be right --

8            MR. ZUCKERMAN:  It's a complete

9       hypothetical --

10            MR. CASE:  -- not --

11            MR. ZUCKERMAN:  -- it's improper for a

12       lay witness; okay?  It's -- for -- for a

13       nonparty lay witness, it's absolutely

14       improper.  If you want to go to the judge, go

15       to the judge, but I object to that question.

16       He can't answer that sort of question.

17            MR. CASE:  I -- I --

18            MR. ZUCKERMAN:  Got to the judge if you

19       want.

20            MR. CASE:  No.  No.  I'm not gonna go to

21       the -- we're not gonna go to the judge

22       during --

23            MR. ZUCKERMAN:  Right.

24            MR. CASE:  -- this deposition, I --

25            MR. ZUCKERMAN:  Then -- then move onto --

                   Detective G. Cucuzza
1
2           MR. CASE:  -- promise you.
3           MR. ZUCKERMAN:  Then move onto -- to a
4     fair question.
5           MR. CASE:  We -- we are gonna make a note
6     that we don't believe that's a proper
7     instruction, to not answer.
8           MR. ZUCKERMAN:  Then go to the judge.
9           MR. CASE:  We'll deal with that later if
10    we have to, but we're not gonna interrupt the
11    deposition for the judge.  Just -- just,
12    please, okay, it's Karen's --
13          MR. ZUCKERMAN:  But that's not a
14    proper --
15          MR. CASE:  -- deposition, she's asking
16    questions --
17          MR. ZUCKERMAN:  -- it's not a proper
18    question.  I'm not allowing -- if you're
19    planning another hour of improper questions,
20    I'm not going --
21          MR. CASE:  We're not planning an hour of
22    improper --
23          MR. ZUCKERMAN:  Then let's go -- move
24    onto the next question.
25          MR. CASE:  Whoa.  Slow down.  Everyone

1                  Detective G. Cucuzza
2              What, if -- when was the next time that
3       you heard anything at all about this incident?
4              MR. ZUCKERMAN:  Object to form.
5          A    At --
6              MR. ZUCKERMAN:  And just -- Karen, with
7          all due respect, you -- you haven't
8          established that he did hear something else.
9          I mean, you've got to establish first that he
10         heard something about the case or the
11         incident.  Maybe ask about the ca- -- I -- I
12         don't -- I don't know.
13         Q    Okay.  Did you hear anything at all about
14      this incident after the arrest?
15             MR. ZUCKERMAN:  Oh, we -- I'm really not
16         trying to be diff- -- after he was released
17         that day, or after -- I mean, that's where I'm
18         having trouble right now.
19             After he was released; is that what you
20         want to ask him?
21             MS. MUNOZ TREVINO:  Sure.
22             MR. ZUCKERMAN:  Okay.  Great.
23             After the release -- after the release,
24         did you hear anything about this incident?
25         That's the question.

                    Detective Giovanni Cucuzza
                         May 01, 2025                              66

    1                 Detective G. Cucuzza
    2           MR. CASE:  No.  The question is the
    3      question that Karen asked.
    4           MR. ZUCKERMAN:  Fine.
    5           MR. CASE:  If you want to push back on
    6      it, you can -- you can object, but we -- we
    7      got to stop revising questions to make --
    8           MR. ZUCKERMAN:  I'm not trying to -- go
    9      ahead.
   10           MR. CASE:  I understand.
   11           MR. ZUCKERMAN:  Go ahead.
   12           THE WITNESS:  Did I hear anything about
   13      the arrest?
   14           MR. ZUCKERMAN:  Well, let her answer the
   15      question.
   16           MR. CASE:  I -- I think there's a
   17      question pending, actually.
   18           MR. ZUCKERMAN:  Then -- then let's just
   19      read it back.
   20           (WHEREUPON, the previous question was
   21      read by the court reporter.)
   22           MR. ZUCKERMAN:  Object to form.
   23      A    I -- I -- I don't understand the
   24  question.  Like as to how the arrest went, or how --
   25  like I don't understand the question.  Did -- did I

                    U.S. LEGAL SUPPORT, INC
                         713-653-7100

Detective Giovanni Cucuzza
May 01, 2025                                                  69

Detective G. Cucuzza

Q    What do people typically go to that window for?

A    Complaints.  If they were victims of a crime.  There's -- there's several -- there's a -- a lot of various reasons as to why people come into the precinct to speak to us.  There's informants that come into the precinct speak to us.  That's confidential, and this is why members of the public are not allowed to record inside the precinct.  We have victims of domestic violences coming into the precinct, rape victims that come into the precinct to speak to us about a situation.  There's multiple reasons they come into that precinct -- in various pre- -- in -- in precincts in general.

Q    Do people go to the window to pick up their property?

A    Yes.

Q    To report stolen items?

A    Yes.  There's -- there's -- like I said, there's various complaints of them being a victim of a crime or them losing property or just general questions that may be asked by the public.

Q    And people also go to this window to give compliments when they like to do so?

```
1                  Detective G. Cucuzza
2           we're not using real time here, but maybe we
3           can stop and go back, because this was -- this
4           was a -- an answer about, I believe,
5           confidential informants and rape victims, and
6           we just -- we should get the language he used,
7           you're correct, if we could.
8                  MR. ZUCKERMAN:  Thank you.
9                  MS. MUNOZ TREVINO:  We were talking about
10          who -- Teri, if it's helpful, we were talking
11          about people who may be coming up to the
12          window.
13                 (Discussion held off the record)
14                 (WHEREUPON, the requested portion of the
15          testimony was read by the court reporter.)
16                 MR. ZUCKERMAN:  Yes, thank you.
17                 MR. CASE:  Okay.  Thank you.
18                 MS. MUNOZ TREVINO:  Thank you.
19          Q    Detective, you said this is why members
20     of the public can't record?
21                 MR. ZUCKERMAN:  He didn't say that.
22          Objection.
23                 MR. CASE:  Wait a second.  We just read
24          it and he did say that.  So let's go back and
25          read it again.
```

Detective Giovanni Cucuzza
May 01, 2025                                                   75

```
 1                      Detective G. Cucuzza
 2               (WHEREUPON, the requested portion of the
 3         testimony was read by the court reporter.)
 4               MS. MUNOZ TREVINO:  Thank you, again,
 5         Teri.
 6         Q    So, Detective Cucuzza, we just heard the
 7    transcript, and you said this is why members of the
 8    public are not allowed to cord -- to record inside
 9    the precinct.
10         A    Well, there's a procedure --
11               MR. ZUCKERMAN:  Wait a minute.
12               Object to form.
13               Go ahead.
14         A    There's a procedure that we follow on
15    members of the public recording in a police facility.
16         Q    But when you say "this is the reason,"
17    how did you learn that that was the reason for the
18    procedure?
19               MR. ZUCKERMAN:  Objection.
20         A    I didn't learn it, I'm just -- there's a
21    procedure that we follow to -- that -- that's in the
22    Patrol Guide procedure and in the Legal Bureau
23    Bulletin about people recording inside the police
24    facility.
25         Q    So you said, "I didn't learn it," but how
```

U.S. LEGAL SUPPORT, INC
713-653-7100